1  Zachary M. Smith, State Bar No. 78241
   W. Scott Cameron, State Bar No. 229828
2  **WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
   LAW CORPORATION
3  400 Capitol Mall, 11th Floor
   Sacramento, California 95814
4  Telephone:    916.558.6000
   Facsimile:    916.446.1611
5  Email: ZSmith@weintraub.com
          SCameron@weintraub.com
6
7  Attorneys for Plaintiffs
   PMM Holdings, LLC and Precision
8  Machine & Manufacturing

9

10                    UNITED STATES DISTRICT

11                EASTERN DISTRICT OF CALIFORNIA

12

13  PMM HOLDINGS, LLC and PRECISION          Case No.
    MACHINE & MANUFACTURING,
14                                           **COMPLAINT**
              Plaintiffs,
15
         v.
16
    WILLIAM W. MEYER AND SONS, INC. and
17  DHG, INC.,
18            Defendants.
19

20       Plaintiffs PMM, Holdings, LLC ("PMM Holdings") and Precision Machine &

21  Manufacturing, Inc. ("Precision"), referred to together in this Complaint as "Precision" or

22  "Plaintiffs," allege upon information and belief against defendants Wm. Meyer & Sons ("Meyer")

23  and DHG, Inc. ("DHG"), together referred to herein, as "Defendants," and as to DHG's affiliates,

24  subsidiaries and agents, Three Cities Research, Inc. ("Three Cities"), Finn Corporation ("Finn"),

25  and Express Blower Inc. ("EB"), together referred to herein as "DHG's Companies," as follows:

26  ///

27  ///

28  ///

**weintraub tobin** chediak coleman grodin
law corporation

**JURISDICTION AND VENUE**

1.      The U.S. District Court for the Eastern District of California ("Court") has subject matter jurisdiction over the claims in this case because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

2.      The Court also has subject matter jurisdiction because Plaintiffs state claims including claims under federal laws which confer federal question subject matter jurisdiction on the Court including the Defend Trade Secrets Act 18 U.S.C. § 1836, the Sherman Act.

3.      The Court has specific personal jurisdiction over each of the Defendants because each has availed itself of the benefits of the State of California in doing business within the state, each has targeted the property of California domiciliary, PMM Holdings, for misappropriation by the Defendants, each has committed breaches of contract and wrongful, unlawful acts damaging PMM Holdings and its wholly-owned subsidiary, Precision, in California, and because each of the Defendants is bound by a contract by which each of the Defendants agreed it and its affiliates consented to the jurisdiction of the state and federal courts of California, all as more fully alleged herein in paragraphs 15, 16, 16.3, 16.4, 17, 18 and 18.3.

**PARTIES AND THEIR AGENTS**

4.      Plaintiff PMM Holdings is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Sacramento, California. PMM Holdings owns 100% of the shares of Precision.

5.      Plaintiff Precision is a corporation organized and existing under the laws of the State of Oregon and is the wholly-owned subsidiary of PMM Holdings.

6.      Defendant William W. Meyer & Sons, Inc. ("Meyer") is registered with the Secretary of State of Illinois as a for-profit corporation organized under the laws of Illinois as entity file number 28858990.  Meyer operates from its principal office at 1700 Franklin Boulevard, Libertyville, Illinois, but does business nationally and globally, including, but not limited to, in the states of Oregon and California, under the assumed or fictious names "Meyer Made," "Meyer Industrial," and "Meyer Pro."

///

7.     Defendant DHG is owned by Three Cities Research, Inc. DHG and its subsidiaries are primarily engaged in industrial manufacturing and distribution. DHG is registered with the Secretary of State of Ohio as a for-profit corporation organized under the laws of Ohio as entity number 763188.  DHG operates from its principal office 9281 LeSaint Drive, Fairfield, Ohio, but does business in many other states, including, but not limited to, in Oregon and California. DHG owns, controls and acts through, Finn and EB as wholly-owned subsidiaries and/or affiliated organizations.

8.     Finn is a wholly-owned subsidiary of DHG and is registered with the Secretary of State for Ohio as a for profit corporation organized under the laws of Ohio as entity number 166266.  Finn operates from its principal office at 9281 LeSaint Drive, Fairfield, Ohio but does business in other countries and states, including, but not limited to, in Oregon and California, and serves as the agent of DHG, under the ultimate direction and control of DHG.

9.     EB is a wholly-owned subsidiary of DHG and/or Finn and is registered with the Secretary of State for Ohio as a for profit corporation organized under the laws of Ohio as entity number 2380014.  EB operates from its principal office at 9281 LeSaint Drive, Fairfield, Ohio but does business in many other states, including, but not limited to, in Oregon and California, and serves as the agent of DHG and Finn, under the ultimate direction and control of DHG.

## FACTS COMMON TO ALL COUNTS

10.     Plaintiffs are in the business of designing, manufacturing and selling industrial machinery, primarily heavy duty rotary airlock feeders, rotary valve airlocks and screw conveyors as components for material handling systems. To conduct such business, PMM Holdings owns Precision which performs the design, manufacture and sales of such machinery. Precision's rotary airlock feeder is a unique product, highly regarded in the industry, and particularly effective in blower truck and blower equipment applications.

11.     DHG conducts the business of building and selling material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers and/or bark blowers, through its wholly-owned entities Finn and Express Blower.

///

1    12.    In 2015 and 2016, at DHG's instigation, DHG's subsidiary Finn and Precision

2  discussed a potential arrangement by which Precision would design, manufacture and supply to

3  Finn and Finn's wholly-owned subsidiary, EB, Precision's rotary airlock feeders ("feeders") to be

4  installed by Finn and EB as a component part in some of their equipment. Precision proposed to

5  design, build and supply new generation feeders which would be superior to the feeders Finn and

6  EB had been installing in their blowers and blower trucks in the past.

7    13.    The discussions resulted in a Memorandum of Understanding ("MOU") signed by

8  Matt Day, the then Vice President of Operations for both of the DHG entities, Finn and EB, and by

9  Precision's former President, Kirk Morton, on or about February 9, 2016. A true and accurate copy

10  of the signed MOU is attached to this Complaint as **Exhibit 1** and incorporated into the Complaint

11  by this reference as though set forth in full and verbatim.[1] Pertinent to this case, the MOU provides

12  that:

13    13.1    Precision was responsible for the overall design of the feeders (**Exhibit 1**, p. 1,

14         "Design Changes") and owns such designs in order that Precision would "license its

15         designs for rotary feeders to FINN and EB" if the parties' "business relationship"

16         described by the MOU ever ended (**Exhibit 1**, p. 4, "Aftermarket");

17    13.2    The parties were bound to "protect the confidentiality of the designs, pricing,

18         purchase volumes, and any other information about their business relationship

19         (**Exhibit 1**, p. 4, "Non-Disclosure");

20    13.3    The parties agreed to initial pricing based on minimum lot size orders as set forth in

21         the agreement (**Exhibit 1**, p. 2, "Initial Pricing" and "Minimum Lot Size Order");

22    13.4    DHG's companies would purchase a minimum number of feeders from Precision

23         each calendar year (**Exhibit 1**, p. 3, "Minimum Annual Purchases");

24    13.5    Upon the commencement of the business relationship established by the MOU,

25         Precision would "withdraw from supplying feeders into the blower truck

26         aftermarket," remove references to blower truck feeders from its advertising

27  _____

28  [1] Because the MOU (**Exhibit 1**) contains information the parties agreed to keep confidential, Plaintiffs will file a Request to File Under Seal pursuant to Local Rule 141 and will submit **Exhibit 1** pursuant to such motion and procedure.

1    materials, and "direct any customer inquiries that it receives to FINN and EB"

2    (**Exhibit 1**, p. 3, "Aftermarket");

3    13.6    On the conditions that the parties were "satisfied with the business relationship" and

4    "that the annual minimum order volume is being met" Precision would "stay out of

5    the aftermarket and not compete with FINN and EB for blower truck feeder sales,

6    parts, service or rebuilding" (**Exhibit 1**, p. 3, "Aftermarket");

7    13.7    Any feeder developed and manufactured by Precision during the course of the

8    business relationship described in the MOU would be subject to the terms of the

9    MOU (**Exhibit 1**, p. 1, "Products"); and

10    13.8    If the business relationship described in the MOU came to an end, that Precision

11    would remain "out of the aftermarket business" for a specified period and "license

12    its designs for rotary feeders to FINN and EB on terms to be negotiated later"

13    **Exhibit 1**, pp. 3-4, "Aftermarket").

14    14.    Precision has performed its obligations under the MOU:

15    14.1    At its sole cost and risk, Precision customized its own proven feeder designs to serve

16    as new and improved feeders for use as a component within Finn and EB's blower

17    trucks and blower equipment. Precision developed, designed, manufactured, and

18    sold to Finn its new 18x33 model to replace Finn's old "12-Series" model,

19    Precision's new 16x25 which replaced Finn's old "5-Series" model, and Precision's

20    new model "302" to replace Finn's old model called "BB302". Precision also

21    developed and designed what Precision designated as a 12x15 model feeder for a

22    new material blower machine that Finn was developing. All the feeders bear

23    Precision serial numbers and the drawings for all of the new feeders designed and

24    engineered by Precision, including the new 302 rotary feeder, bear the Precision

25    legend and insignia and are under Precision's exclusive ownership, possession and

26    control;

27    ///

28    ///

weintraub **tobin** chediak coleman grodin
law corporation

14.2    Precision has filled Finn's orders for the feeders designed and manufactured by Precision despite the fact that Finn has ordered the feeders in lot sizes which did not comply with the minimum lot size orders called for by the MOU;

14.3    Each of the Precision feeders supplied to Finn was painted "Finn beige" at Finn's request but bore a Precision serial number as Precision was the original manufacturer of such feeders; and

14.4    Precision withdrew from the "aftermarket business" while the "business relationship" between the DHG Companies and Plaintiffs was satisfactory to the parties; and Precision has adhered to the non-disclosure and confidentiality provisions of the MOU.

15.    In 2024, the "business relationship" began to change.  DHG and Three Cities represented that DHG was interested in potentially doing business with Plaintiffs and entered into a "Non-Disclosure Agreement," dated January 23, 2024, and signed by Christopher Erickson on behalf of DHG and Three Cities (the "DHG NDA") A true and accurate copy of the signed DHG NDA is attached to this Complaint as **Exhibit 2** and incorporated into the Complaint by this reference as though set forth in full and verbatim.[2]

16.    As it relates to the Plaintiffs' allegations against Defendants and the DHG Companies, by the terms of the DHG NDA, DHG bound itself and its affiliates to:

16.1    Maintain in strict confidence any and all information and/or "materials in whatever form" obtained from Precision ("Confidential Information") (**Exhibit 2,** DHG NDA, p. 1,  Sec. 1, "Confidential Information," p.2, Sec. 3, Sec. 3 "Nondisclosure and Limited Use" and Sec. 4 "Transaction Information," p. 3 Sec.7, "Return and Destruction of Confidential Information," p. 4, Sec.10, "Requests for Information; Discussions," and pp.4-5, Sec. 11, "Non-Circumvention");

16.2    Refrain from transmitting to any third party any Confidential Information or information of any proposed transaction. (**Exhibit 2,** DHG NDA, p. 2, Sec. 3

---

[2] The 2024 DHG NDA (**Exhibit 2**) also contains information the parties agreed to keep confidential, Plaintiffs will file a Request to File Under Seal pursuant to Local Rule 141 and will submit **Exhibit** 2 pursuant to such motion and procedure.

**weintraub tobin** chediak coleman grodin
law corporation

"Nondisclosure and Limited Use" and Sec. 4 "Transaction Information", p. 4, Sec.10, "Requests for Information; Discussions," and pp.4-5, Sec. 11, "Non-Circumvention");

16.3   Submit and consent to the application of the laws of the State of California with respect to the DHG NDA (**Exhibit 2,** DHG NDA, p. 6, Sec. 16 "Governing Law");

16.4   Submit and consent to the jurisdiction and venue of any of the state and federal courts of the State of California with respect to any suit arising out of the DHG NDA (**Exhibit 2,** DHG NDA, p. 6, Sec. 16 "Governing Law");

16.5   Reimburse the prevailing party in any litigation relating to the DHG NDA such party's "commercially reasonable, documented and out-of-pocket costs and expenses, including legal fees, incurred in connection with such litigation" (**Exhibit 2,** DHG NDA, p. 6, Sec. 19 "Attorneys' Fees");

16.6   That violation of the DHG NDA by Meyer entitles Plaintiffs to seek injunctive relief without posting a bond (**Exhibit 2,** DHG NDA, p. 5, Sec. 13, "Remedies"); and

16.7   Agree that the DHG NDA "supersedes all prior and/or contemporaneous agreements and understandings, written or oral, between the Parties or their respective agents concerning the subject matter hereof" (**Exhibit 2,** DHG NDA, p. 5, Sec. 14, "Term of Agreement") and/or with respect to the "Confidential Information" (**Exhibit 2,** DHG NDA, pp. 6-7, Sec. 21, "Integration, Modification").

17.   Thereafter, in May of 2024, Meyer entered into a "Confidentiality Agreement" with PMM Holdings, by and through PMM Holdings' financial advisor and representative, Crown Point Partners, LLC, in connection with Meyer's purported interest in a potential transaction with Plaintiffs. A true and accurate copy of the signed "Confidentiality Agreement," dated May 7, 2024, signed by Charles Meyer as CEO of Meyer (the "Meyer NDA") is attached to this Complaint as

///

///

///

///

weintraub **tobin** chediak coleman grodin
law corporation

**Exhibit 3**[3] and incorporated into the Complaint by this reference as though set forth in full and verbatim.

18.    The Meyer NDA included provisions by which Meyer agreed:

18.1    To "hold in confidence and trust" any and all "Confidential Information," defined as including, "without limitation, information regarding … the Company's … services, products, trade secrets, techniques, processes, operations, formulae, product specifications, know-how, compositions, inventions, discoveries, designs, sketches, drawings, [etc.] and Plaintiffs' financial data including "existing and potential customers, employees, vendors or suppliers" (**Exhibit 3,** Meyer NDA, p. 1, Sec. 2, "Confidential Information" and Sec. 3, "Disclosure and Use Restrictions");

18.2    To not "disclose or otherwise provide or transfer, directly or indirectly, any Confidential Information to any third party without prior written consent of the Plaintiffs" (**Exhibit 3,** Meyer NDA, p. 1, Sec. 3, "Disclosure and Use Restrictions");

18.3    To consent and submit to the jurisdiction of the courts of the State of California as the state in which is PMM Holdings principal place of business is located and to waive any obligation to venue in such courts (**Exhibit 3,** Meyer NDA, p. 2, Sec. 11, "Jurisdiction") and to be governed by the laws of such state (**Exhibit 3,** Meyer NDA, p. 2, Sec. 11, "Jurisdiction" and p. 3, Sec. 12, "Miscellaneous"); and

18.4    That violation of the Meyer NDA by Meyer entitles Plaintiffs to seek injunctive relief without posting a bond (**Exhibit 3,** Meyer NDA, p. 2, Sec. 10, "Irreparable Harm").

19.    As with the MOU (**Exhibit 1**), Plaintiffs have operated in good faith and have complied with the provisions of the DHG NDA (**Exhibit 2**) and the Meyer NDA (**Exhibit** 3).

20.    DHG, on its own and by and through its DHG Companies, has breached the MOU (**Exhibit 1**) through the following conduct:

---

[3] The Meyer NDA (**Exhibit 3**) also contains information the parties agreed to keep confidential, so Plaintiffs' Request to File Under Seal pursuant to Local Rule 141 includes a request with respect to **Exhibit 3** and Plaintiffs will submit **Exhibit 3** pursuant to such motion and procedure.

COMPLAINT

20.1    After the first year, Finn and EB failed to adhere to the minimum lot sizes commitment contained in the MOU (**Exhibit 1**); and

20.2    Once the "business relationship" established by the MOU ended due to failure of the conditions precedent concerning minimum lots sizes and minimum annual purchases, DHG and the DHG Companies failed to license the Plaintiffs' feeders and, instead, undertook a scheme to use the designs and other proprietary information related to the feeders to evade licensing Precision's feeders from Precision or otherwise compensating Precision for the use of its designs and other proprietary information concerning Precision's airlock rotary feeders.

21.    DHG, on its own and by and through DHG's Companies as DHG's agents, and together with Meyer, have violated the DHG NDA (**Exhibit 2**) and the Meyer NDA (**Exhibit** 3), collectively referred to in this Complaint as the "NDA's," and have misappropriated Precision's design, manufacturing processes, intellectual property, proprietary information and/or other Confidential Information associated with Precision's feeders, through the following conduct.

21.1    Both DHG and Meyer falsely represented to Plaintiffs that they were interested in doing business with Plaintiffs in order to gain access to all of Plaintiffs' proprietary and trade secret information and other Confidential Information though the disclosures of information contemplated by the DHG NDA and the Meyer NDA rather than for the true purpose of  evaluation, negotiation, documentation or consummation of a transaction with Precision and/or PMM Holdings (**Exhibit 2**, DHG NDA, p.1, first para., p. 2,  "Non-Disclosure and Limited Use"  and **Exhibit 3**, Meyer NDA, p. 1, "Purpose");

21.2    Through the access granted by the DHG NDA,  DHG, DHG's Companies and Meyer all acquired commercially exploitable and proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, in addition to the Plaintiffs' financial data, especially with respect to existing and potential customers, employees, vendors or suppliers related to Precision's feeders;

weintraub **tobin** chediak coleman grodin
law corporation

21.3   DHG, DHG's Companies and Meyer violated the NDA's by sharing the Confidential Information gleaned from their dealings with Plaintiffs;

21.4   DHG and DHG's Companies learned that Meyer was a competitor of Plaintiffs through the process surrounding the potential transactions which were the subjects of both the DHG NDA (**Exhibit 2**) and the Meyer NDA (**Exhibit 3**);

21.5   Meyer learned of the existence of Finn and EB and their business relationship with Precision through the same process. At a meeting with Precision's CEO on August 12, 2024, Charlie Meyer, CEO of Meyer, admitted that he had never heard of a blower truck feeder until DHG, through Finn, approached Meyer and asked Meyer to build Precision's 302 feeder for Finn. Charles Meyer also disclosed at the August 12, 2024 meeting that, when Meyer asked for the drawings for the 302, Finn admitted that it did not own or control the designs, so instead had to retain Meyer to reverse engineer Precision's feeder designs and product specifications;

21.6   Using a Precision 302 feeder provided by Finn to Meyer for the purpose, Meyer performed the reverse engineering, combined it with confidential information obtained through the Meyer NDA disclosures, and provided Finn with a complete drawing package for the feeder and a Meyer-built unit;

21.7   After obtaining the confidential information through the DHG NDA and Meyer NDA, DHG and the DHG Companies, DHG/Three Cities and Meyer, submitted commercially unreasonable proposals to do business with Plaintiffs which were rejected by Plaintiffs;

21.8   After obtaining Precision's trade secrets and other confidential information through the DHG NDA and Meyer NDA, DHG and the DHG Companies made no further orders of Precision's airlock rotary feeders from Precision and instead, ordered such feeders from Meyer without any of the Defendants or their agents entering into any license agreement or otherwise compensating Plaintiffs for the disclosure and use of Precision's designs, trade secrets and other confidential information; and

///

COMPLAINT

*weintraub tobin chediak coleman grodin*
law corporation

21.9    The DHG companies have defamed Plaintiffs by claiming that Plaintiffs have stolen the DHG's Companies' designs while it is the DHG Companies who have misappropriated and commercially exploited Plaintiff's valuable intellectual property concerning the airlock rotary feeders.

22.    The misconduct of Defendants and their agents alleged in this Complaint constitutes various breaches of duty, sounding in both contract and tort, including, but not limited to, breach of contract, breach of covenants of good faith and fair dealing, tortious interference with contract, intentional interference with prospective economic advantage; misappropriation of trade secrets/proprietary information trade secret, unfair competition; and fraud, all of which entitles Plaintiffs to legal and equitable relief, including but not necessarily limited to, an award of damages, disgorgement by Defendants and their agents of profits or benefits obtained from their misconduct, exemplary damages, reimbursement of attorney fees and litigation expenses incurred by Plaintiffs in protecting and enforcing their rights, a declaration of Plaintiffs' rights with respect to the rotary feeders, temporary restraining orders, preliminary injunctive relief and permanent injunctive relief, as hereinafter alleged in more detail.

23.    Defendants' violations of the NDA's have proximately and/or legally caused substantial economic loss, damage and harm to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court and in an amount that will be determined according to proof at trial, including, but not limited to, by and through the following conduct:

23.1    By May of 2025, DHG and/or DHG's Companies had ordered 60 of Precision's feeders from Meyer and had discontinued placing any orders with Precision for the feeders;

23.2    DHG learned from the confidential information obtained from Plaintiffs pursuant to the DHG NDA that a former Precision customer, CAS, an independent manufacturing company which is a contract builder for Finn and Express Blower was purchasing feeders directly from Precision. When CAS's manufacturing agreement was up for renewal in 2024, Finn confronted CAS and forced CAS to agree to purchase all airlock rotary feeders through DHG's Companies rather than

weintraub **tobin** chediak coleman grodin
law corporation

1    directly from Precision, even though Finn and EB's prices for the feeders are higher

2    than Precision's; and

3    23.3    DHG and the DHG Companies have misappropriated and have been marketing and

4    selling the Precision-designed airlock rotary feeders, including the Precision's 302

5    model feeder, as the DHG' Companies' own products without licensing from

6    Plaintiffs or otherwise compensating Plaintiffs, all to the Defendants' benefit and the

7    detriment of the true developers and owners of the design.

8    24.    By reason of the misconduct of DHG and DHG's Companies as DHG's agents in

9    violating the DHG NDA, Plaintiffs are entitled to reimbursement by Defendants of reasonable

10    attorney fees, expert witness fees, and other litigation expenses incurred by Plaintiffs in protecting

11    and enforcing their rights pursuant to the NDA's (**Exhibit 2,** DHG NDA, p. 6, Sec. 19 "Attorneys'

12    Fees") and federal and state statutes including, but not limited to, California Civil Code

13    Section 3426.4.

14    25.    The misconduct of Defendants and their affiliated companies constitute violations of

15    the Sherman Act (15 U.S.C. § 1, *et seq.*), the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836),

16    California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*), California's Unfair

17    Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and the California Uniform Trade

18    Secrets Act (Cal. Civ. Code §§ 3426.1, *et seq.*), has caused economic loss, damage and harm which

19    is ongoing and the precise amount of which will be proven by evidence at trial, and entitles

20    Plaintiffs to an award of monetary damages.

21    26.    The misappropriation and sharing by Defendants of Precision's design,

22    manufacturing processes, intellectual property, proprietary or Confidential Information associated

23    with Precision's feeders was willful and the product of fraud, malice, oppression and/or conscious

24    disregard of the Plaintiffs' rights, entitling Plaintiffs to an award of exemplary or punitive damages

25    pursuant to the Sharman Act (15 U.S.C. § 1, *et seq.*), the Defend Trade Secrets Act of 2016

26    (18 U.S.C. § 1836), California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*),

27    California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and California

28    Civil Code §§ 3294 and 3436.3.

weintraub **tobin** chediak coleman grodin
law corporation

27.    The misappropriation of Precision's design, manufacturing processes, intellectual property, proprietary and/or other Confidential Information associated with Precision's airlock rotary feeders has caused, continues to cause, and will continue to cause Plaintiffs irreparable harm by wrongfully excluding Precision from a large segment of the feeder market and by damaging Precision's reputation in the industry such that damages will not constitute adequate relief. Plaintiffs are therefore entitled to temporary, preliminary and permanent injunctions prohibiting Defendants from (1) marketing, manufacturing, or selling the Precision-designed airlock rotary feeders as Defendants' own product; (2) disclosing in any way the Precision's IP and trade secrets concerning the airlock rotary feeders designed, engineered and developed by Precision without paying license fees, royalties or other compensation for such disclosure; (3) using in any way the designs for the airlock rotary feeders developed by Precision without paying license fees, royalties or other compensation for such use; (4) claiming that Plaintiffs have misappropriated Defendants' intellectual property; and/or (5) taking any action to prevent, restrain or impede Plaintiffs' ability to derive benefit from Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, drawings and designs for the airlock rotary feeders designed and developed by Precision since the company's inception in 1977 and designed for use in blower truck and/or blower equipment..

## COUNT ONE

### (Breach of the DHG NDA)

28.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count One in full and verbatim, the allegations of paragraphs 1 through 27 of this Complaint.

29.    As alleged in more detail in paragraphs 15, 16, 16.1 and 16.2 of this Complaint, DHG and the DHG Companies bound themselves, among other promises, to protect and to refrain from disclosing to any third party any of Precision's Confidential Information.

30.    Plaintiffs performed their obligations under the DHG NDA contract by providing Defendants and their affiliates access to Confidential Information which included data concerning its processes, customers and competitors including such Confidential Information about the rotary feeders DHG's Companies had been purchasing from Plaintiffs.

31.     As alleged in more detail in  paragraphs 21, 21.1 through 21.9 of this Complaint, DHG by and through the DHG Companies breached the DHG NDA contract by informing third parties, including customers and competitors of Plaintiffs of Confidential Information, that a potential transaction was being contemplated, and by providing  potential customer and competitor Meyer with Precision's proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, and by engaging Meyer to reverse engineer Precision's rotary feeder coupled with such additional proprietary information, trade secrets and other Confidential Information obtained from Precision through the DHG NDA.

32.     The breach of the DHG NDA by DHG and by and through DHG's Companies, entitles Plaintiffs to an award of attorney fees and costs incurred by Plaintiffs in protecting and enforcing their rights as alleged in paragraph 24 of this Complaint.  Such fees and expenses are ongoing and increasing and the precise amount will be determined according to proof at trial.

33.     The breach of the DHG NDA by DHG and by and through DHG's Companies, has proximately or legally caused Plaintiffs economic loss, damage and harm, which is ongoing and increasing in an amount that will be determined according to proof at trial as described in paragraphs 22 through 27 of this Complaint, and further entitles Plaintiffs to all other legal and equitable remedies and relief described in such paragraphs.

## COUNT TWO

### (Breach of the Meyer NDA)

34.     Plaintiffs hereby incorporate by this reference, as though realleged in this Count Two in full and verbatim, the allegations of paragraphs 1 through 33 of this Complaint.

35.     As alleged in more detail in paragraphs 17, 18, 18.1 and 18.2 of this Complaint, Meyer bound itself, among other promises, to protect and to refrain from disclosing to any third party any of Precision's Confidential Information.

36.     Plaintiffs performed their obligations under the Meyer NDA contract by providing Meyer access to Confidential Information which included data concerning its processes, pricing,

///

weintraub **tobin** chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

1 | customers and competitors and including such Confidential Information about Precision's airlock

2 | rotary feeders DHG's Companies had been purchasing from Plaintiffs.

3 |      37.    As alleged in more detail in  paragraphs 21, 21.1 through 21.9 of this Complaint,

4 | Meyer breached the Meyer NDA contract by informing third parties, including customers and

5 | competitors of Plaintiffs of Confidential Information, by communicating and collaborating with

6 | DHG and the DHG Companies to share Confidential Information combined with a reverse

7 | engineering of the Precision airlock rotary feeder, by providing DHG and the DHG Companies with

8 | a Meyer-built replica of a Precision feeder and a complete set of replica engineering drawings for

9 | the Precision feeder, by sharing its knowledge of such Confidential Information with a competitor

10 | and customer of Plaintiffs that a potential transaction was being contemplated, and by providing

11 | potential customer DHG with Precision's proprietary information concerning Precision's services,

12 | products, trade secrets, techniques, processes, operations, formulae, product specifications,

13 | compositions, inventions, discoveries, and designs, and reverse engineering for DHG Precision's

14 | rotary feeder design in combination with the use of other Confidential Information obtained from

15 | Plaintiffs pursuant to the Meyer NDA.

16 |      38.    The breach of the Meyer NDA by Meyer and its affiliated companies has

17 | proximately or legally caused Plaintiffs economic loss, damage and harm which is ongoing and

18 | increasing in an amount that will be determined according to proof at trial as described in

19 | paragraphs 22 through 27 of this Complaint and further entitles Plaintiffs to all other legal and

20 | equitable remedies and relief described in such paragraphs.

21 | **COUNT THREE**

22 | (**Tortious Interference with Contract Against DHG**)

23 |      39.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count

24 | Three in full and verbatim, the allegations of paragraphs 1 through 38 of this Complaint.

25 |      40.    The Meyer NDA is, and was, a legally binding contract requiring, *inter alia*, that

26 | Meyer protect and refrain from using or disclosing to third parties any proprietary information,

27 | trade secrets and/or any other Confidential Information obtained from Precision.

28 | ///

1    41.    DHG and DHG's Companies knew or had reason to know of the existence and

2 principal terms of the Meyer NDA.

3    42.    The misconduct of DHG and DHG's Companies as DHG's agents in violating its

4 obligations under the DHG NDA, in collaborating with Meyer to share proprietary information,

5 trade secrets and/or other Confidential Information regarding customers and competitors of

6 Plaintiffs, to share design, cost and pricing information about Precision's rotary feeders, to reverse

7 engineer and develop a Meyer-built replica of Precision's rotary feeders and an accompanying

8 replica set of design drawings of such feeders for future use, to induce and develop a purchaser-

9 seller relationship with Meyer using the pirated design, cost, price and other Confidential

10 Information obtained from Plaintiffs disrupted the Meyer NDA and therefore was, is, and

11 constitutes tortious interference on the part of DHG and its agents, the DHG Companies, with the

12 Meyer NDA contract between Plaintiffs and Meyer.

13    43.    As a direct, proximate and legal result of such tortious interference with the Meyer

14 NDA, Plaintiffs have suffered economic loss, damage and harm, which is ongoing and increasing in

15 an amount that will be determined according to proof at trial as described in paragraphs 22 through

16 27 of this Complaint, and further entitles Plaintiffs to all other legal and equitable remedies and

17 relief described in such paragraphs.

18    **COUNT FOUR**

19    (**Tortious Interference with Contract Against Meyer**)

20    44.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count

21 Four in full and verbatim, the allegations of paragraphs 1 through 43 of this Complaint.

22    45.    The MOU and the DHG NDA are, and were legally binding contracts requiring,

23 *inter alia*, that DHG and DHG's Companies protect and refrain from using or disclosing to third

24 parties any proprietary information, trade secrets and/or any other Confidential Information

25 obtained from Precision.

26    46.    Meyer and its affiliated companies knew or had reason to know of the existence and

27 principal terms of the DHG NDA and the MOU.

28 ///

weintraub **tobin** chediak coleman grodin
law corporation

47.     The misconduct of Meyer in violating the Meyer NDA, in collaborating with DHG and the DHG Companies to share proprietary information, trade secrets and/or other Confidential Information regarding customers and competitors of Plaintiffs, to share design, cost and pricing information about Precision's rotary feeders, to reverse engineer and develop a Meyer-built replica of Precision's rotary feeders and an accompanying replica set of design drawings of such feeders for future use, to enter into a seller-purchaser relationship with DHG and/or its affiliates using the pirated design, cost, price and other Confidential Information obtained from Plaintiffs constitutes a tortious interference on the part of Meyer and its agents with both the MOU (**Exhibit 1**) and the DHG NDA contract between Plaintiffs and DHG and the DHG Companies (**Exhibit 2**).

48.     As a direct, proximate and legal result of such tortious interference with the MOU and the DHG NDA, Plaintiffs have suffered economic loss, damage and harm which is ongoing and increasing in an amount that will be determined according to proof at trial as described in paragraphs 22 through 27 of this Complaint and further entitles Plaintiffs to all other legal and equitable remedies and relief described in such paragraphs.

## COUNT FIVE

### (Intentional Interference with Prospective Economic Relations Against Meyer)

49.     Plaintiffs hereby incorporate by this reference, as though realleged in this Count Five in full and verbatim, the allegations of paragraphs 1 through 48 of this Complaint.

50.     At all times relevant to the allegations of this Complaint, there existed an economic relationship between Plaintiffs and DHG and DHG's Companies that, until Meyer's intervening and disruptive actions, contained the probability of future economic benefit to Plaintiffs.

51.     By the time of its/their misconduct, Meyer and its affiliates had learned and knew of the relationship between Plaintiffs on the one hand and DHG and DHG's Companies on the other.

52.     Meyer and its affiliates knowingly committed wrongful acts, including, but not necessarily limited to those summarized in paragraphs 21, 21.1 through 21.7, 23, 23.1 through 23.3 and 42 of this Complaint, with the intent to disrupt the economic relations between Plaintiffs and DHG and DHG's Companies so that Meyer could enjoy the benefits of a relationship with DHG and DHG's companies in which Meyer fabricated and sold to DHG, facsimiles of Precision's

weintraub **tobin** chediak coleman grodin
law corporation

airlock rotary feeders as a component part for the blower trucks and blower equipment sold by

DHG and/or DHG's Companies without paying any license fee or other compensation to Plaintiffs

for the use of the proprietary information, trade secrets and other Confidential Information gleaned

by Meyer from Precision through Meyer's sham expression of interest in a potential transaction

with Plaintiffs.

53.    At the time of committing the acts described in paragraph 52 of this Complaint,

Meyer either specifically intended to cause the disruption of the economic relations between

Plaintiffs and DHG and DHG's s Companies or knew that such disruption or interference with the

relations was substantially certain to occur as a result of Meyer's actions.

54.    Severe disruption and interference in the business relationship between Plaintiffs on

the one hand and DHG and DHG's Companies on the other did in fact occur as a result of Meyer's

wrongful actions.

55.    As a direct, proximate and legal result of such intentional interference with

Plaintiffs' economic relations with DHG and DHG's Companies, Plaintiffs have suffered economic

loss, damage and harm which is ongoing and increasing in an amount that will be determined

according to proof at trial and which entitles Plaintiffs to all other legal and equitable remedies and

relief described in paragraphs 22 through 27 of this Complaint.

**COUNT SIX**

(**Misappropriation of Plaintiffs' Intellectual Property and**

**Trade Secrets Against Defendants DHG and Meyer**)

56.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count Six

in full and verbatim, the allegations of paragraphs 1 through 55 of this Complaint.

57.    At all times relevant to the allegations of this Complaint, Plaintiffs were the owners

of the services, products, techniques, processes, operations, formulae, product specifications, know-

how, compositions, inventions, discoveries, designs, sketches, drawings, cost, market data, pricing,

customer data and other Confidential Information relating to the airlock rotary feeders designed,

engineered and manufactured by Precision ("Precision's IP"), including those designated as

Precision models "18x33," "16x25," "302,"  and "12x15".

**weintraub tobin** chediak coleman grodin
law corporation

58.     At the time of the misappropriation of Precision's IP by Defendants, Precision's IP constituted "trade secrets" which were unknown to anyone other than Plaintiffs, over which Plaintiffs exercised exclusive control, which had independent economic value because of such secrecy and Plaintiffs' control, and which Plaintiffs took extensive and reasonable steps to protect from disclosure to third parties not authorized by Plaintiffs to receive such information.

59.     Defendants improperly acquired, used, and disclosed to third parties not authorized to receive such information, Precision's IP, trade secrets and other confidential information through the acts, omissions and conduct alleged in paragraphs 21, 21.1 through 21.8, 23, 23.1 through 23.3.

60.     Defendants' conduct violated federal and state statutes including, but not limited to, the Sherman Act (15 U.S.C. § 1, *et seq.*), the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836), California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*), California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and the California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426.1, *et seq.*)

61.     As a direct, proximate and legal result of Defendants' misconduct, Plaintiffs have suffered economic loss, damage, injury, detriment and harm and Defendants have been unjustly enriched by Defendants' acts depriving Plaintiffs of control over the use and disclosure of Precision's IP and trade secrets; by depriving Plaintiffs of royalties, license fees or other compensation that would otherwise be payable by Defendants to Plaintiffs for acquisition, use or disclosure of Precision's IP, trade secrets and/or other Confidential Information; by diverting from Precision to themselves sales of the Precision-designed and developed feeders; by defaming Plaintiffs to Precision's customers; and by wrongfully restraining, impairing and impeding Precision's ability to participate and compete in the market for such feeders.

62.     Defendants' misconduct was a substantial factor in the loss, damage, injury, detriment and harm visited upon Plaintiffs and in the unjust enrichment of Defendants.

63.     As a direct, proximate and legal result of such misappropriation of Precision's IP, trade secrets and/or other Confidential Information, Plaintiffs have suffered economic loss, damage and harm which is ongoing and increasing in an amount that will be determined according to proof ///

1    at trial and which entitles Plaintiffs to all other legal and equitable remedies and relief described in

2    paragraphs 22 through 27 of this Complaint.

3    **COUNT SEVEN**

4    **(Unlawful Business Practices and Competition Against Defendants DHG and Meyer)**

5    64.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count

6    Seven in full and verbatim, the allegations of paragraphs 1 through 63 of this Complaint.

7    65.    Defendants' misconduct as alleged in this complaint constitutes engaging in

8    unlawful business practices to the damage and detriment of consumers and Defendants'

9    competitors, including Plaintiffs, in violation of federal and state laws including, but not limited to,

10    the Sherman Act (15 U.S.C. § 1, *et seq.*), the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836),

11    California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*), California's Unfair

12    Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and the California Uniform Trade

13    Secrets Act (Cal. Civ. Code §§ 3426.1, *et seq.*).

14    66.    Defendants will continue to engage in such conduct and unlawful practices unless

15    this Court orders Defendants to cease and desist or otherwise enjoins Defendants and DHG's

16    Companies from engaging in such conduct.

17    67.    As a direct, proximate and legal result of such unlawful business practices, Plaintiffs

18    have suffered economic loss, damage and harm which is ongoing and increasing in an amount that

19    will be determined according to proof at trial and which entitles Plaintiffs to all other legal and

20    equitable remedies and relief described in paragraphs 22 through 27 of this Complaint.

21    **COUNT EIGHT**

22    **(Unfair Competition and Restraint of Trade Against Defendants DHG and Meyer)**

23    68.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count

24    Eight in full and verbatim, the allegations of paragraphs 1 through 67 of this Complaint.

25    69.    Defendants' misconduct as alleged in this complaint constitutes a combination for

26    the purpose of unfair competition, unlawful restraint of trade and an unlawful effort to monopolize

27    the airlock rotary feeder industry and market to the damage and detriment of consumers and

28    Defendants' competitors, including Plaintiffs, in violation of federal and state laws including but

1    not limited to, the Sherman Act (15 U.S.C. §1, *et seq.*), California's Cartwright Act (Cal. Bus. &

2    Prof. Code §§ 16700, *et seq.*), and California's Unfair Competition Law (Cal. Bus. & Prof. Code

3    §§ 17200, *et seq.*).

4    70.    As a direct, proximate and legal result of such unfair competition and restraint of

5    trade, Plaintiffs have suffered economic loss, damage and harm which is ongoing and increasing in

6    an amount that will be determined according to proof at trial and which entitles Plaintiffs to all

7    other legal and equitable remedies and relief described in paragraphs 22 through 27 of this

8    Complaint.

9    **COUNT NINE**

10    (**Unfair Competition and Anti-Competitive Conduct Against Defendants DHG and Meyer**)

11    71.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count

12    Nine in full and verbatim, the allegations of paragraphs 1 through 70 of this Complaint.

13    72.    Defendants' misconduct as alleged in this complaint constitutes a combination for

14    the purpose of unfair competition and unreasonable restraint of trade with anti-competitive effects

15    to the damage and detriment of consumers and Defendants' competitors, including Plaintiffs, in

16    violation of federal and state laws, including, but not limited to, the Sherman Act (15 U.S.C. § 1,

17    *et seq.*), California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*), California's Unfair

18    Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

19    73.    As a direct, proximate and legal result of such unfair competition and anti-

20    competitive effects, Plaintiffs have suffered economic loss, damage and harm which is ongoing and

21    increasing in an amount that will be determined according to proof at trial and which entitles

22    Plaintiffs to all other legal and equitable remedies and relief described in paragraphs 22 through 27

23    of this Complaint.

24    **COUNT TEN**

25    (**Intentional Misrepresentation Against Defendants DHG and Meyer**)

26    74.    Plaintiffs hereby incorporate by this reference, as though realleged in this Count Ten

27    in full and verbatim, the allegations of paragraphs 1 through 73 of this Complaint.

28    ///

**weintraub tobin** chediak coleman grodin
law corporation

75. Defendant DHG represented that it would license Precision's designs, engineering and other aspects of Precision's IP, trade secrets and other Confidential Information from Precision if the business relationship established by and described in the MOU (**Exhibit 1**) ever became unsatisfactory or terminated.

76. The true facts were that DHG and DHG's Companies had no intention of ever licensing Precision's designs, engineering and/or other aspects of Precision's IP and trade secrets and, instead, intended to have Precision design, engineer and develop next-generation airlock rotary feeders customized for use in DHG's Companies' products as a step in a scheme to obtain control and use of such designs, intellectual property and trade secrets without having to pay Plaintiffs for such control and use.

77. Defendants DHG and Meyer represented to Plaintiffs that they had an interest in doing business with Plaintiffs and would hold Plaintiffs' proprietary information including Precision's IP, trade secrets and other confidential information gathered while investigating a potential transaction with Plaintiffs in strict confidence.

78. The true facts were that DHG and DHG's Companies and Meyer had no intention of acquiring ownership of Precision's designs, engineering and/or other aspects of Precision's IP and trade secrets and confidential information in a purchase of assets or stock and, instead, intended to use the pretense of interest in a potential transaction to obtain access to Plaintiffs' proprietary information including Precision's IP, trade secrets and other confidential information related to Precision's airlock rotary feeders without paying Plaintiffs license fees, royalties or other compensation for the right to acquire, disclosure or use such commercially valuable confidential information.

79. Plaintiffs reasonably relied on the misrepresentations of Defendants and were induced to provide access to such commercially valuable Confidential Information.

80. As a direct and proximate result of such intentional misrepresentations, Defendants obtained such commercially valuable Confidential Information and Plaintiffs have suffered economic loss, damage, injury, detriment and harm, and Defendants have been unjustly enriched by Defendants' acts depriving Plaintiffs of control over the use and disclosure of Precision's IP, trade

secrets and other Confidential Information; by depriving Plaintiffs of royalties, license fees or other compensation that would otherwise be payable by Defendants to Plaintiffs for acquisition, use or disclosure of Precision's IP, trade secrets and other Confidential Information; by diverting from Precision to themselves sales of the Precision-designed and developed airlock rotary feeders; by defaming Plaintiffs to Precision's customers; and by wrongfully restraining, impairing and impeding Precision's ability to participate and compete in the market for such feeders.

81.     As a direct and proximate result of such intentional misrepresentations, Plaintiffs have suffered economic loss, damage and harm which is ongoing and increasing in an amount that will be determined according to proof at trial and which entitles Plaintiffs to all other legal and equitable remedies and relief described in paragraphs 22 through 27 of this Complaint.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment and orders against each of the Defendants as follows:

A.     For monetary damages awarded to Plaintiffs for any and all economic loss, damage, injury and/or harm proximately or legally caused by Defendants' conduct;

B.     For disgorgement or restitution by Defendants of any and all benefit obtained by Defendants from their wrongful conduct;

C.     That Defendants, and each of them and their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(1)     Marketing, manufacturing, or selling the Precision-designed airlock rotary feeders as Defendants' own product;

(2)     Disclosing in any way the Precision's IP and trade secrets concerning the airlock rotary feeders designed, engineered and developed by Precision without paying license fees, royalties, or other compensation for such disclosure;

(3)     Using in any way the Precision's IP and trade secrets concerning the airlock rotary feeders designed, engineered and developed by Precision without paying license fees, royalties or other compensation for such use;

weintraub tobin chediak coleman grodin
law corporation

1    (4)    Claiming that Plaintiffs have misappropriated Defendants' intellectual

2  property related to such airlock rotary feeders; and/or

3    (5)    Taking any action to prevent, restrain or impede Plaintiffs' ability to derive

4  benefit from Precision's services, products, trade secrets, techniques, processes, operations,

5  formulae, product specifications, compositions, inventions, discoveries, drawings and designs for

6  any of the airlock rotary feeders designed and developed by Precision since the company's

7  inception in 1977 and designed for use in blower trucks and/or blower equipment.

8    D.    For an award of punitive or exemplary damages in an amount sufficient to punish

9  Defendants and deter future wrongful conduct;

10    E.    For an order requiring Defendants, and each of them and their respective affiliates,

11  officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by,

12  through, under, or in active concert with them to destroy and dispose of Precision's IP and trade

13  secrets and other Confidential Information obtained from precision, including, but not limited to, all

14  designs, programs, fixturing, drawings, and/or documentation that are associated with and/or

15  derived from the reverse engineering of the Precision's rotary airlock feeder;

16    E.    For an award to Plaintiffs of reasonable attorney fees, costs and related expense

17  incurred in prosecution of this Complaint; and

18    F.    For such other and further relief as the Court deems just and proper.

19  Dated:  July 17, 2025                    **Weintraub Tobin** Chediak Coleman Grodin
                                             LAW CORPORATION

20

21                                           By:  /s/ Zachary M. Smith
                                                  Zachary M. Smith
22

23                                           Attorneys for Plaintiffs PMM Holdings, LLC and
                                             Precision Machine & Manufacturing
24

25

26

27

28

COMPLAINT