Margaret A. Gisch, Esq. (*Pro Hac Vice*) (IL State Bar No. 6204431)
Sarah K. Dunkley, Esq. (*Pro Hac Vice*) (IL State Bar No. 6329204)
GOLAN | CHRISTIE | TAGLIA LLP
70 W. Madison, Suite 1500
Chicago, IL 60602
Telephone: (312) 263-2300
Email: magisch@gct.law
Email: skdunkley@gct.law

Jamie L. Johnson, Esq. (CA State Bar No. 130698)
KORSHAK, KRACOFF, KING & SUGANO, L.L.P
2430 J Street
Sacramento, CA 95816
Telephone: (916) 441-6255
Email: jamie@kkks.com

Attorneys for Defendant
William W. Meyer and Sons, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM W. MEYER AND SONS, INC. and DHG, INC., <br><br> Defendants. | Case No. 2:25-cv-02005-CSK <br><br> **DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION** <br><br> Assigned District Cout Judge: Unassigned <br> Date: November 18, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 25 <br><br> Complaint Filed: July 17, 2025 <br> Trial Date: None Set <br> Magistrate Judge: Hon. Chi Soo Kim |

Defendant William W. Meyer and Sons, Inc. ("Meyer") by its attorneys, Margaret A. Gisch,

Sarah K. Dunkley and James L. Johnson, hereby moves to dismiss the Complaint against it pursuant to

1

Federal Rule of Civil Procedure 12(b)(2), lack of personal jurisdiction.[1]  In support, Meyer states as follows:

### I. Introduction

Meyer entered into a confidentiality agreement (the "Meyer NDA") in conjunction with potentially acquiring Plaintiff Precisions Machine & Manufacturing, Inc. ("Precision").  The potential acquisition did not materialize, and Precision and its sole owner, PMM Holdings ("PMM"), brought this suit alleging that Meyer, acting with co-Defendant DHG, breached their agreements and colluded to have Meyer manufacture a product which Plaintiffs claim is subject to trade secret protection and that the Defendants have otherwise engaged in unfair competition in violation of numerous state and federal statutes.

For the reasons set forth herein, Meyer submits that this Court lacks personal jurisdiction over Meyer due to Meyer being a non-domiciliary and not seeking or availing itself of California laws, or otherwise directing its activities toward California. Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court should dismiss the Complaint as to Meyer.

### II. Procedural Background

On July 17, 2025, Plaintiffs filed a 24-page, 10-count Complaint against DHG and Meyer in the Eastern District of California.  With respect to the Counts against Meyer (many of which are also against DHG) in the Complaint, Plaintiffs assert:

- Count Two:  Breach of the Meyer NDA (at 14);
- Count Four:  Tortious Interference with Contract (at 16);
- Count Five:  Intentional Interference with Prospective Economic Relations (at 17);
- Count Six:  Misappropriation of Plaintiffs' Intellectual Property and Trade Secrets (asserting violations of: Sherman Act, Defend Trade Secrets Act of 2016, California's Cartwright Act, California's Unfair Competition Law; and California's Uniform Trade Secrets Act) (at 18);

---

[1] Meyer has numerous other defenses to the claims asserted by Plaintiffs. Should this Motion be denied, Meyer will seek leave to present its substantive defenses to the Complaint.

- Count Seven:  Unlawful Business Practices (asserting violations of: Sherman Act, Defend Trade Secrets Act of 2016, California's Cartwright Act, California's Unfair Competition Law; and California's Uniform Trade Secrets Act) (at 20);

- Count Eight:  Unfair Competition and Restraint of Trade (asserting violations of the Sherman Act, California's Carwright Act and California's Unfair Competition Law) (at 21);

- Count Nine:  Unfair Competition and Anti-Competitive Conduct (asserting violations of the Sherman Act, California's Cartwright Act, California's Unfair Competition Law) (at 21); and

- Count Ten:  Intentional Misrepresentation (at 21).

In response, Meyer presents this Motion to Dismiss for Lack of Personal Jurisdiction.

**III. Factual Summary**

Meyer, a family-owned business incorporated in 1946, is a world leader in manufacturing dry bulk material processing equipment, pneumatic conveying, industrial dust collection systems, insulation blowing machines, air duct cleaning equipment and insulation removal vacuums.  (*See* Declaration of Charles Meyer (the "Meyer Decl."), attached as **Exhibit A**, ¶ 3.)  Meyer's principal place of business is in Libertyville, a northern suburb of Chicago.  It has no employees, warehouses, or other facilities in California. (Meyer Decl. ¶¶ 3-4.)  Meyer has a contract with one independent contractor who sells Meyer products (along with a number of other products) in California.  Of Meyer's annual sales, 3-4% are sold in California. (Meyer Decl. ¶ 4.)

In April 2024, the investment banking firm, Crown Point Partners, from Portland Oregon, emailed Meyer to see if Meyer was interested in an acquisition opportunity for a company manufacturing rotary values and feeders.  The email attached a two-page description of the target company but did not disclose the name of the target company. (Meyer Decl. ¶ 8 and at **Exhibit 3** thereto.) [2]

---

[2] All exhibits to the Meyer Decl. contain confidential information. Pursuant to Local Rule 140 and 141, Meyer will request to redact or seal the exhibits to the Declaration of Charles Meyer.

3
DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION

Meyer expressed an interest and, on May 7, 2024, signed the Meyer NDA. (The Meyer NDA is attached to Meyer's Decl. as **Exhibit 4**.)  The other party to the contract was described as "Project Rotary (Client #361)" which was also defined as the "Company".  (Meyer NDA at 1.)  The Meyer NDA's "purpose" indicated that the Company wished "to provide directly and to have Crown Point furnish certain proprietary information concerning the Company to [Meyer] for the sole purpose of facilitating [Meyer's] evaluation, negotiation, documentation or consummation of the potential acquisition." (*Id*. ¶ 1.)  For "Jurisdiction," the Meyer NDA stated that "any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought in the courts of the State in which the Company's principal place of business is located . . . ." (*Id.* ¶ 11.)  The Meyer NDA further provided that the "validity, interpretation, construction and enforcement of this Agreement shall be governed by the laws of the State in which the Company's principal place of business is located." (*Id.* ¶ 12.)

The Meyer NDA stated that Crown Point was serving as "exclusive financial advisor for *the Company and its equity holders* in connection with a possible negotiated acquisition or other investment transaction" between "the Company" and Meyer. (Emphasis added) (*Id*. ¶ 1).  The equity holders were not disclosed. Crown Point signed the Meyer NDA on behalf of the target "Company".

As soon as the Meyer NDA was executed, Crown Point sent Meyer a "Confidential Information Memorandum" (the "Target Memo" (attached to Meyer's Decl. as **Exhibit 5**)), which disclosed that the acquisition target was Precision Machine & Manufacturing ("Precision").  The Target Memo discussed Precision in depth, including its "Location and Facility".  (Target Memo at 8.) In the Target Memo, only one reference is made to Holdings, specifically as the sole owner of Precision. (*Id.* at 9.) Three other owners were also listed: CVF Capital Partners, Socius Capital and Former PMM Executives.  (*Id*.)  The Target Memo says that the "three entities are "passive owners" albeit with seats on the board.  (*Id*.)

In the months following, certain financial information was provided to Meyer, and Charlie Meyer (President and CEO of Meyer) visited Precision in Oregon in June 2024, at which time a Management Presentation PowerPoint was presented and later sent to Meyer.  (Meyer Decl. ¶ 11; "Mgmt. Preso" (attached to Meyer's Decl. as **Exhibit 6**).)  The Management Presentation does not list

Holdings anywhere, including on the "Org. Chart."  (Mgmt. Preso at 19.)

On August 16, 2024, Meyer provided a Letter of Intent ("LOI") to Crown Point Partners in Oregon, wherein Meyer made a proposal to acquire Precision's stock.  The LOI was eventually rejected, and no acquisition occurred.  (Meyer Decl. ¶¶ 13-14.)

A year later, in July 2025, Precision and Holdings filed a lawsuit in California against Meyer and DHG.  DHG is the holding company for one of Precision's customers, Finn Corporation ("Finn"). (Compl. ¶ 12.)  Notably, Meyer had been doing business with Finn since around May 2023 and had delivered and invoiced a rotary valve order to Finn by November 2023, many months prior to entry into the Meyer NDA. (Meyer Decl. ¶¶ 5-7.)  Additionally, when Charlie Meyer visited Precision in June 2024, he advised Precision that Finn had solicited a rotary valve order from Meyer, which Meyer had fulfilled.  (Meyer Decl. ¶ 11.)

In their Complaint, Plaintiffs assert that this Court has jurisdiction because (among other things) Meyer is (allegedly) "bound by a contract by which [it] agreed it and its affiliates consented to the jurisdiction of the state and federal courts in California… ." (Compl. ¶ 6.)

For the reasons discussed herein, this statement is incorrect, and this Court lacks general and specific jurisdiction over Meyer.  Meyer respectfully seeks dismissal of this Complaint (as to Meyer) pursuant to Federal Rule of Civil Procedure 12(b)(2).

**IV. Legal Standards and Argument**

In the absence of the traditional bases for jurisdiction, such as physical presence in-state, domicile or consent to service of process, the Constitution requires that the defendant have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (internal quotation marks and citations omitted) *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

"Where, as here, there is no applicable federal statute governs personal jurisdiction, the district court applies the law of the state in which the district court sits."  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F. 3d 797, 800 (9th Cir. 2004).  "Because California's long-arm jurisdictional statute is co-extensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Id.* at 800–01.

Personal jurisdiction over a non-resident defendant may be gained through either general or specific jurisdiction which require "minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger* at 801. "A defendant's activities involving the forum state should be such that the defendant "should reasonably anticipate being haled [sic] into court there." *Id.*

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger* at 800. And neither conclusory pleadings nor formulaic recitation of elements are entitled to a presumption of truth. *Soelect, Inc. v. Hyundai Motor Co.*, No. 23-CV-05405-CRB, 2024 WL 4293911, at *3 (N.D. Cal. Sept. 24, 2024). "In assessing whether personal jurisdiction exists, the court is not limited to a plaintiff's complaint and may consider evidence presented in declarations or order discovery on jurisdictional issues." *Id*.

**A. General jurisdiction**

General jurisdiction is based on contacts that are substantial or continuous and systematic in nature.

> A court has general personal jurisdiction over a corporate defendant in a forum where 'the corporation is fairly regarded as at home.' … General jurisdiction over a corporation is appropriate only in the forum where the corporation is incorporated or has its principal place of business, or in exceptional cases where the corporation's contacts with the forum state are 'so constant and pervasive as to render [it] essentially at home in the forum State.' … Merely engaging "in a substantial, continuous, and systematic course of business" in a forum is insufficient for a court to exercise general personal jurisdiction over the defendant in that forum. … As *International Shoe* itself teaches, a corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."

(internal quotation marks and citations omitted) *Crouch v. Ruby Corp.,* 639 F. Supp. 3d 1065, 1074–75 (S.D. Cal. 2022).

"The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business. … Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Regions Bank v. Car Wash Management, LLC* et al., No. 2:25-cv-00359-CAS-KSY, 2025 WL 2765231, at *6 (C.D.Cal., 2025). In *Regions Bank*, the defendant had five distributors (out of 104) located in California; its website claimed world-wide distribution, and it supported sales in California, among other contacts. Despite these contacts, the court found that it lacked general jurisdiction over the defendant. "[Defendant] is incorporated and has its principal place of business in Wisconsin…. Because [Defendant's] affiliations with California (such as its relatively limited California distributor relationships and California customer sales) are not so exceptionally extensive as to render it 'essentially at home' in California … the Court finds that general jurisdiction over [Defendant] is not appropriate". *Id.* (internal quotation marks and citations omitted). As noted above, general personal jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." (citations omitted). *Schwarzenegger* at 801.

In this case, Plaintiffs allege without factual support that Meyer "has availed itself of the benefits of the State of California in doing business within the state…" and that Meyer "does business nationally and globally, including, but not limited to, in the states of Oregon and California…". (Compl. ¶¶ 3, 6.)

Thus, Plaintiffs have not pled facts sufficient to assert general jurisdiction over Meyer, as is their burden. *See Schwarzenegger* at 800. Nor can Plaintiffs so plead. As set forth in the Meyer Declaration, Meyer's contacts with California are not substantial, continuous or systematic. (*See* Meyer Decl. ¶¶ 3-4.) Plaintiffs are unable to assert facts sufficient to show that Meyer's contacts are so constant and pervasive as to render it essentially at home in the forum state. Consistent with the Court's analysis in *Regions Bank*, Plaintiffs have failed to meet their burden. This Court lacks general jurisdiction over Meyer.

### B. Specific Jurisdiction

Plaintiffs also make the conclusory assertion that this Court has specific personal jurisdiction over Meyer because it has allegedly:

> [1] targeted the property of a California domiciliary, PMM Holdings for misappropriation….[2] has committed breaches of contract and wrongful unlawful acts of damaging PMM Holdings and its wholly owned subsidiary, Precision, in California, and [3] because [Meyer] is bound by a contract by which [Meyer] agreed it and its affiliates consented to the jurisdiction of the state and federal courts of California.

(Compl. ¶ 3.)

To assert specific jurisdiction, plaintiff must meet a three-prong test demonstrating that Meyer had contacts with California <u>arising from or related to, its actions as set forth in the complaint</u>:

> (1) the non-resident must <u>purposefully direct</u> its activities or consummate some transaction with the forum or resident thereof; <u>or perform some act by which he purposefully avails himself</u> to the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must <u>arise out of or relate to</u> the defendants' forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with <u>fair play and substantial justice</u> i.e. it must be reasonable.

(emphasis added). *Schwarzenegger* at 801-802; *see also Soelect* at *4.

### i. Meyer did not purposefully direct its activities or avail itself of California laws.

To meet the first requirement, Plaintiffs must show that Meyer either purposefully *availed* itself of the privilege of conducting activities in California or purposefully *directed* its activities toward California. *See Schwarzenegger* at 802.

Purposeful availment is most often used in suits surrounding contracts and references a defendant's actions of executing or performing a contract in California. "By taking such actions, a

8

defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." (internal quotation marks and citations omitted). *Schwarzenegger* at 802. If defendants have not availed itself of the privileges and benefits of California law, no personal jurisdiction is established.

Purposeful direction is most often used in suits sounding in tort. *Id.* This evidence usually consists of actions outside the forum state that are directed at the form, such as the distribution in the forum state of goods originating elsewhere.

Under either scenario, defendants must have "(a) committed an intentional act; (b) expressly aimed at the forum state; (d) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger* at 803.

In this case, Plaintiffs allege that Meyer signed a contract that selected California as the applicable state for jurisdiction and venue. But that is not true. The Meyer NDA did not reference California at all. The contract is silent on the state for jurisdiction because the contract was masking the identity of the target company. So there could be no <u>intentional</u> act by Meyer at the time Meyer signed the Meyer NDA. Moreover, none of the other facts known to Meyer would have suggested California. Crown Point's initial communication states that it is an investment banking firm located in Oregon. The Target Memo does not reference California at all—even though it identified Holdings as the sole owner of Precision, it did not disclose that Holdings was a California domiciliary. The "target company" was Precision, not Holdings, and Precision is incorporated in Oregon, and its principal place of business is in Oregon. So Meyer could not have known it was even dealing with a California domiciliary. Therefore, Meyer did not commit an intentional act expressly aimed at California— indeed, there would be no reason for Meyer to even consider California as an appropriate forum.

The second question is whether Meyer "expressly aimed" its intentional acts at the forum. Purposeful direction under this standard "must be the defendant's own choice and not be random, isolated or fortuitous. A defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state." (internal quotation marks and citations omitted) *Soelect*, * 5.

Here, the Meyer NDA did not mention California and the Target Memo did not reference

9

California. The Management Presentation likewise is devoid of a reference to California. The Target Memo mentioned Holdings as the sole owner of Precision, but did not disclose that Holdings was a California domiciliary. Thus, none of the objective facts reflect Meyer committing an intentional act expressly aimed at California.

Instead of acknowledging this lack of expressly aimed activity, Plaintiffs assert that Holdings is a domiciliary and resident of California and that the assets of Precision—which Plaintiffs acknowledge is an Oregon company—are wholly owned by Holdings. It seems that Holdings is relying on its own connection to California to support jurisdiction, not any action taken by Meyer which is "expressly aimed" at California. "[I]t is the defendant's conduct that must for the necessary connection with the form state." *Walden v. Fiore,* 571 U.S. 277, 285 (2014). Courts are to focus on the defendant's actual contacts with the forum, and the 'quality and nature' of those activities." *Soelect* at *5. The Complaint does not, therefore, allege any facts to support the specific jurisdiction under California standards.

### ii. Corporate subsidiary relationships do not establish jurisdiction.

Courts have routinely rejected the existence of a parent-subsidiary relationship as sufficient, on its own, to justify imputing one's entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction. *Soelect* at *6. The Northern District in *Soelect* rejected a similar argument, when a plaintiff attempted to rely on a contract executed by a subsidiary, stating: "that act alone does not demonstrate express aiming…into California." *Id*. "Here, while [plaintiff] alleges that [one defendant] negotiated the [contract] through [the other defendant] in this forum, it does not allege either that [defendants] engaged in any wrongdoing <u>in the course of the contracting process</u>, or that any misappropriation took place in California. <u>Aiming non-tortious conduct at the forum is insufficient</u>." (emphasis added) (internal quotation marks and citations omitted) *Soelect* at *7.

### iii. Fair Play and Substantial Justice do not support California as a Reasonable Jurisdiction for this Dispute.

The burden for specific jurisdiction falls on a plaintiff for the first two prongs of the inquiry. And only if the plaintiff meets those prongs does the defendant need to "present a compelling case that the exercise of jurisdiction would not be reasonable." (internal quotation marks and citations omitted)

*Schwarzenegger* at 802. Plaintiffs cannot meet this burden, but were if they could, fair play and substantial justice dictate dismissal.

"The third prong requires the Court to balance seven factors: (1) 'the extent of the defendant's purposeful injection into the forum'; (2) the burdens on defendant from litigating in the forum state; (3) 'the extent of conflict with the sovereignty of the defendant's state'; (4) 'the forum state's interest in adjudicating the dispute'; (5) 'the most efficient judicial resolution of the controversy'; (6) 'the importance of the forum to the plaintiff's interest in convenient and effective relief'; and (7) 'the existence of an alternative forum.'" *Regions Bank* at *4 (quoting *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995)).

For all the reasons stated above, fair play and substantial justice weigh against jurisdiction over Meyer. No facts alleged suggest that Meyer purposefully injected itself into California; litigating in California is not convenient to Meyer given that it has no ties to California; although it is unknown whether any conflicts exist with the sovereignty of Illinois, it is certainly not the most efficient judicial resolution for the controversy nor is the importance of the forum to plaintiff's interest in convenient and effective relief been alleged; and finally, there exists two alternative forums: Illinois and Oregon. Since the target of the potential acquisition was in Oregon and the Meyer NDA provides that jurisdiction is based on where the "[target] Company's principal place of business is located" (Meyer NDA, ¶ 11), Precision has its principal place of business located in Oregon; all relevant activity took place in Oregon or Illinois; and nowhere did Plaintiffs disclose that California was "in play" in the various documents presented, including the contract. It would be unfair and unreasonable to maintain jurisdiction in California.

**V. Conclusion**

The Complaint fails to provide facts sufficient to demonstrate general or specific jurisdiction in California against Meyer. Meyer has not had sufficient contacts with the state to deem it "at home" in California, and none of the actions that Meyer took that are at issue in the Complaint were aimed at California. Jurisdiction has not been established, and this lawsuit should be dismissed as to Meyer pursuant to Federal Rule of Civil Procedure 12 (b)(2).

///

| | | |
|---|---|---|
| Dated: October 9, 2025 | GOLAN CHRISTIE TAGLIA LLP | |
| | By:    */s/* Margaret A. Gisch | |
| |           Margaret A. Gisch | |

Dated: October 9, 2025            KORSHAK, KRACOFF, KONG & SUGANO, LLP

                                       By:    /s/ Jamie L. Johnson, Esq.
                                                   Jamie L. Johnson

Attorneys for Defendant William W. Meyer and Sons, Inc.

12

DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION