Michael A. Xavier (OH Bar No. 0097121 - Admitted pro hac vice)
Michael.xavier@dinsmore.com
**DINSMORE & SHOHL LLP**
1775 Sherman Street, Suite 2600
Denver, CO 80215
Tel: (303) 831-6980

Arielle I. Goren (SBN 331822)
arielle.goren@dinsmore.com
**DINSMORE & SHOHL LLP**
550 South Hope Street, Suite 2800
Los Angeles, CA 90071
Tel: (213) 596-0010
Fax: (619) 400-0501

Attorneys for Defendant DHG, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO COURTHOUSE

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM W. MEYER AND SONS, INC. and DHG, INC., <br><br> Defendants. | Case No. 2:25-cv-02005-CSK <br><br> **DEFENDANT DHG INC.'S FIRST AMENDED[1] MOTION TO DISMISS (F.R.C.P 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: November 18, 2025 <br> Time: 10:00 a.m. <br> Courtroom 25, 8th floor <br><br> Complaint Filed: July 17, 2025 <br> Trial Date: None Set <br><br> Magistrate Judge: Hon. Chi Soo Kim |

---

[1] This motion is amended only to add the Table of Contents and Table of Authorities per Local Rule 133 and to correct the ECF service list in the proof of service attached to this document.

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that this Court is set to hear oral argument on Defendant DHG Inc.'s ("DHG") Motion for an Order Dismissing all of Plaintiffs' claims against DHG in their entirety, on November 18, 2025, 2025 at 10:00 a.m., or a time thereafter that is amenable to the Court, in Courtroom 25, on the 8th Floor of the United States District Court for the Eastern District of California, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814.

The Motion is brought on the following grounds:

1)      Precision Fails to State a Claim for Breach of the DHG NDA against DHG (Count One);

2)      Precision Fails to State a Claim for Tortious Interference of Contract with the Meyer NDA against DHG (Count Three);

3)      Precision Fails to State a Claim for Misappropriation of Trade Secrets against DHG (Count Six);

4)      Precision Fails to State a Claim for Unfair Competition, Unfair Business Practices, Restraint of Trade, or Any Other Tort against DHG (Counts Seven, Eight, and Nine); and

5)      Precision Fails to State a Claim for Intentional Misappropriation against DHG (Count Ten).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the complete record in this action, oral argument, and any other matters this Court may properly consider.

Dated:  October 9, 2025                    DINSMORE & SHOHL LLP

                                          By: */s/Michael A. Xavier*
                                              Michael A. Xavier
                                              Arielle I. Goren
                                              *Attorneys for Defendant DHG, Inc.*

# TABLE OF CONTENTS

I.   Introduction ................................................................................................ 7

II.  Motion to Dismiss Standard...................................................................... 8

III.   Argument ................................................................................................ 9

A.   Precision Fails to State a Claim for Breach of the DHG NDA (Count One) .. 9

  1.   "Confidential Information" under the NDA is limited. ...............................10

  2.   Precision fails to plausibly plead a breach. ....................................................12

B.......Precision Fails to State a Claim for Tortious Interference of Contract with the Meyer NDA (Count Three) ........................................................................... 14

C.   Precision Fails to State a Claim for Misappropriation of Trade Secrets (Count Six)   16

  1.   Precision fails to identify any supposed trade secret. ....................................17

  2.   Precision fails to plausibly allege any information is a trade secret. ..............19

  3.   Precision fails to plausibly allege misappropriation. .....................................22

D.   Precision Fails to State a Claim for Unfair Competition, Unfair Business Practices, Restraint of Trade, or Any Other Tort (Counts Seven, Eight, and Nine)22

E.   Precision Fails to State a Claim for Intentional Misappropriation (Count Ten)24

IV.   CONCLUSION................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Agency Sols..Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ................................................................................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) ........................................ 8, 13, 15, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...................................... 8

*Berry v. Frazier*, 90 Cal. App. 5th 1258, 1268, 307 Cal. Rptr. 3d 778, 789 (2023) 24

*Ceragioli*, 2024 U.S. Dist. LEXIS 54056, at *7-8 .................................................. 23

*Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020) ............... 17

*CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 U.S. Dist. LEXIS 147034, at *9-10 (N.D. Cal. Aug. 14, 2020) .......................................................... 17, 22

*Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ........................................ 22

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) ............. 9

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) ........................ 9

*Emergy Inc. v. Better Meat Co.*, No. 2:21-cv-02417-KJM-CKD, 2022 U.S. Dist. LEXIS 186663, at *29-30 (E.D. Cal. Oct. 11, 2022) ........................................ 16

*Epicor Software Corp. v. Alt. Tech. Sols., Inc*., No. SACV 13-00448-CJC(RNBx), 2013 U.S. Dist. LEXIS 198430 (C.D. Cal. Dec. 2, 2013) at *11 ....................... 22

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg.*, 525 F.3d 822, 825 (9th Cir. 2008) ...................................................................................................... 14

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368, at *7 (N.D. Cal. Jan. 31, 2020) .................................. 17

*Giannini v. Cty. of Sacramento*, No. 2:21-cv-00581-KJN, 2023 U.S. Dist. LEXIS 171812, at *8 (E.D. Cal. Sep. 26, 2023) ......................................................... 23

DEFENDANT DHG INC.'S FIRST AMENDED MOTION TO DISMISS (F.R.C.P 12(b)(6))

*Gregoire Alexandre Gentil v. Wingfield GmbH*, N.D.Cal. No. 20-cv-05358-EMC, 2021 U.S. Dist. LEXIS 213649, at *14 (Mar. 2, 2021) (discussing 18 U.S.C. § 1839) ................................................................................................ 16, 20

*Hughey v. Camacho*, No. 2:13-CV-2665-TLN-AC, 2014 U.S. Dist. LEXIS 150756, at *9-10 (E.D. Cal. Oct. 23, 2014) ........................................................... 22

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. CV 12-08968 DDP (JCx), 2013 U.S. Dist. LEXIS 16896, at *28–29 (C.D. Cal. Feb. 7, 2013) ................................................................................................ 14

*Jardin v. DATAllegro*, Inc., No. 10-CV-2552-IEG (WVG), 2011 U.S. Dist. LEXIS 39488, at *8 (S.D. Cal. Apr. 11, 2011) ....................................................... 16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) ..................... 24

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ................................... 8

*Myers v. Cty. of Fresno*, No. 1:22-cv-00173-ADA-HBK, 2023 U.S. Dist. LEXIS 165884, at *8 (E.D. Cal. Sep. 18, 2023) ................................................... 23

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ........................... 10

*Ogier v. Pac. Oil & Gas Dev. Corp.*, 132 Cal. App. 2d 496, 505 (1955) ............... 24

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990-91 (S.D. Cal. 2012)13, 20

*Ramos v. Ramos* 691 F.App'x 487, 488 (9th Cir. 2017) ..................................... 24

*Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 804, 266 Cal. Rptr. 3d 578, 585 (2020) .................................................................................. 25

*Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 U.S. Dist. LEXIS 127397, at *15 (N.D. Cal. Nov. 3, 2011) .............................................. 12

*Space Data Corp. v. X,* N.D.Cal. No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *3 (Feb. 16, 2017) (discussing 18 U.S.C. § 1839 and Cal. Civ. Code §3426.1(b)) ................................................................................... 16, 17

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ...................................... 8

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ......................................... 9

*Tarmann v. State Farm Mut. Auto. Ins. Co.* 2 Cal.App.4th 153, 159 (1991) .......... 24

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556, at *12 (N.D. Cal. Apr. 13, 2015) ........................................ 17, 19

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) .................................... 11

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ................ 9

*Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-cv-02116-ODW (AGRx), 2025 U.S. Dist. LEXIS 80233, at *46 (C.D. Cal. Apr. 28, 2025) ......................................... 17

**Rules**

18 U.S.C. § 1839(3) ................................................................. 16, 19, 20
Cal. Civ. Code, § 3426.1(d) ..................................................... 16, 19, 20
Federal Rule of Civil Procedure 12(b)(6) ......................................... 8
Federal Rule of Civil Procedure 8(a)(2) ........................................... 8
Federal Rule of Civil Procedure 9(b) ............................................... 9

DEFENDANT DHG INC.'S FIRST AMENDED MOTION TO DISMISS (F.R.C.P 12(b)(6))

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case involves Defendant DHG, Inc. ("DHG"), a company that operates subsidiaries producing and selling various blower machines. Blower machines apply construction material such as mulch and gravel at a controlled rate over a defined area and consist of a number of components, including a "feeder." This case also involves DHG's new supplier of the feeder component, Defendant William W. Meyer and Sons, Inc. ("Meyer"). Plaintiff Precision Machine and Manufacturing, Inc. ("Precision") is DHG's previous feeder supplier.[2] Precision first dealt with DHG's subsidiaries, Finn Corporation ("Finn") and Express Blower, Inc. ("EB") in 2015 and supplied those companies with feeders after entering into a Memorandum of Understanding (the "MOU") with Finn and EB. Complaint [Doc. No. 1], ¶¶ 12–13.[3] After a number of years, Finn and EB switched suppliers, deciding to purchase feeders from Meyer instead of Precision. Compl., ¶ 21.8.

Unrelated to supplying feeders to its subsidiaries, in 2024, DHG entered into an agreement the Complaint calls the "DHG NDA" regarding a potential transaction between Precision and DHG. Compl., ¶ 15–16. Precision also entered into an agreement the Complaint calls the "Meyer NDA" with Meyer around the same time. *Id*., ¶¶ 17–18. Plaintiff alleges the purpose of the Meyer NDA was related to a potential transaction

---

[2] Precision's parent company, PMM Holdings, LLC ("PMM"), is also a named plaintiff in this case. *See* Compl, ¶ 4. However, PMM is not party to any agreement with DHG or its affiliates, nor does the Complaint allege any dealings between PMM and DHG. *See generally*, Compl., Exs. 1 and 2. Therefore, DHG makes specific reference to Precision throughout this Motion as the party asserting the claims against DHG. To the extent Plaintiffs intend to allege a claim against DHG by PMM, those claims fail for the same reasons as those discussed below regarding Precision.

[3] While the Complaint discusses Finn and EB at length, neither is a defendant in this case. Nor is there a claim for breach of the MOU.

1    between Precision and Meyer. *Id*, ¶ 17.[4]

2        Aggrieved by Finn and EB's change in supplier, Precision now sues both DHG

3    and Meyer for a number of claims stemming from, as Precision alleges, DHG's and

4    Meyer's misuse and disclosure of confidential information and trade secrets that

5    supposedly belong to Precision. *See* Compl., ¶¶ 28–81. However, as detailed below,

6    Precision fails to sufficiently identify any confidential information or trade secrets DHG

7    misappropriated. For that reason and others, Precision fails to state any claim it brings

8    against DHG. Thus, the Court should dismiss all claims against DHG (Counts One,

9    Three, Six, Seven, Eight, Nine, and Ten) under Rule 12(b)(6).

10   ## II.    MOTION TO DISMISS STANDARD

11       To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

12   a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2) by sufficiently stating

13   "a short and plain statement of the claim showing that the pleader is entitled to relief."

14   "Allegations in a complaint . . . may not simply recite the elements of a cause of action

15   [and] must contain sufficient allegations of underlying facts to give fair notice and to

16   enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d

17   1123, 1135 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

18   2011)). A plaintiff must allege facts that, if accepted as true, "raise a right to relief above

19   the speculative level" and "state a claim to relief that is plausible on its face." *Bell

20   Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662,

21   677–79 (2009). Though the Court must accept all well-pled factual allegations in the

22   complaint as true, it need not accept "a legal conclusion couched as a factual allegation."

23   *Twombly*, 550 U.S. at 555 (internal quotation omitted). Facially plausible complaints

24

---

25   [4] The Complaint references the MOU, DHG NDA, and Meyer NDA as Exhibits 1, 2, and 3,
     respectively, but does not actually attach those documents to the Complaint because those documents,
26   according to Precision, require filing under seal. *See* Compl., ¶ 13, n. 1, ¶ 15, n. 2, ¶ 18, n. 3. Precision
     requested leave to file those documents under seal with the Court on September 30, 2025. *See* [Doc.
27   19]. While that request is still pending, the documents have been submitted to the Court and served on
     the parties. Therefore, this Motion cites to those documents as they would appear attached to the
28   Complaint as the enumerated exhibits.

1    "allege more than labels and conclusions." *Id.*

2    Claims that sound in fraud further require satisfaction of Federal Rule of Civil

3    Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

4    Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice

5    of the particular misconduct…so that they can defend against the charge and not just

6    deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764

7    (9th Cir. 2007) (internal citation omitted). If the fraud concerns misrepresentations,

8    Rule 9 requires pleading of "the who, what, when, where, and how of the misconduct

9    charged, [and] what is false or misleading about a statement and why it is false." *Ebeid

10   ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *see also Edwards

11   v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (listing the required

12   information as "the time, place, and specific content of the false representations as well

13   as the identities of the parties to the misrepresentation").

14   ## III.   ARGUMENT

15   The Complaint enumerates seven counts against DHG, best addressed in the

16   following categories: (a) breach of the DHG NDA (Count One); (b) tortious interference

17   with the Meyer NDA (Count Three); (c) misappropriation of trade secrets (Count Six);

18   (d) various business torts (Counts Seven, Eight, and Nine); and (e) intentional

19   misrepresentation (Count Ten). As explained below, the Complaint fails to plausibly

20   state any of these claims, and the Court should dismiss all of them under Rule 12(b)(6).[5]

21   ### A.    **Precision Fails to State a Claim for Breach of the DHG NDA (Count

22   One)**

23   Precision's first claim is for breach of the "DHG NDA." *See* Compl., ¶¶ 28–33,

24   Ex. 2. In California, a breach of contract claim requires pleading: (1) the existence of a

25   contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the

26

27   ---

[5] As discussed below, Precision is inexact as to its enumeration of claims and which laws it alleges
28   DHG violated. But in any event, Precision fails to state a claim under any legal theory. The counts
listed here are all of the causes of action against DHG alleged in the Complaint.

defendant's breach, and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Precision fails to state a claim because, as detailed below, it fails to plausibly state a breach of the DHG NDA, the third element.

Precision alleges that DHG breached the DHG NDA:

> by informing third parties, including customers and competitors of Plaintiffs of Confidential Information, that a potential transaction was being contemplated, and by providing potential customer and competitor Meyer with Precision's proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, and by engaging Meyer to reverse engineer Precision's rotary feeder coupled with such additional proprietary information, trade secrets and other Confidential Information obtained from Precision through the DHG NDA.

Compl., ¶ 31. But Precision fails to allege facts that plausibly show any such breach, given the DHG NDA's actual terms. *Compare id*., Ex. 2.

### 1.    *"Confidential Information" under the NDA is limited.*

As the Complaint notes, the DHG NDA was for exchanging information related to "evaluation, negotiation, documentation or consummation of a transaction with Precision." Compl., ¶ 21.1 (citing Ex. 2). But, it restricts only what falls within its definition of "Confidential Information." *See* Compl., Ex. 2, §§ 1–2 (defining and restricting the use of "Confidential Information"). And while Precision paraphrases that definition to include "any and all information and/or 'materials in whatever form' obtained from Precision," the actual definition of Confidential Information is far more limited. *Compare* Compl., ¶ 16.1, ¶ 29 *to* Compl., Ex. 2, §§ 1–2. Besides requiring that the information come from Precision, the DHG NDA's definition of Confidential Information is further limited to:

> all analyses, summaries, notes, forecasts, studies, data and other

documents and materials in whatever form maintained whether prepared by [Precision] or [DHG] or [Precision's] or [DHG's] respective Representatives or others, which contain or reflect, or are generated from, any such information (such information, together with the Transaction Information[.]

*See* Compl., Ex. 2, § 1; *see also id*., § 4 (defining "Transaction Information").[6] So while "Confidential Information" includes the listed items "in whatever form," so long as they "contain or reflect, or are generated from," those listed items, it does not include any information whatsoever, as the Complaint suggests.[7]

Notably, the Complaint does not acknowledge or account for Section 2 of the DHG NDA: "Exclusions from Confidential Information." *See id.*, § 2. That section excludes, among other things, information that:

(i) is already in [DHG's] possession, provided that such information is not known by [DHG], after reasonable inquiry, to be subject to a legal, fiduciary, confidentiality, contractual or other obligation to [Precision] or its affiliates, (ii) is or becomes generally available to the public other than as a result of a disclosure, or any other act or omission, by [DHG] or [DHG's] Representatives in violation of the terms hereof …

*Id.*

So, to be "Confidential Information" under the DHG NDA, information must be (1) received from Precision; (2) within Section 1's listed items; and (3) outside Section 2's exceptions. *See* Compl., Ex. 2, §§ 1–2. The Complaint lacks factual allegations that plausibly lead to the conclusion that any information DHG supposedly used qualifies as Confidential Information and, therefore, fails do plausibly plead a breach of the DHG

---

[6] While Section 1 includes other language, none of that language further defines "Confidential Information." *See id*. Rather, using the defined term "Confidential Information," it provides only for the restriction of use of that information.

[7] The Court may consider the DHG NDA's actual language, and the other documents referred to in the Complaint, without converting this Motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    NDA.

2    ### 2. *Precision fails to plausibly plead a breach.*

3    Precision never specifies what information DHG allegedly misused, let alone

4    how that information fits within the DHG NDA's definition of "Confidential

5    Information." Precision includes a laundry list of generic terms, including "proprietary

6    information concerning Precision's services, products, trade secrets, techniques,

7    processes, operations, formulae, product specifications, compositions, inventions,

8    discoveries, and designs." *See* Compl., ¶ 31, ¶ 21.2. But what "proprietary

9    information?" What "product specifications?" What "processes?" And how do these

10   terms fall within the definition of Confidential Information? The Complaint never says.

11   It only repetitively refers to "Confidential Information," without explaining what the

12   specific information may be or alleging facts that would show how such specific

13   information fits within the scope of the DHG NDA. *See* Compl., ¶ 27 ("design,

14   manufacturing processes, intellectual property, proprietary and/or other Confidential

15   Information"); ¶ 30 ("Confidential Information which included data concerning its

16   processes, customers and competitors including such Confidential Information about

17   the rotary feeders"); ¶ 21 ("design, manufacturing processes, intellectual property,

18   proprietary information and/or other Confidential Information"); ¶¶ 21.1, 21.3, 21.6,

19   21.8, 23.3 (various combinations of "confidential information," "proprietary

20   information," "trade secrets," and "design(s)").

21   And, besides a single, unadorned allegation that DHG somehow "shared the

22   Confidential Information gleaned from their dealings with Plaintiffs" (*see* Compl., ¶

23   21.3), Precision does not allege what information DHG supposedly shared with Meyer

24   (or anyone else), how any such information is within the DHG NDA's scope, or any

25   details regarding how DHG actually shared any such information. Without more,

26   Precision's allegations are merely "[t]hreadbare recitals of the elements of a cause of

27   action [that] are insufficient to state a claim under *Iqbal*." *See Sensible Foods, LLC v.*

28   *World Gourmet, Inc.*, No. 11-2819 SC, 2011 U.S. Dist. LEXIS 127397, at *15 (N.D.

Cal. Nov. 3, 2011) (dismissing breach of NDA claim where "Plaintiff plead[] no facts regarding [] what information was allegedly disclosed or how it was disclosed." (citing *Iqbal*, 556 U.S. at 678)); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990-91 (S.D. Cal. 2012) (dismissing where plaintiff did not plead "what the [supposed] 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements").

Moreover, even if Precision's "designs" could somehow possibly qualify as "Confidential Information" under Section 1 of the Agreement, the Complaint does not (and cannot) plausibly show that such information falls outside the exclusions of Section 2. In fact, the other allegations in the Complaint show that any Precision designs where *already in DHG's possession* when the NDA became effective, thereby placing any such designs beyond the restrictions of the DHG NDA under Section 2(i). *See* Compl., ¶¶ 13–14 (alleging sales of Precision's feeders with (supposedly) Precision's designs sold to DHG subsidiaries under a prior agreement), ¶ 15 (introducing the DHG NDA as an agreement that occurred thereafter).[8]

The only other allegations related to DHG's use of any information fail for similar reasons, as listed below:

- "DHG and DHG's Companies learned that Meyer was a competitor of Plaintiffs through the process surrounding the potential transactions" (Compl., ¶ 21.4): The Complaint lacks any allegation that Meyer's existence is somehow Precision's information, let alone "Confidential Information" under the DHG NDA, or that Precision even furnished that information to DHG.[9]

- "After obtaining the confidential information through the DHG NDA [], DHG [] submitted commercially unreasonable proposals to do business

---

[8] As discussed in Section III.c.2, *infra*, these "designs" are also excepted under Section 2(ii), as they became public through sales to the public.

[9] In fact, the evidence would show that DHG's subsidiaries and Meyer were doing business for at least several months before the DHG NDA was executed, and Precision was aware of this.

with Plaintiffs" (*Id.*, ¶ 21.7): The Complaint does not allege facts as to what confidential information DHG supposedly used in creating any such proposal, how a proposal was "unreasonable," what "business" the proposal was about, or how any such proposal could be unlawful.

- "DHG learned from the confidential information obtained from Plaintiffs pursuant to the DHG NDA that a former Precision customer, CAS, an independent manufacturing company which is a contract builder for Finn and Express Blower was purchasing feeders directly from Precision." (*Id.*, ¶ 23.2): The Complaint lacks any allegation that CAS's purchases are somehow Precision's information, let alone "Confidential Information" under the DHG NDA, or that DHG ever provided any such information to Finn, who the Complaint alleges "confronted" CAS. *See id.*

- "[DHG] inform[ed] third parties [] that a potential transaction was being contemplated[.]: (*Id.*, ¶ 31): The Complaint never identifies what third party DHG supposedly informed, how DHG made such disclosures, or where or when the disclosures occurred.

Accordingly, the Complaint fails to allege facts sufficient to state a claim for breach of the DHG NDA, and the Court should dismiss Count One.

**B.    Precision Fails to State a Claim for Tortious Interference of Contract with the Meyer NDA (Count Three)**

Precision accuses DHG of tortious interference with the Meyer NDA. *See* Compl., ¶ 39–43. This claim requires Precision to plead: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008). To state a claim, Precision "must allege actual interference with actual contracts, such that the result is a specific breach, not merely general damage to the business." *Image Online Design, Inc. v. Internet Corp.*

*for Assigned Names & Nos.*, No. CV 12-08968 DDP (JCx), 2013 U.S. Dist. LEXIS 16896, at *28–29 (C.D. Cal. Feb. 7, 2013). Precision fails to plead all but the first element.

As an initial matter, Precision never alleges what information, if any, it shared with Meyer. *See generally*, Compl.. It only alleges what the Meyer NDA may have defined as "Confidential Information," and that Precision "provid[ed] Meyer access to Confidential Information, which included data concerning its processes, pricing, customers, and competitors[.]" *See id.*, ¶ 18.1, ¶ 36 (discussing Compl., Ex. 3). It never alleges that Meyer actually obtained any information, or facts sufficient to plausibly show any such information was "Confidential Information" such that using or sharing that information could be a breach of the Meyer NDA. Nor does the Complaint ever allege what information, let alone "Confidential Information," Meyer disclosed to DHG or anyone else or otherwise used improperly. Without such allegations, Precision does not (and cannot) plausibly allege that DHG took any specific action to interfere with the Meyer NDA; that any such action induced a specific breach of the Meyer NDA; or any damages stemming therefrom.[10] The Complaint simply fails to allege facts that allow the Court to draw a reasonable inference that the last three elements of the claim are met or that DHG is liable. *See Iqbal*, 556 U.S. at 678.

The Complaint further fails to plead facts that plausibly show that DHG knew of the Meyer NDA whenever DHG supposedly took any interfering action. Rather, the Complaint merely alleges the conclusion that "DHG and DHG's Companies knew or had reason to know of the existence and principal terms of the Meyer NDA." *See* Compl., ¶ 41. Such a formulaic recitation of this element of the claim is insufficient to state the claim under *Iqbal*. *See* 556 U.S. at 678.

---

[10] While the Complaint alleges that DHG "retained Meyer to reverse engineer Precision's feeder designs and product specifications," (Compl., ¶ 21.5) there is no allegation that the Meyer NDA prohibits Meyer from such activity. *See id.*, ¶ 18; *see also id.*, Ex. 3 (containing no such restriction). In fact, the allegations that Meyer reverse engineered Precision's feeder design, instead of acquiring the design through Precision, rebuts the conclusion that Meyer breached the Meyer NDA.

1  Accordingly, Precision fails to state a claim for tortious interference with contract

2  against DHG.[11]

3  **C.    Precision Fails to State a Claim for Misappropriation of Trade Secrets**

4       **(Count Six)**

5  Precision's sixth claim is for misappropriation of trade secrets under the federal

6  Defend Trade Secrets Act (DTSA) and the California Uniform Trade Secrets Act

7  (CUTSA). *See* Compl., ¶¶ 56–63.[12] Precision alleges that what it defines as "Precision's

8  IP" constituted trade secrets, and that DHG and Meyer misappropriated those trade

9  secrets. *See id*. But, similar to its claim for breach of the DHG NDA, Precision fails to

10  state a claim because it does not sufficiently identify any supposed trade secrets and

11  does not sufficiently plead facts showing any such information indeed constitutes a

12  trade secret. *See also* Section III.a, *supra*.

13  DTSA and CUTSA claims require the same elements: (1) the plaintiff owned a

14  trade secret, (2) the defendant misappropriated the trade secret, and (3) the defendant's

15  actions damaged the plaintiff. *Gregoire Alexandre Gentil v. Wingfield GmbH*, N.D.Cal.

16  No. 20-cv-05358-EMC, 2021 U.S. Dist. LEXIS 213649, at *14 (Mar. 2, 2021)

17  (discussing 18 U.S.C. § 1839); *Space Data Corp. v. X,* N.D.Cal. No. 16-cv-03260-BLF,

18  2017 U.S. Dist. LEXIS 22571, at *3 (Feb. 16, 2017) (discussing 18 U.S.C. § 1839 and

19  Cal. Civ. Code §3426.1(b)). Precision fails to state a misappropriation claim because it

20  (1) fails to sufficiently identify any trade secret information; (2) fails to plead facts

21  sufficient to plausibly show that any such information constitutes a trade secret; and (3)

22  _____

23  [11] As explained in Sections III.a, *supra* and III.c.2, *infra* regarding Precision's breach of contract and
trade secret claims, because Precision fails to delineate what confidential information or trade secrets

24  DHG supposedly misappropriated, part or all of Precision's tortious interference claim may also be
preempted by the CUTSA. *See Emergy Inc. v. Better Meat Co.*, No. 2:21-cv-02417-KJM-CKD, 2022

25  U.S. Dist. LEXIS 186663, at *29-30 (E.D. Cal. Oct. 11, 2022) (dismissing tortious interference claim,
where complaint did not distinguish between trade secrets and non-trade secret information that was

26  the basis for the underlying breach of contract).

27  [12] Precision styles this claim as "misappropriation of Plaintiffs' Intellectual Property," but the only
rights the claim implicates are trade secrets. *See Jardin v. DATAllegro*, Inc., No. 10-CV-2552-IEG

28  (WVG), 2011 U.S. Dist. LEXIS 39488, at *8 (S.D. Cal. Apr. 11, 2011) ("Information is not property
unless some law makes it so.").

fails to plausibly allege misappropriation.

### 1.    *Precision fails to identify any supposed trade secret.*

To adequately plead the existence of a trade secret, a plaintiff must describe the trade secret with sufficient particularity. *Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-cv-02116-ODW (AGRx), 2025 U.S. Dist. LEXIS 80233, at *46 (C.D. Cal. Apr. 28, 2025); *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020). A plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Space Data*, 2017 U.S. Dist. LEXIS 22571, at *4 (quoting *Pellerin*, 877 F. Supp. 2d at 988); *see also Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556, at *12 (N.D. Cal. Apr. 13, 2015) ("To pass muster under Rule 8, plaintiffs raising claims under CUTSA must itemize the information claimed as a trade secret with reasonable particularity.").

Doing so requires a plaintiff to confine what information it alleges is a trade secret. *See CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 U.S. Dist. LEXIS 147034, at *9-10 (N.D. Cal. Aug. 14, 2020) (identifying trade secrets as "including but not limited to" certain information was unlimited and thus insufficient pleading). Courts have further held that, under at least the CUTSA, a plaintiff must allege trade secrets with sufficient specificity to allow the court to "make an item-by-item determination of what is and is not a trade secret." *See Agency Sols..Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("[A]lleged trade secrets that are not sufficiently identified to be included within either category cannot be the basis of a claim of misappropriation."); *Cleanfish*, 2020 U.S. Dist. LEXIS 147034, at *9. And under either the DTSA or CUTSA, "allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as protectable trade secrets are insufficient to state a claim." *Cisco*, 462 F. Supp. 3d at 1048 (emphasis in original); *Five Star Gourmet Foods, Inc.*

*v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368, at *7 (N.D. Cal. Jan. 31, 2020).

The Complaint fails these pleading requirements. Precision describes its supposed trade secrets as follows:

> services, products, techniques, processes, operations, formulae, product specifications, knowhow, compositions, inventions, discoveries, designs, sketches, drawings, cost, market data, pricing, customer data and other Confidential Information relating to the airlock rotary feeders designed, engineered and manufactured by Precision ("Precision's IP"), including those designated as Precision models "18x33," "16x25," "302," and "12x15".

Compl., ¶ 57.[13] The rest of the Complaint refers to "trade secrets" or various subsets of items in this list but does not otherwise provide further detail as to what "processes," "product specifications," "inventions," or any other item in the list might entail or what trade secrets may lie therein. *See Id.* ¶ 21, ¶ 21.1, ¶ 21.2, ¶ 21.8, ¶ 27.

Without any further detail, Precision's description of any supposed trade secrets is, at best, merely a list of "broad, categorical terms" that cannot ground a trade secret claim. *See Cisco*, 462 F. Supp. 3d at 1048. With only that list, DHG, Meyer, and the Court cannot determine what supposed trade secrets Precision purports lie within those categories or distinguish any trade secrets from matters of general knowledge within the trade. And—even if that defect did not exist as to any particular item in Precision's list—the other language in the list and elsewhere in Precision's trade secret claim obliterates any defining limitations otherwise available, as the list does not limit itself to the named items and instead includes "other Confidential Information," without any indication as to what that may entail. *See* Compl., ¶ 57; *see also* ¶ 59 (listing "trade

---

[13] This list of terms resembles, if not reproduces, the list of general categories of information that the Complaint alleges are governed by the Meyer NDA. *Compare id.*, ¶ 18.1. This resemblance, without further detail, further exposes that Precision is unable to state what trade secrets it supposedly has to assert in this case.

secrets and other confidential information" in addition to "Precision's IP"), ¶ 61 (same), ¶ 63 (same).

Nor does Precision's mention of particular feeder models in the list rescue its pleading. *See* Compl., ¶ 57. Identifying those feeders may specify a particular end product, but does not help to describe what ***information*** "relating to" those products Precision asserts is a trade secret. Without more, the Complaint still does not give DHG, Meyer, or the Court "notice of the issues [or] reasonable guidance in ascertaining the scope of appropriate discovery" sufficient to state a claim. *See Pellerin*, 877 F. Supp. 2d at 988 ("If the subject matter of the claimed trade secret is a manufacturing process, *the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process*" (emphasis in original)); *see also Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556 at *11–16. (N.D. Cal. Apr. 13, 2015) dismissing complaint because the plaintiff failed "to distinguish the allegedly shared trade secrets from non-trade secret information").

Without adequate identification of any supposed trade secrets, the Complaint offers only labels and conclusions, and the pleading fails for that reason alone.

### 2.  *Precision fails to plausibly allege any information is a trade secret.*

Precision similarly fails to allege facts that could plausibly show that any supposed trade secret is indeed a trade secret. Under both the DTSA and CUTSA, information is a trade secret only if (1) the information derives independent economic value from not being generally known to, and not readily ascertainable through proper means by, another who can obtain economic value from the information; and (2) its owner takes reasonable measures to keep the information secret. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code, § 3426.1(d).

Precision makes no attempt to plead facts that could plausibly establish either requirement as to any information Precision asserts as a trade secret. *See generally*, Compl.. Rather, the Complaint only pleads these requirements in conclusory fashion in

a single paragraph. *See id*., ¶ 58. That formulaic recitation of those elements is insufficient. *See Pellerin*, 877 F. Supp 2d at 988-89 (quoting *Iqbal*, 556 U.S. at 678).

Nor can Precision cobble together a set of allegations to satisfy these elements. The Complaint's only discussion as to information that could fall under the definition of "Precision's IP" supposedly misappropriated by DHG is about the "designs" of particular feeder products, namely the "302" feeder. *See* Compl., ¶ 14.1, ¶ 23.3, ¶ 27, ¶ 57. Not only does Precision not explain what information within the "designs" constitutes a trade secret—Precision's allegations as to those designs actually rebut the conclusion that Precision possesses a trade secret.

The Complaint lacks any facts showing how any feeder design derives value from being secret. However, the Complaint does allege facts suggesting the "designs" are not secret at all. Precision alleges that it sold the feeders with its designs to the public and to DHG (who sold various blower machines with those feeders installed to the public). *See, e.g.,* Compl., ¶ 11, ¶ 14.2, ¶ 23.2, ¶ 23.3. "Selling the device is a form of public disclosure: if an alleged trade secret is *fully* disclosed by the products produced ... then the right to protection is lost." *Gregoire Alexandre Gentil v. Wingfield GmbH*, No. 20-cv-05358-EMC, 2021 U.S. Dist. LEXIS 213649, at *15 (N.D. Cal. Mar. 2, 2021) (emphasis in original) (internal quotations omitted) (dismissing trade secret claim where claimed trade secret was product design, and "design aspects . . . (such as [] exterior shape or attachments) would certainly be revealed by its sale to the public"). Precision further alleges that DHG obtained the feeder designs through reverse engineering with Meyer, which is also specifically allowed under the DTSA and CUTSA. *See* 18 U.S.C. § 1839(6)(B); Cal. Civ. Code § 3426.1(a).[14] So, despite Precision's claim that the "designs" are somehow trade secrets, the facts in the Complaint show those designs are not secret and thus could not possibly derive economic value from being secret.

---

[14] The Complaint also includes a naked conclusion that Meyer "combined [reverse engineering] with confidential information obtained through the Meyer NDA disclosures" (*see* Compl., ¶ 21.6), but never identifies what "confidential information" Meyer supposedly used.

The same is true as to reasonable efforts to keep the "designs" secret. The only allegations that Precision attempted to restrict information of any kind relate to the agreements between Precision and DHG; Precision and DHG's affiliates; or Precision and Meyer. *See* Compl., ¶ 13 (the "MOU" with DHG affiliates); ¶ 16 (the DHG NDA); ¶ 18 (the Meyer NDA). But the Complaint does not allege sufficient facts to plausibly conclude that the "designs" were subject to any of those agreements. As discussed above, such information was not subject to the DHG NDA because it was in DHG's possession before the DHG NDA existed. *See* Section III.a.2, *supra*. The Complaint similarly lacks allegations sufficient to conclude that designs were subject to the Meyer NDA, particularly where that agreement was to facilitate "a potential transaction" with Precision. *See* Compl., ¶¶ 17-18; *see also id.*, Ex. 3.

That leaves only the MOU between Precision and Finn/Express Blower, DHG's subsidiaries. *See* Compl., Ex.1. And, while Precision alleges that the MOU required Finn/Express Blower to "protect the confidentiality of the designs . . . and any other information" about their relationship with Precision (*see id.*, ¶ 13.2), it neglects the remainder of that provision, which only requires protection of such information "with the same care that [the parties] safeguard other information about their respective businesses." *See* Compl., Ex 1, p. 4. Because the Complaint fails to allege facts as to whether protecting any "designs" with such care would require keeping those designs (or any subpart of them) confidential, the pleading does not plausibly lead to the conclusion that the MOU could constitute reasonable efforts to keep any trade secrets secret. And, even setting aside the issue of whether any of these individual agreements, or any combination thereof, would sufficiently show reasonable efforts as to any possible trade secrets, the Complaint is defective because it fails to plausibly allege that any of the agreements restrict any information at issue here.

For these reasons, even if the Complaint sufficiently identified what is purportedly a trade secret, it fails to sufficiently plead that any such information gets trade secret protection.

### 3.    *Precision fails to plausibly allege misappropriation.*

The Complaint alleges that DHG and Meyer "shared" whatever trade secret information Precision attempts to rely upon, but it lacks facts as to when or how any information was shared, or what information was shared, that would make such a conclusion plausible. "As with the other elements of misappropriation, Plaintiff may not rely on "conclusory, formulaic allegation[s] to establish the element of misappropriation." *CleanFish*, 2020 U.S. Dist. LEXIS 147034, at *16 (internal quotation omitted); *Epicor Software Corp. v. Alt. Tech. Sols., Inc*., No. SACV 13-00448-CJC(RNBx), 2013 U.S. Dist. LEXIS 198430 (C.D. Cal. Dec. 2, 2013) at *11). Accordingly, Precision fails to sufficiently allege misappropriation.

For all of these reasons, Precision fails to state a claim for misappropriation of trade secrets.[15]

### D.    **Precision Fails to State a Claim for Unfair Competition, Unfair Business Practices, Restraint of Trade, or Any Other Tort (Counts Seven, Eight, and Nine)**

Precision's seventh, eighth, and ninth claims are titled "Unlawful Business Practices and Competition," "Unfair Competition and Restraint of Trade," and "Unfair Competition and Anti-Competitive Conduct" respectively, but each claim states effectively identical—and entirely conclusory—allegations of liability and damages. *See* Compl., ¶¶ 64–73. Each claim first asserts that "Defendant's misconduct as alleged in this complaint" constitutes "violation[s] of federal and state laws including but not limited to, the Sherman Act [], California's Cartwright Act [], and California's Unfair Competition Law []." *See id*., ¶ 65, ¶ 69, ¶ 72.[16] The only other allegation within these claims is an identical statement that reads: "Plaintiffs have suffered economic loss,

---

[15] To the extent Precision intends to assert a trade secret claim based on alleged use or disclosure of any other information, such a claim fails for the same reasons discussed here and in Section III.a, *supra*, regarding the breach of contract claim.

[16] Count Seven also lists the DTSA and CUTSA, but nothing further about those statutes. *See id*., ¶ 65.

damage and harm which is ongoing and increasing in an amount that will be determined according to proof at trial and which entitles Plaintiffs to all other legal and equitable remedies and relief described in paragraphs 22 through 27 of this Complaint." *Id.*, ¶ 67, ¶ 70, ¶ 73. None of these counts plead elements of *any* claim nor, even identify what particular law it alleges DHG and Meyer broke (other than the unspecified laundry list of whole legislation).

As pled, these claims are the definition of impermissible "shotgun pleading." "Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim. *Ceragioli v. Butte Cty.*, No. 2:23-cv-01113-TLN-DMC, 2024 U.S. Dist. LEXIS 54056, at *7-8 (E.D. Cal. Mar. 25, 2024) (citing *Hughey v. Camacho*, No. 2:13-CV-2665-TLN-AC, 2014 U.S. Dist. LEXIS 150756, at *9-10 (E.D. Cal. Oct. 23, 2014); *see also Myers v. Cty. of Fresno*, No. 1:22-cv-00173-ADA-HBK, 2023 U.S. Dist. LEXIS 165884, at *8 (E.D. Cal. Sep. 18, 2023). In other words, if a Complaint only makes "everyone did everything allegations," it is an improper shotgun pleading. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

Counts Seven through Nine do not attribute any facts to DHG (or Meyer for that matter). Nor do they allocate particular facts to any particular claim. Nor do they indicate the elements of these supposed claims or identify the underlying law. Without any of that information, DHG cannot ascertain what Precision claims DHG did or respond to it. The Court should dismiss these claims for that reason. *See Myers*, 2023 U.S. Dist. LEXIS 165884, at *8 ("Courts forbid shotgun pleadings because they do not enable a defendant to respond"); *see also Ceragioli*, 2024 U.S. Dist. LEXIS 54056, at *7-8 (dismissed where allegations incorporated by reference without any designation of which facts supported which claims); *Giannini v. Cty. of Sacramento*, No. 2:21-cv-00581-KJN, 2023 U.S. Dist. LEXIS 171812, at *8 (E.D. Cal. Sep. 26, 2023) (dismissed due to "overwhelming use of disorganized, conclusory, and largely irrelevant

1  assertions.").

2          Therefore, the Court should dismiss Counts Seven, Eight, and Nine.

3  **E.     Precision Fails to State a Claim for Intentional Misappropriation**
4          **(Count Ten)**

5          Precision's final claim is for intentional misrepresentation. *See* Compl., ¶¶ 74–

6  81. According to Precision, DHG represented that it would license Precision's trade

7  secrets and Confidential Information if the MOU ever terminated, and that it "had an

8  interest in doing business with Plaintiffs and would hold Plaintiffs' proprietary

9  information . . . in strict confidence," but never actually intended to do those things. *See*

10  Compl., ¶¶ 75–78. This claim fails for multiple reasons.

11          In California, intentional misrepresentation requires pleading: "(a)

12  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge

13  of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) actual and

14  justifiable reliance; and (e) resulting damage." *Berry v. Frazier*, 90 Cal. App. 5th 1258,

15  1268, 307 Cal. Rptr. 3d 778, 789 (2023); *see also Ogier v. Pac. Oil & Gas Dev. Corp.*,

16  132 Cal. App. 2d 496, 505 (1955).

17          Intentional misrepresentation is a type of fraud claim that implicates Rule 9's

18  heightened pleading requirements. *See Tarmann v. State Farm Mut. Auto. Ins. Co.* 2

19  Cal.App.4th 153, 159 (1991); *Ramos v. Ramos* 691 F.App'x 487, 488 (9th Cir. 2017)

20  ("[d]ismissal of plaintiffs' intentional misrepresentation claim was proper because

21  plaintiffs failed to allege facts with the specificity required by Federal Rule of Civil

22  Procedure 9(b)." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir.

23  2009)); *see also* Section II, *supra*. Where the claim is against a corporation, a plaintiff

24  must allege the names of the persons who made the allegedly

25  fraudulent representations, their authority to speak, to whom they spoke, what they said

26  or wrote, and when it was said or written. *Tarmann*, 2 Cal.App.4th at 157. Precision

27  appears to agree that the claim sounds in fraud. *See* Compl., ¶ 21.1, ¶ 26.

28          But the Complaint does not approach satisfying Rule 9. It fails to allege who

made the alleged representations, their authority relative to DHG, to whom they made such representations, what they said, or that any such individual knew of the falsity of any statement he or she made. *See generally*, Compl. Rather, the Complaint includes only conclusory allegations that DHG "had no intention" of doing what it supposedly represented it would do. *See* Compl., ¶ 76, ¶ 78. Such allegations "are the very sort of general and conclusory allegations that are insufficient to state a fraud claim." *See Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 804, 266 Cal. Rptr. 3d 578, 585 (2020).

Accordingly, the Complaint fails to state a claim for intentional misrepresentation.[17]

## IV.    CONCLUSION

For the foregoing reasons, DHG respectfully requests that the Court dismiss all claims against DHG, pled as Counts One, Three, Six, Seven, Eight, Nine, and Ten.

Dated:  October 9, 2025                    DINSMORE & SHOHL LLP


                                           By: /s/ *Michael A. Xavier*
                                           Michael A. Xavier
                                           Arielle I. Goren
                                           *Attorneys for Defendant DHG, INC.*

---

[17] To the extent Precision points to the MOU to evidence any representation by DHG, such allegation fails because DHG is not a party to that agreement. *See* Compl., Ex. 1.

1

## **CERTIFICATE OF SERVICE**

2      I, the undersigned, do hereby certify that on October 9, 2025, a true copy of this

3  document was served by electronic mail upon all registered CM/ECF users, and by

4  United States Postal Service upon all non-registered CM/ECF users in this case as

5  indicated below:

6

7      **William Scott Cameron -** scameron@weintraub.com,
             daguillen@weintraub.com

8      **Sarah K. Dunkley , PHV -** skdunkley@gct.law
      **Margaret A. Gisch , PHV -** magisch@gct.law

9      **Arielle Goren -** arielle.goren@dinsmore.com, wendy.yones@dinsmore.com

10     **Jamie L Johnson -** jamie@kkks.com
      **M. Zachary Smith -** zsmith@weintraub.com, NEF@weintraub.com,

11             aespanapurpur@weintraub.com

12     **Michael Anthony Xavier , PHV -** michael.xavier@dinsmore.com,
             stella.laroe@dinsmore.com

13

14   Dated:  October 9, 2025              DINSMORE & SHOHL LLP

15

16                          By: */s/ Michael A. Xavier*

17                              Michael A. Xavier
                             Arielle I. Goren

18                          Attorneys for Defendant DHG, INC.

19

20

21

22

23

24

25

26

27

28