Zachary M. Smith, State Bar No. 78241
W. Scott Cameron, State Bar No. 229828
**Weintraub Tobin** Chediak Coleman Grodin
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: 916.558.6000
Facsimile: 916.446.1611
Email: ZSmith@weintraub.com
SCameron@weintraub.com

Attorneys for Plaintiffs
PMM Holdings, LLC and Precision
Machine & Manufacturing

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PMM HOLDINGS, LLC and PRECISION MACHINE & MANUFACTURING,

Plaintiffs,

v.

WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,

Defendants.

Case No.: 2:25-cv-02005-CSK

**PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COMPLAINT**

Date: November 18, 2025
Time: 10:00 a.m.
Ctrm: 25

Complaint Filed: July 17, 2025



weintraub tobin chediak coleman grodin

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2005) .......... 15

*Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020) .......... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) .......... 17

*Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024 (N.D. Cal. 2020) .......... 13

*Donadio v. Hyundai Motor America*, 751 F. Supp. 3d 1013 (C.D. Cal. 2024) .......... 17

*Gregoire Alexandre Gentil v. Wingfield GmbH*, 2021 WL 4979427 (N.D. Cal. March 2, 2021) .......... 15

*Hospital Bldg. C. v. Rex Hospital Trustees*, 425 U.S. 738 (1976) .......... 8

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) .......... 12, 13, 14

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) .......... 8

*Kelly v. Corrections Corp. of America*, 750 F. Supp 2d 1132 (E.D. Cal. 2010) .......... 8

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) .......... 16

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012) .......... 13

*Meggit San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801 (9th Cir. 2014) .......... 14

*Quintara Biosciences Inc. v. Ruifeng Biztech, Inc.*, 149 F4th 1081 (9th Cir. 2025) .......... 13, 14

weintraub tobin chediak coleman grodin

*Sensible Foods, LLC v. World Gourmet, Inc.*,
2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ........................................11

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
72 Cal. App. 4th 861 (1999) ........................................17

*State Farm Fire & Casualty Co. v. Super. Ct.*,
45 Cal. App. 4th 1093 (1996) ........................................17

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........................................9

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................16, 17

Cal. Code Civ. Proc. § 2019.210 ........................................14, 18

California Civil Code §§ 3426.1 *et seq.* ........................................12

18 U.S.C. § 1835........................................12

**Other Authorities**

Federal Rules of Civil Procedure Rule 8 ........................................*passim*

Federal Rule of Civil Procedure 9(b)........................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................8



weintraub tobin chediak coleman grodin

Table of Contents

I. INTRODUCTION ..... 5

II. BACKGROUND ..... 6

III. LAW AND ARGUMENT ..... 8

A. Legal Standard ..... 8

B. The Complaint Alleges A Sufficient Claim For Breach Of The DHG NDA. ..... 9

C. The Complaint Alleges A Claim For Tortious Interference Of Contract With The Meyer NDA ..... 12

D. The Complaint Alleges Facts Sufficient To State A Claim For Misappropriation Of Trade Secrets. ..... 12

1. Plaintiffs Have Adequately Alleged Their Trade Secrets. ..... 13

2. DHG Misappropriated Plaintiffs' Trade Secrets. ..... 16

E. The Complaint States A Claim For Unfair Competition. ..... 16

F. The Complaint States A Claim For Intentional Misrepresentation. ..... 18

IV. CONCLUSION ..... 18

weintraub tobin chediak coleman grodin

weintraub tobin chediak coleman grodin

Plaintiffs PMM Holdings, LLC and Precision Machine & Manufacturing submit the following opposition to Defendant DHG Inc.'s Motion to Dismiss Complaint (the "Motion").

## I. INTRODUCTION

Plaintiffs design, manufacture, and sell, among other things, heavy-duty rotary airlock feeders as a component for material handling systems. Defendant DHG builds and sells blower trucks, which include rotary feeders like those Plaintiffs produce. The two companies, DHG through its wholly-owned subsidiary Finn, entered into an MOU in 2016 with Plaintiffs designing, manufacturing and supplying Precision's feeders to DHG and its affiliates.

In 2024, this changed. Apparently, DHG wanted the Precision feeders cheaper than Plaintiffs were selling them. DHG purported to be interested in a transaction with Plaintiffs and entered into a "Non-Disclosure Agreement" (the DHG NDA"). Through the access granted by the DHG NDA, DHG was provided with significant confidential and trade secret information by Plaintiffs about their business and the feeders they designed and manufactured. DHG had also approached Plaintiffs' competitor, William M. Meyer and Sons, Inc. ("Meyer") to have Meyer manufacture a replica of Precision's feeders, which DHG would then purchase from Meyer at a cost lower than Precision's. In so doing, DHG violated the confidentiality provisions of the DHG NDA and the MOU between the two companies, misappropriated Plaintiffs' trade secrets, and violated California's Unfair Competition Law. Plaintiffs were forced to file suit to protect itself from DHG's and Meyer's wrongful conduct.

DHG moved to dismiss the complaint against them, primarily arguing that the complaint lacks specificity in what information Plaintiffs allege DHG used, and what Plaintiffs' trade secrets actually are. DHG's Motion seeks, primarily, to impose the heightened pleading standard of Federal Rule of Civil Procedure 9(b), rather than the "short and plain statement of the claim" standard under Rule 8(a)(2), the Rule that actually applies to Plaintiffs' complaint. Plaintiffs' complaint easily satisfies the standard of Rule 8(a)(2). DHG's motion should be denied. Plaintiffs will be able to provide additional information and specificity through discovery once a protective order is in place. Without such a protective order, Plaintiffs' trade secrets cannot be maintained as secrets.

weintraub tobin chediak coleman grodin

## II. BACKGROUND

Plaintiffs are in the business of designing, manufacturing and selling industrial machinery, primarily heavy-duty rotary airlock feeders, rotary valve airlocks and screw conveyors as components for material handling systems. To conduct such business, PMM Holdings owns Precision which performs the design, manufacture and sales of such machinery. Precision's rotary airlock feeder is a unique product, highly regarded in the industry, and particularly effective in blower truck and blower equipment applications. Complaint ¶ 10. DHG conducts the business of building and selling material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers and/or bark blowers, through its wholly-owned entities Finn and Express Blower. *Id.*, ¶ 11.

In 2015 and 2016, at DHG's instigation, DHG's subsidiary Finn and Precision discussed a potential arrangement by which Precision would design, manufacture and supply to Finn and Finn's wholly-owned subsidiary, EB, Precision's rotary airlock feeders ("feeders") to be installed by Finn and EB as a component part in some of their equipment. Precision proposed to design, build and supply new generation feeders which would be superior to the feeders Finn and EB had been installing in their blowers and blower trucks in the past. *Id.*, ¶ 12. The discussions resulted in a Memorandum of Understanding ("MOU") signed by Matt Day, the then Vice President of Operations for both of the DHG entities, Finn and EB, and by Precision's former President, Kirk Morton, on or about February 9, 2016. *Id.*, ¶ 13. Under the MOU, the parties were bound to "protect the confidentiality of the designs, pricing, purchase volumes, and any other information about their business relationship. *Id.*, ¶ 13.2.

Any feeder developed and manufactured by Precision during the course of the business relationship described in the MOU would be subject to the terms of the MOU. *Id.*, ¶ 13.7. At its sole cost and risk, Precision customized its own proven feeder designs to serve as new and improved feeders for use as a component within Finn and EB's blower trucks and blower equipment. Precision developed, designed, manufactured, and sold to Finn its new 18x33 model to replace Finn's old "12-Series" model, Precision's new 16x25 which replaced Finn's old "5-Series" model, and Precision's new model "302" to replace Finn's old model called "BB302". Precision

weintraub tobin chediak coleman grodin

also developed and designed what Precision designated as a 12x15 model feeder for a new material blower machine that Finn was developing. All the feeders bear Precision serial numbers and the drawings for all of the new feeders designed and engineered by Precision, including the new 302 rotary feeder, bear the Precision legend and insignia and are under Precision's exclusive ownership, possession and control. *Id.*, ¶ 14.1.

In 2024, the "business relationship" began to change. DHG and Three Cities represented that DHG was interested in potentially doing business with Plaintiffs and entered into a "Non-Disclosure Agreement," dated January 23, 2024, and signed by Christopher Erickson on behalf of DHG and Three Cities (the "DHG NDA"). *Id.*, ¶ 15. Under the DHG NDA, DHG bound itself and its affiliates to maintain in strict confidence any and all information and/or materials in whatever form obtained from Precision. *Id.*, ¶ 16. Once the "business relationship" established by the MOU ended due to failure of the conditions precedent concerning minimum lots sizes and minimum annual purchases, DHG and the DHG Companies failed to license the Plaintiffs' feeders and, instead, undertook a scheme to use the designs and other proprietary information related to the feeders to evade licensing Precision's feeders from Precision or otherwise compensating Precision for the use of its designs and other proprietary information concerning Precision's airlock rotary feeders. *Id.*, ¶ 20.2.

DHG, on its own and by and through DHG's Companies as DHG's agents, and together with Meyer, have violated the DHG NDA and the Meyer NDA, and have misappropriated Precision's design, manufacturing processes, intellectual property, proprietary information and/or other Confidential Information associated with Precision's feeders. *Id.*, ¶ 21. Both DHG and Meyer falsely represented to Plaintiffs that they were interested in doing business with Plaintiffs in order to gain access to all of Plaintiffs' proprietary and trade secret information and other Confidential Information though the disclosures of information contemplated by the DHG NDA and the Meyer NDA rather than for the true purpose of evaluation, negotiation, documentation or consummation of a transaction with Precision and/or PMM Holdings. *Id.*, ¶ 21.1. Through the access granted by the DHG NDA, DHG, DHG's Companies and Meyer all acquired commercially exploitable and proprietary information concerning Precision's services, products, trade secrets,

weintraub tobin chediak coleman grodin

techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, in addition to the Plaintiffs' financial data, especially with respect to existing and potential customers, employees, vendors or suppliers related to Precision's feeders. *Id.*, ¶ 21.2. DHG, DHG's Companies and Meyer violated the NDA's by sharing the Confidential Information gleaned from their dealings with Plaintiffs. *Id.*, ¶ 21.3.

As alleged in more detail in paragraphs 21, 21.1 through 21.9 of the Complaint, DHG by and through the DHG Companies breached the DHG NDA contract by informing third parties, including customers and competitors of Plaintiffs of Confidential Information, that a potential transaction was being contemplated, and by providing potential customer and competitor Meyer with Precision's proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, and by engaging Meyer to reverse engineer Precision's rotary feeder coupled with such additional proprietary information, trade secrets and other Confidential Information obtained from Precision through the DHG NDA. *Id.*, ¶ 31. As a result of these breaches, Plaintiffs suffered damages and were forced to file this suit.

## III. LAW AND ARGUMENT

### A. Legal Standard

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure 'does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Kelly v. Corrections Corp. of America*, 750 F. Supp 2d 1132, 1137 (E.D. Cal. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). When considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true the allegations in the complaint, *Hospital Bldg. C. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and must construe the pleadings in the light most favorable to the party opposing the motion and resolve factual disputes in the pleader's favor, *Jenkins v. McKeithen*, 395 U.S. 411 (1969). To withstand a motion to dismiss, a complaint need only set forth factual allegations

weintraub tobin chediak coleman grodin

sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Only claims sounding in fraud require the complaint to meet the heightened pleading standard of Rule 9(b). Under Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Even under Rule 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).

### B. The Complaint Alleges A Sufficient Claim For Breach Of The DHG NDA.

DHG argues that Plaintiffs failed to adequately allege a breach of the DHG NDA, but concedes that the complaint satisfies the other elements in the claim for breach of contract. DHG appears to contend that the allegations are insufficient because the complaint fails to allege the breach with the particularity required by Rule 9(b), rather than the "short and plain statement of the claim" required under the applicable rule, Rule 8(a)(2). Plaintiffs' complaint easily satisfies the requirements under the applicable Rule.

DHG first applies an unreasonably narrow definition of "Confidential Information" and that, somehow, this definition does not include any of Plaintiffs' intellectual property, designs, and trade secrets. Not so. Confidential Information, as defined in the DHG NDA, is broad, and includes any information that Precision furnished to DHG, and any information that is "otherwise ascertained by [DHG], including through due diligence investigation or discussions with employees [of Precision], together with all analyses, summaries, notes, forecasts, studies, data and other documents and materials in whatever form maintained . . . ." Complaint, Ex. 2, ¶ 1. "Transaction Information" is also included in the definition of Confidential Information, and is defined to include, *inter alia*, "(ii) the fact that investigations, discussions or negotiations may take place, are taking place or have taken place concerning a possible Transaction involving you and the Company, (iii) any of the terms, conditions or other facts with respect to any such possible

Transaction, including the status or timing thereof or either Party's consideration of a possible Transaction, (iv) that the Parties or any of their respective affiliates or subsidiaries are, have been or may be considering or reviewing a transaction involving or relating to the other Party. . . ." *Id.* at ¶ 4.

The complaint alleges that DHG breached the DHG NDA in paragraph 31:

> 31. As alleged in more detail in paragraphs 21, 21.1 through 21.9 of this Complaint, DHG by and through the DHG Companies breached the DHG NDA contract by informing third parties, including customers and competitors of Plaintiffs of Confidential Information, that a potential transaction was being contemplated, and by providing potential customer and competitor Meyer with Precision's proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, and by engaging Meyer to reverse engineer Precision's rotary feeder coupled with such additional proprietary information, trade secrets and other Confidential Information obtained from Precision through the DHG NDA.

The proprietary information Plaintiffs provided to DHG under the DHG NDA encapsulate all of Precision's business. The confidentiality of this information is essential to Precision maintaining its position in the market of heavy-duty rotary airlock feeders. It is inconceivable that Plaintiffs would insist on an NDA and exclude the confidentiality of their most precious secrets. Yet that is DHG's argument.

DHG also contends that any confidential information they did disclose was excluded from the definition of Confidential Information under paragraph 2 of the DHG NDA. It was not. Any information already in DHG's possession at the time the DHG NDA was executed was, as DHG well knew, already subject to the confidentiality provisions of the MOU, and therefore not covered by any exclusion in the definition of Confidential Information. *See* Complaint, Ex. 1, p.4.

DHG then argues that the complaint does not allege an actual breach of the DHG NDA. Paragraph 31 of the complaint, quoted above, details exactly how DHG breached the NDA. DHG



weintraub tobin chediak coleman grodin

argues that Plaintiffs failed to plead with specificity: "But what 'proprietary information?' What 'product specifications?' What 'processes?'" Motion to Dismiss, p.12. DHG also faults Plaintiffs for failing to explain what the specific information may be. *Id.* This is not required under Rule 8(a)(2), and the complaint includes more than enough detail regarding what information DHG shared to others to breach the NDA to satisfy the requirements of that Rule. Complaint, ¶ 31. Moreover, to allege more specific or detailed breaches would reveal the trade secrets Plaintiffs are fighting to protect.

DHG cites no authority, nor could it, holding that a complaint alleging breach of an NDA by sharing confidential information must meet the heightened pleading standards of Rule 9(b). In *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, *5 (N.D. Cal. Nov. 3, 2011), the court dismissed the complaint where it alleged only that defendant "disclos[ed] all or a portion of Plaintiff's Confidential Information" without providing any facts about what the information was. *Id.* The court recognized that the information was claimed to be confidential, but stated "Plaintiff should at least provide in general terms the information to which it refers and how Defendants allegedly disclosed that information." *Id.*, n.4. The complaint meets that requirement in Paragraph 31 (and others), and describes DHG sharing the information with others, including Meyer. There is no requirement under Rule 8(a)(2) to detail the communication disclosing the information.

Moreover, paragraph 21.2 of the complaint alleges that through access granted by the DHG NDA, DHG "acquired commercially exploitable and proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, in addition to the Plaintiffs' financial data, especially with respect to existing and potential customers, employees, vendors or suppliers related to Precision's feeders." Paragraph 21.3 alleges that DHG violated the NDA by sharing that information with Meyer, a competitor of Precision. Plaintiffs cannot know exactly how DHG shared that information, or even the full list of people and companies with whom DHG shared the information, without discovery. That is the reason Rule 8(a)(2) requires only that the complaint allege a short and plain statement of the claim rather than requiring a plaintiff to plead

weintraub tobin chediak coleman grodin

weintraub tobin chediak coleman grodin

every detail.

**C. The Complaint Alleges A Claim For Tortious Interference Of Contract With The Meyer NDA**

DHG again argues that the complaint fails to plead the specifics about what confidential information DHG shared with Meyer. DHG ignores Paragraph 42 of the Complaint, which alleges that DHG collaborated "with Meyer to share proprietary information, trade secrets and/or other Confidential Information regarding customers and competitors of Plaintiffs, to share design, cost and pricing information about Precision's rotary feeders, to reverse engineer and develop a Meyer-built replica of Precision's rotary feeders and an accompanying replica set of design drawings of such feeders for future use, to induce and develop a purchaser-seller relationship with Meyer using the pirated design, cost, price and other Confidential Information obtained from Plaintiffs . . . ." As detailed above, this more than meets the requirements of pleading under Rule 8(a)(2).

DHG also contends that the complaint fails to allege DHG's knowledge of the Meyer NDA. Paragraph 41 of the Complaint is clear: "DHG and DHG's Companies knew or had reason to know of the existence and principal terms of the Meyer NDA." This is not a "formulaic recitation of this element," but rather a direct allegation that DHG knew of the existence of the contract between Precision and Meyer, and further knew the principal terms of the contract.

**D. The Complaint Alleges Facts Sufficient To State A Claim For Misappropriation Of Trade Secrets.**

The Complaint alleges misappropriation of trade secrets under both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1835, and the California Uniform Trade Secrets Act, California Civil Code §§ 3426.1 *et seq.* "Courts have analyzed these claims together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). To assert a trade secret misappropriation claim, a plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant misappropriated it, which (3) damaged the plaintiff. *Id.* at 657-58. DHG argues that the Complaint fails to allege the first two elements. DHG is wrong on both counts.

**1. Plaintiffs Have Adequately Alleged Their Trade Secrets.**

"Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020). Rather, the complaint need only "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.*; *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) ("The complaint need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'"). "Trade-secret cases 'start from the important premise that the definition of what may be considered a 'trade secret' is broad.'" *Quintara Biosciences Inc. v. Ruifeng Biztech, Inc.*, 149 F4th 1081, 1087 (9th Cir. 2025) (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020)). As described by the Ninth Circuit, "the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657.

The Complaint alleges the following trade secrets in Paragraph 57: "Plaintiffs were the owners of the services, products, techniques, processes, operations, formulae, product specifications, know-how, compositions, inventions, discoveries, designs, sketches, drawings, cost, market data, pricing, customer data and other Confidential Information relating to the airlock rotary feeders designed, engineered and manufactured by Precision ("Precision's IP"), including those designated as Precision models '18x33,' '16x25,' '302,' and '12x15'." Contrary to DHG's argument, these are not "broad, categorical terms." Rather, they are specifically limited to information "relating to the airlock rotary feeders designed, engineered and manufactured by Precision" and specifies several particular models of rotary feeders. DHG was provided with this information under the protection of the confidentiality provisions of the MOU and the DHG NDA.



weintraub tobin chediak coleman grodin

With regards to whether trade secrets have been sufficiently pled, "the basic test is (1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice of what the theft is about." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1171 (N.D. Cal. 2020). In *Tarantino*, the court concluded that while it was a close call, the trade secrets were adequately identified "particularly because of the specific circumstances involved in [that] case (*i.e.*, a misappropriation in the insurance industry context) . . . ." *Id.* at 1172. The same applies in even greater force here. The industry context at issue here is feeders for blower motors, and in particular airlock rotary feeders – a narrow and specific industry.

Even more fundamentally, it is premature to decide this issue at the pleading stage. "Federal cases analyzing whether a plaintiff's trade secrets are described with "sufficient particularity" typically arise in the battleground of discovery. In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 662. "Whether a trade secret is identified with "sufficient particularity" is a question of fact." *Quintara Biosciences*, 149 F4th at 1087. And "the conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim. Discovery in a trade-secret case, then, requires an 'iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification.'" *Id.* at 1088 (quoting *InteliClear*, 978 F.3d at 662). The CUTSA even expressly recognizes that the trade secrets will not be set forth with "reasonable particularity" in the complaint, and does not require such until before commencing discovery. Cal. Code Civ. Proc. § 2019.210. None of this could be true if the trade secrets were required to be identified with "reasonable particularity" in the complaint. Rather, as recognized by the Ninth Circuit and the CUTSA, the actual identification of the trade secrets with "reasonable particularity" takes place after the pleadings are at issue, a protective order is in place to preserve the confidentiality of the more fulsome description of the trade secrets, and is refined during discovery. *Meggit San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014) (defendants "cite no state authority for the proposition



weintraub tobin chediak coleman grodin

weintraub tobin chediak coleman grodin

that Meggitt SJC should have identified the particular trade secrets *at the pleading stage.* Rather, the authorities on which they rely simply require a plaintiff to identify a trade secret "with reasonable particularity" prior to commencing discovery."). California courts agree. *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005) ("at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate"). The complaint sufficiently alleges the trade secrets to permit that process here.

DHG also argues that Plaintiffs' trade secrets cannot be secret because the feeders Plaintiff produces were sold publicly. This would, of course, eviscerate the entire field of trade secret protection. DHG cites *Gregoire Alexandre Gentil v. Wingfield GmbH*, 2021 WL 4979427 (N.D. Cal. March 2, 2021) for this proposition. However, in *Gentil*, the fact that the product was sold publicly was only part of the court's reasoning. The court also relied on the fact that Gentil also filed a patent application, which was granted, which destroyed any trade secret protection in favor of the protection afforded by the patent. *Id.*at *5. Moreover, trade secret protection is lost by public sale only if the alleged trade secret is "*fully* disclosed by the products produced." *Id.* That is not the case here, as demonstrated by the fact that Meyer required not only the feeder but also additional confidential information DHG received from Plaintiffs through the use of the DHG NDA which DHG provided to Meyer to reverse engineer the feeder. Complaint, ¶ 21.6, 31, 37. This is similar to *Gentil* where the interior workings of the product did not fully disclose the trade secret through sale, but only the dimensions and general description. The interior workings were disclosed through the utility patent Gentil obtained. *Gentil*, 2021 WL 4979427 at *5.

Finally, DHG argues that Plaintiffs took no steps to ensure their trade secrets remained secret. DHG ignores paragraph 58 of the complaint, which alleges:

> 58. At the time of the misappropriation of Precision's IP by Defendants, Precision's IP constituted "trade secrets" which were unknown to anyone other than Plaintiffs, over which Plaintiffs exercised exclusive control, which had independent economic value because of such secrecy and Plaintiffs' control, and

which Plaintiffs took extensive and reasonable steps to protect from disclosure to third parties not authorized by Plaintiffs to receive such information.

Again, this allegation meets the requirements for pleading under Rule 8(a)(2). Plaintiffs have sufficiently alleged ownership and protection of their trade secrets.

**2. DHG Misappropriated Plaintiffs' Trade Secrets.**

DHG argues that Plaintiffs failed to adequately allege that DHG misappropriated Plaintiffs' trade secrets because the complaint fails to allege "when or how any information was shared, or what information was shared." Motion to Dismiss, p. 22. Thus, DHG is attempting to impose the heightened pleading standards of Rule 9(b) where they do not apply. Plaintiffs allege that DHG "improperly acquired, used, and disclosed to third parties not authorized to receive such information, Precision's IP, trade secrets and other confidential information through the acts, omissions and conduct alleged in paragraphs 21, 21.1 through 21.8, 23, 23.1 through 23.3." Complaint, ¶ 59. Plaintiffs were not required to repeat the allegations in those paragraphs, or allege the "who, what, when, where and how" in pleading misappropriation. Rule 8(a)(2) does not impose such an obligation, and Plaintiffs' misappropriation of trade secrets claim is governed by that Rule.

**E. The Complaint States A Claim For Unfair Competition.**

California's Unfair Competition Law prohibits business acts that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" that "offers an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). "The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 561 (1999)).

DHG argues only that the claims alleged in the complaint are an impermissible "shotgun pleading." They are not. Each of the claims, Counts Seven, Eight and Nine, incorporate by reference each of the previous allegations in the complaint. Complaint, ¶¶ 64, 68, and 71. The allegations in the complaint, as explained above, detail DHG's misappropriation of Plaintiffs'



weintraub tobin chediak coleman grodin

trade secrets in violation of both Federal and California law, satisfying the unlawful prong of the UCL. "By proscribing 'any unlawful' business practice, 'Section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (quoting *State Farm Fire & Casualty Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (1996)). The UCL's "coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Id.* (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993)).

The complaint alleges that DHG's business practices described throughout the complaint, including misappropriating and using Plaintiffs' trade secrets to steal Plaintiffs' feeder designs and engage Meyer to produce the feeders using Plaintiffs' trade secrets, violated Federal and California law. That is more than sufficient to allege a claim of an unlawful business practice in violation of California's UCL. Cal. Bus. & Prof. Code § 17200.

Count Nine alleges the second prong of California's UCL – an unfair business practice. "This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. [Citation.] The test of whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *State Farm*, 45 Cal. App. 4th at 1103-04. California courts have used the unfairness prong to "enjoin deceptive or sharp practices." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999). The Ninth Circuit "defines 'unfair' conduct as that which 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Donadio v. Hyundai Motor America*, 751 F. Supp. 3d 1013, 1022-23 (C.D. Cal. 2024) (quoting *Hodson v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018)).

The allegations in the complaint, detailing DHG's scheme to enter into the DHG NDA under false pretenses to obtain Plaintiffs' trade secrets and use them to produce copycat feeders for its blowers, certainly meets the Ninth Circuit's definition of unfair conduct. This same conduct satisfies the UCL's third prong of fraudulent business practices. Plaintiffs have stated claims under all three prongs of Section 17200. DHG's motion must be denied.



weintraub tobin chediak coleman grodin

**F. The Complaint States A Claim For Intentional Misrepresentation.**

DHG argues that the complaint fails to meet the heightened pleading standard of Rule 9(b) for pleading claims sounding in fraud. Specifically, DHG argues that Plaintiffs failed to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. Motion to Dismiss, at 24. DHG is wrong. As alleged in the complaint, these representations were made in writing in both the MOU and the DHG NDA. Moreover, both documents are attached to the complaint, so the representations, including who made them, their authority to speak, what they said and when they said it, are all included verbatim in the complaint.

The complaint also alleges that DHG had no intention of ever licensing Precision's designs, engineering and/or other aspects of Precision's IP and trade secrets. Complaint, ¶ 76. Even under Rule 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b). The complaint alleges that DHG obtained Plaintiffs' trade secret information regarding its business and feeder designs through the MOU and DHG NDA for the purpose of a transaction between the two companies. But rather than proceeding with any such transaction, DHG made a proposal which it knew were commercially unreasonable and which were rejected by Plaintiffs. Complaint, ¶ 21.7. Rather, DHG engaged Meyer to use Plaintiffs' trade secret information and designs to copy Plaintiffs' feeders and bought them from Meyer. *Id.*, ¶ 21.6, 21.8. These facts, and others alleged in the complaint, are sufficient to allege DHG's intent generally in accordance with Rule 9(b).

## IV. CONCLUSION

DHG's motion to dismiss should be denied. Plaintiffs' complaint adequately pleads and states valid claims for each claim in the complaint. Plaintiffs request that the parties be permitted to enter into a stipulated protective order to submit to the Court, Plaintiffs be permitted to comply with the requirements of California Code of Civil Procedure § 2019.210 to identify its trade secrets with reasonable particularity prior to discovery, and discovery should proceed. Should the Court determine that any of Plaintiffs' claims fail to meet the appropriate pleading standard, Plaintiffs request leave to file an amended complaint addressing any issues identified by the Court.

Dated: October 23, 2025

**Weintraub Tobin** Chediak Coleman Grodin Law Corporation

By: /s/ W. Scott Cameron
W. Scott Cameron

Attorneys for Plaintiffs PMM Holdings, LLC and Precision Machine & Manufacturing

**weintraub tobin** chediak coleman grodin