Zachary M. Smith, State Bar No. 78241
W. Scott Cameron, State Bar No. 229828
**Weintraub Tobin** Chediak Coleman Grodin
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    916.558.6000
Facsimile:     916.446.1611
Email: ZSmith@weintraub.com
            SCameron@weintraub.com

Attorneys for Plaintiffs
PMM Holdings, LLC and Precision
Machine & Manufacturing

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMM HOLDINGS, LLC and PRECISION MACHINE & MANUFACTURING,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,<br><br>Defendants. | Case No.: 2:25-cv-02005-CSK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION**<br><br>Date:   November 18, 2025<br>Time:   10:00 a.m.<br>Ctrm:   25<br><br>Complaint Filed: July 17, 2025 |

Plaintiffs PMM Holdings, LLC ("PMM Holdings") and Precision Machine & Manufacturing ("Precision"), together "Plaintiffs," hereby submit to Judge Magistrate Chi Soo Kim, of the U.S. District Court for the Eastern District of California (the "Court") the following points and authorities in opposition to Defendant William W. Meyer and Sons, Inc.'s Motion to Dismiss Complaint Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (the "Motion").

///

///

///

## I. INTRODUCTION

*Movant's Contentions*

Defendant William Meyer and Sons, Inc. ("Meyer") claims that it has insufficient connection to California to be answerable to this Court in Plaintiffs' diversity action against Meyer and DHG, Inc. alleging that the Defendants combined to damage California domiciliary PMM Holdings, LLC by misappropriating Plaintiffs' trade secrets concerning their revolutionary airlock feeder designs, engineering, manufacturing processes, and critical pricing and cost information in an effort to eliminate Plaintiffs as competitors and thereby monopolize the feeder business globally and nationally including California.

Meyer's efforts to avoid prosecution in California are apparently placed on the misguided notion that Meyer's supposed lack of "physical presence" with "no employees, no warehouse, and no facilities of any nature in California"[1] and Meyer's denial of "directing activities toward California" (ECF 23, Motion, 2:12-13 and 8:23-10:23) somehow makes Meyer immune from suit in this Court.

*Plaintiffs' Contentions*

Meyer's Motion should be denied. Meyer's affirmative actions directed toward California residents and their property surpass by a wide margin the "minimum contacts" with California so that imposition of jurisdiction does not offend "traditional notions of fair play and substantial justice" as the constitutional standard established by *International Shoe Co. v. Washington, 326 U.S. 310, 316* (1945) and observed by more recent rulings such as *McGee v. International Life Ins. Co.*, 355 U.S. 220, 221-223 (1957) ("*McGee*") and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-476 (1985) ("*Burger King*").

Meyer's President and CEO, Charlie Meyer, admits that Meyer contracts with a representative to sell Meyer's products in California and garners "3-4%" of its overall annual sales revenue from California sales. Meyer Decl., ¶ 4, 2:11-13. Whether Meyer's pursuit of business in California is sufficiently systematic and plentiful to establish the general jurisdiction of California

---

[1] ECF 23-1, "Declaration of Charles Meyer in Support of Meyer's Motion to Dismiss Complaint Pursuant to Rule 12(b)(2) Lack of Personal Jurisdiction" ("Meyer Decl."), ¶ 4, 2:10-11

courts over Meyer may be subject to question and require discovery to ascertain. However, there should be no dispute that Meyer, (as well as DHG), is subject to the specific jurisdiction of California's federal courts which flows from their purposeful efforts to acquire—or at least impair, if acquisition did not occur—the value of Precision, Defendants' direct competitor, as property held and managed in California by California residents.

It is irrelevant to responsible analysis of the jurisdictional issue that Meyer claims to have no presence, employees or facilities in California and to have refrained from any physical activity within the state in connection with the NDA. As the United States Supreme Court explained in *Burger King*, *supra*, at 476, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

It is equally irrelevant that the proposed acquisition of Precision from PMM Holdings and the accompanying non-disclosure agreements may be characterized by Meyer and others as part of a single event or unconsummated transaction. Again, according to the Supreme Court, even a single purposeful transaction or event instigated by a non-resident, but affecting a forum state domiciliary, can confer jurisdiction on the forum state's federal courts. *Burger King v. Rudzewicz* (1985) 471 U.S. 462 ("*Burger King*") at 475-476.

*A fortiori*, a sustained, multi-faceted campaign on the part of Meyer, as summarized in Plaintiffs' Complaint in the declarations of Don Lindsey and Jose Blanco filed herewith,[2] to convince Precision's owners that Meyer was genuinely interested in acquiring Precision in order to acquire or devalue such property and harm California residents through misappropriation and use of confidential information and unfair competition establishes California jurisdiction.

Thus, what *does* matter is that Meyer intentionally assured PMM Holdings and its "equity holders" (California residents) that it would hold its proprietary information and trade secrets in the

---

[2] Please see the "Declaration of Don Lindsey in Support of Plaintiffs' Opposition to Defendant William W. Meyer and Sons, Inc.'s Motion to Dismiss Complaint" ("Lindsey Decl.") and the "Declaration of Jose Blanco in Support of Plaintiffs' Opposition to Defendant William W. Meyer and Sons, Inc.'s Motion to Dismiss Complaint" ("Blanco Decl.").

utmost confidence and not *use* the information for any purpose other than to evaluate a potential acquisition of Precision's stock from such equity holder and then turned around and used such information for the unauthorized purpose of diverting the blower truck rotary airlock feeder business from Precision and its owners to itself.

## II.     PERTINENT FACTS

In the case at hand, it is not contested and cannot be contested that:

A.     <u>In 2021 and 2022, Meyer initiated contact and discussion with Precision's California owners "purposefully,"</u> i.e., for the expressed purpose of acquiring Precision from them. Lindsey Decl., ¶¶ 1-5, 7, 9 and 10 and Exh. A to Lindsey Decl.; and Blanco Decl., ¶¶ 1-5.

B.     In 2023, Meyer and DHG discussed Precision's ownership of the Precision-designed feeders and agreed that Meyer would generate a "prototype" knock-off of Precision's 302 model feeder for use by DHG's subsidiary, Finn Company, *before* Meyer made its renewed representation in 2024 that Meyer was interested in acquiring Precision from PMM Holdings. Meyer Decl., ¶¶ 5-7; Lindsey Decl., ¶¶ 8-11 and 17; and Blanco Decl., ¶¶ 7 and 8.

C.     Meyer committed to protect Plaintiffs' "Confidential Information" (defined as including trade secrets) in connection with their purported interest in acquiring Precision from PMM Holdings by entering into a "Confidentiality Agreement" (the "Meyer NDA") on May 7, 2024 (ECF 1, Complaint, ¶¶ 17 through 18.4 and Exhibit 3 to Complaint) promising to Precision (as "the Company" potentially to be acquired) "<u>and its equity holders</u>" to not disclose or *use* the "Confidential Information" for any purpose other than for Meyer's evaluation, negotiation, documentation or consumption of a proposed acquisition of Precision. ECF 1, Complaint, ¶¶ 17-18.4, 21.2, 21.3, and 21.7, and "Confidentiality Agreement," designated as Exhibit 3 to Complaint and as Exhibit 4 to Charles Meyer's Declaration[3] Sec. 1 "Purpose," Sec. 2 "Confidential Information" and Sec. 3 "Disclosure and Use Restrictions"; Blanco Decl., ¶¶ 7 through 9; Lindsey Decl. ¶¶ 11 through 15.

---

[3] Although not yet filed, the Confidentiality Agreement (Meyer NDA) has been lodged with the Court in connection with Plaintiffs' request to seal such document and Meyer's unopposed request to seal the exhibits to Charles Meyer's declaration in support of its motion to dismiss Plaintiffs' complaint.

D.  Only after acquiring the Confidential Information Mr. Meyer was allowed by Precision's California-domiciled "equity holders" to obtain through his receipt of the initial "Confidential Information Memo April 2024" ("CIM"), and related income statements (Lindsey Decl., ¶¶ 11 and 12), through his guided tour of Precision's manufacturing facilities and processes and (Lindsey Decl., ¶¶ 13-15), and through his enormous download of the cost, pricing and other financial data relevant to blower truck feeders from the VDR (Lindsey Decl., ¶¶ 18 and 21), was Meyer able to secure an order for 60 of the Precision-designed 302 model feeders at a price DHG/Finn was willing to pay.  Lindsey Decl., ¶¶ 21 through 24.

E.  The financial records consisting of the bulk of the downloaded information are maintained by PMM Holdings and the management of Precision in California as well as in Oregon (Lindsey Decl., ¶¶6 and Blanco Decl., ¶ 6) and were able to be accessed by Meyer only because of Mr. Meyer's false promises to Precision and its equity holders in California as to the limited use to which Meyer would put the proprietary information.  Exhibit 4 to Charles Meyer's Declaration Sec. 1 "Purpose," Sec. 2 "Confidential Information" and Sec. 3 "Disclosure and Use Restrictions"; Blanco Decl., ¶¶ 7 through 9; Lindsey Decl. ¶¶ 11 through 15.

### III.  LAW AND ARGUMENT

**A. Legal Standards for Motion to Dismiss Under Rule 12(b)(2) Require Only That Plaintiffs Make a Prima Facie Case as to Personal Jurisdiction and Plaintiffs Have Done So**

In response to Meyer's Motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs have the burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). To meet that burden, Plaintiffs need only make a *prima facie* showing of jurisdictional facts alleged in the Complaint or presented by affidavit (declaration). *Rodriguez v. Aquatic Sales Solutions LLC*, 735 F. Supp.3d 1208, 1215-1216 (U.S. Dist. Ct., C.D. California, 2024) ("*Rodriguez*"); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

///

Plaintiffs' version of the facts must be taken as true for purposes of the Motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in Plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Rodriguez*, *supra*, at 1216. Meyer submits the Declaration of Charlie Meyer in conjunction with the Motion but the declaration does not contradict or conflict with any allegation of the Complaint or the declarations of Don Lindsey or Jose Blanco. More specifically, Mr. Meyer does not deny or contradict any of these critical jurisdictional facts: the actions he or his company took to (1) solicit the potential purchase of Precision from its California owners, (2) thereafter unsuccessfully negotiate the purchase of Precision with such California owners through their agent, Crown Point, (3) acquire access to Plaintiffs' Confidential Information, including trade secrets, through assumption of continuing obligations to Plaintiffs under the terms of the Meyer NDA, (4) use the acquired Confidential Information in violation of the Meyer NDA to divert business and economic benefit from Plaintiffs to Meyer; and thereby (5) harm Precision and its owners, California docilliaires PMM Holdings and its members.

Mr. Meyer's claim that he had "no knowledge that PMM Holdings was a California domiciliary" doesn't directly conflict with the uncontradicted fact that he *knew* that the majority equity holders and ultimate decision-makers concerning a sale of Precision and/or its assets were the principals of CVF Partners, one of whom he managed to locate in California and discuss the potential acquisition of Precision with in 2021 and 2022. Lindsey Decl., ¶¶ 1-5, 7, 9 and 10; and Blanco Decl., ¶¶ 1-5; *see also*, Exhibit 5 to Meyer Decl., "Confidential Information Memo April 2024" ("CIM"), p. 9 (PDF p 12), "Ownership Transaction Objectives," ["CVF Capital Partners 64% Ownership"] and Exhibit 6 to Meyer Decl., "Management Presentation for: Meyer," p. 7 (PDF p. 10), "Company History" ["2014-Company sold to CVF, et al.'] and p. 19 (PDF p.22), "Org. Chart" showing ["CVF Partners -Board of Directors].[4]

///

---

[4] Like the Meyer NDA, Exhibits 5 and 6 to the Meyer Declaration have been lodged with the Court in connection with Meyer's unopposed request to seal the exhibits to Mr. Meyer's declaration in support of Meyer's Motion.

Even if Meyer's protestations of lack of knowledge are accorded sufficient credibility to create contradiction of, or conflict with, Plaintiffs' evidence that he knew he was dealing with California-based CVF Partners throughout 2021-2025, that conflict must be resolved in Plaintiffs' favor as a matter of law.  E.g., *Rodriguez*, *supra*, at 1216.

### B. Meyer's Contacts with California Meet the Constitutional Standards of Due Process for Personal Jurisdiction as to Meyer

In general, personal jurisdiction over a defendant exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-1155 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops*., 103 F.3d 888, 893 (9th Cir. 1996)).

California's long-arm statute states: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code. Civ. Proc.§ 410.10. Thus, because California's long-arm jurisdictional statute is coextensive with federal due process requirements, jurisdictional analysis under state and federal law are the same. *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

As already noted in the parties' briefing, the Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" *International Shoe*, *supra*, at 316. and personal jurisdiction under a long-arm statute can be characterized as "general" or "specific."  Motion, 6:13-8:22 and *Rodriguez*, *supra*, at 1216.

#### 1. The Court Has Specific Personal Jurisdiction as to Meyer

In the case at hand, "minimum contracts" personal jurisdiction as to Meyer is "specific" due to Meyer's purposeful direction of activities to consummate transactions with California residents, such as entering into the Meyer NDA contract and attempting to purchase the stock of Precision from its California owner(s) (Meyer's contractual activities) and Meyer's actions in gaining access to Plaintiffs' trade secrets and other Confidential Information through the ruse of the Meyer NDA and then misappropriating such secrets by using them to divert DHG/Finn's business to Meyer in

///

violation of both the Meyer NDA and unfair competition laws to the damage and detriment of Plaintiffs (Meyer's tortious activities).

Meyer's Motion contends that the alleged facts do not demonstrate sufficient intentionality of Meyer's actions to meet the "purposeful ailment" or "purposeful direction" standards recited in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004). *See*, Motion, 9:11-10:13. That contention relies on faulty factual assumptions and assertion as to four interrelated points.

### a. Meyer's claim of No Knowledge of a California Domiciliary is False; Meyer knew it Was Dealing with California Equity Holders

The first is that there was no reference to California in the NDA documentation, the initial CIM or the Management Presentation "[s]o Meyer could not have known it was even dealing with a California domiciliary" and "[t]herefore, Meyer did not commit an intentional act aimed at California. Motion, 9:20-21. This argument ignores the incontestable fact that Meyer reached out to CVF Partners in California in 2021 with expressed specific intent to enter into a contract to buy Precision from them. Pertinent Fact "A"; Lindsey Decl., ¶¶ 1-5, 7, 9 and 10 and Exhibit A to Lindsey Decl.; and Blanco Decl., ¶¶ 1-5.

### b. Meyer's Aim at California Was Intentional

Contrary to Meyer's Motion's claim that "there would be no reason for Meyer to even consider California as an appropriate forum" (Motion 9:22) there was every reason for Meyer to aim at California and consider that it might be a judicial forum into which Meyer might be haled when Charlie Meyer signed the NDA and gathered Precision's trade secrets and Confidential Information in 2024. Whether Meyer genuinely intended to buy Precision or simply entered into the Meyer NDA in order to gain access to Precision's proprietary information, its CEO and President knew from his 2021-2022 experience that the individuals and entities Meyer would have to convince to allow him access to Precision's proprietary information, or contract with to purchase Precision, or litigate with if Meyer disclosed, misused or otherwise misappropriated such proprietary information were in California, not in Oregon, Illinois or any other state. Stated another way, Meyer could not have aimed anywhere else to accomplish Meyer's stated or undisclosed goals and therefore could not have reasonably expected to end up in any other forum to enforce its rights or

defend any allegations of breach of duty in its dealings with Precision and PMM Holdings and their equity holders.

In short, what could be more purposeful that directing activity toward the California domiciled entity and individuals who both owned and controlled the property that Meyer wished to acquire either through contract or tortious misconduct?

### c. Meyer's Unilateral Conduct Created the Connection to California

Meyer's Motion claims PMM Holdings "is relying on its own connection to California to support jurisdiction, not any action taken by Meyer which is 'expressly aimed' at California. Motion, 10:7-9. That assertion is a dramatic misunderstanding of the jurisdictional facts alleged in the Complaint and described in more detail in the declarations of Don Lindsey and Jose Blanco.

The status of the equity holders of Precision and PMM Holdings as California domiciliaries are static facts which pre-dated any activity related to the Complaint and which in and of themselves do not create any connection between Meyer and California. <u>It is entirely Defendants' conduct which forms the necessary connection to California as the forum</u> state and upon which the Court's jurisdictional analysis should be focused. As detailed above, it was Defendant Meyer who first reached out to the owners of Precision in California; it was Defendant Meyer who, by agreeing to the Meyer NDA, induced Plaintiffs to share their Confidential Information, including trade secrets, with Meyer; it was Defendant Meyer who misappropriated and used such propriety information to build its business in violation of the restricted purpose of the NDA; and it was Meyer who inflicted harm on Plaintiffs through such misconduct.

### d. Exercising California's Jurisdiction over Meyer Comports with Fair Play and Substantial Justice

In view of the ample evidence of Meyer's purposeful injection in to the forum reviewed in connection with points a, b and c above, and the lack of any meaningful increase in burden on Meyer or judicial efficiency in conducting the litigation in the only realistic alternative jurisdiction,

///

///

///

1  Oregon,[5] coupled with California's interest in administering justice in disputes involving its citizens,
2  Meyer cannot meet its burden to "present a compelling case that the exercise of jurisdiction would
3  not be reasonable." *Schwarzenegger, supra,* at 802.
4        In fact, dismissing the complaint would be entirely unreasonable and be a waste of party and
5  judicial resources as the litigation would be divided into two different jurisdictions since co-
6  Defendant DHG consented to this Court's jurisdiction in the DHG NDA.

## IV. CONCLUSION

Based on the reasons and legal authority set forth in this opposition, Plaintiffs respectfully request the Court to deny Meyer's Motion.

Dated: October 23, 2025

**Weintraub Tobin** Chediak Coleman Grodin
Law Corporation

By: /s/ Zachary M. Smith
     Zachary M. Smith

Attorneys for Plaintiffs PMM Holdings, LLC and Precision Machine & Manufacturing

---

[5] Although Plaintiffs understand the reference to the "Company" in the Meyer NDA's consent to jurisdiction provision (section 11) to include Precision's equity holders, even if the reference is interpreted as referring only to Precision, jurisdiction is established in Oregon and Illinois is not an alternative.