Michael A. Xavier (OH Bar No. 0097121 - Admitted pro hac vice)
michael.xavier@dinsmore.com
**DINSMORE & SHOHL LLP**
1775 Sherman Street, Suite 2600
Denver, CO 80215
Tel: (303) 831-6980

Arielle I. Goren (SBN 331822)
arielle.goren@dinsmore.com
**DINSMORE & SHOHL LLP**
550 South Hope Street, Suite 2800
Los Angeles, CA 90071
Tel: (213) 596-0010
Fax: (619) 400-0501

*Attorneys for Defendant DHG, INC.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO COURTHOUSE

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,<br><br>Defendants. | Case No. 2:25-cv-02005-CSK<br><br>**DEFENDANT DHG INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: November 18, 2025<br>Time: 10:00 a.m.<br>Courtroom 25, 8th floor<br><br>Complaint Filed: July 17, 2025<br>Trial Date: None Set<br><br>Magistrate Judge: Hon. Chi Soo Kim |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

   A. Precision's pleading of breach of contract is impermissibly conclusory (Count One). .........1

   B. The Complaint fails to plead tortious interference with the Meyer NDA (Count Three). .....4

   C. The Complaint fails to identify any trade secrets or plead misappropriation of trade secrets (Count Six)....................................................................................................................5

      1. Precision fails to sufficiently identify any trade secrets. ......................................................5

      2. Precision fails to plead any facts to plausibly show any supposed trade secret gets trade secret protection. ..................................................................................................................7

      3. Precision insufficiently pleads misappropriation. ................................................................7

   D. Counts Seven through Nine fail to state claims. .................................................................8

   E. The Intentional Misrepresentation claim fails Rule 9 (Count Ten). ....................................9

III. CONCLUSION ..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005)...............7

*Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-EMC, 2016 U.S. Dist. LEXIS 170194, at *10–12 (N.D. Cal. Dec. 8, 2016) ...................................................................................................................3

*Ashcroft v. Iqbal*. *See* 556 U.S. 662, 278 (2009) ........................................................................4, 7, 9

*Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ................................................................10

*Carl Zeiss Meditec v. Topcon Med. Sys.*, No. 19-4162 SBA, 2019 U.S. Dist. LEXIS 236339, at *7–12, *19–20 (N.D. Cal. Nov. 13, 2019)...........................................................................................3

*Cisco Systems v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020)..............................................5

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)..............4

*Guzzetta v. Ford Motor Co.*, No. 21-cv-09151-MEMF, 2023 U.S. Dist. LEXIS 145786, 2023 WL 5207429, at *17 (C.D. Cal. July 3, 2023) ...........................................................................................10

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012).......10

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ...................................................................3

*Nifty Techs., Inc. v. Mango Techs., Inc.*, No. 24-CV-194 JLS (AHG), 2025 U.S. Dist. LEXIS 126421, at *10-11 (S.D. Cal. July 1, 2025) ..........................................................................................8

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990-91 (S.D. Cal. 2012)............2, 3, 5, 6, 7, 8

*San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014) ..........................6

*Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *4-5, *6 (N.D. Cal. Feb. 16, 2017)....................................................................................................................................3

*Sylabs, Inc. v. Rose*, No 23-cv-00849-SVK, 2024 U.S. Dist. LEXIS 83909, at *23 (N.D. Cal. May 8, 2024) ..............................................................................................................................................9

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556 at *11–16..........................................................................................................................................5, 6

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-cv-01924-SC, 2013 U.S. Dist. LEXIS 138896 ......9

**Rules**
18 U.S.C. § 1839(3) ........................................................................................................................6, 7
Cal. Civ. Code, § 3426.1(d) ............................................................................................................6, 7
Federal Rule of Civil Procedure 12(b)(6) ............................................................................................8

## I. INTRODUCTION

Defendant DHG, Inc. ("DHG") moved to dismiss all of Plaintiff Precision Machine and Manufacturing's ("Precision") claims against DHG, as pled in the Complaint [Doc. No. 1].[1] *See* Motion to Dismiss [Doc. No. 27] (the "Motion"). Those claims include: (A) Count One—breach of the January 2024 Non-Disclosure Agreement between DHG and Precision (the "DHG NDA"); (B) Count Three—tortious interference with the May 2024 Confidentiality Agreement between Defendant William W. Meyer and Sons, Inc. ("Meyer") and PMM/Precision (the "Meyer NDA"); (C) Count Six—trade secret misappropriation; (D) Counts Seven, Eight, and Nine—other unspecified torts; and (E) Count Ten—intentional misrepresentation. *See* Compl., ¶¶ 28–33, ¶¶ 39–43, ¶¶ 56–81.

Precision opposes the Motion. *See* Opposition to DHG's Motion to Dismiss [Doc. No. 34] (the "Opposition"). However, for the reasons stated in the Motion and further discussed below, Precision's pleading is defective as to each claim, and Precision's arguments in the Opposition lack merit. The Court should grant DHG's Motion and dismiss Counts One, Three, Six, Seven, Eight, Nine, and Ten against DHG.

## II. ARGUMENT

**A.    <u>Precision's pleading of breach of contract is impermissibly conclusory (Count One).</u>**

The DHG NDA's definition of "Confidential Information" does not cover whatever Precision whims. For information that is not "Transaction Information" as defined in Section 4, the DHG NDA only protects information that (1) DHG received from Precision; (2) is within Section 1's listed items; and (3) is not within Section 2's exceptions. *See* Mot. at 10:17–12:1 (discussing Compl., Ex. 2, §§1–2). To satisfy Federal Rule of Civil Procedure 8, Precision must plead facts that plausibly show that the information Precision now seeks to sue over—whatever it may be—is within the DHG NDA's protections, and that DHG breached the agreement by disclosing that information. *See id*. Precision's breach claim fails because it does not sufficiently identify what information DHG supposedly took, let alone facts that plausibly show that such information is protected or that DHG disclosed it. *See*

---

[1] Like in the Motion, DHG makes specific reference to Precision as the party asserting claims against DHG, as Precision, not Plaintiff PMM Holdings, LLC ("PMM"), was party to the agreements with DHG and its affiliates, Finn Corporation ("Finn") and Express Blower, Inc. ("EB"). *See* Mot. at 7, n. 2.

Mot. at 12:2–14:18. Each of these defects is independent reason for dismissal.

According to Precision, DHG applies an "unreasonably narrow definition of 'Confidential Information'" that "does not include any of Plaintiffs' intellectual property, designs, and trade secrets," and it would be "inconceivable" that Precision would not protect its "most precious secrets." Opp. at 9:18–26. DHG never makes that argument, and Precision misses the point because it says nothing about the actual terms of the definition of "Confidential Information" that limit what the DHG NDA protects. *Compare* Compl., Ex. 2, §§1–2. Nor does the Complaint allege any facts that plausibly show that any information DHG supposedly disclosed—whatever it might be—fits within Section 1's scope and is outside Section 2's exclusions. It only refers to unspecified "trade secrets" and other unspecified, generic terms. *See* Compl., ¶ 21, ¶ 21.1, ¶ 21.2, ¶ 21.3, ¶ 21.6, ¶ 21.8, ¶ 23.3, ¶ 27, ¶ 30, ¶ 31; *see also* Mot. at 12:3–20. In other words, the problem for Precision is not that the DHG NDA protects nothing. It is that Precision fails to plausibly plead that any information DHG supposedly disclosed to someone else qualifies as information protected by the DHG NDA.[2]

Precision argues it is not required to identify any confidential information beyond its list of broad, generic categories in Paragraphs 31 and 21.2 of the Complaint. *See* Opp. at 10:27–11:7, 11:19–24. But Precision fails to explain how its unspecified list is more than "boilerplate allegations", which are considered insufficient under Rule 8. Particularly where the definition of Confidential Information is limited. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990-91 (S.D. Cal. 2012) (dismissing claim that failed to plead "what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the [confidentiality] agreements.").[3] As

---

[2] The allegations in the Complaint further suggest that any Precision "designs" are excepted under Section 2 of the DHG NDA because they were in DHG's possession before the DHG NDA existed. *See* Mot. at 27:7–15. Precision argues that, despite that express exclusion in Section 2, such information is "not covered by any exclusion" because the Memorandum of Understanding (the "MOU") between Precision and DHG's affiliates, Finn and EB, supposedly prohibited disclosure of that information. *See* Opp. at 10:22–26. That reasoning fails for multiple reasons. DHG is not party to the MOU. *See* Compl., Ex. 1, p. 1. And, even if it was, the MOU only requires the parties "to protect [information] with the same care they safeguard other information about their respective businesses." *See id.*, p. 4. The Complaint makes no suggestion that DHG or its affiliates failed to do that.

[3] Precision criticizes DHG for seeking to apply Federal Rule of Civil Procedure 9 heightened pleading standards to this claim (Opp. at 10:27-11:18), but DHG makes no such application. The claim fails Rule 8. *See* Mot. at 8:11–9:1 (stating the Rule 8 pleading standard).

the Motion explains, the Complaint fails to put DHG on notice as to what information it allegedly misappropriated and lacks enough detail to apply Sections 1 and 2 of the DHG NDA to determine whether that information is protected. *See* Mot. at 12:3–13:15; *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Without at least that level of detail, Precision's allegations are only unadorned conclusory statements that some set of unspecified information is subject to the DHG NDA, and Precision's Opposition lacks availing arguments to the contrary. Courts consistently dismiss claims for breach of non-disclosure obligations in such instances. *See Pellerin*, 877 F. Supp. 2d at 990-91; *Carl Zeiss Meditec v. Topcon Med. Sys.*, No. 19-4162 SBA, 2019 U.S. Dist. LEXIS 236339, at *7–12, *19–20 (N.D. Cal. Nov. 13, 2019); *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *4-5, *6 (N.D. Cal. Feb. 16, 2017); *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-EMC, 2016 U.S. Dist. LEXIS 170194, at *10–12 (N.D. Cal. Dec. 8, 2016); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 U.S. Dist. LEXIS 127397, at *15–17 (N.D. Cal. Nov. 3, 2011).

The Complaint also fails to plead facts sufficient to plausibly show DHG shared any protected information with Meyer. *See* Mot. at 12:21–13:6. Precision points to Paragraph 21.3. *See* Opp. at 11:24–12:1. But that paragraph only alleges that DHG shared some unspecified confidential information with Meyer, without any indication as to what information DHG supposedly shared or any fact plausibly leading to the conclusion that DHG actually shared protected information. *See* Compl., ¶ 21.3. As such, the allegation that DHG impermissibly shared information remains unsupported and conclusory. That DHG did business with Meyer, by itself, falls short of the requisite support. *See Artec*, 2016 U.S. Dist. LEXIS 170194, at *10–12 (allegation of business with a third party insufficient to support conclusion of disclosure); *Space Data*, 2017 U.S. Dist. LEXIS 22571, at *4–5, *6 (allegation that defendant "engaged in other business activity" with confidential information insufficient to support conclusion of disclosure).

Finally, to the extent Precision intends to rely on the allegations that DHG "inform[ed] third parties" that Precision and DHG were contemplating a transaction, that position also fails. *See* Opp. at 8:6–9, 9:25–10:16. The Complaint never says who DHG supposedly told about the potential

1  transaction (or who may have done the telling, for that matter), and never alleges any other underlying
2  facts related to that contention. *See* Mot. at 13: 16–17, 14:13–16. Nor does Precision allege facts
3  plausibly showing any damages from any such supposed disclosure. *See generally*, Complaint. Here
4  too, the Complaint's allegations are no more than "threadbare recitals of the elements of a cause of
5  action, supported [only] by mere conclusory statements" that do not state a claim under *Ashcroft v.*
6  *Iqbal*. *See Iqbal*, 556 U.S. 662, 278 (2009).

   As Precision has failed to offer any arguments to the contrary, the Court should dismiss
8  Precision's breach of contract claim (Count One).

9  **B.     The Complaint fails to plead tortious interference with the Meyer NDA (Count Three).**

10  Precision's claim that DHG tortiously interfered with the Meyer NDA fails because the
11  Complaint lacks factual allegations that would plausibly show either that any information Meyer
12  supposedly shared with DHG was protected by the Meyer NDA, or that DHG knew of the Meyer
13  NDA's terms during any alleged interference. *See* Mot. at 14:19–16:2. Precision responds that
14  Paragraph 42 of the Complaint identifies the supposedly confidential information. *See* Opp. at 12:4–
15  12. But that paragraph does not specify what information Meyer supposedly shared with DHG in
16  breach of the Meyer NDA. *See* Compl., ¶ 42. Rather, it only refers to unspecified "proprietary
17  information, trade secrets, and/or other Confidential Information regarding customers and
18  competitors," without any facts that support the conclusion that any particular information, whatever
19  it may be, is protected by the Meyer NDA such that its disclosure would be an actual breach or
20  disruption of that contract to ground Precision's claim. *Id.*; *see* Compl., Ex. 3, § 2 (defining
21  "Confidential Information" subject to the Meyer NDA); *Family Home & Fin. Ctr., Inc. v. Fed. Home*
22  *Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008) (listing elements of tortious interference). In
23  other words, similar to the breach of contract claim against DHG, this claim fails because Precision
24  does not plead plausible facts that any information Meyer supposedly disclosed would constitute a
25  breach of the Meyer NDA. *See also* Section II.A, *supra*.

26  The Complaint also fails to plausibly plead that DHG knew of the Meyer NDA. *See* Mot. at
27  15:19–24. The only allegation in the Complaint about this element is the unadorned conclusion that
28  "DHG and DHG's Companies knew or had reason to know of the existence and principal terms of

the Meyer NDA." *See* Compl., ¶ 41. Precision does not cite any other allegation in the Complaint and instead merely argues that this one "is not a formulaic recitation of this element." Opp. at *See* Opp. 12:13–17. But that is exactly what it is. A required element of the claim is that a defendant must know of the contract it is interfering with. *See* Mot. at 14:23 (quoting *Family Home*, 525 F.3d at 825). The Complaint merely parrots that language **with no factual allegations**. In fact, the Complaint does not even commit to the assertion that DHG actually knew of the Meyer NDA or what "principle terms" it knew of—it only asserts that DHG 'knew or had reason to know" of the Meyer NDA. *See* Compl., ¶ 41. Therefore, this allegation is a textbook conclusory allegation with insufficient factual support to state a claim.

The Court should dismiss Precision's tortious interference claim (Count Three).

**C.     The Complaint fails to identify any trade secrets or plead misappropriation of trade secrets (Count Six).**

Precision fails to state a trade secret claim because it does not (1) sufficiently identify its supposed trade secrets or (2) allege facts to plausibly show that any information warrants trade secret protection or (3) that DHG misappropriated any trade secrets. *See* Mot. at 16:3–22:12. Each defect is independent reason for dismissal.

    *1.     Precision fails to sufficiently identify any trade secrets.*

Precision appears to agree that it must "describe the subject matter . . . with sufficient particularity to **separate it from matters of general knowledge in the trade** or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *See* Opp. at 13:5–8 (quoting *Cisco Systems v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020) (emphasis added)); Mot. at 17:7–10. But Precision misunderstands what that means, relying on Paragraph 57 of the Complaint and ignoring why that paragraph fails that standard. *See also* Mot. at 18:16–19:15, 20:3–9. And while Precision notes that the Complaint lists certain "Precision models" of feeders, **it does not identify what about those feeders** is supposedly "beyond the general knowledge of the trade." *See* Opp. at 13:24–27. That is the fatal defect. *See Pellerin*, 877 F. Supp. 2d at 988 (dismissing for this reason); *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556 at *11–16. (N.D. Cal. Apr. 13, 2015) (same).

The need to identify a trade secret beyond an unspecified reference to the "design" of some feeder models is critical here because the Complaint's other allegations show that any trade secrets cannot possibly be that broad. Precision takes issue with DHG's observation that the feeder products are sold publicly, which creates an issue as to what about them may even be "secret." *See* Mot. at 20:10–25; Opp. at 15:9–22. But here again, Precision misses the point, toppling a strawman argument that DHG does not make. *See* Opp. at 15:9–11. The issue is not that there can never be any trade secrets associated with a product that is publicly sold. It is that, because the feeders are publicly sold, it cannot be that the entire "design"—unspecified—is a trade secret. The Complaint never gets more specific than that and thus fails to separate any trade secrets from non-trade secrets. That requires dismissal. *See Pellerin*, 877 F. Supp. 2d at 988; *Top Agent*, 2015 U.S. Dist. LEXIS 161556 at *11–16.

These issues further undermine any ability for Precision to evade the problem stemming from the allegations that Meyer reverse engineered Precision's feeders. *See* Mot. at 20:20–23. The DTSA and CUTSA specifically allow reverse engineering. *See* 18 U.S.C. § 1839(6)(B); Cal. Civ. Code § 3426.1(a). While Precision states a conclusory allegation that DHG or Meyer combined "confidential information" supposedly obtained from Precision to reverse engineer the feeders, the Complaint again fails to indicate what confidential information Meyer used. *See* Compl., ¶ 21.6, ¶ 31, ¶ 37. Nor are there any facts in the Complaint—or even a conclusory statement—that any such information was required to reverse-engineer the feeder designs. These defects further undercut Precision's pleading that it possessed any trade secrets because they further suggest that Precision indeed lacks anything not excepted from trade secret protection under the requirements of the DTSA and CUTSA. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

Nor can Precision brush off the pleading requirements by arguing that it is "premature" to require further identification of its supposed trade secrets. *See* Opp. at 14:10–15:8. While a plaintiff is required to sufficiently identify its trade secrets with more particularity later in the case, that does not mean that Precision can avoid it entirely in the Complaint. Precision takes the position that no such later requirements would exist "if the trade secrets were required to be identified **with 'reasonable particularity'** in the Complaint." Opp. at 14:22-24 (emphasis added). But that contention

neglects the standard Precision itself says applies to pleading (quoted above), every case that tests the sufficiency of pleading a trade secret claim, and the cases Precision itself cites. *See* Opp. at 14:24–15:8 (citing *San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014) (requiring identification "**with reasonable particularity**" <u>**at pleading**</u>, distinguishing from the exact delineation of those trade secrets, required later); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005) (same distinction)). So, while Precision does not have to explicate its trade secrets "down to the last detail" yet, it does have to "describe its subject matter with sufficient particularity to separate it from general knowledge in the trade or of specialty knowledge of those skilled in the trade." *Nifty Techs., Inc. v. Mango Techs., Inc.*, No. 24-CV-194 JLS (AHG), 2025 U.S. Dist. LEXIS 126421, at *10-11 (S.D. Cal. July 1, 2025). Precision may not "simply rely upon 'catchall' phrases or identify categories of trade secrets. *Id*. Yet, that is what the Complaint attempts.

Accordingly, Precision fails to identify any trade secrets with enough detail to avoid dismissal.

### 2. *Precision fails to plead any facts plausibly showing any supposed trade secret warrants trade secret protection.*

Even if Precision did sufficiently identify any supposed trade secret, the claim fails because the Complaint lacks any allegations of ***fact*** that support conclusions that such information derives independent economic value from being secret, and that Precision has taken reasonable steps to maintain their secrecy—both of which are required for trade secret protection. *See* Mot. 20:10–21:25 (discussing the requirements of 18 U.S.C. § 1839(3) and Cal. Civ. Code § 3426.1(d)). Precision relies on Paragraph 58 of the Complaint, but even as Precision quotes it, that paragraph consists only of a conclusory, threadbare recital of the statutory requirements. *See* Opp. at 15:25–16:2; Compl., ¶ 58. So, in addition to Precision's failure to identify any trade secrets, the claim fails for the independent reason that Precision does not plausibly plead that any information meets the statutory requirements for trade secret protection. *See Pellerin*, 877 F. Supp 2d at 988-89 (quoting *Iqbal*, 556 U.S. at 678).

### 3. *Precision insufficiently pleads misappropriation.*

Finally, the Complaint fails to sufficiently allege facts that plausibly show misappropriation. *See* Mot. at 22:1–12. Precision points to the same paragraphs in the Complaint the Motion discusses,

arguing only that it must satisfy Rule 8, not Rule 9. *See* Opp. at 16:5–16. But that DHG never argues that Rule 9 applies. *See* Mot. at 16:3–22:12. Accordingly, the Complaint fails to plead any misappropriation as discussed in the Motion, and Precision offers no response to what DHG actually argued there.

The Court should dismiss Precision's trade secret claim against DHG (Count Six).

### D.     Counts Seven through Nine fail to state claims.

Counts Seven, Eight, and Nine fail because they do not explain what law DHG supposedly broke or what law creates Precision's claim. *See* Mot. at 22:13–24:2. Each of those claims consist of almost identical language, and each claim alleges that DHG violated an unlimited (using "including but not limited to") laundry list of whole statutory schemes, without any citation to any particular code section that provides for any particular claim. *See* Compl., ¶ 65, ¶ 69, ¶ 72. This tactic constitutes impermissible shotgun pleading because it does not allow DHG to understand the nature of the claim and respond to it. *See* Mot. at 23:7–24:1 (collecting cases).

For the first time in its Opposition, Precision clarifies that these claims are apparently for violation of California's Unfair Competition Law (UCL). *See* Opp. at 16:18–17:28. But the Complaint lacks any indication that Counts Seven, Eight, and/or Nine are UCL claims. Rather, those claims only mention the UCL in those claims' allegations that DHG somehow violated "federal and state laws including but not limited to" a number of various statutory schemes, leaving DHG and the Court to guess whether these claims are UCL claims, Sherman Act claims, Cartwright Act claims, or claims under a different law beyond what Precision listed. *See* Compl., ¶ 65, ¶ 69, ¶ 72. Precision cannot cure this pleading defect through its Opposition brief. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)).

Moreover, even if the Complaint did specify that these claims were UCL claims, they would fail because they would still rely on insufficient pleadings of underlying violation of law—namely "misappropriation of Plaintiffs' trade secrets." *See* Opp. at 16:27–17:2. The UCL "borrows violations of other laws and treats them as unlawful practices [that are] independently actionable." *Pellerin*, 877

F. Supp. 2d at 992. "A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim." *Id*. As explained above and in the Motion, Precision fails to state a trade secret claim. *See* Mot. 16:3–22:12; Section II.C, *supra*. So, the claim calls for dismissal for the additional reason that the Complaint fails to substantively support a UCL claim.

The Court should dismiss Counts Seven, Eight, and Nine.

**E.**     **The Intentional Misrepresentation claim fails Rule 9 (Count Ten).**

Precision's intentional misrepresentation claim generally alleges that DHG represented that it would "license Precision's designs" if the MOU terminated, and that DHG represented an interest in "doing business with Plaintiffs," but never intended to do those things. *See* Compl., ¶¶ 74–81. The Motion sought to dismiss the claim because the Complaint failed to satisfy the heightened pleading standard of Rule 9. *See* Mot. at 24:3–25:10. Precision responds by clarifying that, while the claim does not reference the MOU or DHG NDA, the claim relies *entirely* on the representations stated in the terms of those agreements. *See* Opp. at 18:6–9 (asserting that DHG's representations are included "verbatim" via the MOU and DHG NDA). This maneuver exposes two fatal flaws.

First, DHG made no representations in the MOU because DHG is not a party to the MOU—Finn and EB are. *See* Compl., Ex. 1, p. 1. This not only dispels any notion that DHG can be liable for any representation in the MOU, it also eliminates Precision's ability to detrimentally rely on any DHG "representation" before January 2024 (when the DHG NDA was executed) so as to even make a claim possible for events occurring before then. *See* Compl., Ex. 2, p. 1. The Complaint does not allege facts sufficient to determine whether any event of supposedly wrongful conduct occurred before or after the DHG NDA, and thus "stops short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678.

Second, Precision's claim for intentional misrepresentation based on "representations" stated in contract terms, in either the MOU or DHG NDA, are barred by the economic loss rule. That rule bars tort recovery from intentional misrepresentations that are dependent on a contractual breach. *See Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2024 U.S. Dist. LEXIS 83909, at *23 (N.D. Cal. May 8, 2024). The most obvious instances of the economic loss rule occur where—as Precision admits is true here—"the representations in question are the very contractual obligations that Defendants

allegedly breached." *Id*. (emphasis in original); *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-cv-01924-SC, 2013 U.S. Dist. LEXIS 138896, 2013 WL 5402072, at *3-4 (N.D. Cal. Sept. 26, 2013) (claim barred where "all of Defendants' purported misrepresentations only concern whether they would perform what the contract said they would do"); *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (same); *Guzzetta v. Ford Motor Co.*, No. 21-cv-09151-MEMF, 2023 U.S. Dist. LEXIS 145786, 2023 WL 5207429, at *17 (C.D. Cal. July 3, 2023) (same). So, not only does Precision not state a claim for intentional misrepresentation, it **cannot** state that claim because the economic loss rule bars it as a matter of law.

The Court should dismiss Precision's intentional misrepresentation claim against DHG (Count Ten).

### III.   CONCLUSION

For the foregoing reasons and those in the Motion, the Court should grant DHG's Motion and dismiss all claims against DHG, pled as Counts One, Three, Six, Seven, Eight, Nine, and Ten.

Dated:  November 3, 2025                           DINSMORE & SHOHL LLP

By: /s/ *Michael A. Xavier*
    Michael A. Xavier
    Arielle I. Goren
*Attorneys for Defendant DHG, INC.*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on November 3, 2025, a true copy of this document was served by electronic mail upon all registered CM/ECF users, and by United States Postal Service upon all non-registered CM/ECF users in this case as indicated below:

**William Scott Cameron -** scameron@weintraub.com, daguillen@weintraub.com
**Sarah K. Dunkley , PHV -** skdunkley@gct.law
**Margaret A. Gisch , PHV -** magisch@gct.law
**Arielle Goren -** arielle.goren@dinsmore.com, wendy.yones@dinsmore.com
**Jamie L Johnson** - jamie@kkks.com
**M. Zachary Smith -** zsmith@weintraub.com, NEF@weintraub.com, aespanapurpur@weintraub.com
**Michael Anthony Xavier , PHV -** michael.xavier@dinsmore.com, stella.laroe@dinsmore.com

Dated:  November 3, 2025                DINSMORE & SHOHL LLP

By: */s/ Michael A. Xavier*
Michael A. Xavier
Arielle I. Goren
*Attorneys for Defendant DHG, INC.*