1  Margaret A. Gisch, Esq. (*Pro Hac Vice*) (IL State Bar No. 6204431)
   Sarah K. Dunkley, Esq. (*Pro Hac Vice*) (IL State Bar No. 6329204)
2  GOLAN | CHRISTIE | TAGLIA LLP
   70 W. Madison, Suite 1500
3  Chicago, IL 60602
   Telephone:  (312) 263-2300
4  Email:  magisch@gct.law
   Email:  skdunkley@gct.law
5

6  Jamie L. Johnson, Esq. (CA State Bar No. 130698)
   KORSHAK, KRACOFF, KING & SUGANO, L.L.P
7  2430 J Street
   Sacramento, CA 95816
8  Telephone:  (916) 441-6255
   Email:  jamie@kkks.com
9

10 Attorneys for Defendant
   William W. Meyer and Sons, Inc.
11

12

13                  UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15

16 PMM HOLDINGS, LLC, and PRECISION          Case No. 2:25-cv-02005-CSK
   MACHINE & MANUFACTURING,
17                                            **DEFENDANT WILLIAM W. MEYER**
                                              **AND SONS, INC.'S REPLY TO**
18                      Plaintiffs,           **MOTION TO DISMISS COMPLAINT**
                                              **PURSUANT TO RULE 12(b)(2) – LACK**
19 v.                                         **OF PERSONAL JURISDICTION**

20 WILLIAM W. MEYER AND SONS, INC. and        Assigned District Cout Judge: Unassigned
   DHG, INC.,                                 Date:    November 18, 2025
21                                            Time:  10:00 a.m.
                                              Courtroom:  25
22                      Defendants.

23                                            Complaint Filed: July 17, 2025
                                              Trial Date: None Set
24                                            Magistrate Judge: Hon. Chi Soo Kim

25

26         Defendant William W. Meyer and Sons, Inc. ("Meyer") by its attorneys, Margaret A. Gisch,

27 Sarah K. Dunkley and Jamie L. Johnson, hereby submit a reply to Meyer's motion to dismiss the

28
                                              1

Complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. In support, Meyer states as follows:

## I. Argument

In Plaintiffs' Opposition to Meyer's Motion to Dismiss (ECF 35, the "Opposition"), they fail to properly dispute a lack of general jurisdiction as to Meyer and instead focus on attempting to argue that the "Court Has Specific Personal Jurisdiction as to Meyer". (ECF 35, Opposition, 2:23-26-3:1-2; 21). However, based on the evidence provided to date and pleading filed by Plaintiffs, there are no facts sufficient to demonstrate specific personal jurisdiction in California for Meyer.

### A. Plaintiffs Fail to Demonstrate Specific Personal Jurisdiction as to Meyer

Relevantly, Precision is an Oregon registered corporation that is located in Oregon and owned by PMM Holdings, LLC. (Compl. ¶ 5). PMM Holdings is a Delaware limited liability company, with its office in California. (Compl., ¶ 4). DHG is registered with the Secretary of State of Ohio as a for-profit corporation organized under the laws of Ohio as entity number 763188. (Compl., ¶ 7). Meyer is an Illinois corporation with its principal office located at 1700 Franklin Boulevard, Libertyville, Illinois. (Compl. ¶ 6).

In April 2024, the investment banking firm, Crown Point Partners ("Crown Point"), from Portland, Oregon, emailed Meyer to see if Meyer was interested in an acquisition opportunity for a company manufacturing rotary values and feeders. The email attached a two-page description of the "target company" but did not disclose the name of the target company, and also included an NDA, which Meyer signed on May 7, 2024 (the "Meyer NDA"). (ECF 23-1, the Declaration of Charles Meyer, "Meyer Decl.", ¶ 8). The "target company" was Precision, not PMM Holdings, and the Meyer NDA provides that jurisdiction is based on where the "[target] Company's principal place of business is located", which is <u>Oregon</u>. (Meyer NDA, ¶ 11).

Don Lindsey, CEO and President of Precision, swore a declaration in support of Plaintiffs' Opposition. (ECF 35-2, Declaration of Don Lindsey, "Lindsey Decl."). According to Mr. Lindsey, he is in charge of the "day-to-day operation of Precision", and is presumably located in Oregon, having sworn his declaration in "Eugene, Oregon." (Lindsey Decl., ¶¶ 6, affirmation). Further, "Precision's primary bookkeeping is performed at its facilities in Oregon". (*Id.*)

1    Mr. Lindsey went to attest that, "[i]n June of 2024, Charlie Meyer requested an inspection of

2    the manufacturing facilities <u>in Oregon</u> to observe the manufacturing process for Precision's bulk

3    material handling components, which included the blower truck feeders." (Lindsey Decl., ¶

4    13)(emphasis added). "During the facilities inspection [with Meyer, Mr. Lindsey claims to have]

5    provided a plethora of confidential information concerning the feeder materials and manufacturing

6    processes, including the specific equipment necessary to manufacture the feeders, along with the

7    manpower and work centers to manufacture six to ten Precision blower truck feeders at a time."

8    (Lindsey Decl., ¶ 14).

9    Plaintiffs admit that the "status of the equity holders of Precision and PMM Holdings as

10    California domiciliaries are static facts which pre-dated any activity related to the Complaint and

11    which in and of themselves do not create any connection between Meyer and California." (ECF 35,

12    Opposition, 9:11-20). They go on to argue that it is "entirely Defendants' conduct which forms the

13    necessary connection to California as the forum state" and because it is "Meyer who inflicted harm on

14    Plaintiffs through such misconduct." (*Id.*) But Plaintiffs fail to cite any authority that supports a

15    finding of personal jurisdiction merely because Meyer allegedly "inflicted harm" on PMM

16    Holdings—who happen to be domiciled in California—through its actions related to the potential

17    purchase of Precision, particularly when any purported harm occurred outside of that state. (ECF 35,

18    Opposition, 9:3-5).

19    In fact, the cases Plaintiffs cite for the broad premise that Meyer's "affirmative actions" are

20    "directed toward California residents" support the dismissal here. (ECF 35, Opposition, 2:16-22). In

21    *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-476 (1985) ("*Burger King*"), a Michigan resident

22    negotiated contracts for a franchise relationship established in Miami and governed by Florida law.

23    *Id.,* at 462. There, it was found that it was a "a contract which had a *substantial* connection with that

24    State." *Id.* at 479 (internal citation omitted) (emphasis in original). Because the purchaser negotiated

25    and "…entered into a carefully structured 20-year relationship that envisioned continuing and wide-

26    reaching contacts with Burger King in Florida." *Id.,* at 480.

27    Here, the conduct complained of by Plaintiffs broadly concerns purported communications or

28    sharing of "trade secret" information between Defendants DHG (Ohio) and Meyer (Illinois). (Compl.,

3

DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S REPLY TO MOTION TO DISMISS
COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION

¶ 21). This information was allegedly obtained through documents shared by Crown Partners (Oregon) related to the purchase of Precision (Oregon), purportedly in breach of the Meyer NDA (which has a jurisdictional clause set in Oregon). (*Id.*) The information Meyer allegedly misappropriated is related to the "Precision-designed airlock rotary feeders". (Compl., ¶ 23.3) (emphasis added). Further, Plaintiffs allege that DHG (Ohio) subsequently started ordering those rotary values to be manufactured and sold by Meyer (Illinois) instead of them being manufactured and sold by Precision (Oregon). (Compl., ¶ 21.8). In short, nothing in the alleged facts before the Court demonstrate that Meyer "purposefully directed" its actions towards California, particularly when contrasted with the facts and purposeful actions outlined in *Burger King* (at 476).

Further, Plaintiffs' Opposition does not even attempt to address or distinguish the recent case law cited by Meyer in support of its Motion. (*See generally* ECF 35, Opposition). This is because Plaintiffs cannot do so. For example, it was found that there was no specific personal jurisdiction in *Soelect*, with allegations similar to the Complaint filed here, such as claims of misappropriating trade secrets by "reverse engineer[ing plaintiff's] products". *Soelect, Inc. v. Hyundai Motor Co.*, No. 23-CV-05405-CRB, 2024 WL 4293911, at *6 (N.D. Cal. Sept. 24, 2024).

Plaintiffs attempt to argue that Meyer expressly aimed itself at California because "Meyer intentionally assured PMM Holdings and its 'equity holders' (California residents) that it would hold its proprietary information and trade secrets in the utmost confidence and not *use* the information for any purpose other than to evaluate a potential acquisition of Precision's stock…" (ECF 35, Opposition, 3:23-24-4:1-4). But a defendant does not "purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows that the person resides there." *Soelect*, at *5.

Similar to *Soelect*, it was a different company, Crown Point from Portland Oregon, who negotiated the potential acquisition of Precision with Meyer. (Meyer Decl. ¶ 8); *Soelect* at *6 (it was a third-party company "who negotiated the [agreement] with Soelect, not [defendant]"). Further, it is Lindsey himself who attests to the alleged "misappropriation" of trade secrets as occurring during Meyer's tour of Precision's "manufacturing facilities in Oregon". (Lindsey Decl., ¶¶ 13-14). Otherwise, being electronically sent the "Confidential Information Memo April 2024" by Crown

4

Point, and "accessing" or "downloading" the purported "financial" and other "confidential information" of Precision, does not satisfy the "purposeful direction" requirement. (ECF 35, Opposition, 5:1-15; Lindsey Decl., ¶ 11); *Serenium, Inc. v. Zhou,* No. 20-cv-02132-BLF, 2021 WL 3111758, at *4 (N.D. Cal. July 22, 2021) ("…ordinary use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the [forum] state.")

Ultimately, even if the allegations of the Complaint are taken as true, the facts as plead indicate that Meyer did not actually direct any of its complained of actions towards California.

**B. Exercising California's Jurisdiction over Meyer does <u>not</u> Comport with Fair Play and Substantial Justice**

Plaintiffs only argument concerning the elements of whether exercising personal jurisdiction over Meyer in California comports with the requirements of fair play and substantial justice is that it would be "unreasonable and be a waste of party and judicial resources as the litigation would be divided into two different jurisdictions". (ECF 35, Opposition, 10:4-6). This is ironic, because there exists a previously filed case in the Southern District of Ohio—relating to essentially the same facts as this lawsuit—that was brought by DHG's subsidiaries, Finn Corporation and Express Blower, Inc. against Precision, titled: *Finn Corporation and Express Blower Inc. v Precision Machine & Manufacturing, Inc.* Case No. 1:25-cv-00418-JPH.[1]

Further, Plaintiffs do not even attempt to conduct the balancing test required when making a determination as to whether exercising personal jurisdiction over Meyer here comports with the requirements of fair play and substantial justice. (*See generally,* the elements set out in ECF 25, Motion, 11:1-9). Taking just one of the factors related to the multi-prong test outlined in the cases, being the jurisdiction allowing for the "most efficient judicial resolution of the controversy", the Court looks at "where the witnesses and the evidence are likely to be located". *Regions Bank v. Car Wash*

---

[1]A court may also "take judicial notice of the *existence* of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents." *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019).

DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S REPLY TO MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION

*Mgmt., LLC*, No. 2:25-CV-00359-CAS-KSX, 2025 WL 2765231, at \*10 (C.D. Cal. Sept. 25, 2025). Here, Meyer is located in Illinois, DHG in Ohio, and Precision, including its President and CEO, are located in Oregon. In short, none of the key players to this controversy are located in California and there are a number of other, more efficient, forums where this matter could and should be brought.

**C. The Declarations in Support of Plaintiffs' Opposition contain Inadmissible Statements**

Finally, declarations of Mr. Lindsey and Jose Blanco in support of the Opposition both contain numerous inadmissible statements that should not be considered here. Both "lack[] foundation for the basis for the declaration[s] and amount[] to nothing more than inadmissible hearsay." *Floveyor Internat., Ltd. v. Superior Ct.*, 59 Cal. App. 4th 789, 796, 69 Cal. Rptr. 2d 457, 462 (1997). This is particularly true as the statements contained in the declaration as to purported communications, descriptions made by Brad Triebsch. Mr. Triebsch was the former chair of Precision's board of directors who passed away in late 2024. (ECF 35-1, Declaration of Jose Blanco, "Blanco Decl.", ¶ 3). There is no hearsay exception that allows for evidence to be given by either Mr. Lindsey or Mr. Blanco related to Triebsch's communications, impressions or state of mind, and any assertions to that effect are inadmissible here. (*See* Blanco Decl., ¶ 4 ("Brad reported that…", and "Brad described communications he had had with Mr. Meyer"); Lindsey Decl., ¶ 7 ("Charlie Meyer approached Brad Triebsch", and "Brad Triebsch told Charlie Meyer that Precision was not for sale at that time")).

**II. Conclusion**

The Complaint and additional "evidence" attached to the Opposition, fails to provide facts sufficient to demonstrate general or specific jurisdiction in California against Meyer. Jurisdiction has not been established, and this lawsuit should be dismissed as to Meyer pursuant to Federal Rule of Civil Procedure 12 (b)(2).

Dated: November 4, 2025          GOLAN CHRISTIE TAGLIA LLP


                                 By:    */s/* Margaret A. Gisch
                                        Margaret A. Gisch

DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S REPLY TO MOTION TO DISMISS
COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION

1  Dated: November 4, 2025                KORSHAK, KRACOFF, KONG & SUGANO, LLP

2
                                          By:    /s/ Jamie L. Johnson, Esq.
3                                                 Jamie L. Johnson

4                                         Attorneys for Defendant William W. Meyer and Sons, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WILLIAM W. MEYER AND SONS, INC.'S REPLY TO MOTION TO DISMISS
COMPLAINT PURSUANT TO RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION