1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PMM HOLDINGS, LLC, et al.,              Case No. 2:25-cv-02005-CSK

12                 Plaintiffs,

13         v.                                 ORDER ON DEFENDANTS' MOTIONS TO
                                              DISMISS AND DEFENDANT WILLIAM W.
14    WILLIAM W. MEYER AND SONS,              MEYER AND SONS, INC.'S REQUEST TO
      INC., et al.,                           SEAL
15
                                              (ECF Nos. 23, 25, 27)
16                 Defendants.

17

18         Pending before the Court are Defendants William M. Meyer and Sons, Inc.

19   ("Meyer") and DHG, Inc.'s ("DHG") motions to dismiss Plaintiffs PMM Holdings, LLC

20   ("PMM Holdings") and Precision Machine & Manufacturing's ("Precision") Complaint.[1]

21   (ECF Nos. 23, 27.) Also pending before the Court is Defendant Meyer's request to seal.

22   (ECF No. 25.) A hearing was held on November 18, 2025. M. Zachary Smith and Scott

23   Cameron appeared as counsel for Plaintiff; Jamie Johnson, Margerat Gisch, and Sarah

24   Dunkley appeared as counsel for Defendant Meyer; and Michael Xavier and Arielle

25   Goren appeared as counsel for Defendant DHG. (ECF No. 18.) Defendant Charles

26

27   _____

     [1]  This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all
28   purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF
     Nos. 21, 26, 31, 33.)

                                            1

1    Meyer was also present.

2           For the reasons that follow, the Court GRANTS Defendant Meyer's motion to

3    dismiss (ECF No. 23), GRANTS IN PART AND DENIES IN PART Defendant DHG's

4    motion to dismiss (ECF No. 27), and GRANTS Defendant Meyer's request to seal (ECF

5    No. 25).

6    **I.      BACKGROUND**

7           **A.      Factual Allegations[2]**

8           Plaintiff PMM Holdings is a limited liability company organized and existing under

9    the laws of the State of Delaware, with its principal place of business in Sacramento,

10   California. Compl. ¶ 4 (ECF No. 43).[3] Plaintiff Precision is a corporation organized and

11   existing under the laws of the State of Oregon. *Id.* ¶ 5. Precision is the wholly owned

12   subsidiary of PMM Holdings. *Id.*

13          Defendant Meyer is a corporation organized under the laws of the State of Illinois,

14   and operates from its principal office in Illinois. *Id.* ¶ 6. Defendant DHG is a corporation

15   organized under the laws of the State of Ohio, and operates from its principal office in

16   Ohio. *Id.* ¶ 7. DHG is owned by Three Cities Research, Inc. *Id.* Finn Corporation ("Finn")

17   and Express Blower Inc. ("Express Blower") are wholly owned subsidiaries of DHG. *Id.*

18   ¶¶ 8, 9. Both companies are corporations organized under the laws of the State of Ohio,

19   and operate from principal offices in Ohio. *Id.*

20          Plaintiffs are in the business of designing, manufacturing, and selling industrial

21   machinery, primarily heavy duty rotary airlock feeders, rotary valve airlocks and screw

22   conveyors as components for material handling systems. *Id.* ¶ 10. Plaintiff PMM

23

24   ─────────────

     [2]   These facts primarily derive from the Complaint (ECF No. 1), which are construed in
25   the light most favorable to Plaintiffs as the non-moving parties. *Faulkner v. ADT Sec.
     Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the
26   truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559
     F.3d 1061, 1071 (9th Cir. 2009).

27   [3]   Pursuant to the Court's minute order on November 19, 2025, Plaintiffs filed a
     corrected complaint, which includes the redacted exhibits filed with the Complaint. (*See*
28   ECF Nos. 42, 43.)

Holdings owns Precision, which performs the design, manufacture, and sales of the machinery. *Id.* DHG builds and sells material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers, and/or bark blowers, through the entities Finn and Express Blower. *Id.* ¶ 11.

In 2015 and 2016, Finn and Precision discussed a potential arrangement where Precision would design, manufacture, and supply Precision's rotary airlock feeders to Finn and Express Blower. *Id.* ¶ 12. These feeders were to be a new generation of feeders and would be installed by Finn and Express Blower as a component part in some of their equipment. *Id.* These discussions resulted in a Memorandum of Understanding ("MOU") between Finn and Express Blower and Precision, signed on February 9, 2016. *Id.* ¶ 13; *see* Compl. Exh. 1 (ECF No. 43 at 26-29). The MOU stated if the business relationship outlined in the MOU ended, Precision would remain out of the aftermarket business for a specified time and license its feeders to Finn and Express Blower. Compl. ¶ 13.8. Finn and Express Blower did not adhere to the minimum lot sizes commitment outlined in the MOU. *Id.* ¶ 20.1. The business relationship ended due to failure to adhere to the MOU, and DHG and the DHG Companies did not license Plaintiffs' feeders. *See* Compl. ¶ 20.2.

In 2024, DHG and Three Cities represented that DHG was interested in potentially doing business with Plaintiffs. *Id.* ¶ 15. Precision DHG and Three Cities entered into a Non-Disclosure Agreement ("DHG NDA") on January 23, 2024. *Id.*; *see* Compl. Exh. 2 (ECF No. 43 at 31-38). Plaintiffs allege that the DHG NDA requires that DHG and its affiliates "maintain in strict confidence" the "Confidential Information" obtained from Precision. Compl. ¶ 16.1. The DHG NDA also required that DHG refrain from transmitting any Confidential Information or information of any proposed transaction to any third party. *Id.* ¶ 16.2. The DHG NDA contained a provision requiring the parties to consent to the jurisdiction and application of the laws of the State of California. *Id.* ¶¶ 16.3, 16.4.

In May 2024, Meyer entered into a Confidentiality Agreement ("Meyer NDA") that

3

1    was initially between Meyer and Crown Point Partners, LLC. *See* Compl. Exh. 3 (ECF

2    No. 43 at 40-43). Crown Point Partners was acting as the exclusive financial advisor for

3    "the Company" as named in the Meyer NDA. Compl. Exh. 3 at ¶ 1. The Meyer NDA was

4    later signed by Precision, who was identified as "the Company."[4] Compl. Exh. 3 at 4.

5    The Meyer NDA was signed on May 7, 2024, and was entered into in connection with

6    Defendant Meyer's interest in a potential transaction with Plaintiffs. Compl. ¶ 17. By

7    signing the Meyer NDA, Plaintiffs allege Meyer agreed to "hold in confidence and trust"

8    any and all "Confidential Information" as defined in the agreement, and not to disclose

9    this information to any third party without consent. *Id.* ¶¶ 18.1, 18.2.

10        Plaintiffs allege that DHG, by and through the DHG companies, breached the

11    DHG MOU by failing to adhere to the minimum lot sizes commitment contained in the

12    DHG MOU, and by failing to license Plaintiffs' feeders. *Id.* ¶¶ 20.1, 20.2. Plaintiffs also

13    allege that DHG, on its own and by and through the DHG companies, and together with

14    Meyer, have violated the DHG and Meyer NDAs. *Id.* ¶ 21. Plaintiffs allege Defendants

15    have "misappropriated Precision's design, manufacturing processes, intellectual

16    property, proprietary information and/or other Confidential Information associated with

17    Precision's feeders[.]" *Id.* ¶ 21. DHG and Meyer falsely represented to Plaintiffs that they

18    were interested in doing business with Plaintiffs in order to gain access to Plaintiffs'

19    proprietary and trade secret information and other Confidential Information through the

20    disclosures of information contemplated by the DHG NDA and the Meyer NDA. *Id.*

21    ¶ 21.1.

22        Through the DHG NDA, Plaintiffs allege DHG, DHG's companies, and Meyer

23    acquired "commercially exploitable and proprietary information concerning Precision's

24    services, products, trade secrets, techniques, processes, operations, formulae, product

25    _____

26    [4]   In the Complaint, Plaintiffs allege that "Meyer entered into a 'Confidentiality
      Agreement" with PMM Holdings, by and through PMM Holdings' financial advisor and

27    representative, Crown Point Partners, LLC." Compl. ¶ 17. This is not clear from the
      agreement because the agreement itself was not signed by PMM Holdings. *See* Compl.

28    Exh. 3.

1  specifications, compositions, inventions, discoveries, and designs, in addition to the

2  Plaintiffs' financial data, especially with respect to existing and potential customers,

3  employees, vendors or suppliers related to Precision's feeders." *Id.* ¶ 21.2. Defendants

4  allegedly violated the NDAs by sharing the Confidential Information. *Id.* ¶ 21.3. DHG and

5  DHG's companies learned that Meyer was a competitor of Plaintiffs "through the process

6  surrounding the potential transactions which were the subjects of" the DHG and Meyer

7  NDAs. *Id.* ¶ 21.4. Meyer learned of the existence of Finn and Express Blower and their

8  business relationship with Precision through the same process. *Id.* ¶ 21.5. Meyer was

9  provided a Precision 302 feeder by Finn, and "performed the reverse engineering,

10 combined it with confidential information obtained through the Meyer NDA disclosures,

11 and provided Finn with a complete drawing package for the feeder and a Meyer-built

12 unit." *Id.* ¶ 21.6. After obtaining the confidential information, DHG and the DHG

13 companies, DHG/Three Cities and Meyer submitted commercially unreasonable

14 proposals to do business with Plaintiffs. *Id.* ¶ 21.7. DHG and DHG companies made no

15 further orders of Precision's airlock rotary feeders from Precision. *Id.* ¶ 21.8.

16      Plaintiffs bring the following claims:  (1) breach of the DHG NDA against DHG;

17 (2) breach of the Meyer NDA against Meyer; (3) tortious interference with contract

18 against DHG; (4) tortious interference with contract against Meyer: (5) intentional

19 interference with prospective economic relations against Meyer: (6) misappropriation of

20 Plaintiffs' intellectual property and trade secrets against DHG and Meyer; (7) unlawful

21 business practices and competition against DHG and Meyer: (8) unfair competition and

22 restraint of trade against DHG and Meyer: (9) unfair competition and anti-competitive

23 conduct against DHG and Meyer; and (10) intentional misrepresentation against DHG

24 and Meyer.

25      **B.    Procedural Background**

26      Plaintiffs filed their Complaint on July 17, 2025. (ECF No. 1.) On September 30,

27 2025, Plaintiffs filed a notice of request to seal documents associated with their

28 Complaint. (ECF No. 19.) The Court denied this request without prejudice. (ECF No. 30.)

5

On November 4, 2025, Plaintiffs filed a second request to seal limited documents associated with their Complaint, which the Court granted. (ECF Nos. 38, 42.) The Court ordered Plaintiffs to re-file the original Complaint with the redacted version of Exhibit 1, and the complete versions of Exhibits 2 and 3, which Plaintiffs filed. (*See* ECF Nos. 42, 43.)

On October 9, 2025, Defendant DHG filed a motion to dismiss (ECF No. 22) and then filed an amended motion to dismiss (ECF No. 27) on the same day. Defendant Meyer also filed a motion to dismiss on October 9, 2025. (ECF No. 23.) Both motions are fully briefed. (ECF Nos. 23, 27, 34-37.) Defendant Meyer filed a notice of request to seal documents associated with their motion, which Plaintiffs do not oppose. (ECF Nos. 25, 32.) The Court ordered Plaintiffs to file a response to Defendant Meyer's request to seal within seven days of the hearing held on November 18, 2025. (ECF No. 41.)

The Court held the hearing on the motions to dismiss remotely via Zoom on November 18, 2025. (ECF Nos. 39-41.)

## II.    DEFENDANT MEYER'S MOTION TO DISMISS

Defendant Meyer moves to dismiss the Complaint for lack of personal jurisdiction. Def. Meyer Mot. (ECF No. 23).

### A.    Meyer's Request for Judicial Notice and Request to Seal

#### 1.    Request for Judicial Notice

When reviewing a motion to dismiss, courts may consider undisputed facts contained in judicially noticeable documents under Federal Rule of Evidence 201 without converting the motion to one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This includes undisputed facts from documents attached to the complaint or those on which the complaint "necessarily relies." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (approving judicial notice of documents from judicial proceedings).

Defendant Meyer requests that the Court take judicial notice of a previously filed case in the Southern District of Ohio, filed by Finn and Express Blower against Plaintiff

Precision. *See* Def. Meyer Reply at 5 & n.1 (ECF No. 37). The case *Finn Corporation and Express Blower Inc. v. Precision Machine & Manufacturing, Inc.*, Case No. 1:25-cv-00418-JPH, was filed June 20, 2025 in the Southern District of Ohio. There is currently a pending motion to dismiss in this case. The Court may take judicial notice of documents from judicial proceedings. *See Harris*, 682 F.3d at 1132. Accordingly, the Court grants Meyer's request.

2.    Request to Seal

Defendant Meyer filed a request to seal six documents attached to the Declaration of Charles Meyer in Support of its motion to dismiss. (*See* ECF No. 25.)

a.    *Legal Standards*

Courts recognize "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). Courts in the Ninth Circuit "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Parties seeking to seal records attached to a motion that is "more than tangentially related to the merits of a case" must satisfy the "compelling reasons" standard. *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016); *see Perimeter Sols., L.P. v. Fortress N. Am., L.L.C.*, 2024 WL 3967472, at *1-2 (E.D. Cal. Aug. 28, 2024) (applying the compelling reasons standard to a request to seal an exhibit to a complaint.

To decide whether the party requesting to seal has carried its burden under the compelling reasons standard, the court balances the reasons for secrecy with the public's interests in disclosure. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Under this Court's Local Rule 141, documents may only be sealed by written order upon the showing required by applicable law. E.D. Cal. Local Rule 141(a).

b.    *Analysis*

Meyer seeks to seal these documents because they may contain information

7

Plaintiffs view as confidential. Meyer requests to seal the following six Exhibits:

- Exhibit 1 to the Declaration, being an order from Finn Company to Meyer for a prototype rotary air valve.

- Exhibit 2 to the Declaration, being an invoice from Meyer to Finn Company for a prototype rotary air valve.

- Exhibit 3 to the Declaration, being an email from Crown Point Partners to Defendant Meyer regarding a potential acquisition.

- Exhibit 4 to the Declaration, being a "Confidentiality Agreement" between Meyer and PMM Holdings (the "Meyer NDA").

- Exhibit 5 to the Declaration, being the "Confidential Information Memorandum" ("Target Memo") which disclosed information about the acquisition target, Plaintiff Precision Machine & Manufacturing ("Precision").

- Exhibit 6 to the Declaration, being a Management Presentation PowerPoint regarding Precision.

At the November 18, 2025 hearing, the undersigned ordered Plaintiffs to respond to Meyer's request to seal, and submit a basis for sealing Exhibits 5 and 6 in full or propose redactions of these exhibits. *See* 11/18/2025 Minute Order (ECF No. 41). Plaintiffs submitted proposed redactions to Exhibits 5 and 6.

Accordingly, the Court grants Meyer's request to seal Exhibits 1 and 2 in full. The Court also grants the request to seal the redacted portions of Exhibits 5 and 6 provided by Plaintiffs. Exhibit 3 includes an email that was already publicly filed with Plaintiff's opposition to Meyer's motion to dismiss. *See* Declaration of Don Lindsey in support of Opposition to Meyer's Motion to Dismiss at ¶ 10, Exh. A. However, the email attached for sealing contains an "attachment" line in the heading naming the attachment. Accordingly, the request to seal the email dated April 25, 2024 is denied, but the request to seal the two page attachment included in Exhibit 3 is granted. Exhibit 4 is the Meyer NDA. Plaintiffs already publicly filed this document. *See* Compl. Exh. 3 (ECF No. 43). Accordingly, the request to seal Exhibit 4 is denied. Defendant Meyer is ordered to file

1  Exhibit 3, excluding the attachment, Exhibit 4, and the redacted versions of Exhibits 5
2  and 6 on the Docket.

3       **B.    Personal Jurisdiction Legal Standards**

4       Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense
5  and request dismissal of the suit. Fed. R. Civ. P. (12)(b)(2). However, it is the plaintiff
6  who bears the burden to establish the court has personal jurisdiction over this defendant.
7  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). To determine
8  whether a court has personal jurisdiction over a nonresident defendant, it examines the
9  forum state's long-arm statute and federal due process. *Axiom Foods, Inc. v. Acerchem*
10 *International, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017). California's long-arm statute is
11 coextensive with federal due process requirements. *See* Cal. Civ. Proc. Code § 410.10.
12 Accordingly, the "jurisdictional analyses under state law and federal due process are the
13 same." *Mavrix Photo*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor*
14 *Co.*, 374 F.3d 797, 800-01 (2004)).

15      In resolving jurisdictional issues, the court may consider evidence presented in
16 affidavits and may order discovery. *Schwarzenegger*, 374 F.3d at 800. When no
17 evidentiary hearing is held, a plaintiff is only required to make a prima facie showing of
18 jurisdictional facts to withstand the motion. *Id.* The Court takes the plaintiff's facts as true
19 resolves conflicts in the record in plaintiff's favor for the purposes of deciding whether a
20 prima facie case for personal jurisdiction exists. *Id.*

21      **C.    Discussion**

22      The traditional bases for exercising personal jurisdiction are:  (1) service of
23 process in the forum state; (2) domicile within the forum state at the time the action is
24 commenced; or (3) consent to jurisdiction in the forum state. *J. McIntyre Machinery, Ltd.*
25 *v. Nicastro*, 564 U.S. 873, 880 (2011). However, federal due process permits a court to
26 exercise personal jurisdiction over a nonresident defendant if that defendant has
27 minimum contacts with the relevant forum such that the exercise of jurisdiction "does not
28 offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana*

1  *Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351 (2021) (quoting *Int'l Shoe Co. v. Washington*,

2  326 U.S. 310, 316-17 (1945)). Those contacts may be so continuous and systematic as

3  to render a defendant essentially at home in the forum state and amenable to any suit

4  there. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A*., 972

5  F.3d 1101, 1106 (9th Cir. 2020). "Alternatively, a court may exercise jurisdiction over

6  issues deriving from, or connected with, the very controversy that establishes

7  jurisdiction." *Id*. (internal quotation marks and citation omitted). These different bases for

8  personal jurisdiction are often referred to as "general" and "specific" jurisdiction. *Id*.

9  (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal*., 582 U.S. 255, 262 (2017)).

10              1.    General Jurisdiction

11         Defendant Meyer first argues that Plaintiffs have not pled sufficient facts to assert

12  general jurisdiction over Meyer. Meyer Mot. at 7. A court may assert general personal

13  jurisdiction over foreign corporations "when their affiliations with the State are so

14  'continuous and systematic' as to render them essentially at home in the forum State."

15  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). There are

16  two "paradigm all-purpose forums" where a corporation will primarily be "at home" for the

17  purposes of general jurisdiction: its place of incorporation and its principal place of

18  business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these two

19  forums, but it will only be available elsewhere in the "exceptional case" a corporation's

20  affiliations with a forum are "so substantial and of such a nature as to render the

21  corporation at home in that State." *Id.* at 139 n.19; *see also Martinez v. Aero Caribbean*,

22  764 F.3d 1062, 1070 (9th Cir. 2014) ("Only in an 'exceptional case' will general

23  jurisdiction be available anywhere else.").

24         Meyer argues that its contacts with California are not substantial, continuous, or

25  systematic. *Id.* Specifically, Meyer has no physical presence, employees, warehouse, or

26  facilities in California. Declaration of Charles Meyer in support of Meyer's Motion to

27  Dismiss at ¶ 4 (ECF No. 23-1). Meyer uses one independent sales representative who

28  sells Meyer products in California, and only 3-4% of Meyer's total sales revenue is for

1    sales to California-based companies. *Id.* It does not appear from Plaintiffs' opposition

2    that they are opposing Meyer's general jurisdiction argument. *See* Pls. Opp'n Meyer Mot.

3    (ECF No. 35).

4         Here, the Court finds that Plaintiffs have not met their burden to show that this

5    Court may assert general personal jurisdiction over Defendant Meyer. Meyer is an Illinois

6    corporation, with its principal place of business in Illinois. Compl. ¶ 6. Therefore, the

7    traditional means of establishing general personal jurisdiction are not met. *See Daimler*,

8    571 U.S. at 137. Further, Meyer's affiliations with California are not so substantial as to

9    render it at home in the forum state. *See Goodyear Dunlop Tires Operations*, 564 U.S. at

10   919. One independent sales representative who sells Meyer products in California, and

11   3-4% of total sales revenue from sales to California-based companies are not enough to

12   establish general personal jurisdiction. *See Regions Bank v. Car Wash Management,*

13   *LLC*, 2025 WL 2765231, at *6 (C.D. Cal. Sept. 25, 2025) (no general jurisdiction where

14   company had its principle place of business and headquarters in Wisconsin; no

15   employees, offices, warehouses, factories, or bank accounts in California; California

16   distributors represented 4.8% of nationwide distributors; and only 7.53% of revenue for

17   20 months was from customer sales in California).

18                        2.    Specific Jurisdiction

19        Defendant Meyer next argues that Plaintiffs have not established that this Court

20   has specific personal jurisdiction over Meyer. Specific jurisdiction is satisfied when the

21   defendant's activities are directed toward the forum state and the defendant's liability

22   arises out of or relates to those activities. *Daimler*, 571 U.S. at 126-27; *see*

23   *Schwarzenegger*, 374 F.3d at 801-02. The Ninth Circuit applies a three-prong test to

24   determine whether specific jurisdiction is established:  (1) "[t]he non-resident defendant

25   must purposefully direct his activities or consummate some transaction with the forum or

26   resident thereof; or perform some act by which he purposefully avails himself of the

27   privilege of conducting activities in the forum, thereby invoking the benefits and

28   protections of its laws"; (2) "the claim must be one which arises out of or relates to the

1    defendant's forum-related activities"; and (3) the exercise of jurisdiction must be

2    reasonable, in that it "must comport with fair play and substantial justice."

3    *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first

4    two prongs, and if they are met, the burden shifts to the defendant "to set forth a

5    'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix*

6    *Photo*, 647 F.3d at 1227-28 (citation omitted).

7         The Ninth Circuit considers seven factors to determine whether the exercise of

8    jurisdiction comports with "fair play and substantial justice," and is therefore reasonable:

9    (1) "the extent of the defendants' purposeful injection into the forum state's affairs";

10   (2) "the burden on the defendant of defending in the forum"; (3) "the extent of conflict

11   with the sovereignty of the defendant's state"; (4) "the forum state's interest in

12   adjudicating the dispute"; (5) "the most efficient judicial resolution of the controversy";

13   (6) "the importance of the forum to the plaintiff's interest in convenient and effective

14   relief"; and (7) "the existence of an alternative forum." *Dole Food Co. v. Watts*, 303 F.3d

15   1104, 1114 (9th Cir. 2002).

16                    *a.    Purposeful Availment*

17        While the first prong of the specific jurisdiction test is often called the "purposeful

18   availment" prong, courts apply either a purposeful availment or purposeful direction

19   analysis depending on the nature of the underlying claims. *See Yahoo! Inc. v. La Ligue*

20   *Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006);

21   *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023). While

22   there is no "rigid dividing line" between purposeful availment and purposeful direction,

23   purposeful direction is generally preferred when analyzing tort claims because these

24   claims usually involve situations where a defendant's conduct primarily occurs outside of

25   the forum state. *Id.* at 1088-89. Purposeful availment is generally applied when the

26   underlying claims are based on a contract. *Impossible Foods*, 80 F.4th at 1088.

27        In order to have purposefully availed itself of the privilege of doing business in a

28   forum, a defendant must have "performed some type of affirmative conduct which allows

12

1   or promotes the transaction of business within the forum state." *Boschetto v. Hansing*,

2   539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted). To show that a defendant

3   purposefully availed itself of the privilege of doing business in a forum state requires

4   evidence of the defendant's actions within the forum, "such as executing or performing a

5   contract there." *Schwarzenegger*, 374 F.3d at 802. Purposeful direction also involves

6   intentional contact with the forum state. It is a defendant's contacts with the forum state,

7   not the defendant's contacts with persons who reside there that are relevant. *Walden v.*

8   *Fiore*, 571 U.S. 277, 285 (2014). A defendant's targeting of a plaintiff who the defendant

9   knows resides in the forum state "will not, on its own, support the exercise of specific

10  jurisdiction." *Axiom Foods*, 874 F.3d at 1070. Only purposeful contacts, and not random,

11  fortuitous, or attenuated contacts will give rise to personal jurisdiction. *See Walden*, 571

12  U.S. at 286.

13          While Plaintiffs bring both contract and tort-like claims against Defendant Meyer,

14  the parties have both applied the purposeful direction analysis, and have not addressed

15  the purposeful availment analysis. *See* Def. Meyer Mot at 9; Pl. Opp'n Meyer Mot at 8-

16  10. The Court will analyze Plaintiffs' claims under both the purposeful direction analysis

17  and purposeful availment analysis. *See Serenium, Inc. v. Zhou*, 2021 WL 3111758, at

18  *3-8 (N.D. Cal. July 22, 2021) (applying purposeful availment analysis to contract claim

19  and purposeful direction analysis to tort claim); *Standard v. Cameron*, 2017 WL

20  5466718, at *7-9 (E.D. Cal. Nov. 14, 2017).

21                    *i.      Tort Based Claims: Purposeful Direction*

22          Plaintiffs bring the following tort based claims against Defendant Meyer:  tortious

23  interference with contract, intentional interference with prospective economic relations,

24  misappropriation of Plaintiffs' intellectual property and trade secrets, unlawful business

25  practices and competition, unfair competition and restraint of trade, unfair competition

26  and anti-competitive conduct, and intentional misrepresentation. Compl. ¶¶ 44-81. A

27  purposeful direction analysis involves applying the *Calder* "effects" test which imposes

28  three requirements, "the defendant allegedly [must] have (1) committed an intentional

13

act, (2) aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206 (citing *Calder v. Jones*, 465 U.S. 783 (1984)) (alteration in original).

The first requirement is that defendant must have committed an intentional act. *See Yahoo!*, 433 F.3d at 1206. The defendant must act with the "intent to perform an actual, physical act in the real world." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (citation omitted).

As an initial matter, the Court agrees with Meyer that the Meyer NDA does not name California in the jurisdiction provision. *See* Compl. Exh. 3 ¶ 11. This provision states that an action or proceeding to enforce the Meyer NDA may be brought "in the courts of the State in which the Company's principal place of business is located and within the metropolitan area nearest such place of business[.]" *Id.* The "Company" which was identified on the signature page, is Precision (*see id.* at 4), which is incorporated in Oregon. Therefore, the Meyer NDA does not clearly select California as a forum.

Plaintiffs argue the CEO of Meyer reached out to CVF partners, owners of PMM Holdings, in California in 2021 with the expressed intent to enter into a contract to buy Precision. Pls. Opp'n Meyer Mot. at 8; Declaration of Don Lindsey in support of Pls' Opp'n to Meyer's Mot. at ¶ 3 (ECF No. 35-2). Plaintiffs argue that the Meyer CEO knew from his 2021-2022 experience that the individuals and entities Meyer would have to contract with to purchase Precision were in California. *Id.* The Court finds that this is not enough to show that Defendant Meyer acted intentionally in May 2024 when it entered into the Meyer NDA. *See Walden*, 571 U.S. 285, 290 ("[T]he plaintiff cannot be the only link between the defendant and the forum," and "mere injury to a forum resident is not a sufficient connection to the forum[.]"). The current discussion was initiated by Plaintiffs' representative emailing Meyer to see if Meyer was interested in purchasing an unnamed company that was later revealed to be Precision. *See* Lindsey Decl. ¶ 10, Exh. A (email dated April 25, 2024). While it is evident from an email communication that Defendant Meyer knew that the company was Precision, this is not enough to show that Meyer

acted intentionally. None of the information provided to Meyer about Precision included information about California. *See* Def. Meyer Mot. at 9. Further, Meyer was considering purchasing Precision, an Oregon based company, and Meyer visited the company in Oregon. *Id.* at 4, 9; Meyer Decl. at ¶ 11. Accordingly, Plaintiffs have not demonstrated that Meyer acted intentionally.

The second prong of the purposeful direction test requires the Court to consider whether the defendant specifically targeted the forum state. *See Yahoo!*, 433 F.3d at 1206. A defendant's contacts supporting purposeful direction must not be random, isolated, or fortuitous, and must be the defendant's own choice. *See Walden*, 571 U.S. at 286. A defendant does not purposefully direct its activities at the forum state when the "unilateral activity" of the plaintiff or third party is all that connects the defendant to the forum state. *See id.* at 286, 291. Here, Plaintiffs argue this Court has personal jurisdiction over Meyer because Meyer reached out to the owners of Precision in California in 2021, Meyer agreed to the Meyer NDA in 2024 and induced Plaintiffs to share their Confidential Information, including trade secrets, and Meyer misappropriated and used the propriety information in violation of the Meyer NDA. *Id.*

Defendant Meyer argues that none of the information it received from Plaintiffs about the potential transaction included information about California, including the Meyer NDA, the Target Memo, and the Management Presentation. Def. Meyer Mot. at 9-10. As noted above, Crown Point Partners reached out to Meyer to see if it was interested in purchasing Precision in 2024, Meyer did not reach out to Plaintiffs. Further, Meyer traveled to Oregon to visit Precision's site. Def. Meyer Mot. at 4. Meyer knew that PMM Holdings owned Precision and was based in California, but Plaintiffs have not alleged that Meyer had other contact with California regarding this transaction. *See* Compl. Accordingly, Plaintiffs have not sufficiently alleged that Meyer expressly aimed its conduct at California. *See Walden*, 571 U.S. at 286.

Last, the defendant must know that its intentional act would cause harm in the forum. *See Schwarzenegger*, 374 F.3d at 803. Neither party addresses whether Meyer

knew that its acts would cause Plaintiffs harm in California. *See* Def. Meyer Mot.; Pls. Opp'n Meyer Mot. Because the Court finds that Meyer did not act intentionally or aim any action at California, the Court declines to reach this prong of the test.

<u>*ii.*</u>    <u>*Contract Based Claims: Purposeful Availment*</u>

In cases sounding in contract, the court applies a purposeful availment analysis, and determines whether defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212. Plaintiffs bring a claim against Meyer for breach of the Meyer NDA, so the purposeful availment analysis is applicable. Compl. ¶¶ 34-38. A contract alone is not enough to automatically establish minimum contacts in the plaintiff's home forum. *Boschetto*, 539 F.3d at 1017. While prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of dealing are relevant, the contact must rise above "random, fortuitous, or attenuated" conduct within the forum. *See Picot*, 780 F.3d at 1212. The relationship between the non-resident defendant, the forum, and the case must "arise out of contacts that the defendant himself creates within the forum State." *Axiom Foods*, 874 F.3d at 1068 (citations and emphasis omitted).

Plaintiffs have also failed to demonstrate that this Court has personal jurisdiction over Meyer under the purposeful availment analysis. As discussed above, the Meyer NDA does not state that claims are to be brought in California. Further, Plaintiffs have not shown that Defendant Meyer's contact rises above "random, fortuitous, or attenuated" conduct with the forum. *See Picot*, 780 F.3d at 1212. When Defendant Meyer signed the NDA, the Company was not disclosed. *See* Meyer NDA; Meyer Mot. at 9. Further, even if Meyer did contact PMM Holdings in 2021 regarding potentially purchasing Precision, contacting a California based company two or three years before entering into the NDA does not establish purposeful availment because this contact does not rise above "random, fortuitous, or attenuated" conduct. *See Picot*, 780 F.3d at 1212. Accordingly, Plaintiffs have not established that this Court has personal jurisdiction over

1    Meyer under the purposeful availment test.

2                 *b.*      *Relation of Claim to Forum Activities*

3           The second prong of the specific personal jurisdiction analysis requires that the

4    claims brought by the plaintiff must arise out of or relate to the defendant's contacts with

5    the forum in order for the court to exercise jurisdiction. *Ford Motor Co. v. Montana Eighth*

6    *Jud. Dist. Ct.*, 592 U.S. 351, 361-62 (2021). However, a strict causal relationship is not

7    required to satisfy the relation prong. *Id.* Rather, there need only be a "connection"

8    between the forum-related activity and the injury claimed. *Id.* The Ninth Circuit employs a

9    "but for" test to determine whether a plaintiff's claims arise out of the defendant's forum-

10    related activities. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

11           Plaintiffs argue that Defendant Meyer expressly aimed its contacts at California

12    because Meyer first reached out to Precision's owners in California; Defendant Meyer by

13    agreeing to the Meyer NDA, "induced Plaintiffs to share their Confidential Information,

14    including trade secrets, with Meyer"; and Defendant Meyer misappropriated and used

15    the propriety information to build its business. Pls. Opp'n Meyer Mot. at 9. These

16    allegations are insufficient to show that Plaintiffs would not have suffered an injury "but-

17    for" Meyer's "forum-related" conduct. *See Menken*, 503 F.3d at 1058. As detailed above,

18    Meyer reached out to PMM Holdings years before Meyer signed the NDA. This alone is

19    insufficient to create a connection with California. Further, the Meyer NDA does not

20    specify California as the place for jurisdiction, and the company named in the Meyer

21    NDA is Precision, an Oregon based company, not PMM Holdings. Plaintiffs have failed

22    to show that the alleged harm would have occurred but-for Meyer's conduct. Accordingly,

23    Plaintiffs have not met their burden on the relations prong.

24                 *c.*      *Reasonableness*

25           The plaintiff bears the burden of satisfying the first two prongs, and if they are

26    met, the burden shifts to the defendant "to set forth a compelling case that the exercise

27    of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1227-28 (internal

28    quotations and citation omitted).

1    Because Plaintiffs have not met their burden on the first two prongs, the Court

2    need not reach the reasonableness prong. *See id.*; *Omeluk v. Langsten Slip &*

3    *Batbyggeri A/S*, 52 F.3d 267, 270-71 (9th Cir. 1995).

*d.    Other Argument*

5    Defendant Meyer argues that a parent-subsidiary relationship on its own is

6    insufficient to justify imputing one entity's contacts within a forum to another in order to

7    establish personal jurisdiction. Def. Meyer Mot. at 10 (citing *Soelect, Inc. v. Hyundai*

8    *Motor Co.*, 2024 WL 4293911, at *6 (N.D. Cal. Sept. 24, 2024). The situation presented

9    in *Soelect*, however, is not the same as the situation here. In *Soelect*, the *defendants*

10   had the parent-subsidiary relationship, and plaintiff was attempting to impute the

11   subsidiary's contacts to the parent. *See id.* However, in the instant case, *Plaintiffs* have

12   the parent-subsidiary relationship, and Plaintiffs are attempting to impute Meyer's

13   alleged contacts with the parent (PMM Holdings) to establish contact with the subsidiary

14   located in California (Precision). *See* Pls. Opp'n Meyer Mot. at 9. Accordingly, the Court

15   finds that the situation presented in *Soelect* is distinguishable.

16   **D.    Conclusion**

17   In sum, the Court finds that Plaintiffs have failed to establish that this Court has

18   personal jurisdiction over Defendant Meyer, and Meyer's motion to dismiss for lack of

19   personal jurisdiction is granted. The Court dismisses Plaintiffs' claims against Defendant

20   Meyer without leave to amend because amendment would be futile. *See Lopez*, 203

21   F.3d at 1126-30.

22   **III.    DEFENDANT DHG'S MOTION TO DISMISS**

23   Defendant DHG moves to dismiss Plaintiffs'[5] Complaint for failure to state a claim.

24   Def. DHG Mot. (ECF No. 27).

25   _____

26   [5]   In DHG's motion, it refers to Precision only, not "PMM Holdings" or "Plaintiffs." *See*
     Def. DHG Mot.; *see also id.* at 7 n.2. DHG states this is because PMM Holdings is not a
27   party to any agreement with DHG or its affiliates and the Complaint does not allege any
     dealings between PMM Holdings and DHG. *Id.* at 7 n.2. For consistency, and because
28   DHG moves to dismiss all claims against it, the Court will refer to Plaintiffs together.

**A.**    **Legal Standards for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)**

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

If the court finds that a complaint should be dismissed for failure to state a claim, it has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected. *Id*. at 1130-31; *see also Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995).

**B.**    **Misappropriation of Intellectual Property and Trade Secrets (Claim 6)**

Plaintiffs allege Defendant DHG misappropriated Plaintiffs' intellectual property and trade secrets. *See* Compl. ¶¶ 56-63. In the Complaint, Plaintiffs allege DHG's conduct violated the Sherman Act, Defend Trade Secret Act ("DTSA"), California's Cartwright Act, California Uniform Trade Secret Act ("CUTSA"), and California's Unfair Competition Law ("UCL"). Compl. ¶ 60. DHG argues that the only rights the sixth claim implicates are trade secrets. DHG Mot. at 16 n.12. In opposition, Plaintiffs do not contest DHG's characterization of their claim, and only make argument related to misappropriation of trade secrets regarding this claim. Pls. Opp'n DHG Mot. at 12-16. Accordingly, the Court limits its analysis to whether Plaintiffs have sufficiently alleged a claim for misappropriation of trade secrets.

1     Courts have held that the DTSA and the CUTSA share the same pleading

2   requirements for the identification of trade secrets. *Alta Devices, Inc. v. LG Elecs., Inc.*,

3   343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Global*

4   *Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims

5   together because the elements are substantially similar."). To state a claim for trade

6   secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that:

7   "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade

8   secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices*, 343 F. Supp.

9   3d at 877 (citation omitted).

10              1.    Identification of Trade Secret

11    The definition of a "trade secret" is similar under the DTSA and CUTSA. *See*

12  *Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 2021 WL 4895977, at *20 (S.D.

13  Cal. Oct. 20, 2021). Under the DTSA, a "trade secret" is:

14          [F]inancial, business, scientific, technical, economic, or engineering
        information . . . if—(A) the owner thereof has taken reasonable measures
15      to keep such information secret; and (B) the information derives
        independent economic value, actual or potential, from not being generally
16      known to, and not being readily ascertainable through proper means by,
        another person who can obtain economic value from the disclosure or use
17      of the information.

18  18 U.S.C. § 1839(3). Under the CUTSA, a "trade secret" is:

19          information, including a formula, pattern, compilation, program, device,
        method, technique, or process that: (1) [d]erives independent economic
20      value, actual or potential, from not being generally known to the public or to
        other persons who can obtain economic value from its disclosure or use;
21      and (2) [i]s the subject of efforts that are reasonable under the
        circumstances to maintain its secrecy.
22

23  Cal. Civ. Code § 3426.1(d). Under either statute, the definition of a trade secret consists

24  of three elements:  (1) "information, (2) that is valuable because it is unknown to others,

25  and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657.

26  Insight, knowledge, and know-how acquired by an insider to a particular trade does not,

27  by itself, constitute trade secrets. *Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL

28  10378336, at *2 (C.D. Cal. Aug. 16, 2017).

1    To prove ownership of a trade secret, the plaintiff must identify the trade secrets

2    and show they exist. *InteliClear*, 978 F.3d at 658. A plaintiff does not need to "spell out

3    the details of the trade secret," *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL

4    2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted), but must describe the trade

5    secret with sufficient particularity to permit the defendant "to ascertain at least the

6    boundaries within which the secret lies," *Vendavo, Inc. v. Price f(x) AG*, 2018 WL

7    1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted).

8    Setting forth allegations of a purported trade secret in "broad, categorical terms"

9    that simply describe the types of information that generally may qualify as protectable

10    trade secrets are insufficient to state a claim. *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d

11    1024, 1048 (N.D. Cal. 2020).

12    Plaintiffs allege that the trade secrets at issue are identified in paragraph 57 of the

13    Complaint. Pl. Opp'n DHG Mot. at 13; Compl. ¶ 57. The Complaint alleges that

14    Plaintiffs were the owners of the services, products, techniques, processes,
      operation, formulae, product specifications, know-how, compositions,

15    inventions, discoveries, designs, sketches, drawings, cost, market date,
      pricing, customer data and other Confidential Information relating to the

16    airlock rotary feeders designed, engineered and manufactured by Precision
      ('Precision's IP'), including those designated as Precision models "18x33,"

17    "16x25," "302," and "12x15."

18    Compl. ¶ 57. Defendant DHG argues that Plaintiffs' description of their trade

19    secrets are merely a list of "broad, categorical terms." Def. DHG Mot. at 18. DHG

20    also argues that mentioning the particular feeder models in the list does not

21    "rescue" Plaintiffs' pleading, and does not describe what information relating to

22    those products Plaintiffs assert is a trade secret. *Id.* at 19. Plaintiffs argue that

23    these are not "broad, categorical terms" but are specifically limited to information

24    "relating to the airlock rotary feeders designed, engineered and manufactured by

25    Precision" and specifies several models of rotary feeders. Pl. Opp'n DHG Mot. at

26    13.

27    The Court concludes that Plaintiffs have not described their trade secrets

28    with "sufficient particularity" at the pleading stage. *See Vendavo*, 2018 WL

21

1456697, at *4. Courts in this Circuit have found broad, categorical descriptions of trade secrets insufficient to survive the pleading stage. *See Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2019 WL 11499334, at *4 (N.D. Cal. Nov. 13, 2019) (finding trade secret not sufficiently pled where the "pleadings only define the purported trade secrets as 'various types of information' that are (a) 'related to the development and commercialization of [the products]' and (b) 'related to the sales and marketing-related aspects of [the products].'"); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (finding plaintiff did not sufficiently plead a trade secret where plaintiff described the trade secrets as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers"); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023) (finding plaintiff failed to sufficiently identify a trade secret where it included a long list "of general areas of information contained unidentified trade secrets").

        In contrast, courts find descriptions with more detail to be sufficient to survive the pleading stage. *See K.T.I. Hydraulics, Inc. v. Palmersheim*, 2022 WL 17100470, at *5 (C.D. Cal. Aug. 11, 2022) (finding plaintiff sufficiently identified a trade secret by referencing its customer lists, pricing data, and proprietary information relating to plaintiff's product); *Stemcell Techs. Canada Inc. v. StemExpress, LLC*, 2022 WL 509673, at *1 (N.D. Cal. Feb. 21, 2022) (finding plaintiff sufficiently identified a trade secret by identifying multiple categories of trade secrets, including plaintiff's "'internal processes for initial donor screening' and management of donor pools 'to achieve optimal blood draws'; its 'batch records' for its products, which functioned as the 'recipe books for its procurement and manufacturing'; and the 'quality control test methods' used to produce and isolate finished products 'to ensure consistent validation of finished products and equipment used.'"); *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2022 WL 16637988, at *4 (N.D. Cal. Nov. 2, 2022) (finding party identified its trade

1    secrets with sufficient particularity by alleging "that the confidential information

2    under the Agreement constitute its trade secrets, specifically the 'protectable

3    knowledge, methods, techniques, processes, procedures, compilations, formulas,

4    and designs'").

5        Here, the Court agrees with DHG that Plaintiffs use "broad, categorical

6    terms" to describe their alleged trade secrets, and do not identify their trade

7    secrets with sufficient particularity to put Defendants and the Court on notice

8    about what the trade secrets are. Plaintiffs provide a list of generic terms such as

9    "services, products, techniques, processes, operations," etc. which, without more,

10   are insufficient to state a claim. *See Carl Zeiss Meditec*, 2019 WL 11499334, at

11   *4; *Space Data Corp.*, 2017 WL 5013363, at *2; *Race Winning Brands, Inc.*, 2023

12   WL 4681539, at *5.

13       While Plaintiffs mention the particular feeder models in the list of alleged

14   trade secrets, DHG argues this does not "rescue" their pleading. DHG Mot. at 19

15   (citing *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)).

16   The Court agrees. In *Pellerin*, the court found that while the party alleging trade

17   secret identified the end product, it failed to describe the manufacturing process

18   with sufficient particularity to put the other party on notice of the trade secret. 877

19   F. Supp. 2d at 988. Here, the Court is presented with a similar situation. Plaintiffs

20   identify the rotary feeders and provide specific model numbers, but do not

21   sufficiently identify the "services, products, techniques, processes, operations,

22   formulae, product specifications, knowhow, compositions, inventions, discoveries,

23   designs, sketches, drawings" to put Defendants on notice of the alleged trade

24   secrets.

25                    2.    Misappropriation

26       Because the Court finds the Complaint does not adequately plead a trade secret,

27   it declines to reach the parties' arguments regarding the sufficiency of its allegations

28   pertaining to misappropriation and whether the information alleged is a trade secret. *See*

1   *Race Winning Brands, Inc.*, 2023 WL 4681539, at *5 n.3.

2         Accordingly, the Court dismisses Plaintiffs' claim for misappropriation of trade

3   secret with leave to amend to the extent Plaintiffs can allege additional supportive facts.

4   *Lopez*, 203 F.3d at 1126-30.

5         **C.     Breach of DHG NDA (Claim 1)**

6         Plaintiffs allege that Defendant DHG breached the DHG NDA. Compl. ¶¶ 28-33.

7   Under California law, "the elements of a cause of action for breach of contract are (1) the

8   existence of the contract, (2) plaintiff's performance or excuse for nonperformance,

9   (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty,*

10  *LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

11        Defendant DHG moves to dismiss Plaintiffs' breach of contract claim for failure to

12  state a claim arguing that Plaintiffs fail to plausibly state a breach of the DHG NDA. Def.

13  DHG Mot. at 10. DHG only argues that Plaintiffs failed to sufficiently plead the breach

14  element, therefore the Court will focus its analysis on that element. *Id.* DHG argues that

15  the NDA restricts only what falls within the limited definition of "Confidential Information"

16  in the NDA, and that Plaintiffs do not specify what information was misused or how it fits

17  within the definition of "Confidential Information." *Id.* at 10-13. Plaintiffs argue that DHG

18  expects Plaintiffs to plead their claims with the heightened pleading requirements of

19  Federal Rule of Civil Procedure 9(b), which is not required. *See* Pls. Opp'n DHG Mot. at

20  9-11.

21        Here, the Court agrees with Plaintiffs. Plaintiffs have sufficiently pled that DHG

22  breached the NDA under Rule 12(b)(6). Plaintiffs allege DHG breached the NDA by

23  informing third parties, including customers and competitors of Plaintiffs of Confidential

24  Information, that a potential transaction was being contemplated. Compl. ¶ 31. Plaintiffs

25  also allege that DHG breached the NDA by providing potential customer and competitor

26  Meyer with Precision's proprietary information concerning Precision's services, products,

27  trade secrets, techniques, processes, operations, formulae, product specifications,

28  compositions, inventions, discoveries, and designs, and by engaging Meyer to reverse

1    engineer Precision's rotary feeder. *Id.* The Court concludes that Plaintiffs' allegations are

2    sufficient to state a claim. *See E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012,

3    1014-15 (N.D. Cal. 2016) (finding breach element sufficiently pleaded where plaintiff

4    alleged defendant breached a confidentiality agreement by removing and using property

5    belonging to plaintiff for his competing business, including plaintiff's intellectual property

6    and confidential information); *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,

7    2022 WL 16637988, *5 (N.D. Cal. Nov. 2, 2022) (finding breach of contract claim based

8    on a confidentiality agreement sufficient pleaded where party sufficiently identified the

9    confidential information at issue). Accordingly, DHG's motion to dismiss is denied on this

10   ground.

11           **D.     Tortious Interference of Contract with Meyer NDA (Claim 3)**

12           Plaintiffs bring a claim against Defendant DHG for tortious interference of contract

13   with the Meyer NDA. Compl. ¶¶ 39-43. To establish liability for tortious interference with

14   contractual relations, a plaintiff must allege:  "(1) the existence of a valid contract

15   between the plaintiff and a third party, (2) the defendant's knowledge of that contract,

16   (3) the defendant's intentional acts designed to induce a breach or disruption of the

17   contractual relationship, (4) actual breach or disruption of the contractual relationship,

18   and (5) resulting damage. *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2020 WL 8920622, at *4

19   (N.D. Cal. May 20, 2020) (citing *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004)).

20           As an initial matter, DHG does not appear to contest that there was a valid and

21   existing contract between Plaintiffs and Meyer. *See* Def. DHG Mot. Accordingly, the

22   Court will address the remaining elements. Defendant DHG argues that Plaintiffs fail to

23   plead facts that show DHG knew of the Meyer NDA when DHG supposedly took any

24   interfering action. DHG Mot. at 15. This is incorrect. In the Complaint, Plaintiff alleges

25   that "DHG and DHG's Companies knew or had reason to know of the existence and

26   principal terms of the Meyer NDA." Compl. ¶ 41.

27           Next, Defendant DHG argues that Plaintiffs have not plausibly alleged that DHG

28   took specific action to interfere with the Meyer NDA, that any such action induced a

1   specific breach of the NDA, or any resulting damages. Def. DHG Mot. at 15. DHG

2   argues that Plaintiffs do no allege what information DHG shared with Meyer, that the

3   Complaint does not allege that Meyer actually obtained any information, and the

4   Complaint does not allege what information Meyer disclosed to DHG. *Id.*

5           Here, Plaintiffs have sufficiently alleged tortious interference with the Meyer NDA.

6   Plaintiffs allege that DHG and DHG's companies collaborated with Meyer to share

7   proprietary information, trade secrets and/or other Confidential Information. Compl. ¶ 42.

8   These allegations are sufficient to plead that DHG intentionally committed an act

9   designed to induce a breach. *See Tradeshift*, 2020 WL 8920622, at *4. Next, Plaintiffs

10  allege that DHG and DHG's Companies' "misconduct" in "collaborating" with Meyer to

11  share certain information, reverse engineer a replica of Precision's rotary feeders, and

12  "induce and develop a purchaser-seller relationship with Meyer," disrupted the Meyer

13  NDA. Compl. ¶ 42. This allegation is sufficient to plead that an actual breach occurred.

14  However, this conclusory allegation that DHG's conduct "disrupted" the Meyer NDA is

15  insufficient to show that actual breach occurred. *See Tradeshift*, 2020 WL 8920622, at

16  *4. Last, Plaintiffs allege that as a direct, proximate and legal result of the DHG's

17  conduct, Plaintiffs suffered damages and harm. Compl. ¶ 42. These allegations are

18  sufficient to plead that DHG actions resulted in damages to Plaintiffs. *See Tradeshift*,

19  2020 WL 8920622, at *4.

20          Accordingly, DHG's motion to dismiss is denied on this ground.

21      **E.      Unlawful Business Practices and Competition, Unfair Competition**

22              **and Restraint of Trade, and Unfair Competition and Anti-Competitive**

23              **Conduct (Claims 7-9)**

24          Plaintiffs bring three claims against Defendant DHG titled "unlawful business

25  practices and competition," "unfair competition and restraint of trade," and "unfair

26  competition and anti-competitive conduct." Compl. ¶¶ 64-73. DHG argues that these

27  claims are "shotgun pleading" and do not plead elements of any claim or identify what

28  particular law Plaintiffs allege DHG broke. Def. DHG Mot. at 22-23. In opposition,

1    Plaintiffs clarify that these claims were intended to be brought under California's Unfair

2    Competition Law ("UCL"). *See* Pls. Opp'n DHG Mot. at 16-17. This is not, however, clear

3    in the Complaint itself, which merely includes the UCL in the list of various federal and

4    state laws alleged to have been violated. Compl. ¶¶ 65, 69, 72.

5        The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice."

6    Cal. Bus. & Prof. Code § 17200. The statute is "violated where a defendant's act or

7    practice violates any of the [UCL's] prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691

8    F.3d 1152, 1168 (9th Cir. 2012). A plaintiff may pursue a claim under California's UCL

9    via any or all of three prongs:  the "unlawful" prong, which bars practices that are

10   forbidden by any other law; the "unfair" prong, which bars unfair conduct; and the

11   "fraudulent" prong, which bars practices that are likely to deceive the public. *In re Toyota*

12   *RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021).

13       Claim 7 of the Complaint is titled "Unlawful Business Practices and Competition."

14   *See* Compl. at 20. The unlawful prong of the UCL "'borrows' violations of other laws and

15   treats them as unlawful practices that are independently actionable. *Martinez v. Welk*

16   *Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012). The unlawful prong includes

17   business practices "forbidden by law, be it civil or criminal, federal, state, or municipal,

18   statutory, regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622

19   F.3d 1035, 1043-44 (9th Cir. 2010) (citation omitted). Where a plaintiff cannot state a

20   claim under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful

21   prong either. *See Pellerin*, 877 F. Supp. 2d at 992 ("A UCL claim must be dismissed if

22   the plaintiff has not stated a claim for the predicate acts upon which [s]he bases the

23   claim.").

24       Claims eight and nine of the Complaint are titled "Unfair Competition and

25   Restraint of Trade" and "Unfair Competition and Anti-Competitive Conduct." *See* Compl.

26   at 20-21. The "unfair" prong of the UCL prohibits a business practice that "violates

27   established public policy or if it is immoral, unethical, oppressive or unscrupulous and

28   causes injury to consumers which outweighs its benefits." *AlterG*, 388 F. Supp. 3d at

1  1155 (citing *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). The

2  California Supreme Court has held that when a plaintiff claims to have suffered an injury

3  from the unfair act or practice of a director competitor, unfair under Section 17200

4  means "conduct that threatens an incipient violation of an antitrust law, or violates the

5  policy or spirit of one of those laws because its effects are comparable to or the same as

6  a violation of the law, or otherwise significantly threatens or harms competition." *Cel-*

7  *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). A

8  plaintiff must allege harm to *competition*, not harm to a *competitor. Silverlit Toys*

9  *Manufactory Ltd. v. Rooftop Grp., USA, Inc.*, 2010 WL 11509314, at *7 (C.D. Cal. Jan.

10  21, 2010).

11  Plaintiffs fail to sufficiently plead UCL claims where the Complaint does not make

12  clear that claims 7-9 are brought under the UCL and where the allegations do not

13  identify what conduct is unlawful or unfair besides repeating in each claim the conclusory

14  allegation that "Defendants' misconduct as alleged in this complaint." Compl. ¶¶ 65, 69,

15  72. In addition, the Complaint does not allege the fraudulent prong of the UCL. Plaintiffs

16  cannot raise a new claim in their opposition where they argue that the same conduct that

17  satisfies the definition of unfair conduct "satisfies the UCL's third prong of fraudulent

18  business practices." Pls. Opp'n DHG Mot. at 17. The Court will not consider new claims

19  raised in an opposition brief. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963,

20  969 (9th Cir. 2006).

21  Accordingly, Plaintiffs' claims under the UCL are dismissed with leave to amend

22  to the extent Plaintiffs can alleged additional supportive facts. *See Lopez*, 203 F.3d at

23  1126-30.

24  **F.    Intentional Misrepresentation**

25  Plaintiffs bring a claim of intentional misrepresentation against Defendant DHG.

26  Compl. ¶¶ 74-81. To plead a claim of intentional misrepresentation under California law,

27  a plaintiff must plead: "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to

28  induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman*

28

*v. Skype, Inc.*, 220 Cal. App. 4th 217, 230-31 (2013). Intentional misrepresentation is a fraud claim that must meet the heightened pleading standards of Rule 9. *See Ramos v. Ramos*, 691 F. App'x 487, 488 (9th Cir. 2017). "Each element of a fraud count must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action." *Muldoon v. DePuy Orthopaedics, Inc.*, 2025 WL 604970, at *5 (N.D. Cal. Feb. 25, 2025) (citing *Chapman*, 220 Cal. App. 4th at 231); *see* Fed. R. Civ. P. 9(b). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Gerard v. Wells Fargo Bank, N.A.*, 2015 WL 12791416, at *6 (C.D. Cal. Jan. 22, 2015) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir, 2007)).

Defendant DHG argues that Plaintiffs have failed to plead the intentional misrepresentation claim with the particularity required by Rule 9. *See* DHG Mot. at 24-25. DHG argues that the Complaint fails to allege who made the alleged representations, their authority relative to DHG, to whom they made such representations, what was said, or that any such individual knew of the falsity of the statement made. *Id.* Plaintiffs argue that the MOU and DHG NDA attached to the complaint state "who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *See* Pls. Opp'n DHG Mot. at 18. Plaintiffs further argue that the Complaint alleges that DHG had no intention of ever licensing Precision's designs, engineering, or other aspects of Precision's IP and trade secrets. *Id.*

Here, Plaintiffs have failed to sufficiently allege intentional misrepresentation with the particularity required under Rule 9's heightened pleading standard. As an initial matter, Plaintiffs appear to rely on representations made in the MOU. *See* Compl. ¶ 75. As DHG notes, the MOU is between Finn and Express Blower and Precision, and DHG is not a party to the MOU. *See* DHG Reply at 9; Compl. Exh. 1. Next, Plaintiffs allege that DHG represented to Plaintiffs that it "had an interest in doing business with Plaintiffs and would hold Plaintiffs' proprietary information including Precision's IP, trade secrets

and other confidential information gathered while investigating a potential transaction with Plaintiffs in strict confidence" when in fact, DHG intended to obtain access to Plaintiffs' proprietary information. Compl. ¶¶ 77, 78. While Plaintiffs' opposition argues that these representations were made in the DHG NDA, this is not pled in the Complaint. Accordingly, Plaintiffs have failed to sufficiently allege that a misrepresentation was made or that DHG knew of the misrepresentation.

In its reply, DHG raises a new argument—that Plaintiffs' intentional misrepresentation claim is barred by the economic loss rule. Def. DHG Reply at 9 (ECF No. 36). DHG states that Plaintiffs opposition makes clear that the intentional misrepresentation claim relies entirely on the representations stated in the terms of those agreements. *Id.* The economic loss rule is that "no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, 2013 WL 5402072, at *2 (N.D. Cal. Sept. 26, 2013) (citation omitted). This rule prevents "the law of contract and the law of tort from dissolving into the other." *Id.* (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 998 (2004). Under the economic loss rule, there is no tort recovery availability for negligently inflicted "purely economic losses," which means "financial harm unaccompanied by physical or property damage." *Sylabs, Inc. v. Rose*, 2024 WL 2059716, at *8 (N.D. Cal. May 8, 2024) (citing *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022)). An exception to the rule exists that permits recovery for economic losses that stem from a defendant's intentional misrepresentation that are "independent" of a contractual breach. *Id.* (citing *Robinson Helicopter*, 34 Cal. 4th at 991). However, the exception is limited and does not apply where a tort claim arises from and is not independent of, the parties' underlying contracts. *Id.*

Plaintiffs were provided with the opportunity to respond to DHG's new reply argument at the hearing. Plaintiffs argued that the misrepresentation from the intentional misrepresentation claim was that DHG entered into the NDA with the intention of

1  entering into a transaction with Plaintiffs, and that representation was a

2  misrepresentation because it was not true. Plaintiffs argued that the real reason for

3  entering into the NDA was to gain confidential information from Plaintiffs. This

4  representation was demonstrated by the NDA. While DHG may be correct based on

5  Plaintiffs' contentions in their opposition, new allegations and claims cannot be pled in

6  an opposition and the Court's review on this motion to dismiss focuses on the allegations

7  and claims pled in the Complaint. It is not clear from the Complaint that Plaintiffs'

8  intentional misrepresentation claim relies entirely on contractual obligations.

9       Accordingly, Plaintiffs' intentional misrepresentation claim is dismissed with leave

10  to amend to the extent Plaintiffs can allege additional supportive facts to meet Rule 9's

11  heightened pleading standards.

12      **G.    Leave to Amend**

13      Defendant DHG did not address leave to amend in their motion or reply. At the

14  hearing, DHG conceded that leave to amend may be proper for Plaintiffs' claims that are

15  dismissed except the intentional misappropriation claim because of the economic loss

16  rule. Because the defects could be corrected by amendment, the Court grants Plaintiffs

17  leave to amend their claims against DHG. *See Lopez*, 203 F.3d at 1130-31; *Cato,* 70

18  F.3d at 1106. If Plaintiffs elect to file an amended complaint, it should be titled "First

19  Amended Complaint" with reference to the appropriate case number. An amended

20  complaint must be complete in itself without reference to any prior pleading. *See Loux v.*

21  *Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); E.D. Cal. Local Rule 220.

22  **IV.    CONCLUSION**

23      In conclusion, IT IS HEREBY ORDERED that:

24      1.    Defendant Meyer's motion to dismiss (ECF No. 23) is GRANTED without

25            leave to amend;

26      2.    Defendant DHG's motion to dismiss (ECF No. 27) is GRANTED IN PART

27            and DENIED IN PART:

28            a.    Defendant DHG's motion to dismiss is granted as to Plaintiffs'

misappropriation of trade secret claim (Claim 6), unlawful business practices and competition (Claim 7), unfair competition and restraint of trade (Claim 8), unfair competition and anti-competitive conduct (Claim 9), and intentional misrepresentation (Claim 10). These claims are dismissed with leave to amend;

  b. Defendant DHG's motion to dismiss is denied as to Plaintiffs' breach of the DHG NDA (Claim 1) and tortious interference with the Meyer NDA (Claim 3);

 3. Defendant Meyer's request to seal (ECF No. 25) is GRANTED in part and DENIED in part:

  a. Defendant Meyer is directed to email the un-redacted Exhibits 1-3, 4 and 5 for filing under seal to approvedsealed@caed.uscourts.gov;

  b. Defendant Meyer is ordered to file Exhibit 3, excluding the attachment; Exhibit 4; and redacted versions of Exhibits 5 and 6 on the Docket;

 4. If Plaintiffs choose to amend their Complaint against Defendant DHG, they shall have 30 days from the date of this order to file an amended Complaint as provided in this order.

Dated:  December 30, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, pmm.2005.25