**CONFIDENTIALITY AGREEMENT**

This Confidentiality Agreement ("Agreement") is made as of ___May 7th_____, 2024 by and between **Project Rotary (Client #361)** (the, "Company") and ___Charles Meyer - Wm. W. Meyer & Sons_____ ("Recipient").

1. <u>Purpose</u>. Crown Point Partners, LLC ("Crown Point") is acting as exclusive financial advisor for the Company and its equity holders in connection with a possible negotiated acquisition or other investment transaction between the Company and the Recipient (the "Transaction"), and the Company wishes to provide directly and to have Crown Point furnish certain proprietary information concerning the Company to Recipient for the sole purpose of facilitating Recipient's evaluation, negotiation, documentation or consummation of the Transaction (the "Purpose").

2. <u>Confidential Information.</u> For purposes of this Agreement, the term "Confidential Information" means any and all information of a confidential nature disclosed to Recipient by or on behalf of the Company, orally, in writing or in any other medium, however documented (or not documented) and whether or not marked "Confidential." "Confidential Information" includes, without limitation, information regarding the Company's actual or proposed businesses; historical and projected financial information, budgets, services, products, trade secrets, techniques, processes, operations, formulae, product specifications, know-how, processes, compositions, inventions, discoveries, designs, sketches, drawings, samples, formats, marketing and manufacturing plans and materials, analyses, strategies, forecasts, research and development; concepts, ideas, names, addresses and any other characteristics, identifying information or aspects of the Company's existing or potential customers, employees, vendors or suppliers, this Agreement and its contents; or any information derived, summarized or extracted from any of the foregoing. "Confidential Information" shall not include any information that: (a) is or becomes available to the public other than as a consequence of a breach of this Agreement by Recipient or its Representatives (as defined below), or (b) Recipient or its Representatives received from a source not bound by obligations of confidentiality with respect thereto, or (c) Recipient or its Representatives developed independently without reliance upon the Confidential Information, or (d) is in Recipient's possession or in the possession of its Representatives prior to the date hereof on a non-confidential basis.

3. <u>Disclosure and Use Restrictions.</u> Recipient hereby agrees to and to direct its Representatives to, hold in confidence and trust all Confidential Information and not to disclose or otherwise provide or transfer, directly or indirectly, any Confidential Information to any third party (except as permitted herein) without the prior written consent of the Company; provided, however, that Recipient may disclose Confidential Information to those of its affiliates and its and their respective principals, directors, officers, employees, attorneys, accountants, financial advisors, consultants and other advisors on a "need to know" basis (any of the foregoing that receive Confidential Information from or on behalf of Recipient, its "Representatives"), and then only to the extent necessary to effect the Purpose. Recipient further agrees that it and its Representatives may use the Confidential Information only in connection with the Purpose. Recipient agrees to direct its Representatives to comply with the terms of this Agreement applicable to its Representatives and further agrees to be responsible for any breach of the terms of this Agreement applicable to its Representatives by its Representatives, including their failure to follow any direction required to be given by Recipient under this Agreement. Recipient hereby agrees that, in the event it or its Representatives become subject to an order issued by any court or other governmental entity requiring Recipient or such Representatives to turn over any Confidential Information, it shall, to the extent legally permitted, give the Company prompt notice of such order and shall provide commercially reasonable cooperation to the Company in its efforts to protect the confidentiality of such information at the Company's expense and subject to compliance with all applicable laws and court orders. Recipient shall then be permitted to disclose only that portion of the Confidential Information that is legally required to be disclosed. Notwithstanding any other provision of this Agreement, no prior notice or other action shall be required in respect of any disclosure made to any banking, financial, accounting, securities or similar supervisory authority exercising its routine supervisory or audit functions, provided that such disclosure is made in the ordinary course and is not specific to the Company, the Transaction or the Confidential Information.

4. <u>Destruction of Confidential Information.</u> If requested in writing by the Company or Crown Point, Recipient agrees to and to direct its Representatives to, promptly destroy all written Confidential Information received from or on behalf of the Company, including any and all copies or duplicates of such Confidential Information, and all summaries or extracts thereof in any medium prepared by or on behalf of Recipient. Upon written request by the Company or Crown Point, Recipient further agrees to deliver a written confirmation from a responsible representative of Recipient that it has fulfilled its obligations under this Section. Notwithstanding the foregoing, Recipient and its Representatives shall be entitled to retain any Confidential Information to the

extent necessary to comply with any applicable legal, regulatory or compliance policies or procedures, including its and their standard data archival procedures, provided that such retained Confidential Information shall continue to be subject to the confidentiality obligations under the term of this Agreement, and nothing shall require the erasure, deletion, alteration or destruction of back-up tapes and other back-up media made in the ordinary course of business.

5. <u>Non-Disclosure of Business Relationship.</u> In addition to the foregoing disclosure and use restrictions regarding Confidential Information, Recipient agrees that it will and will direct its Representatives to, keep strictly confidential and not, without the prior written consent of the Company, disclose to any third party (other than its Representatives) the existence or any aspect of any ongoing negotiations, discussions or business dealings between the Company and Recipient concerning a Transaction; provided, however, that Recipient may make a public announcement of such agreement (the form and substance of which shall have been approved by the Company, which approval shall not be unreasonably withheld) at such time as the parties complete a Transaction or at such earlier time as may be required under applicable securities laws. Except as required by law, Crown Point and the Company agree that they will, and will direct their respective representatives to, keep the existence and terms of any documents and other information (including without limitation any investment proposal letters and term sheets) provided by or on behalf of Recipient to Crown Point or the Company or any of their respective representatives in connection with the proposed Transaction strictly confidential and not disclose the same to any third parties in any manner whatsoever. Crown Point and the Company shall be responsible for any breach of this section by any of their respective representatives.

6. <u>Non-Solicitation of Employees.</u> Recipient agrees that, for a period of one (1) year after the date hereof, it will not directly or indirectly through its affiliates who have received or been made aware of the Confidential Information solicit to hire, or hire, as an employee or consultant, any persons currently employed by the Company; provided, however, that nothing contained herein shall be construed to prohibit Recipient from (a) placing general advertisements for employment, or recruiting through employment agencies (so long as Recipient does not direct such agencies to solicit the Company's employees) any person (including any employee of the Company) as a result thereof, or (b) soliciting or hiring any person whose employment with the Company has been terminated at least 180 days prior to the commencement of any such solicitation or employment discussions between Recipient and such person.

7. <u>Communication.</u> Recipient agrees to and to direct its Representatives acting on its behalf to, maintain all communications regarding the Transaction with the Company only through Crown Point or the controlling shareholder.

8. <u>Crown Point.</u> Any agreement for Company's purchase shall recognize Crown Point's right to be paid by the Company or its shareholders.

9. <u>No Assurances or Obligations.</u> Although the Company believes the Confidential Information is accurate, neither it nor Crown Point makes any representations or warranties as to its accuracy, completeness or fairness, and neither shall have any liability for any express or implied representations or omissions in the Confidential Information. Nothing contained in this Agreement shall be deemed to create a business relationship between the parties or obligate either party to enter into further discussions and/or agreements with the other except as provided in any definitive agreement with respect to a Transaction between the parties.

10. <u>Irreparable Harm.</u> Recipient acknowledges that the Confidential Information and all rights thereto belong to the Company and nothing contained in this Agreement shall be construed as transferring any right or license to the Confidential Information to Recipient, except the limited right to review the Confidential Information in connection with the Purpose. Recipient further understands that, in the event it fails to comply with this Agreement, the Company may suffer irreparable harm for which it may not be adequately compensated by monetary damages alone. Recipient agrees that, in the event of any breach or threatened breach of this Agreement, the Company will be entitled to seek injunctive and/or other preliminary or equitable relief, in addition to any other remedies available at law and without the obligation to post a bond.

11. <u>Jurisdiction.</u> Service of Process. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought in the courts of the State in which the Company's principal place of business is located and within the metropolitan area nearest such place of business, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue in connection therewith. Process in any such action or proceeding may be served on any party anywhere. Recipient hereby waives any requirement that the Company proves the economic value of any Confidential Information or posts a bond or other security in connection with the enforcement of its rights hereunder.

12. <u>Miscellaneous.</u> The validity, interpretation, construction and enforcement of this Agreement shall be governed by the laws of the State in which the Company's principal place of business is located. This Agreement contains the entire understanding between the parties relating to this subject matter and supersedes all oral or written agreements between them with respect thereto, and no previous written or oral understandings have been or shall be relied upon. The failure of any party in any one or more instances to insist upon strict performance of any terms or provisions of this Agreement, or to exercise any option herein conferred, shall not be construed as a waiver or relinquishment to any extent of the right to assert or rely upon any such terms, provisions or options on any future occasion. To the extent any provision of this Agreement may be deemed to be unenforceable, such unenforceability shall not affect any other provision hereof. This Agreement shall be binding upon the successors and permitted assigns of the parties hereto, but neither of the parties hereto shall assign this Agreement without prior written consent of the other party. No amendment, modification or waiver of any provision of this Agreement will be effective unless and until it is reduced to writing and signed by all parties.

13. <u>Term.</u> This Agreement and all rights and obligations of the parties hereunder shall terminate on the earlier of (i) the date of entry into of a definitive agreement regarding the Transaction with the Recipient, or (ii) two (2) years from the date set forth below provided, however, with respect to Confidential Information that constitutes a trade secret under the Uniform trade Secrets Act, the obligations under Section 3 hereof shall continue so long as such Confidential Information remains a trade secret under the Uniform Trade Secrets Act.

14. <u>Common Interest; Privileges</u>. The parties to this Agreement share a common legal and commercial interest in the Confidential Information that is and remains subject to all applicable privileges, including attorney-client privilege, anticipation of litigation privilege, work product privilege and privilege in respect of "without prejudice" communications. No waiver of any privilege is implied or intended by the disclosure of Confidential Information to any person pursuant to the terms of this Agreement.

15. <u>Miscellaneous</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or electronic mail in .pdf or similar format shall constitute effective execution and delivery of this Agreement as to the parties. For purposes of this Agreement any reference to "written" or "in writing" shall be deemed to include correspondence by signed letter or facsimile or by e-mail.

IN WITNESS WHEREOF, the parties have caused this Confidentiality Agreement to be executed on __May 7th_____, 2024.

Client: **Project Rotary - Client #361**
By: Crown Point Partners, LLC, as Exclusive Representative

_____
Rodger Adams, Managing Partner

**Accepted and agreed to as of the date above:**

**RECIPIENT**

Company Name: Wm. W. Meyer & Sons

Signature: _____

Name: Charles Meyer

Title: CEO

Complete Address: 1700 Franklin Blvd

Telephone: (847) 918-8169

Email Address: cmeyer@wmwmeyer.com

**COMPANY**

Company Name: _____

Signature: _____

Name:

Title: