1  Michael A. Xavier (OH Bar No. 0097121 - *Admitted pro hac vice*)
2  Michael.xavier@dinsmore.com
   **DINSMORE & SHOHL LLP**
3  1775 Sherman Street, Suite 2600
   Denver, CO 80215
4  Tel: (303) 831-6980

5  Arielle I. Goren (SBN 331822)
   arielle.goren@dinsmore.com
6  **DINSMORE & SHOHL LLP**
   550 South Hope Street, Suite 2800
7  Los Angeles, CA 90071
   Tel: (213) 596-0010
8  Fax: (619) 400-0501

9  Attorneys for Defendant DHG, INC.

10

11              **UNITED STATES DISTRICT COURT**

12            **EASTERN DISTRICT OF CALIFORNIA**

13               **SACRAMENTO COURTHOUSE**

14

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING, | Case No. 2:25-cv-02005-CSK |
| Plaintiffs, | **DEFENDANT DHG INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT (F.R.C.P 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| WILLIAM W. MEYER AND SONS, INC. and DHG, INC., | |
| Defendants. | Date: March 31, 2026<br>Time: 10:00 a.m.<br>Courtroom 25, 8th floor |
| | Complaint Filed: July 17, 2025<br>Trial Date: None Set |
| | Magistrate Judge: Hon. Chi Soo Kim |

DHG INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF
THE FIRST AMENDED COMPLAINT (F.R.C.P 12(b)(6))

1  **TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND**
2  **THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that this Court is set to hear oral argument on
4  Defendant DHG Inc.'s ("DHG") Motion for an Order Dismissing Plaintiffs' claims,
5  enumerated as Counts Three through Six, in their entirety, on March 31, 2026 at 10:00
6  a.m. or a time thereafter that is amenable to the Court, in Courtroom 25, on the 8th
7  Floor of the United States District Court for the Eastern District of California, located
8  at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814
9  (the "Motion").

10     The Motion is brought on the following grounds:

11     1)    Plaintiffs Fail to State a Claim for Misappropriation of Trade Secrets
12  against DHG (Count Three);

13     2)    Plaintiffs Fail to State a Claim for Unfair Business Practices and
14  Competition against DHG (Count Four);

15     3)    Plaintiffs Fail to State a Claim for Fraudulent Business Practices and
16  Competition against DHG (Count Five); and

17     4)    Plaintiffs Fail to State a Claim for Intentional Misappropriation against
18  DHG (Count Six).

19     This Motion is based upon this Notice of Motion and Motion, the accompanying
20  Memorandum of Points and Authorities, the complete record in this action, oral
21  argument, and any other matters this Court may properly consider.

22  Dated:  February 12, 2026          DINSMORE & SHOHL LLP
23

24
25                                     By: */s/Michael A. Xavier*
                                          Michael A. Xavier
26                                        Arielle I. Goren
                                          Attorneys for Defendant DHG, Inc.
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................6

II.   MOTION TO DISMISS STANDARD ..................................................7

III.  ARGUMENT ........................................................................................8

  A.    Precision Fails to State a Claim for Misappropriation of Trade Secrets (Count Three) .............................................................................................. 8

    1.    The Amended Complaint Still Fails To Sufficiently Plead The Existence Of A Trade Secret ........................................................................9

      a)    "Designs/Engineering" (Am. Compl., ¶ 20.2.5).....................11
      b)    "Proprietary Information" (Am. Compl., ¶ 20.2.6)................12
      c)    "Key Customers," "Suppliers," and "Competitors" (Am. Compl., ¶ 20.2.1, ¶ 20.2.2, ¶ 20.2.4) ...............................13
      d)    "Outsourcing" (Am. Compl., ¶ 20.2.7) .....................................14
      e)    "Costs and Margins" and "Financials" (Am. Compl., ¶ 20.2.3, ¶ 20.2.8) 14
      f)    "Growth" (Am. Compl., ¶ 20.2.9).............................................14

    2.    Further Amendment Would Be Futile .......................................15

  B.    Precision Fails To State A UCL Or Intentional Misrepresentation Claim (Counts Four, Five, And Six)................................................................ 16

    1.    All Of These Claims Are Preempted By The CUTSA ..............16
    2.    Plaintiffs' Claim For Unlawful Competition Under The UCL (Count Four) Otherwise Fails To State A Claim ..............................................18
    3.    Plaintiffs' Claim For Fraudulent Business Practices Under The UCL Further Fails Because There Is No Allegation That Any DHG Conduct Is Likely To Deceive The Public (Count Five) ..............................18
    4.    Plaintiffs' Claim For Intentional Misrepresentation (Count Six) Is Further Barred By The Economic Loss Rule .......................................19

IV.   CONCLUSION..................................................................................21

# **TABLE OF AUTHORITIES**

*Acrisure of Ca. v. So. Cal. Commc'l Ins. Servs., Inc.*, 2019 U.S. Dist. LEXIS 170027, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) ............................................11

*Agency Sols..Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 ..............10

*Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)...9, 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).........................................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).........................................7

*Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020)........10, 11, 14

*CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 U.S. Dist. LEXIS 147034, at *9-10 (N.D. Cal. Aug. 14, 2020) .............................................................................10

*Confluent, Inc. v. Slower, LLC*, No. 24-cv-04447-SVK, 2025 LX 146611, at *7-8 (N.D. Cal. Jan. 28, 2025)...............................................................................................13

*Direct Techs., Ltd. Liab. Co. v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016)10

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368, at *7 (N.D. Cal. Jan. 31, 2020)........................................10

*Gottschalk v. City & Cty. of S.F.*, 964 F. Supp. 2d 1147, 1159 (N.D. Cal. 2013)..........7

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) ..9, 13

*Jardin v. DATAllegro*, Inc., No. 10-CV-2552-IEG (WVG), 2011 U.S. Dist. LEXIS 39488, at *8 (S.D. Cal. Apr. 11, 2011)......................................................................8

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)............................................7

*Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012)................17

*Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 975 (N.D. Cal. 2015) ......................8, 15

*Payroll Res. Grp. v. Healthequity, Inc.*, No. 23-cv-02794-TSH, 2024 U.S. Dist. LEXIS 74110, at *17 (N.D. Cal. Apr. 23, 2024) ....................................................19

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)........10, 18

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).......7

*Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 U.S. Dist. LEXIS 70225, at *15-16 (C.D. Cal. Apr. 21, 2023)........................................17

*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20-21 (2024).........................................19

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ..........................8, 15

*Shita v. Taylor*, No. 3:25-cv-00051-AN, 2025 LX 266062, at *8 (D.Or. Feb. 14, 2025) 11

*Space Data*, 2017 U.S. Dist. LEXIS 22571, at *4 (quoting *Pellerin*, 877 F. Supp. 2d at 988) ..............................................................................................................10, 12

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) .......................................................7

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)..........................7

*SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, at *9 (N.D. Cal. Dec. 11, 2012)....................................................................17

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556, at *12 (N.D. Cal. Apr. 13, 2015) ..............................................................10

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 12-0371-SC, 2013 U.S. Dist. LEXIS 121401, at *16-17 (N.D. Cal. Aug. 26, 2013) ............................................18

*Vox Network Sols., Inc. v. Gage Techs., Inc.*, No. 22-cv-09135-AMO, 2025 LX 152369, at *10 (N.D. Cal. Mar. 27, 2025) ........................................................18

*Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017)......16

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)........8, 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................7
Federal Rule of Civil Procedure 8(a)(2) ..........................................................................7
18 U.S.C. § 1839...............................................................................................................9
Cal. Civ. Code §3426.1(b) & (d) ......................................................................................9

DHG INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT (F.R.C.P 12(b)(6))

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I.    INTRODUCTION

As the Court is aware, this case concerns Plaintiffs' supposed trade secrets related to the feeder component of blower machines produced by DHG's subsidiaries, Finn Corporation ("Finn") and Express Blower, Inc. ("EB"), as well as dealings between DHG and Plaintiff Precision Machine and Manufacturing ("Precision") related to a potential sale of Precision to DHG. *See* DHG's Original Motion to Dismiss [Dkt. No. 27] (the "Original MTD") at 7:2–8:9.[1]

The Amended Complaint [Dkt. No. 48] is Plaintiffs' second attempt to state misappropriation and other California state law tort claims against DHG regarding those supposed trade secrets. Plaintiffs brought these claims in their Original Complaint [Dkt. No. 1]. But as the Court found in granting DHG's Motion to Dismiss [Dkt. No. 27] (the "Original MTD"), Plaintiffs failed to state these claims under Rule 12(b)(6). *See* Order on Defs. Mot. to Dismiss [Dkt No. 45] (the "Original MTD Order") at 19:18–24:4, 26:21–31:11. Plaintiffs' claims were defective because they failed to sufficiently identify any trade secret; failed to identify the predicate law or supposed unlawful conduct under the California Unfair Competition Law (UCL); and failed to meet the heightened pleading standard to state a claim for Intentional Misrepresentation. *See id*. The Court granted Plaintiffs leave to amend these claims.

The Amended Complaint adds certain statements intended to provide what the Original Complaint lacked, namely what trade secrets Plaintiffs supposedly possess and the intentional misrepresentation DHG supposedly made to induce Plaintiffs to share those trade secrets. But, while the added allegations may provide some limited further detail, Plaintiffs' pleading (A) remains insufficient to state a claim for trade secret misappropriation; and (B) betrays Plaintiffs' claims for violations of the UCL

---

[1] The Amended Complaint also repeats claims for breach of contract (Count One) and Tortious Interference (Count 2) from the Original Complaint. Those claims survived DHG's Original MTD and are not at issue in this Motion.

and intentional misrepresentation as not only insufficiently pled but barred as a matter of law. The Court should, therefore, dismiss Plaintiffs' Counts Three, Four, Five, and Six, with prejudice.

## II.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2) by sufficiently stating "a short and plain statement of the claim showing that the pleader is entitled to relief." "Allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). A plaintiff must allege facts that, if accepted as true, "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Though the Court must accept all well-pled factual allegations in the complaint as true, it need not accept "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (internal quotation omitted). Nor must the Court accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 678.

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal. . ." *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Amendment is futile where a plaintiff's claims are legally barred. *See Gottschalk v. City & Cty. of S.F.*, 964 F. Supp. 2d 1147, 1159 (N.D. Cal. 2013). Similarly, "when a plaintiff has been granted leave to amend but has failed to cure the deficiencies identified in an earlier complaint, a district court may find that the plaintiff has no

additional facts or theories to plead and may therefore dismiss with prejudice." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 975 (N.D. Cal. 2015). Where a plaintiff already had opportunity to amend, the court's discretion to deny further leave is "particularly broad" *Id*. (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## III.   ARGUMENT

The Amended Complaint fails to state claims sufficient for trade secret misappropriation, violations of the UCL, or intentional misrepresentation and shows that further amendment of those claims would be futile. Therefore, the Court should dismiss all of these claims without leave to amend.

### A.   <u>Precision Fails to State a Claim for Misappropriation of Trade Secrets (Count Three)[2]</u>

Plaintiffs' trade secret claim in the Amended Complaint fairs no better than in the Original Complaint. The Court dismissed the claim in the Original Complaint because "Plaintiffs have not described their trade secrets with 'sufficient particularity' at the pleading stage." *See* Orig. MTD Order at 20:10–22:1. Contrasting cases where trade secrets were sufficiently identified, the Court concluded: "Plaintiffs use 'broad, categorical terms' to describe their alleged trade secrets, and do not identify their trade secrets with sufficient particularity to put Defendants and the Court on notice about what the trade secrets are." *Id*. at 23:5–8.

While that deficiency in the Original Complaint doomed Plaintiffs' claim on the first element of trade secret misappropriation, Plaintiffs must ultimately state facts plausibly showing the others as well. To state claims under the Defend Trade Secrets Act (DTSA) and the California Uniform Trade Secrets Act (CUTSA), a plaintiff must

---

[2] Like in the Original Complaint, Plaintiffs style this claim as "misappropriation of Plaintiffs' Intellectual Property and Trade Secrets," but the only rights the claim implicates are trade secrets. *See Jardin v. DATAllegro*, Inc., No. 10-CV-2552-IEG (WVG), 2011 U.S. Dist. LEXIS 39488, at *8 (S.D. Cal. Apr. 11, 2011) ("Information is not property unless some law makes it so.").

allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).[3]

The primary addition to the Original Complaint is Paragraph 20.2 of the Amended Complaint, which provides a list of what, according to Plaintiffs, are "commercially exploitable and proprietary information that constituted Precision's Trade Secrets." *See* Am. Compl., ¶ 20.2; *see also id.*, ¶ 48. While this list may encompass a broader universe of information than the Original Complaint,[4] the Amended Complaint still fails to sufficiently plead facts that plausibly show every element of the claim as to any member of the new list. Therefore—despite the Court's prior guidance—Plaintiffs still fail to state a trade secret claim.

### 1.     <u>The Amended Complaint Still Fails To Sufficiently Plead The Existence Of A Trade Secret</u>

To plead the existence of a trade secret, Plaintiffs must first identify the trade secret with sufficient particularity. *See also* Orig. Mot. at 17:2–18:2. But Plaintiffs must also plead facts that plausibly show that any supposed trade secret indeed qualifies as a trade secret, i.e., that the information derives independent economic value from not being generally known to, and not readily ascertainable through proper means by, another who can obtain economic value from the information; and that Plaintiffs took reasonable measures to keep the information secret. See 18 U.S.C. § 1839(3); Cal. Civ. Code, § 3426.1(d); *see also* Orig. MTD at 19:18–20:2. Together, these requirements mean that, for any alleged trade secret, Plaintiffs must sufficiently plead

---

[3] Like in the Original Complaint, Plaintiffs assert violations of the DTSA and CUTSA in a single claim. *See* Am. Compl., ¶ 42. "Courts have analyzed these claims together because the elements are substantially similar." Orig. MTD Order at 20:3–5 (quoting *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020)).; *Compare* 18 U.S.C. § 1839 *to* Cal. Civ. Code §3426.1(b)).

[4] In addition to unspecified feeder "designs," which DHG must have had before the DHG NDA (Am. Compl., ¶ 20.2.5), the new list in Paragraph 20.2 essentially adds several categories of information DHG supposedly accessed after the DHG NDA, under the DHG NDA. *See id.*, ¶ 20.2.1–20.2.4, ¶¶ 20.2.6–20.2.9.

1  three requirements: (i) sufficient identification, (ii) independent economic value from
2  not being generally known, and (iii) reasonable measures to protect secrecy.

3      First, sufficiently identifying a trade secret requires describing it with sufficient
4  particularity to "separate it from matters of general knowledge in the trade or of special
5  persons who are skilled in the trade, and to permit the defendant to ascertain at least
6  the boundaries within which the secret lies." *Space Data*, 2017 U.S. Dist. LEXIS
7  22571, at *4 (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D.
8  Cal. 2012); *see also Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015
9  U.S. Dist. LEXIS 161556, at *12 (N.D. Cal. Apr. 13, 2015) ("To pass muster
10  under Rule 8, plaintiffs raising claims under CUTSA must itemize the information
11  claimed as a trade secret with reasonable particularity."). Under CUTSA, a plaintiff
12  must allege trade secrets with sufficient specificity to allow the court to "make an item-
13  by-item determination of what is and is not a trade secret." *See Agency Sols..Com, LLC
14  v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("[A]lleged trade
15  secrets that are not sufficiently identified to be included within either category cannot
16  be the basis of a claim of misappropriation."); *CleanFish, LLC v. Sims*, No. 19-cv-
17  03663-HSG, 2020 U.S. Dist. LEXIS 147034, at *9 (N.D. Cal. Aug. 14, 2020). And
18  under either the DTSA or CUTSA, "allegations that set out purported trade secrets in
19  broad, categorical terms that are merely descriptive of the types of information that
20  generally *may* qualify as protectable trade secrets are insufficient to state a claim."
21  *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) (emphasis in
22  original); *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH,
23  2020 U.S. Dist. LEXIS 16368, at *7 (N.D. Cal. Jan. 31, 2020).

24      Second, any sufficiently identified trade secret must also have independent
25  economic value from being secret—i.e., it must "be sufficiently valuable and secret to
26  afford an actual or potential economic advantage over others" *because* it is unknown
27  to others. *See Cisco Sys.*, *supra*, 462 F. Supp. 3d at 1052; *Direct Techs., Ltd. Liab. Co.
28  v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016); *see also* 18 U.S.C. §

1839(3)(B); Cal. Civ. Code, § 3426.1(d)(1). "[M]erely reciting this element in a pleading is insufficient to state a claim for trade secret misappropriation" *Cisco Sys*., *supra*, 462 F. Supp. 3d at 1052; *see also Acrisure of Ca. v. So. Cal. Commc'l Ins. Servs., Inc.*, 2019 U.S. Dist. LEXIS 170027, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing plaintiff's trade secret claim where complaint offered "mere recitation of [the independent economic value] legal element").

Third, Plaintiffs must also plead facts that plausibly show they have taken reasonable measures to protect any supposed trade secret. *See* 18 U.S.C. § 1839(3)(A); Cal. Civ. Code, § 3426.1(d)(2). At the pleading stage, a Plaintiff must do more than merely state more than the mere conclusion that it has taken such measures. *See Shita v. Taylor*, No. 3:25-cv-00051-AN, 2025 LX 266062, at *8 (D. Or. Feb. 14, 2025) (dismissing DTSA claim for this reason).

Despite Paragraph 20.2 of the Amended Complaint, no items as described in that list satisfy all three requirements and thus do not sufficiently plead a trade. Each listed item is discussed below:

### a)    "Designs/Engineering" (Am. Compl., ¶ 20.2.5)

Most notably, like the Original Complaint, the Amended Complaint asserts that "Precision owned the intellectual property of [the] designs, drawings, and technical information" related to feeders Precision built for DHG. *See* Am. Compl., ¶ 20.2.5; *Compare, e.g.,* Orig. Compl., ¶ 14.1, ¶ 57 *to* Am. Compl., ¶ 13.1. The Court dismissed Plaintiffs' original trade secret claim based on Plaintiffs' supposed trade secrets related to its "designs" because Plaintiffs "[did] not identify their trade secrets with sufficient particularity to put Defendants and the Court on notice about what the trade secrets are." Orig. MTD Order at 20:11–23:24. The Court provided a detailed discussion of what prior cases found sufficient identification, and what cases did not, and granted leave to amend, instructing Plaintiffs to allege further facts that "put Defendants on notice of the alleged trade secrets." *See id.* at 21:1–23:4.

/ / /

1    But the Amended Complaint adds nothing of consequence over the Original

2 Complaint as to what trade secrets Plaintiffs supposedly have in feeder designs. In fact,

3 aside from Paragraph 20.2.5—which is similarly barren of specifics—the Amended

4 Complaint only parrots the same deficient allegations from the Original Complaint.

5 *Compare* Am. Compl., ¶¶ 9–19, ¶¶ 21–26 *to* Orig. Compl., ¶¶ 10–27. Therefore,

6 Plaintiffs' trade secret claim as it relates to feeder "designs" is materially identical to

7 that in the Original Complaint, deficient for all the same reasons, and disposable on the

8 same grounds the Court has already found in dismissing the claim the first time. *See*

9 Orig. MTD Order at 20:11–23:24 (agreeing with Orig. MTD at 17:2–19:17); *see also*

10 Orig. MTD at 19:18–22:12 (further fatal deficiencies in Plaintiffs' pleading).[5]

11          **b)    "Proprietary Information" (Am. Compl., ¶ 20.2.6)**

12    Plaintiffs' discussion of "Proprietary Information" fails to state a trade secret

13 claim for the same reasons Plaintiffs fail as to "Design / Engineering." *See* Section

14 III.1.a, *supra*. Like any "designs," Plaintiffs again fail to describe any information here

15 sufficiently to "separate it from matters of general knowledge in the trade or of special

16 persons who are skilled in the trade, and to permit the defendant to ascertain at least

17 the boundaries within which the secret lies." *See Space Data*, *supra*, 2017 U.S. Dist.

18 LEXIS 22571, at *4. Plaintiffs refer to "work cells," "a robot cell," "horizontal boring

19 mills," and "machining centers," but what about these items is beyond the general

20 knowledge of the trade? Or, what about their purported "importance" is beyond general

21 knowledge? The Amended Complaint never says, and DHG and the Court are left

22 guessing. Moreover, Plaintiffs allege that this information was "critical" to cost-

23 effective manufacturing. *See* Am. Compl., ¶ 20.2.6. But again, the Amended

24 Complaint never says how. Nor does it allege any facts to plausibly show that such

25

26 [5] Because it dispensed of Plaintiffs' original trade secret claim before needing to do so, the Court
did not reach the additional defects of failure to plead independent economic value and

27 misappropriation). *See* Orig. MTD Order at 23:26–24:1. However, those grounds for dismissal
apply to Plaintiffs current pleading as well, with equal force. DHG therefore refers to and

28 incorporates those grounds herein. *See* Orig. MTD at 19:18–22:12.

value flows from the secrecy of any such information. From the Amended Complaint's allegations, all that is clear is that whatever information Plaintiffs mean to reference was easily ascertainable by a visiting observer. *See* Am. Compl., ¶ 20.2.6; *Cf. Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) ("Items in a trade secret description that any user or passerby sees at a glance are readily ascertainable by proper means and therefore hard to call trade secrets.") (internal quotations omitted).

### c)    "Key Customers," "Suppliers," and "Competitors" (Am. Compl., ¶ 20.2.1, ¶ 20.2.2, ¶ 20.2.4)

These items fail to plead a trade secret because the Amended Complaint lacks any allegations as to how the identities of customers, suppliers, or competitors derive value from not being generally known. Plaintiffs make no attempt to allege facts that suggest the information related to customers or suppliers has economic value at all, let alone value stemming from that information's secrecy. *See* Am. Compl., ¶ 20.201, ¶ 20.2.2. And while Plaintiffs speculate that DHG could possibly use a "competitive list" to "take Precision's product [to competitors] in order to have the product reverse engineered," there is no hint as to how any such value stems from the fact that the competitors identities are secret, or that the identities of Precision's competitors were even secret at all. Without such allegations, the Amended Complaint does no more than "merely reciting this element" of independent economic value, and the claim fails. *See Confluent, Inc. v. Slower, LLC*, No. 24-cv-04447-SVK, 2025 LX 146611, at *7-8 (N.D. Cal. Jan. 28, 2025).[6]

/ / /

/ / /

---

[6] Like the Original Complaint, the Amended Complaint alleges that "DHG and DHG's Companies learned that William W. Meyer and Sons, Inc. ("Meyer") was a competitor of Plaintiffs through the process surrounding the potential transactions." (Compl., ¶ 21.4). The Complaint lacks any allegation that Meyer's existence is somehow Precision's information, let alone a trade secret. In fact, the evidence would show that DHG's subsidiaries and Meyer were doing business for at least several months before DHG supposedly learned of Meyer from Precision, and Precision was aware of this.

1    **d)    "Outsourcing" (Am. Compl., ¶ 20.2.7)**

2        Plaintiffs' pleading as to the identities of "to whom Precision outsourced"

3    particular tasks fails to state a trade secret for the same reasons as the deficient

4    allegations related to customers, suppliers, and competitors. *See* Section III.A.1.c,

5    *supra*. the "functions Precision outsourced" and the "costs associated" similarly fail to

6    state a trade secret, as the Amended Complaint lacks any suggestion of how such

7    information is economically valuable or how it derives that value from being secret.

8    **e)    "Costs and Margins" and "Financials" (Am. Compl., ¶**

9    **20.2.3, ¶ 20.2.8)**

10       Plaintiffs' references to "costs and margins" and "financials" fail to sufficiently

11   identify a trade secret and fail to allege why any such secret my derive independent

12   economic value from being secret. These trade secrets purportedly include "Precision's

13   margins and costing." *See* Am. Compl., ¶ 20.2.3. But there is no explanation of what

14   "margins and costing" means, what data it includes, or any other information that

15   would lend itself to determining what about it is or is not a trade secret. The "financials"

16   are similar. *See* Am. Compl., ¶ 20.2.8. They supposedly include "multi-year financial

17   records, budget projections, industry focus, areas of growth, specific tasks that were

18   employed to increase profitability and Precision's focus and strategy going forward,"

19   but there is no further explanation that can put this list beyond what is "merely

20   descriptive of the types of information that generally *may* qualify as protectable trade

21   secrets." *See Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d at 1048 (emphasis in original).

22   Nor is there any factual allegation that would tend to show that any of this information

23   derives independent economic value from being not generally known.

24   **f)    "Growth" (Am. Compl., ¶ 20.2.9)**

25       Plaintiffs indicate that this information includes growth of revenue data by

26   product, year-over-year. But the Amended Complaint lacks any allegation of

27   independent economic value from being secret. Plaintiffs speculate that "this is

28   powerful information that could be used to show a competitor when DHG is shopping

1  Precision's feeder around to be reverse engineered." *See* Am. Compl., ¶ 20.2.9. But

2  even if that is true, it does not plausibly show value because there is no suggestion as

3  to how such information would be "powerful" while seeking to reverse engineer a

4  feeder. Nor is there any assertion as to how any unspecified value stems from the

5  information not being generally known.

6  **2.**     <u>**Further Amendment Would Be Futile**</u>

7       The Court should dismiss Plaintiffs' trade secret claim without leave to amend

8  because further amendment would be futile, as shown by Plaintiffs' failure to cure the

9  deficiencies that resulted in dismissal of their original claim. "When a plaintiff has

10  been granted leave to amend but has failed to cure the deficiencies identified in an

11  earlier complaint, a district court may find that the plaintiff has no additional facts or

12  theories to plead, and may therefore dismiss with prejudice." *Opperman v. Path, Inc.*,

13  84 F. Supp. 3d 962, 975 (N.D. Cal. 2015).

14       Plaintiffs attempted to state a claim for trade secret misappropriation in the

15  Original Complaint, and the Court dismissed that claim because Plaintiffs failed to

16  sufficiently identify any trade secrets. *See* Orig. Compl., ¶¶ 56–63; Orig. MTD Order

17  at 19:19–24:4. The Court granted Plaintiffs leave to amend their trade secret claim "to

18  the extent Plaintiffs can allege additional supportive facts." Yet, Plaintiffs' pleading of

19  the trade secret claim remains deficient, suggesting that Plaintiffs are incapable of

20  pleading further facts that would plausibly articulate any articulable trade secrets, or

21  that those supposed trade secrets also plausibly derive independent economic value

22  from not being generally known, so as to possibly be protectable. Therefore, the Court

23  should exercise its broad discretion to deny leave to amend again. *See Opperman v.*

24  *Path, Inc.*, 84 F. Supp. 3d at 975; *Salameh v. Tarsadia Hotel*, 726 F.3d at 1133; *Zucco*

25  *Partners*, 552 F.3d at 1007.

26  / / /

27  / / /

28  / / /

1

2

### B.   Precision Fails To State A UCL Or Intentional Misrepresentation Claim (Counts Four, Five, And Six)

3

4

5

6

7

8

9

10

11

12

13

Counts Four, Five, and Six appear to have evolved from similar claims in the Original Complaint. *Compare* Am. Compl., ¶¶ 38–61 *to* Orig. Compl., ¶¶ 64–81 (Counts Seven–Ten). The Court dismissed the original claims because the Original Complaint did not state that Plaintiffs UCL claims were brought under the UCL and did not satisfy the heightened pleading standards for an intentional misrepresentation claim under Federal Rule of Civil Procedure 9. *See* Orig. MTD Order at 26:21–31:11. The Amended Complaint now states that its UCL claims are indeed UCL claims and identifies a misrepresentation that supposedly grounds its intentional misrepresentation claim. *See* ¶ 47, ¶ 52, ¶ 57. The Amended Complaint also further clarifies that the premises of each of these claims are DHG's supposed misappropriation of Plaintiffs' trade secrets. *See* ¶ 48, ¶ 53, ¶ 59.

14

15

16

However, as explained below, the Amended Complaint's statements of Counts Four, Five, and Six remain defective and show that such claims are barred as a matter of law. Therefore, the Court should dismiss those claims without leave to amend.

17

### 1.   All Of These Claims Are Preempted By The CUTSA

18

19

20

21

22

23

24

25

26

27

28

Because each of Counts Four, Five, and Six rely entirely on allegations related to trade secret misappropriation, they are preempted by the CUTSA. "Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies [. . .] *based on the same nucleus of facts as trade secret misappropriation*." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 888 ("Alta Devices") (N.D. Cal. 2018) (emphasis in original); *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). "If there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA claim preempts the other claim." *Alta Devices* at 888 (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, at *9 (N.D. Cal. Dec. 11, 2012)). California federal courts have

expressly stated that the CUTSA can preempt UCL and intentional misrepresentation claims, as Plaintiffs bring here, irrespective of whether such claims are also based on alleged misappropriation of non-trade secret, confidential information. *See Id*. (as to UCL claims); *see Sunpower*, 2012 U.S. Dist. LEXIS 176284 at **10–11 (as to intentional misrepresentation); *see also Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 U.S. Dist. LEXIS 70225, at *15-16 (C.D. Cal. Apr. 21, 2023) (collecting cases as to non-trade secret confidential information).

"At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Alta Devices* at 888. Each of Plaintiffs' claims fail that test by the express language of those claims and as otherwise alleged in the Amended Complaint.

Count Four for unlawful competition in violation of the UCL fails (and necessarily fails) because such claims "borrow" violations of other laws and treat them as separately actionable under the UCL. *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012). Plaintiffs' claim expressly states that the "borrowed" law for Count Four is the CUTSA itself. *See* Am. Compl., ¶ 48. The complete overlap between this claim and the CUTSA is, therefore, inherent and unavoidable.

Counts Five and Six for fraudulent business practices in violation of the UCL and intentional misrepresentation, respectively, fail for similar reasons. Both expressly rely on allegations that DHG misrepresented that it was interested in acquiring Precision in order to obtain Plaintiffs' trade secrets. This allegation serves as the entire basis for each claim. *See Id.*, ¶ 53 (alleging fraudulent business practice for the purpose of "obtain[ing] Plaintiffs' Trade Secret and Confidential Information"), ¶ 59 (alleging intentional misrepresentation to serve the goal of "obtaining Plaintiffs' Trade Secrets"). Therefore, those claims are based on the same nucleus of fact as trade secret misappropriation, without any material distinction.

/ / /

The CUTSA preempts Plaintiffs' claims for UCL violations and intentional misrepresentation, and the Court should accordingly dismiss those claims, without leave to amend.

### 2. Plaintiffs' Claim For Unlawful Competition Under The UCL (Count Four) Otherwise Fails To State A Claim

Even if Plaintiffs' UCL unlawful competition claim was not preempted, it still fails because Plaintiffs' trade secret claim fails. *See* Section III.A.1, *supra*; Orig. MTD Order at 27:19–21 ("Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful prong either."); *Pellerin*, 877 F. Supp. 2d at 992 ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which [s]he bases the claim."). The Court should dismiss Count Four with prejudice, both because it is legally barred (preempted by the CUTSA) and because the predicate trade secret claim should be dismissed with prejudice (as analyzed above). *See* Section II, Section III.A.1, Section III.B.1, *supra*.

### 3. Plaintiffs' Claim For Fraudulent Business Practices Under The UCL Further Fails Because There Is No Allegation That Any DHG Conduct Is Likely To Deceive The Public (Count Five)

In addition to being preempted, Plaintiffs' claim under the UCL's "fraudulent" prong fails because Plaintiffs do not plead a likelihood that the public would be deceived by (or even know about) any of DHG's alleged fraudulent behavior. "Though many courts have described the scope of business activities prohibited by § 17200 in sweeping terms, there is no case authority that 'fraudulent' business acts are separately actionable by business competitors absent a showing that the public, rather than merely the plaintiff, is likely to be deceived." *Vox Network Sols., Inc. v. Gage Techs., Inc.*, No. 22-cv-09135-AMO, 2025 LX 152369, at *10 (N.D. Cal. Mar. 27, 2025); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 12-0371-SC, 2013 U.S. Dist. LEXIS 121401, at *16-17 (N.D. Cal. Aug. 26, 2013). Accordingly, a corporate plaintiff is "not

a member of the public[] and cannot pursue a claim under the fraud prong of the UCL based solely on alleged representations Defendant made to the company." *Payroll Res. Grp. v. Healthequity, Inc.*, No. 23-cv-02794-TSH, 2024 U.S. Dist. LEXIS 74110, at *17 (N.D. Cal. Apr. 23, 2024) (collecting cases).

But, in casting clearly established law aside, Plaintiffs improperly pursue a claim under the fraud prong of the UCL based solely on alleged representations DHG made to it, and it alone. They allege only that *they* were supposedly deceived by DHG, and only that *they* were supposedly harmed, rather than the public. *See* Am. Compl., ¶¶ 53–54. They do not allege that any member of the public was even aware of any supposed misrepresentations. This renders Count Five irreconcilably deficient.[7] The Court should dismiss Count Five with prejudice, both because it is legally barred (preempted by the CUTSA) and because amendment would be futile as to the claim that the alleged fraudulent statement was made only to Plaintiffs, not the public. *See* Section II, Section III.B.1, *supra*.

### 4. <u>Plaintiffs' Claim For Intentional Misrepresentation (Count Six) Is Further Barred By The Economic Loss Rule</u>

Even if Count Six was not preempted, the economic loss rule bars it. The economic loss rule bars tort recovery for breach of a contractual duty, unless the plaintiff demonstrates: (1) that the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed  by the parties when they entered the contract; and (2) that the defendants conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed. *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20-21 (2024). "If the alleged

---

[7] While the Amended Complaint, elsewhere, suggests that DHG has somehow "defamed Plaintiffs by claiming that Plaintiffs have stolen the DHG's Companies' designs" (*see id.*, ¶ 20.9), Count Five itself clarifies that it relies on the allegations that Plaintiffs were deceived by representations only to Plaintiffs. *See id.*, ¶¶ 53–54. To the extent Plaintiffs may attempt to rely on this unadorned allegation of defamation, such a claim fails because it provides no detail as to the circumstances of any statements made by DHG, failing Rule 8, and, certainly, Rule 9. *See* Section II, *supra*; Orig. Mot. at 8:11–9:13 (discussing the Rule 9 pleading standard).

breach is based on a failure to perform as the contract provides, and the parties reasonably anticipated and allocated the risks associated with the breach, the cause of action will generally sound only in contract because a breach deprives an injured party of a benefit it bargained for." *Id.* at 27.

Plaintiffs allege that DHG expressed interest in purchasing Precision, and that, in reliance on that representation of interest, shared their trade secrets with DHG under the DHG NDA. *See* Am. Compl., ¶¶ 58–59.[8] Plaintiffs allege that DHG never had such interest in buying Precision and instead sought only to obtain Plaintiffs' trade secrets. *See id*. In other words, Plaintiffs allege they were harmed by DHG's use of their trade secrets for purposes other than evaluating whether to purchase Precision, where DHG never wanted to purchase Precision and instead only wanted to be able to use Plaintiffs' trade secrets for other purposes.

But that theory implicates nothing beyond what duties the DHG NDA imposes on DHG or the very contemplated injuries the DHG NDA governs. In fact, by its own language, limiting DHG's use of any "Confidential Information" to use "in connection with the consideration of a possible transaction between the Parties" is the entire reason the DHG NDA exists. *See* Am. Compl., Ex 2, p. 1. And the central obligation in the DHG NDA is that DHG "hereby agree[s] that the Confidential Information will be used by [DHG] and [DHG's] Representatives solely for the purpose of evaluating, proposing or negotiating a possible Transaction and for no other purpose and will not be disclosed to any third parties and will be kept confidential by [DHG] and [DHG's] Representatives[.]" *Id.*, § 3. Because the DHG NDA specifically restricts DHG's use of "Confidential Information," any violation of that restriction would only deprive Plaintiffs of what they bargained for; and would only harm Plaintiffs in a manner inherent in the purpose of the contract—nothing more. The alleged wrongdoing and

---

[8] Count Six also alleges that DHG made particular representations in the MOU (*see* Am. Compl., ¶ 56), but the Court already rejected Plaintiffs' claim on that basis because DHG is not a party to the MOU. *See* Am. Compl., Ex. 1, p. 1; Orig. MTD Order at 29:23–26.

1  alleged subsequent harms stemming from said wrongdoing at the core of Plaintiffs'

2  intentional mis presentation claim are completely subsumed within the plain language

3  of the DHG NDA, and any possible remedy is governed by contract principles.

4      Because Plaintiffs' intentional misrepresentation claim overlaps entirely with

5  DHG's alleged failure to perform under the DHG NDA, it is barred by the economic

6  loss rule. The Court should dismiss Count Six with prejudice, as the claim is legally

7  barred, both by CUTSA preemption and the economic loss rule. *See* Section II, Section

8  III.B.1, *supra*.

9  **IV.   CONCLUSION**

10     For the foregoing reasons, DHG respectfully requests that the Court dismiss

11  Counts Three, Four, Five, and Six of Precision's First Amended Complaint. Because

12  further amendment to these claims would be futile, the Court should dismiss these

13  claims with prejudice.

14  Dated:  February 12, 2026          DINSMORE & SHOHL LLP

15

16

17                                     By: /s/ *Michael A. Xavier*

18                                         Michael A. Xavier
                                           Arielle I. Goren
19                                     Attorneys for Defendant DHG, INC.

1

## <u>CERTIFICATE OF SERVICE</u>

2    I, the undersigned, do hereby certify that on February 12, 2026, a true copy of

3 this Document was served by electronic mail upon all registered CM/ECF users, and

4 by United States Postal Service upon all non-registered CM/ECF users in this case as

5 indicated below:

6
7    **William Scott Cameron -** scameron@weintraub.com,
            daguillen@weintraub.com
8    **Sarah K. Dunkley , PHV -** skdunkley@gct.law
     **Margaret A. Gisch , PHV -** magisch@gct.law
9    **Arielle Goren -** arielle.goren@dinsmore.com, wendy.yones@dinsmore.com
10    **Jamie L Johnson -** jamie@kkks.com
     **M. Zachary Smith -** zsmith@weintraub.com, NEF@weintraub.com,
11            aespanapurpur@weintraub.com
12    **Michael Anthony Xavier , PHV -** michael.xavier@dinsmore.com,
            stella.laroe@dinsmore.com
13
14    Dated:  February 12, 2026            DINSMORE & SHOHL LLP

15
16                            By: _/s/ Michael A. Xavier_____
17                                Michael A. Xavier
                                Arielle I. Goren
18                                Attorneys for Defendant DHG, INC.
19
20
21
22
23
24
25
26
27
28

DHG INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF
THE FIRST AMENDED COMPLAINT (F.R.C.P 12(b)(6))