
Case 2:25-cv-02005-CSK   Document 50   Filed 02/26/26   Page 1 of 18

Zachary M. Smith, State Bar No. 78241
W. Scott Cameron, State Bar No. 229828
**Weintraub Tobin** Chediak Coleman Grodin
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:   916.558.6000
Facsimile:   916.446.1611
Email: ZSmith@weintraub.com
           SCameron@weintraub.com

Attorneys for Plaintiffs
PMM Holdings, LLC and Precision
Machine & Manufacturing

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMM HOLDINGS, LLC and PRECISION MACHINE & MANUFACTURING,<br><br>            Plaintiffs,<br><br>   v.<br><br>WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,<br><br>            Defendants. | Case No.:  2:25-cv-02005-CSK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT**<br><br>Date:   March 31, 2026<br>Time:   10:00 a.m.<br>Ctrm:   25, 8th Floor<br><br>Complaint Filed:   July 17, 2025<br>Trial Date:        None Set<br><br>Magistrate Judge: Hon. Chi Soo Kim |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................... 5

II. BACKGROUND ............................................................................................................. 6

III. LAW AND ARGUMENT ............................................................................................... 9

    A. Legal Standards ................................................................................................... 9

    B. The Complaint Alleges Facts Sufficient To State A Claim For Misappropriation Of Trade Secrets. ................................................................... 10

        1. Plaintiffs Have Adequately Alleged Their Trade Secrets ........................ 10

        2. Plaintiffs Have Adequately Alleged Economic Value And Privacy. ......... 13

    C. Plaintiffs' UCL And Material Misrepresentation Claims Are Not Preempted by the CUTSA ................................................................................. 14

    D. Plaintiffs Have Alleged That DHG's Conduct Will Deceive The Public ............... 16

    E. Plaintiffs' Claim for Intentional Misrepresentation (Count Six) Is Not barred by Pre-Emption or by the Economic Loss Rule ........................................... 17

IV. CONCLUSION ............................................................................................................. 18

weintraub tobin chediak coleman grodin

#5115502v3

2

PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alta Devices, Inc. v. LG Electronics, Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) ............................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 9

*Berrios-Bones v. Nexidis, LLC*, No. 07-cv-00193,
    2007 WL 3231548 (D. Utah Oct. 30, 2007) ..................................................................... 16

*Cisco Systems, Inc. v. Chung*,
    462 F. Supp. 3d 1024 (N.D. Cal. 2020) ....................................................................... 10, 11

*Davidson v. Seterus, Inc.*,
    21 Cal. App. 5th 283 (2018) .............................................................................................. 16

*Dey v. Robinhood Markets, Inc.*,
    780 F.Supp.3d 882, 896 (N.D. Cal. 2025) ........................................................................ 16

*Dhital v. Nissan North America, Inc.*,
    84 Cal. App. 5th 828 (2022) .............................................................................................. 18

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) ...................................................................................................... 17

*Hospital Bldg. C. v. Rex Hospital Trustees*,
    425 U.S. 738 (1976) ............................................................................................................ 9

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
    2022 WL 16637988 (N.D. Cal. Nov. 2, 2022) ............................................................ 11, 12

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ............................................................................................. 10

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969) ............................................................................................................ 9

*K.T.I. Hydraulics, Inc. v. Palmersheim*,
    2022 WL 17100470 (C.D. Cal. Aug. 11, 2022) ................................................................ 11

*Kelly v. Corrections Corp. of America*,
    750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................................................... 9

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................................... 10, 12

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Payroll Res. Grp. v. Healthequity, Inc.*,
   No. 23-cv-02749-TSH, 2024 WL 1744089 (N.D. Cal. Apr. 23, 2024) .................................. 17

*Quintara Biosciences Inc. v. Ruifeng Biztech, Inc.*,
   149 F.4th 1081 (9th Cir. 2025) ........................................................................................... 10

*R Power Biofuels, LLC v. Chemex, LLC*,
   No. 16-CV-00716-LHK, 2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) ............................ 17

*STEMCELL Tech. Canada, Inc. v. StemExpress, LLC*,
   2022 WL 585668 (N.D. Cal. Feb. 24, 2022) ................................................................. 11, 12

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................................................ 9

*TMX Funding, Inc. v. Impero Tech, Inc.*,
   2010 WL 2509979 (N.D. Cal. June 17, 2010) ................................................................... 12

*Waymo LLC v. Ubeer Tech., Inc.*,
   256 F. Supp. 3d 1059 (N.D. Cal. 2017) ......................................................................... 14, 15

*White v. FCA US LLC*,
   U.S. Dist. WL 3370791 at *3-*4 (N.D. Cal. 2022) ............................................................. 17

**Statutes**

California Code of Civil Procedure § 2019.210 ......................................................................... 18

California Uniform Trade Secrets Act, California Civil Code §§ 3426.1 *et seq.* ....................... 10

Defend Trade Secrets Act of 2016, 18 U.S.C. § 1835 ................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .............................................................................................................. 9, 12

Federal Rule of Civil Procedure 8(a) ....................................................................................... 9, 14

Federal Rule of Civil Procedure Rule 9(b) .............................................................................. 9, 12

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 9

#5115502v3          4

PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT

Plaintiffs PMM Holdings, LLC ("PMM Holdings") and Precision Machine & Manufacturing ("Precision"), together "Plaintiffs," hereby submit to Magistrate Judge Chi Soo Kim, of the U.S. District Court for the Eastern District of California (the "Court") the following points and authorities in opposition to Defendant DHG, Inc.'s Motion to Dismiss Counts Three, Four, Five, and Six of the First Amended Complaint Pursuant to Rule 12(b)(6) for failure to state a cause of action (the "Motion").

## I.   INTRODUCTION

Plaintiffs design, manufacture, and sell, among other things, heavy-duty rotary airlock feeders as a component for material handling systems. Defendant DHG builds and sells blower trucks, which include rotary feeders like those Plaintiffs produce. DHG and two of DHG's wholly-owned subsidiaries, Finn Corporation ("Finn") and Express Blower ("EB")[1], entered into an MOU in 2016 with Plaintiffs designing, manufacturing and supplying Precision's feeders to DHG's affiliates.

In 2024, this changed. Apparently, DHG wanted to obtain the Precision feeders cheaper than Plaintiffs were selling them by owning or exclusively controlling the sale of the feeders. DHG approached Plaintiffs' competitor, William M. Meyer and Sons, Inc. ("Meyer") to have Meyer reverse engineer and manufacture a knock-off of Precision's feeders, which DHG hoped its subsidiaries could then purchase from Meyer at a price lower than Precision's. In so doing, the DHG Companies violated the confidentiality provisions of the MOU between the two companies and violated California's Unfair Competition Law.

Meyer's efforts failed to produce the feeders at a price lower than the DHG Companies were already paying to Plaintiffs. As a result, DHG approached Plaintiffs and specifically represented it was "very interested in Precision Machine as an acquisition" and then entered into a "Non-Disclosure Agreement" (the "DHG NDA"). A few months later, Meyer also professed to be interested in purchasing Precision and entered into a "Confidentiality Agreement" (the "Meyer NDA"). Through the access granted by the NDA's, DHG and Meyer gained significant confidential

---

[1] Together, DHG, Finn and EB are referred to in this memorandum and the First Amended Complaint ("FAC") as "DHG's Companies."

weintraub tobin chediak coleman grodin

and trade secret information owned by Plaintiffs about their business in general and specifically about how the feeders could be systematically manufactured to achieve cost efficiencies resulting in lower pricing. This additional information allowed the DHG Companies and Meyer to reconfigure its operations and enter into agreements by which Meyer manufactured and sold to the DHG's Companies the Precision- designed feeders without any entity paying Plaintiffs a license fee or other compensation for the feeders.

Plaintiffs were forced to file this suit to protect itself from DHG and Meyers's wrongful conduct.

## II.   BACKGROUND

Plaintiffs are in the business of designing, manufacturing and selling industrial machinery, primarily heavy-duty rotary airlock feeders, rotary valve airlocks and screw conveyors as components for material handling systems. First Amended Complaint ("FAC") ¶ 9.  To conduct such business, PMM Holdings owns Precision which performs the design, manufacture and sales of such machinery. Precision's rotary airlock feeder is a unique product, highly regarded in the industry, and particularly effective in blower truck and blower equipment applications. *Ibid.*  DHG conducts the business of building and selling material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers and/or bark blowers, through its wholly-owned entities Finn and EB. *Id.*, ¶ 10.

In 2015 and 2016, at DHG's instigation, DHG's subsidiary Finn and Precision discussed a potential arrangement by which Precision would design, manufacture and supply to Finn and Finn's wholly-owned subsidiary, EB, Precision's rotary airlock feeders ("feeders") to be installed by Finn and EB as a component part in some of their equipment. Precision proposed to design, build and supply new generation feeders which would be superior to the feeders Finn and EB had been installing in their blowers and blower trucks in the past. *Id.*, ¶ 11.  The discussions resulted in a Memorandum of Understanding ("MOU") signed by Matt Day, the then Vice President of Operations for Finn and EB, and by Precision's former President, Kirk Morton, on or about February 9, 2016. *Id.*, ¶ 12.  Under the MOU, the parties were bound to "protect the confidentiality of the designs, pricing, purchase volumes, and any other information about their business

relationship. *Id.*, ¶ 12.2.  Any feeder developed and manufactured by Precision during the course of the business relationship described in the MOU would be subject to the terms of the MOU. *Id.*, ¶ 12.7.

At its sole cost and risk, Precision customized its own proven feeder designs to serve as new and improved feeders for use as a component within Finn and EB's blower trucks and blower equipment. Precision developed, designed, manufactured, and sold to Finn its new 18x33 model to replace Finn's old "12-Series" model, Precision's new 16x25 which replaced Finn's old "5-Series" model, and, eventually, Precision's new model "302" to replace Finn's old model called "BB302". Precision also developed and designed what Precision designated as a 12x15 model feeder for a new material blower machine that Finn was developing. All the feeders bear Precision serial numbers and the drawings for all of the new feeders designed and engineered by Precision, including the new 302 rotary feeder, bear the Precision legend and insignia and are under Precision's exclusive ownership, possession and control. *Id.*, ¶ 13.1.

In 2024, the "business relationship" began to change.  DHG and Three Cities represented that DHG was interested in potentially doing business with Plaintiffs and entered into a "Non-Disclosure Agreement," dated January 23, 2024, and signed by Christopher Erickson on behalf of DHG and Three Cities (the "DHG NDA"). *Id.*, ¶ 14. Under the DHG NDA, DHG bound itself and its affiliates to maintain in strict confidence any and all information and/or materials in whatever form obtained from Precision. *Id.*, ¶ 15.  Once the "business relationship" established by the MOU ended due to failure of the conditions precedent concerning minimum lots sizes and minimum annual purchases, DHG and the DHG Companies failed to license the Plaintiffs' feeders and, instead, undertook a scheme to use the designs and other proprietary information related to the feeders to evade licensing Precision's feeders from Precision or otherwise compensating Precision for the use of its designs and other proprietary information concerning Precision's airlock rotary feeders. *Id.*, ¶ 19.2.

DHG and DHG's Companies as DHG's agents, together with Meyer, have violated the MOU, the DHG NDA, and the Meyer NDA, and have misappropriated Precision's designs, manufacturing processes, intellectual property, proprietary information and/or other Confidential

Information associated with Precision's feeders. *Id.*, ¶¶ 19-20.8. Both DHG and Meyer falsely represented to Plaintiffs that they were interested in doing business with Plaintiffs in order to gain access to all of Plaintiffs' proprietary and trade secret information and other Confidential Information though the disclosures of information contemplated by the DHG NDA and the Meyer NDA rather than for the true purpose of evaluation, negotiation, documentation or consummation of a transaction with Precision and/or PMM Holdings. *Id.*, ¶ 20.1. Through the access granted by the DHG NDA, DHG and DHG's Companies all acquired commercially exploitable and proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions, inventions, discoveries, and designs, in addition to the Plaintiffs' financial data, especially with respect to existing and potential customers, employees, vendors or suppliers related to Precision's feeders. *Id.*, ¶ 20.2. Specifically, DHG obtained access to the following: Precision's key customers by name, annual revenues, and the industries in which they operate; Precision's suppliers of key materials; Precision's costs and margins; Precision's key competitors; Precision's designs and engineering of feeders; proprietary information regarding Precision's manufacturing process, including specific tools, cells, mills, machining centers and layout which were critical to producing the feeders in a cost-effective manner; functions which Precision outsourced, including to whom these functions were outsourced and the associated costs; multi-year financial reports, budget projections, industry focus, growth areas, and tasks Precision employed to increase profitability; and Precision's annual growth of revenue by product year-over-year. FAC, ¶ 20.2.1-20.2.9. DHG, DHG's Companies and Meyer also violated the NDA's by sharing the Confidential Information gleaned from their dealings with Plaintiffs. *Id.*, ¶ 20.3.

As alleged in more detail in paragraphs 20, 20.1 through 20.9 of the FAC, DHG's Companies breached the DHG NDA contract and misappropriated Plaintiffs' trade secrets by informing third parties, including customers and competitors of Plaintiffs, of Confidential Information, that a potential transaction was being contemplated, and by providing potential customer and competitor Meyer with Precision's proprietary information concerning Precision's services, products, trade secrets, techniques, processes, operations, formulae, product specifications, compositions,

inventions, discoveries, and designs, and by engaging Meyer to reverse engineer Precision's rotary feeder coupled with such additional proprietary information, trade secrets and other Confidential Information obtained from Precision through the DHG NDA.

As a result of these breaches, Plaintiffs have suffered damages and filed this suit.

### III.   LAW AND ARGUMENT

#### A.   Legal Standards

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure 'does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Kelly v. Corrections Corp. of America*, 750 F. Supp. 2d 1132, 1137 (E.D. Cal. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). When considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true the allegations in the complaint, *Hospital Bldg. C. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), must construe the pleadings in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411 (1969). To withstand a motion to dismiss, a complaint need only set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Only claims sounding in fraud require the complaint to meet the heightened pleading standard of Rule 9(b). Under Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Even under Rule 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).

/ / /

/ / /

/ / /

#5115502v3     9

PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT

**B.     The Complaint Alleges Facts Sufficient To State A Claim For Misappropriation Of Trade Secrets.**

The Complaint alleges misappropriation of trade secrets under both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1835, and the California Uniform Trade Secrets Act, California Civil Code §§ 3426.1 *et seq.* "Courts have analyzed these claims together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). To assert a trade secret misappropriation claim, a plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant misappropriated it, which (3) damaged the plaintiff. *Id.* at 657-58. Despite the FAC providing significantly more detail and information regarding Precision's trade secrets than the original complaint did, including listing and explaining nine separate categories of the trade secrets, FAC ¶ 20.2, DHG argues that the FAC fails to allege the trade secrets with sufficient particularity. DHG is wrong.

**1.     Plaintiffs Have Adequately Alleged Their Trade Secrets.**

"Trade-secret cases 'start from the important premise that the definition of what may be considered a 'trade secret' is broad.'" *Quintara Biosciences Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025) (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020)). As described by the Ninth Circuit, "the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657. The FAC satisfies all three elements.

"Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020). Rather, the complaint need only "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.*; *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) ("The complaint need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants

'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'"). "In considering the adequacy of a trade-secret disclosure, 'the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward.'" *STEMCELL Tech. Canada, Inc. v. StemExpress, LLC*, 2022 WL 585668, *4 (N.D. Cal. Feb. 24, 2022) (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009)).

Paragraphs 20.2 – 20.2.9 of the FAC list nine separate categories of Precision's trade secrets to which DHG obtained access, along with a brief description of each. These categories include: Precision's key customers by name, annual revenues, and the industries in which they operate; Precision's suppliers of key materials; Precision's costs and margins; Precision's key competitors; Precision's designs and engineering of feeders, specifically including feeders designed and produced for DHG; proprietary information regarding Precision's manufacturing processes, including specific tools, cells, mills, machining centers and layout which were critical to producing the feeders in a cost-effective manner; functions which Precision outsourced, including to whom these functions were outsourced and the associated costs; multi-year financial reports, budget projections, industry focus, growth areas, and tasks Precision employed to increase profitability; and Precision's annual growth of revenue by product year-over-year. FAC, ¶ 20.2-20.2.9. This is more than sufficient to provide DHG with "at least the boundaries within which the secret lies." *Cisco Systems*, 462 F. Supp. 3d at 1047.

Indeed, the trade secrets listed in the FAC are strikingly similar to cases finding trade secrets sufficiently alleged. The Court in *K.T.I. Hydraulics, Inc. v. Palmersheim*, 2022 WL 17100470, *5 (C.D. Cal. Aug. 11, 2022) found the trade secrets sufficient where the complaint listed the trade secrets as "KTI's 'product designs and specifications, customer/distributor contact information lists, specific customer pricing and customer preferences for numerous KTI products, KTI supplier information, cost figures,' and 'proprietary information relating to KTI's product. . ..'" The Court in *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2022 WL 16637988, *4 (N.D. Cal. Nov. 2, 2022) found the trade secrets sufficiently alleged where the complaint described the trade secrets as "protectable knowledge, methods, techniques, processes, procedures, compilations, formulas, and

designs relating to E3 ubiquitin ligases and DELs." Similarly, *TMX Funding, Inc. v. Impero Tech, Inc.*, 2010 WL 2509979, *3 (N.D. Cal. June 17, 2010), found the trade secrets sufficiently alleged where the complaint listed "business methods, marketing plans ('such as prospective customer and sales methods for attracting and retaining customers'), and product information such as cost, pricing, margin data, and other financial information)" as the trade secrets.

DHG argues that Plaintiffs have still not provided enough detail for any of its nine categories of trade secrets. Motion, pp. 11-15. But Plaintiffs need not provide the level of detail DHG demands at the pleading stage. *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d at 1113 ("The complaint need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'"). Again, Plaintiffs' misappropriation claim need only meet the "short and plain statement of the claim" standard under Federal Rule of Civil Procedure 8(a)(2), not the more detailed standard under Rule 9(b). Plaintiffs' FAC easily satisfies this standard.

Here, the FAC lists nine specific trade secrets and provides a sufficient description of each category to provide DHG with notice of the bounds within which the trade secrets lie, and each at least as detailed as those the courts above found sufficient. Each of these categories is included in the cases cited above as sufficiently alleging trade secrets.

Perhaps more importantly, DHG's Companies already know exactly what information within the nine categories described in paragraphs 20.2 through 20.2.9 of the FAC was previously unknown to them before they obtained access to such confidential matters by executing a non-disclosure agreement with Precision. Where a defendant obtains trade secret and confidential information only through a properly executed nondisclosure agreement, it is understood that the party knows such information is or may be entitled to trade secret protection. STEMCELL, 2022 WL 585668 at *7 ("When parties have a relationship through a confidentiality agreement ... they have more information about the alleged confidential and trade-secret information."); *see also HotSpot Therapeutics*, 2022 WL 16637988, *5 (same).

/ / /

#5115502v3     12

PLAINTIFFS' OPPOSITION TO DEFENDANT DHG INC.'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT

Therefore, Plaintiffs have sufficiently alleged their trade secrets. They have sufficiently described the "bounds within which the secrets lie" to provide a basis for discovery. Plaintiffs need do no more at the pleading stage. Defendant can ascertain further detail in discovery once a protective order is in place.[2]

### 2. Plaintiffs Have Adequately Alleged Economic Value And Privacy.

DHG argues that Plaintiffs FAC fails to adequately allege economic value of Plaintiffs' trade secrets as being unknown to the public or Plaintiffs' efforts to keep the information secret. Not so. DHG did not own the designs for any of the Precision designed and built products. As a result, it had to engage Meyer to reverse engineer a Precision 302 feeder and manufacture a Meyer-built version of the Precision 302 feeder. FAC ¶ 20.5. Without the information gleaned from the tour of the Precision facility, the reverse engineering by Meyer of the Precision 302 feeder designed for Finn was not sufficient to allow Finn to purchase Meyer's version of the 302 because Meyer could not manufacture it efficiently enough to bring the costs down to a price Finn was willing to pay. This is evidenced by the fact that DHG's Companies did not order any 302 units from Meyer until several months *after* the Precision manufacturing facilities tour led by Precision's Don Lindsey ("factory tour") at which Precision's secret information concerning the use of robotic assembly methods and horizontal drilling equipment, which allowed Precision to produce the feeders in a cost-efficient and profitable manner, had been disclosed pursuant to the DHG NDA and Meyer NDA. FAC ¶¶ 20.2.6, 20.2.7, 20.8, 22.1 and 20.6. Also, it was not until after the factory tour, that DHG's Companies were able to cancel all their orders for feeders from Precision and, instead, order 60 302 feeders from Meyer. FAC ¶¶ 20.8 and 22.1.

Thus, neither DHG not Meyer was able to benefit from the reverse engineered prototype until DHG and Meyer learned how to manufacture a high-quality Precision facsimile efficiently through the factory site inspections and Don Lindsey tour. The value of the information gained in the factory tours was that it allowed Meyer to become a viable competitor of Precision and allowed

---

[2] Contemporaneously with service of this opposition to the Defendant's Motion, Plaintiffs' counsel have submitted to Defendant's counsel a proposed stipulated protective order for review and comment which should be finalized and submitted to the Court for approval before discovery commences.

1   the DHG Companies to avail themselves of another source for the all-important feeder component
2   of the Finn and EB blower devices to create a lever in negotiating prices with Meyer (and other
3   suppliers of components such as CAS). FAC ¶ 22.2.

4       Plaintiffs also took every reasonable step to keep their trade secrets private. Plaintiffs owned and kept to themselves the drawings and specifications for the feeders Precision designed and constructed for Finn's blowers and did not share them with anyone. FAC ¶¶ 1, 12.1, 13.1, 13.3. Plaintiffs shared its confidential and trade secret information only after detailed nondisclosure agreements were executed. FAC ¶¶ 12, 14, 15, 16, 17. Plaintiffs insisted on these NDAs in order "to protect the confidentiality of the designs, the pricing, volumes, and any other information about their business relationship." FAC ¶ 12, and FAC Exhibits 1-3. Plaintiffs need not allege more in order to state a claim under Federal Rule of Civil Procedure 8(a).

    **C.    Plaintiffs' UCL And Material Misrepresentation Claims Are Not Preempted by the CUTSA**

    Plaintiffs' unfair competition claims are not pre-empted by CUTSA because they are not "based on the same nucleus of facts." *Waymo LLC v. Ubeer Tech., Inc*., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). Plaintiffs' misappropriation claim against DHG is based on wrongful *acquisition* and *use* of the trade secret information DHG's Companies obtained through the Defendant's violations of the 2024 DHG NDA. FAC ¶¶ 15-17, 20-20.9 and 28-30.

    In contrast, the FAC's unfair competition claims are based on the willful breach of the contractual obligations of the DHG Companies undertaken in 2016 MOU rather than on the violations of the non-disclosure obligations of the DHG NDA undertaken in 2024. The DHG Companies have engaged in the separate anti-competitive activity of attempting to prevent Plaintiffs from selling Precision-designed-and-manufactured feeders in the lucrative "aftermarket" for feeders to replace failed feeders of lesser quality produced by some other manufacturer of blowers or blower components without paying license fees to Precision for any feeders ordered by Finn or EB from Precision in a year during which Finn and/or EB has failed to purchase the annual minimum number from Precision. FAC ¶¶ 12-13.4, 19, 19.1 and 19.2.

/ / /

weintraub tobin chediak coleman grodin

These allegations demonstrate unfair competition separate and distinct from the later misappropriation of trade secrets obtained through the DHG NDA because the willful breach of the MOU simultaneously achieved for the DHG Companies 1) reduced cost to the DHG Companies of the feeders due to the failure to pay a licensee fee to Precision and 2) the purported lockout of Precision from the lucrative "Aftermarket" business in which DHG's Companies could not otherwise compete with Precision to the quality of the Precision-designed-and-manufactured feeders.

Thus, the test employed in *Waymo*, 256 F. Supp. 3d at 1062 and in *Alta Devices, Inc. v. LG Electronics, Inc*., 343 F. Supp. 3d 868, 888 (N.D. Cal. 2018), asking "whether, if stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action" confirms that Plaintiffs' causes of action for Unfair Business Practices and Competition (Count Four) and Fraudulent Business Practices and Competition (Count Five) must survive Defendant's motion to dismiss confirms such counts are not preempted by CUTSA.  This is so because, even if all the allegations about trade secrets and misappropriation were completely excised from the FAC, the allegations that the DHG Companies wrongfully failed to purchase the annual minimum number of feeders from Precision and failed to pay any license fee (despite not reaching such annual minimum) (FAC ¶¶ 19, 19.1 and 19.2) for the anti-competitive purpose or result of locking Plaintiffs out of the "Aftermarket" for Precisions' feeders (FAC ¶¶ 12.4-12.8, 19.1 and 19.2) are sufficient, standing alone and without reference to trade secrets, to support causes of action for unfair competition and fraudulent business practices in addition to breach of the MOU.

Moreover, it is not a defense to the anti-competitive conduct of the DHG Companies in refusing to pay license fees for the Precision-designed feeders once the DHG Companies failed to purchase the annual minimum number from Precision, that DHG, Inc. is not a signatory to the MOU. Even though DHG is not named as a party to the MOU, it can be liable for the conduct of its wholly-owned subsidiary where it can "plausibly be inferred to have taken over performance of the subsidiary's day-to-day operations in carrying out that [the parent's general] policy." *Dey v.*

/ / /

*Robinhood Markets, Inc.*, 780 F.Supp.3d 882, 896 (N.D. Cal. 2025), citing *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 542 (2000) (emphasis in original).

The FAC alleges facts from which it can be inferred that DHG was in control of day-to-day management of Finn and EB to a degree commensurate with alter ego standards. The FAC alleges that DHG, Finn and EB are jointly operated at the same physical facility in Ohio and under the "ultimate direction and control of DHG" (FAC ¶¶ 7-10). On a motion to dismiss for failure to state a cause of action, these allegations concerning the ultimate control of DHG must be assumed to be true. (*See*, *e.g.*, *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 306-307 (2018)) and the details of such control can be fleshed out by evidence obtained through discovery.

Most importantly for analysis at this pleading stage, the inquiry as to whether the parent controls day-to-day operations is a "highly fact intensive issue" which is "'inappropriate to resolve at the motion to dismiss stage'" (*Dey v. Robinhood Markets, Inc.*, *supra*, at 896, citing *Berrios-Bones v. Nexidis, LLC,* No. 07-cv-00193, 2007 WL 3231548 at *9 (D. Utah Oct. 30, 2007). As explained in *Berrios-Bones v. Nexidis, LLC* at page 9:

> Alter ego is a highly fact intensive issue and inappropriate to resolve at the motion to dismiss stage. Even if it is not specifically pled in the Complaint as a cause of action, the facts allege such an assertion. Accordingly, the court denies the Walker Defendants' motion. The complexities of the relationships between the parties preclude a determination as a matter of law with respect to which parties should remain in the case for given claims. These issues can be resolved through discovery.

**D.    Plaintiffs Have Alleged That DHG's Conduct Will Deceive The Public**

DHG argues that the FAC does not plead a likelihood that the public will be deceived by DHG's fraudulent behavior, and therefore the UCL claim based on DHG's fraudulent behavior (Count Five) fails to state a claim. Not so. The FAC alleges that DHG and the DHG Companies have been marketing and selling the Precision-designed airlock rotary feeders, including Precision's 302 model feeder, as the DHG' Companies' own products, and that they have done so by using Plaintiffs' confidential and trade secret information they acquired through their fraudulently obtained DHG NDA. FAC ¶ 22.3. In fact, part of the relief Plaintiffs seek is an injunction enjoining DHG from marketing, manufacturing, or selling Precision-designed airlock rotary feeders as DHG's

own product.  FAC, Prayer, C. (1). Thus, Count Five is not "based solely on the alleged representations Defendant made to the company." *Payroll Res. Grp. v. Healthequity, Inc.*, No. 23-cv-02749-TSH, 2024 WL 1744089, at *5 (N.D. Cal. Apr. 23, 2024).

### E.  Plaintiffs' Claim for Intentional Misrepresentation (Count Six) Is Not barred by Pre-Emption or by the Economic Loss Rule

As previously noted (*supra*, page 2), DHG approached Plaintiffs and specifically represented it was "very interested in Precision Machine as an acquisition" and thereby induced Plaintiffs to enter into a Non-Disclosure Agreement with DHG under which DHG bound itself and its affiliates to maintain in strict confidence any and all information in whatever form obtained from Precision about its business. FAC ¶¶ 14 and 15.  Through the access granted by the DHG NDA, DHG and DHG's Companies all acquired specific commercially exploitable and proprietary information (FAC, ¶¶ 20.2.1-20.2.9) which allowed DHG's Companies to obtain Meyer-built facsimiles of Precision's 302 feeders while avoiding payment of license fees or other compensation to Plaintiffs and to divert sales of the feeders from Precision to DHG's Companies. FAC ¶¶ 19.2, 20.2.6, 20.2.7, 20.8, 20.6, 20.8, 22.1 and 22.2.

Thus, Plaintiffs' intentional misrepresentation claims are not pre-empted by DHG's Companies' alleged misappropriation of trade secrets because DHG's intentional misrepresentation that it might be a purchaser of Precision from PMM Holdings was the *means* by which DHG put itself in the position to misappropriate trade secrets, <u>but was not itself an act of misappropriation</u>. Therefore, CUTSA does not pre-empt an action against DHG for its intentional misrepresentation used to further its aims of eliminating Precision as a competitor in sales of the feeders such as the 302 model.

Likewise, DHG's request that the Court misapply the economic loss rule and dismiss Count Six of the FAC should be denied.  The economic loss rule bars actions for tort damages arising from breaches of contractual obligations. Under well-established California law, the rule does <u>not</u> apply to fraud committed to *induce* the plaintiff to enter into a contract. (*See* e.g., *White v. FCA US LLC*, U.S. Dist. WL 3370791 at *3-*4 (N.D. Cal. 2022), citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *Erlich v. Menezes,* 21 Cal. 4th 543 (1999) and *R Power Biofuels, LLC*

*v. Chemex, LLC,* No. 16-CV-00716-LHK, 2017 WL 1164296, at *5 (N.D. Cal. Mar. 29, 2017); *see also*, *Dhital v. Nissan North America, Inc.,* 84 Cal. App. 5th 828, 842 and 845 (2022).

Fraud in the inducement is exactly what is alleged in the FAC. Paragraphs 57 through 59 allege that DHG falsely represented— not in the DHG NDA, but in a pre-contract email—that DHG was interested in purchasing Precision from PMM Holdings with the intent to induce Plaintiffs to enter into the DHG NDA and thereby permit DHG to gain access to Confidential Information. The FAC also alleges that when DHG's representative, Chris Erickson, made such misrepresentation, DHG and its subsidiaries had "no intention of ever actually acquiring Precision." (FAC ¶ 58.)

While it is true that one component of the damage flowing from such intentional misrepresentation is the loss of trade secrets to DHG, another distinct component is the impairment and restraint of Plaintiffs' ability to participate and compete in the market for its feeders (FAC ¶ 60).

## IV.   CONCLUSION

DHG's motion to dismiss should be denied. Plaintiffs' First Amended Complaint adequately pleads and states valid claims for each claim in the complaint. Plaintiffs request that the parties be permitted to enter into a stipulated protective order to submit to the Court so that Plaintiffs be permitted to comply with the requirements of California Code of Civil Procedure § 2019.210 to further describe its trade secrets with reasonable particularity prior to discovery, so that discovery may proceed. Should the Court determine that any of Plaintiffs' claims fail to meet the appropriate pleading standard, Plaintiffs request leave to file an amended complaint addressing any issues identified by the Court.

Dated:  February 26, 2026

**Weintraub Tobin** Chediak Coleman Grodin
Law Corporation

By:  /s/ Zachary M. Smith
         Zachary M. Smith

Attorneys for Plaintiffs PMM Holdings, LLC and Precision Machine & Manufacturing