Michael A. Xavier (OH Bar No. 0097121 - *Admitted pro hac vice*)
Michael.xavier@dinsmore.com
**DINSMORE & SHOHL LLP**
1775 Sherman Street, Suite 2600
Denver, CO 80215
Tel: (303) 831-6980

Arielle I. Goren (SBN 331822)
arielle.goren@dinsmore.com
**DINSMORE & SHOHL LLP**
550 South Hope Street, Suite 2800
Los Angeles, CA 90071
Tel: (213) 596-0010
Fax: (619) 400-0501

*Attorneys for Defendant DHG, INC.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO COURTHOUSE

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,<br><br>Defendants. | Case No. 2:25-cv-02005-CSK<br><br>**DEFENDANT DHG INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, AND SIX OF THE FIRST AMENDED COMPLAINT (F.R.C.P 12(b)(6))**<br><br>Date: March 31, 2026<br>Time: 10:00 a.m.<br>Courtroom 25, 8th floor<br><br>Complaint Filed: July 17, 2025<br>Trial Date: None Set<br><br>Magistrate Judge: Hon. Chi Soo Kim |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 3

II. ARGUMENT ....................................................................................................................... 3

   A.  Plaintiffs' Trade Secret Claim (Count Three) Fails Under Rule 8 ....................... 3

      1.  Plaintiffs' references to "Designs/Engineering," "Proprietary Information," "Costs and Margins," and "Financials" insufficiently identify any trade secret .............................. 4

      2.  Plaintiffs fail to allege that any of their listed trade secrets derive independent economic value from the fact that they are secret. ...................................... 7

   B.  Plaintiffs Cannot Sidestep the Fatal Defects in their Other Tort Claims ............... 9

      1.  Plaintiffs Claim for "Unlawful" Business Practices (Count Four) is defective and barred as a matter of law, no matter how Plaintiffs cast it. .......................................... 9

      2.  Plaintiffs' UCL Claim for Fraudulent Business Practices (Count Five) is preempted and defective, with or without Plaintiffs' new theories ........................................................ 11

      3.  Plaintiffs' Opposition affirms that the Intentional Misrepresentation Claim (Count Six) is preempted by the CUTSA and is barred by the economic loss rule .......................... 11

III. CONCLUSION .................................................................................................................. 12

## I. INTRODUCTION

Defendant DHG, Inc. moved to dismiss Counts Three, Four, Five, and Six of Plaintiffs PMM Holdings and Precision Machine & Manufacturing ("Precision")'s First Amended Complaint [Doc. 48] (the "FAC"). *See* Mot. to Dismiss [Doc. No. 49] (the "Motion"). Plaintiffs oppose the Motion. *See* Opp. to Mot. [Doc. No. 50] (the "Opposition"). For the reasons discussed below, Plaintiffs' Opposition does nothing to rebut the grounds stated in the Motion, and the Court should dismiss Counts Three through Six without leave to amend.[1]

## II. ARGUMENT

### A. *Plaintiffs' Trade Secret Claim (Count Three) Fails Under Rule 8*

Plaintiffs appear to agree that the only addition to the Original Complaint material to Plaintiffs' pleading of their trade secret claim is the list of supposed trade secrets in Paragraph 20.2 of the FAC. *See* Opp. at 11:7–19; *see also* Mot. at 8:14–9:11. And, as Plaintiffs acknowledge, this list contains "nine *separate* categories" of supposed trade secrets. Opp. at 11:7–19 (emphasis added). Therefore, Plaintiffs must satisfy the pleading standards for each individual member of their list by sufficiently identifying a trade secret as to each one and sufficiently pleading that any identified trade secret derives independent economic value from not being generally known. *See* 18 U.S.C. § 1839(3) (DTSA requirements for trade secrecy); Cal Civ. Code § 3426.1(d) (CUTSA requirements).

DHG's Motion identifies the pleading defects as to each member of Plaintiffs' list, explaining that each one fails to state a claim because (1) *some* of the listed items fail to sufficiently identify any supposed trade secret; and (2) *all* of the listed items lack sufficient pleading that they derive independent economic value from not being generally known. *See* Mot. at 8:12–15:25.

Yet, Plaintiffs only respond to the issues generally, without any discussion specific to the individual items in the FAC's list. *See* Opp. at 10:12–14:11. Such collective arguments miss the point because they are not specific to any particular defect in Plaintiffs' pleading. The defects in Plaintiffs trade secret claim are particular to each purported trade secret the FAC lists, and each defect warrants dismissal as to a particular alleged trade secret—which, combined, warrant dismissal of the whole

---

[1] Terms defined in the Motion that are not otherwise defined here have the same definitions as in the Motion.

claim. As further discussed below, nothing Plaintiffs argue changes that.

### 1. *Plaintiffs' references to "Designs/Engineering," "Proprietary Information," "Costs and Margins," and "Financials" insufficiently identify any trade secret*

Plaintiffs' Opposition regarding their identification of trade secrets is just as conclusory as the FAC. *See* Opp. at 10:12–13:4. Contrary to Plaintiffs' apparent belief, DHG does not attack Plaintiffs' identification as to every member of Plaintiffs' list in Paragraph 20.2. *See* Opp. at 12:6–7. Rather, the Motion specifically states which items fail to sufficiently identify a trade secret and why. Plaintiffs' reference to "Designs/Engineering," in Paragraph 20.2.5 fails because it is materially identical to the dismissed claim from the Original Complaint and is deficient for all the same reasons. *See* Mot. at 11:16–12:10. Their reference to "Proprietary Information" in Paragraph 20.2.6 fails because Plaintiffs do not attempt to separate any such information from general knowledge of the trade. *See id*. at 12:11–13:7. And their references to "Costs and Margins" and "Financials" in Paragraphs 20.2.3 and 20.2.8 lack any indication of what those terms mean or how they reach beyond unspecified (and therefore deficient) generic types of information that might generally qualify trade secrets. *See id*. at 14:8–23.

Plaintiffs do not try to explain why or how any of those particular items sufficiently identify any trade secret. *See* Opp. at 11:7–12:18. And while they acknowledge that their pleading must identify trade secrets "with sufficient particularity to separate [any trade secrets] from matters of general knowledge in the trade," Plaintiffs do not even try to argue the FAC does that for the items the Motion contests. *See* Opp. at 10:23–27 (citing *Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020); *see also* Mot. at 10:3–23 (discussing standard).

Instead, Plaintiffs argue, broadly, that that their entire list of trade secrets is sufficient because they are "strikingly similar to cases finding trade secrets sufficiently alleged," apparently because "[e]ach of [Plaintiffs] categories is included" in those cases. *See* Opp. at 11:20–12:5, 12:15–18. But beyond that superficial comparison, Plaintiffs do not explain how those cases may be similar, relative to any of the individual list items the Motion actually contests. *See id*. at 11:20–12:5. In fact, the Court has already determined that these cases support the opposite conclusion as to "Designs/Engineering," which is materially identical to the dismissed trade secret claim in the Original Complaint. *See* Orig. MTD Order [Doc. No. 45] at 22:15–23:12 (finding Plaintiffs'

identification insufficient under *K.T.I. Hydraulics, Inc. v. Palmersheim*, No. 8:22-cv-00110-JLS-JDE, 2022 U.S. Dist. LEXIS 212999 (C.D. Cal. Aug. 11, 2022), *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-04109-TSH, 2022 U.S. Dist. LEXIS 199847 (N.D. Cal. Nov. 2, 2022), and *Stemcell Techs. Can. v. Stemexpress*, No. 21-cv-01594-VC, 2022 U.S. Dist. LEXIS 30264 (N.D. Cal. Feb. 21, 2022)).[2]

The prior case law also belies Plaintiffs' attempt to pass muster by merely matching buzzwords from prior cases. As to "Proprietary Information," Plaintiffs' allegations simply fail to separate any such information from general knowledge in the trade. *See also* Mot. at 12:11–13:7. The FAC refers to "work cells," a "robot cell," "horizontal boring mills," and "machining centers" and states that those things somehow contribute to cost-effectiveness. *See* FAC, ¶ 20.2.6. But Plaintiffs never allege any facts as to what related information may be secret, how it may be beyond the general knowledge of the trade, or how it may contribute to cost-effectiveness, even in general terms. *See id.* In fact, the FAC lacks any suggestion that such secret information exists at all. All of the cases Plaintiffs cite do more than that. *See Stemcell Techs.*, 2022 U.S. Dist. LEXIS 30264, at *2–3 (identifying secret information as to how identified processes and methods work and the content of records, rather than just the existence of those processes, methods, and records); *HotSpot Therapeutics,* 2022 U.S. Dist. LEXIS 199847, at *11–12 (identifying knowledge, methods, techniques, and other information underlying identified ligases and software); *K.T.I. Hydraulics*, 2022 U.S. Dist. LEXIS 212999, at *13–14 (identifying the underlying content of identified designs, specifications, and other records).

In other words, Paragraph 20.2.6 only identifies information that Plaintiffs themselves—by stating it in their public pleading—acknowledge cannot be a trade secret. Without pointing to something more specific, that statement is merely an insufficient "generic list[] of categories of various types of information" that is "more descriptive of the types of information that generally may

---

[2] Plaintiffs cite to a different opinion from *Stemcell Techs.* than the Court did in the Original MTD Order. *See* Opp. at 11:2–5, 12:22–27 (citing *Stemcell Techs. Can. Inc. v. StemExpress, LLC*, No. 21-cv-01594-VC (LB), 2022 U.S. Dist. LEXIS 34582 (N.D. Cal. Feb. 24, 2022). That opinion did not review a pleading of a trade secret claim, but rather whether the claimant had sufficiently identified trade secrets under Cal. Civ. Proc. Code § 2019.210. So, that court's disposition of the pleading issue occurred in the order cited by the Court's Original MTD Order, and DHG cites to that order.

qualify as protectable trade secrets than as any kind of listing of particular trade secrets." *Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 U.S. Dist. LEXIS 70225, at *11-12 (C.D. Cal. Apr. 21, 2023); *Carl Zeiss Meditec v. Topcon Med. Sys.*, No. 19-4162 SBA, 2019 U.S. Dist. LEXIS 236339, at *10 (N.D. Cal. Nov. 13, 2019); *see also Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *4–5 (N.D. Cal. Feb. 16, 2017) (insufficient where plaintiff referenced public information (patent filings) but no underlying information that may be secret, thus possibly protectable); *see also* Orig. MTD Order at 22:1–14. Without more, Defendants and the Court lack notice as to what Plaintiffs' trade secrets supposedly are.[3]

Plaintiffs' pleadings of "Costs and Margins" and "Financials" fare no better. *See* FAC ¶ 20.2.3, ¶ 20.2.8. In fact, as to those items, Plaintiffs fail to even explain what underlying data these categories may include—making the pleading a classic example of an insufficient description of information that only *may* generally qualify as trade secrets. *See also* Mot. at 14:8–23; *Cisco Sys.*, 462 F. Supp. 3d at 1048. Plaintiffs' do not respond to this issue in the Opposition.

Despite refusing to discuss details regarding the pleading of any contested item in Paragraph 20.2 of the FAC, Plaintiffs maintain that they "need not provide the level of detail DHG demands at the pleading stage." *See* Opp. 12:7–8. But DHG demands only what prior cases, the Court, and Plaintiffs themselves acknowledge is required—that a complaint "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Opp. at 10:23–26 (citing *Cisco Sys.*, 462 F. Supp. 3d at 1047; *see also* Orig. MTD Order at 21:1–11; Mot. at 10:3–23 (summarizing standards from case law). Not doing so falls short of the standards of Rule 8 pleading, and that is why Plaintiffs fail here.[4]

Nor can Plaintiffs rescue their pleading by pointing to a non-disclosure agreement between Precision and DHG. *See* Opp. at 12:19–28. Plaintiffs assert that, "[w]here a defendant obtains trade secret and confidential information only through a properly executed nondisclosure agreement, it is

---

[3] Plaintiffs also now refer to "layout" when recounting "Proprietary Information," but there is no mention of any "layout" in the FAC. *Compare* Opp. at 11:12–14 to Am. Compl., ¶ 20.2.6.

[4] Plaintiffs attempt to distinguish Rule 8 from heightened pleading standards under Rule 9 (*see* Opp. at 12:12–14), but this comparison is irrelevant because DHG never argues that Rule 9 applies.

understood that the party knows such information is or may be entitled to trade secret protection," but neither case Plaintiffs cite supports that proposition. *Compare Stemcell Techs.*, 2022 U.S. Dist. LEXIS 34582 at *20–21 (observing only that an agreement may give a defendant "more information about the alleged confidential and trade-secret information"); *HotSpot Therapeutics*, 2022 U.S. Dist. LEXIS 199847, at *13 (same). Nor does any such observation change the pleading standard. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988–90 (S.D. Cal. 2012) (dismissing for lack of trade secret identification, notwithstanding a confidentiality agreement between the parties); *Space Data*, 2017 U.S. Dist. LEXIS 22571, at *1–7 (same); *K.T.I. Hydraulics*, 2022 U.S. Dist. LEXIS 212999, at *11–14 (applying usual standard). Indeed, as a practical matter, allowing a plaintiff to absolve itself of the trade secret pleading requirements by merely pointing to an agreement with a defendant would cause all such complaints to fail the other basic functions complaints serve, including, at least, informing the court of the substance of the action. *See* Orig. MTD Order at 23:5–8 (dismissing trade secret claim because it lacked sufficient particularity "to put Defendants ***and the Court*** on notice about what the trade secrets are." (emphasis added)).

Accordingly, Plaintiffs do not explain why Paragraph 20.2.5's discussion of "Designs/Engineering" sufficiently identifies a trade secret without any allegations beyond the deficient Original Complaint. Nor do they sufficiently identify any trade secrets in relation to "Proprietary Information," "Costs and Margins," or "Financials," as listed in Paragraphs 20.2.6, 20.2.3, and 20.2.8 of the FAC. The Court should dismiss Plaintiffs trade secret claim as to these supposed trade secrets for that reason alone.

2.  ***Plaintiffs fail to allege that any of their listed trade secrets derive independent economic value from the fact that they are secret***

As the Motion explains, Plaintiffs fail to state a trade secret claim as to any item listed in Paragraph 20.2 of the FAC because the FAC lacks allegations that plausibly show that any member of that list derives value from not being known by others—a distinct, critical element of trade secret protection. *See* Mot. at 11:16–12 ("Designs/Engineering"), 12:11–13:7 ("Proprietary Information"), 13:8–22 ("Key Customers," "Suppliers," and "Competitors"), 14:1–7 ("Outsourcing"), 14:8–23 ("Costs and Margins" and "Financials"), 14:24–15:5 ("Growth").

In response, Plaintiffs tell a new story, alleging that the value of the information "was that it allowed Meyer to become a viable competitor of Precision and allowed the DHG Companies to avail themselves of another source for the all-important feeder component [. . .] to create a lever in negotiating prices with Meyer (and other suppliers of components such as CAS)." *See* Opp. at 13:24–14:3. But those allegations are nowhere in the FAC. *Compare* FAC, ¶ 22.2 (cited by Opposition, but alleging only that DHG's subsidiary Finn Corporation forced CAS to purchase feeders from Finn, without anything related to prices from CAS as a supplier or about the other allegations the Opposition states with this citation).

Nor does the FAC state the allegations that supposedly support that conclusion. Plaintiffs' Opposition now alleges, for the first time, that DHG needed Plaintiffs' supposed trade secrets because "reverse engineering of the Precision 302 feeder designed for Finn" did not enable Meyer "to bring the costs down to a price Finn was willing to pay;" that DHG's subsidiaries did not order any Meyer feeders until after DHG's tour of Precision's facilities; and that DHG cancelled orders to Precision and instead ordered those feeders from Meyer. *See* Opp. at 13:6–21. **Those allegations never appear in FAC**, including in the paragraphs Plaintiffs cite. *See id*. (citing FAC, ¶ 20.2.6 (describing Plaintiffs' supposed "Proprietary Information,"), ¶ 20.2.7 (describing Plaintiffs information related to "Outsourcing"), ¶ 20.8 (alleging DHG's switch to Meyer, but not that any orders were cancelled), ¶ 22.1 (alleging 60 orders from Meyer by a certain date, not when DHG supposedly started ordering from Meyer), ¶ 20.6 (alleging only that Meyer reversed-engineered the 302 feeder and combined it with unidentified "confidential information")). Therefore, they are beyond what the Court may consider in determining the sufficiency of Plaintiffs' trade secret claim. *See Surf Bds. by Donald Takayama, LLC v. Surf Technicians, LLC*, No. 3:25-cv-02466-GPC-DEB, 2026 LX 99626, at *14, n.4 (S.D. Cal. Feb. 4, 2026); Orig. MTD Order at 28:18–20 (citing *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006)). The FAC lacks allegations that any supposed trade secret listed in Paragraph 20.2 derives independent economic value from being secret, and the trade secret claim fails in its entirety for that reason.

Moreover, even if the Court could consider the new facts alleged in Plaintiffs' Opposition, those allegations still fail to plausibly state independent economic value and indeed contradict facts

the FAC alleges. Plaintiffs' new story in its Opposition is that DHG approached Meyer to obtain feeders "at a price lower than Precision's," but Meyer could not achieve that lower price itself. *See* Opp. at 5:14–22. "As a result," DHG conspired to obtain Precision's manufacturing information by falsely telling Precision that DHG was interested in buying Precision, entering into the DHG NDA, and giving the information it received to Meyer. *See id.* at 5:22–16:6. But that narrative directly contradicts the FAC, which alleges that DHG (and its subsidiaries) and Meyer ***only first learned of each other*** from Precision's disclosures under the DHG NDA and Meyer NDA. *See* FAC, ¶¶ 20.4–20. Obviously, DHG and Meyer could not have been working together before they first learned of each other's existence, so both sets of allegations cannot be true at the same time. This conflict not only undercuts the plausibility of Plaintiffs' allegations now stated in the Opposition but also casts further doubt on their ability to state a claim under any circumstance.

And, even if Plaintiffs' new story was in the FAC and did not conflict with other allegations therein, that story would still not plausibly show independent economic value for any item in Paragraph 20.2 because it lacks any connection to the information that list identifies. Plaintiffs make no attempt to implicate most of the supposed trade secrets in Paragraph 20.2, and instead only cite to the "Proprietary Information" and "Outsourcing" items on that list. *See* Opp. at 13:10–19 (citing FAC, ¶ 20.2.6, ¶ 20.2.7). But Plaintiffs never allege any facts as to how DHG, Meyer, or anyone else could use such information to make their manufacturing more cost-efficient. *See* FAC, ¶¶ 20–26; Opp. at 13:6–14:3. That leaves Plaintiffs' conclusion that any of its trade secrets have the requisite independent economic value unadorned, conclusory, and insufficient. *See Cisco Sys.*, 462 F. Supp. 3d at 1052.

For these reasons, Plaintiffs fail to sufficiently state a trade secret claim for any of its supposed trade secrets, and the Court should dismiss the claim entirely without leave to amend.

### B. Plaintiffs Cannot Sidestep the Fatal Defects in their Other Tort Claim

#### 1. Plaintiffs Claim for "Unlawful" Business Practices (Count Four) is defective and barred as a matter of law, no matter how Plaintiffs cast it.

Plaintiffs' UCL claim for "unlawful business practices" fails because it is preempted by the CUTSA and otherwise depends on a defective trade secret claim. *See* Mot. at 16:17–17:18, 18:4–14.

The preemption issue is simple, as the claim itself identifies the CUTSA as the relevant underlying law and alleges a violation from the exact same allegations. *See* FAC, ¶ 48 ("DHG's conduct was unlawful in that the ***misappropriation of Plaintiffs' Trade Secrets violated [the DTSA and CUTSA]***." (emphasis added)). That alone answers the preemption question.

Despite that express statement, Plaintiffs now attempt to recast the claim entirely, changing the basis of the claim to an alleged breach of the MOU between Precision and DHG's subsidiaries and an unspecified purported "lockout of Precision from the lucrative 'Aftermarket,'" again on allegations not in the FAC. *See* Opp. at 14:19–16:19. Even if the Court were to consider this unpled theory, it fails as a matter of law. "A common law violation such as breach of contract is insufficient" to support a claim under the unlawful prong of the UCL. *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010).[5] And while Plaintiffs further hint at some supposed anticompetitive effect from a "lockout" from the aftermarket, Plaintiffs never explain how any alleged breach of the MOU caused that effect, or what DHG has otherwise supposedly done to lock Plaintiffs out. *See* Opp. at 14:21–24, 15:4–7. Such allegations are simply missing, and even if they were pled, the claim fails.[6] Because Count Four is barred as a matter of law, the Court should dismiss it without leave to amend.

---

[5] Moreover, nothing in the FAC or Plaintiffs' Opposition articulates anything that would constitute a breach of the MOU, given that contract's actual terms, especially as to DHG. As the Court has already noted, DHG is not a party to the MOU. *See* FAC, Ex. 1; Orig. MTD Order at 29:23–26. And while Plaintiffs argue that DHG should be liable for a breach anyway (*see* Opp. at 15:22–16:19), the FAC does not allege that DHG and its subsidiaries are alter egos, let alone "any facts from which [DHG] could plausibly be inferred to have moved beyond the mere establishment of general policy and direction of its subsidiaries." *See Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 896 (N.D. Cal. 2025). Nor does any allegation that DHG or its subsidiaries did not pay Plaintiffs "license fees" ground a breach of the MOU—as the MOU only obligates **Precision** to license to DHG's subsidiaries on terms to be negotiated later and does not require DHG's subsidiaries to pay fees or do anything else. *See* FAC, Ex. 1, p. 4 ("***Precision agrees*** that it will license its designs for rotary feeders to FINN and EB on the basis of terms to be negotiated later." (emphasis added)).

[6] The only action DHG or its subsidiaries have taken related to Precision's participation in the aftermarket is to sue for breach of the MOU's provision restricting Precision from doing so. *See Finn Corporation et al v. Precision Machine & Manufacturing, Inc.*, No. 1:25-cv-00418-JPH (S.D. Ohio); FAC, Ex. 1, pp. 3–4. To the extent Plaintiffs intend to assert a claim against DHG or its subsidiaries for bringing that lawsuit, that claim is further barred by California's Anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16.

      **2.**    *Plaintiffs' UCL Claim for Fraudulent Business Practices (Count Five) is preempted and defective, with or without Plaintiffs' new theories.*

Plaintiffs' UCL claim for "Fraudulent Business Practices" fails because it is also preempted by the CUTSA and fails to allege likelihood of public deception. *See* Mot. at 17:19–27, 18:15–19:14. Like the other UCL claim, the CUTSA preempts Plaintiffs' claim on its own words. *See* FAC, ¶ 53 (alleging DHG made fraudulent statements "*to obtain Plaintiffs' Trade Secret and Confidential Information*" (emphasis added)). Again, that alone dooms Plaintiffs' claim. And while Plaintiffs mention this claim in its attempt to plead the new theory discussed above, it never explains how that theory could constitute fraudulent business practices. *See* Section II.B.1, *supra*; Opp. at 14:12–16:19.

Plaintiffs also argue that they plead public deception in that the FAC "alleges that DHG and the DHG Companies have been marketing and selling the Precision-designed airlock rotary feeders [. . .] as the DHG[] Companies' own products[.]" *See* Opp. at 16:23–27 (citing FAC, ¶ 22.3). But that is not what the claim itself relies upon. *Compare* FAC, ¶ 53 (relying on statements made only to Precision). And, even if it was, the claim still fails because the FAC is devoid of any allegation that such statements are likely to deceive the public, and because Plaintiffs do not specify what statements DHG supposedly made, who made them, when, or any other information that would satisfy the applicable, heightened pleading standards under Rule 9(b). *See Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1015 (S.D. Cal. 2019) (dismissing for these reasons); Fed. R. Civ. P. 9. both legally barred and insufficiently pled, the Court should dismiss it without leave to amend.

      **3.**    *Plaintiffs' Opposition affirms that the Intentional Misrepresentation Claim (Count Six) is preempted by the CUTSA and is barred by the economic loss rule.*

Plaintiffs' intentional misrepresentation claim is also preempted by the CUTSA and is barred by the economic loss rule. *See* Mot. at 17:19–27, 19:15–21:3. Plaintiffs again ignore the allegations in the FAC in trying to sidestep preemption. *See* Opp. at 17:6–22. In the very statement of the claim, Plaintiffs expressly allege that DHG made the supposed misrepresentations "intend[ing] for Plaintiffs to rely on DHG's misrepresentations such that Plaintiffs would [. . .] provide DHG with Plaintiffs' Trade Secrets," and that DHG obtained Plaintiffs' trade secrets "as a result of such intentional

misrepresentations." See FAC, ¶¶ 59–60. Other allegations similarly clarify that Plaintiffs' trade secret claim is also based on those same statements. See id., ¶ 20.1.

Plaintiffs try to distinguish this claim from their trade secret claim by arguing that these statements were "the *means* by which DHG put itself in the position to misappropriate trade secrets, but was not itself an act of misappropriation." Opp. at 17:16–22 (emphasis in original). But Plaintiffs never explain how such allegations (even if sufficiently pled) would not amount to misappropriation. Nor could they, as acquisition of trade secrets through "improper means," including misrepresentation, **does** constitute misappropriation. See Cal Civ Code § 3426.1. Accordingly, Plaintiffs claim is inescapably preempted by the CUTSA.[7]

Nor can Plaintiffs avoid the economic loss rule by suddenly recasting their claim to be for fraudulent inducement of the DHG NDA. See Opp. at 17:24–18:11. As noted above, Plaintiffs allege that DHG made misrepresentations for the purpose of obtaining Plaintiffs confidential information and trade secrets to use them for unauthorized purposes—not to obtain any contractual promises from Precision, through the DHG NDA or otherwise. See FAC, ¶ 59.[8] Nor did DHG actually obtain any promises in the DHG NDA from Plaintiffs, given that the DHG NDA specifically states that it "does not constitute or create any obligation of [Precision] to provide any Confidential Information or other information to [DHG]." See FAC, Ex. 2, § 9. So, as the Motion explains, Plaintiffs' claim, as actually pled, alleges only harms that the parties reasonably anticipated in the DHG NDA and alleges only breaches of duties stated in the DHG NDA. See Mot. at 19:17–21:3. Therefore, the economic loss rule also bars the claim.

### III. CONCLUSION

For these reasons and those stated in the Motion, the Court should dismiss Counts Three, Four, Five, and Six without leave to amend, as further amendment would be futile.

---

[7] Moreover, the only harm Plaintiffs allege for this claim stem from its trade secrets. See FAC, ¶ 60. Accordingly, stripping away trade secret allegations further exposes this claim because that claim lacks any other allegations of damages, a basic element of the claim. See Chapman v. Skype, Inc., 220 Cal. App. 4th 217, 230–31 (2013).

[8] While Plaintiffs also refer to "impairment and restraint of Plaintiffs' ability to participate and compete in the market," the FAC lacks any statement as to how Plaintiffs are supposedly restrained or how such restraint resulted from the alleged misrepresentations. See FAC, ¶ 60.

| | | |
|---|---|---|
| 1 | DATED: March 9, 2026 | DINSMORE & SHOHL LLP |
| 2 | | |
| 3 | | By: /s/ *Michael A. Xavier* |
| | | Michael A. Xavier |
| 4 | | Arielle I. Goren |
| | | *Attorneys for Defendant DHG, Inc.* |

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on February 20, 2026, a true copy of this document was served by electronic mail upon all registered CM/ECF users, as indicated below:

- **William Scott Cameron** - scameron@weintraub.com, daguillen@weintraub.com
- **Sarah K. Dunkley, PHV** - skdunkley@gct.law, mperez@gct.law, stasciotti@gct.law
- **Margaret A. Gisch, PHV** - magisch@gct.law, mperez@gct.law, aleon@gct.law
- **Arielle Goren** - arielle.goren@dinsmore.com, wendy.yones@dinsmore.com
- **Jamie L Johnson** - jamie@kkks.com
- **M. Zachary Smith** - zsmith@weintraub.com, NEF@weintraub.com, aespanapurpur@weintraub.com
- **Michael Anthony Xavier, PHV** - michael.xavier@dinsmore.com, stella.laroe@dinsmore.com

DATED:  March 9, 2026                     DINSMORE & SHOHL LLP

By: */s/ Michael A. Xavier*
     Michael A. Xavier
     Arielle I. Goren
Attorneys for Defendant DHG, INC.