UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMM HOLDINGS, LLC, et al., | Case No. 2:25-cv-02005-CSK |
| Plaintiff, | |
| v. | ORDER |
| DHG, INC., | (ECF No. 49) |
| Defendant. | |

Pending before the Court is Defendant DHG, Inc.'s ("DHG") partial motion to dismiss Plaintiffs PMM Holdings, LLC ("PMM Holdings") and Precision Machine & Manufacturing's ("Precision") First Amended Complaint ("FAC").[1] (ECF No. 49.) Pursuant to Local Rule 230(g), the Court submits the motion upon the record and briefs on file and vacated the March 31, 2026 hearing.

For the reasons that follow, the Court GRANTS Defendant DHG's partial motion to dismiss the FAC, and dismisses certain claims in the FAC with leave to amend.

/ / /

/ / /

---

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 21, 26, 31, 33.)

1

I.      BACKGROUND

        A.      Factual Allegations[2]

        Plaintiff PMM Holdings is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Sacramento, California. FAC ¶ 4 (ECF No. 48). Plaintiff Precision is a corporation organized and existing under the laws of the State of Oregon and is the wholly-owned subsidiary of PMM Holdings. *Id*. ¶ 5.

        Defendant DHG is owned by Three Cities Research, Inc. *Id*. ¶ 6. Finn Corporation ("Finn") and Express Blower, Inc. ("Express Blower") are wholly-owned subsidiaries of DHG. *Id*. ¶¶ 7-8. All three are organized under the laws of the State of Ohio and operate from principal offices in Ohio. *Id*. ¶¶ 6-8.

        Plaintiffs are in the business of designing, manufacturing, and selling industrial machinery, such as heavy-duty rotary airlock feeders, rotary valve airlocks, and screw conveyers as components for material handling systems. *Id*. ¶ 9. Plaintiff Precision is a subsidiary of Plaintiff PMM Holdings and performs the design, manufacturing, and sales of such entity. *Id*. ¶ 2. Defendant DHG, Inc. is in the business of building and selling material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers, and/or bark blowers, through the entities of Finn or Express Blower. *Id*. at ¶ 10.

        In 2015 and 2016, Finn and Precision discussed a potential arrangement where Precision would design, manufacture, and supply Precision's rotary airlock feeders to Finn and Express Blower. *Id*. ¶ 11. These feeders were to be a new generation of feeders and would be installed by Finn and Express Blower as a component part of some of their equipment. *Id*. These discussions resulted in a Memorandum of

---

[2]  These facts primarily derive from the FAC (ECF No. 48), which are construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Understanding ("MOU") between Finn and Express Blower and Precision, signed on February 9, 2016. *Id*. ¶ 13. *See* FAC Ex. 1 (ECF No. 48 at 24-27). The MOU stated if the business relationship outlined in the MOU ended, Precision would remain out of the aftermarket business for a specified time and license its feeders to Finn and Express Blower. FAC ¶ 12.8. Finn and Express Blower did not adhere to the minimum lot sizes commitment outlined in the MOU. *Id*. ¶ 19.1. The business relationship ended due to failure to adhere to the MOU, and DHG and DHG Companies did not license Plaintiffs' feeders. *See* FAC ¶ 20.2.

In 2024, DHG and three cities represented that DHG was interested in potentially doing business with Plaintiffs. *Id*. ¶ 15. Precision, DHG, and Three Cities entered into a Non-Disclosure Agreement ("DHG NDA") on January 23, 2024. *Id*. Plaintiffs allege that the DHG NDA requires that DHG and its affiliates "maintain in strict confidence" the "Confidential Information" obtained from Precision. *Id*. ¶ 15.1. The DHG NDA also required DHG refrain from transmitting any Confidential Information of any proposed transaction to any third party. *Id*. ¶ 15.2. The DHG NDA contained a provision requiring the parties to consent to the jurisdiction and application of the laws of the State of California. *Id*. ¶¶ 15.3, 15.4.

Plaintiffs allege that DHG, by and through the DHG companies, breached the DHG MOU by failing to adhere to the minimum lot sizes commitment contained in the DHG MOU, and by failing to license Plaintiffs' feeders. *Id*. ¶¶ 19.1, 19.2. Plaintiffs also allege that DHG, on its own and by and through DHG companies, has violated the DHG NDA. *Id*. ¶ 20. Plaintiffs allege Defendant has "misappropriated Precision's design, manufacturing processes, intellectual property, proprietary information and/or other Confidential Information associated with Precision's feeders[.]" *Id*. Plaintiffs allege DHG falsely represented to Plaintiffs that they were interested in doing business with Plaintiffs in order to gain access to Plaintiffs' proprietary and trade secret information and other Confidential Information through the disclosures of information contemplated by the DHG NDA. *Id*. at ¶ 20.1

3

Further, Plaintiffs allege DHG, through the access granted by the NDA, acquired commercially exploitable proprietary information that constituted Precision's trade secrets, including: key customers, suppliers, costs and margins, competitors, design/engineering, proprietary information, outsourcing, financials, and growth. *Id.* ¶¶ 20.2.1-20.2.9. Defendant DHG allegedly violated the NDA by sharing the confidential information. *Id.* ¶ 20.3. DHG and DHG's companies learned that William W. Meyer & Sons, Inc. ("Meyer"), a former defendant in this action, was a competitor of Plaintiffs "through the process surrounding the potential transactions which were the subjects of" the DHG NDA. *Id.* ¶ 20.4. Meyer learned of the existence of Finn and Express Blower and their business relationship with Precision through signing a similar NDA. *Id.* ¶ 20.5. Meyer was provided a Precision 302 feeder by Finn, and "performed the reverse engineering, combined it with confidential information obtained through the Meyer NDA disclosures, and provided Finn with a complete drawing package for the feeder and a Meyer-built unit." *Id.* ¶ 20.6. After obtaining the confidential information, DHG and the DHG companies, DHG/Three Cities and Meyer submitted commercially unreasonable proposals to do business with Plaintiffs. *Id.* ¶ 20.7. DHG and DHG companies made no further orders of Precision's airlock rotary feeders from Precision. *Id.* ¶ 21.8.

Plaintiffs bring the following claims against Defendant DHG: (1) breach of the DHG NDA; (2) tortious interference with contract; (3) misappropriation of Plaintiffs' intellectual property and trade secrets; (4) unlawful business practices and competition against DHG; (5) fraudulent business practices and competition; and (6) intentional misrepresentation.

**B.    Procedural Posture**

Plaintiffs filed their Complaint against Defendants DHG and Meyer on July 17, 2025. (ECF No. 1.) On October 9, 2025, Defendant DHG filed a motion to dismiss (ECF No. 22) and then filed an amended motion to dismiss (ECF No. 27) on the same day. Defendant Meyer also filed a motion to dismiss on October 9, 2025. (ECF No. 23.) The Court held the hearing on the motions to dismiss remotely via Zoom on November 18,

2025. (ECF Nos. 39-41.) On December 30, 2025, the Court issued an order granting Defendant Meyer's motion to dismiss for lack of personal jurisdiction without leave to amend, and granting in part and denying in part Defendant DHG's motion to dismiss. (ECF No. 45.) Plaintiffs were given 30 days to file an amended complaint. *Id*.

On January 29, 2026, Plaintiffs timely filed a First Amended Complaint against Defendant DHG. (ECF No. 48.) On February 12, 2026, Defendant DHG filed a partial motion to dismiss claims three, four, five, and six with a motion hearing noticed for March 31, 2026. (ECF No. 49.) On February 26, 2026, Plaintiffs filed an opposition. (ECF No. 50.) On March 9, 2026, Defendant DHG. filed a reply in support of its motion. (ECF No. 50.) On March 20, 2026, the undersigned issued a minute order vacating the March 31, 2026 hearing and submitting the hearing without appearance and without argument. (ECF No. 52.)

## II.    LEGAL STANDARDS

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

## III.   DISCUSSION

Defendant DHG brings a partial motion to dismiss the FAC, arguing Plaintiffs failed to state a misappropriation of intellectual property and trade secrets claim (claim three) by failing to identify several alleged trade secrets and failing to state the independent economic value of all alleged trade secrets. Defendant further argues

Plaintiffs' unlawful business practices and competition (claim four), fraudulent business practices and competition (claim five), and intentional misrepresentation claims (claim six) are preempted by the California Uniform Trade Secret Act ("CUTSA"). Defendant further argues that Plaintiffs have failed to state an unlawful business practices and competition claim and fraudulent business practices and competition claim, and that Plaintiffs' intentional misrepresentation claim is barred by the economic loss rule. Because the Court finds that Plaintiffs' unlawful business practices and competition, fraudulent business practices and competition, and intentional misrepresentation claims are preempted by the CUTSA, it need not address Defendant's other arguments regarding these claims.

**A.    Misappropriation of Intellectual Property and Trade Secrets (Claim Three)**

Plaintiffs have pled additional allegations regarding their trade secret claim in their FAC. *See* FAC ¶¶ 20.2.1-20.2.9. Defendants argue that Plaintiffs have still failed to identify a trade secret in their sections titled "Design/Engineering," "Proprietary Information," "Outsourcing," "Costs and Margins," and "Financials." Def. Mot. at 11-12, 14. Defendants further argue that FAC fails to plead that any of its new allegations are valuable because they are unknown to others. *See id*. at 11-15.

Courts have held that the Defend Trade Secrets Act of 2016 ("DTSA") and the CUTSA share the same pleading requirements for the identification of trade secrets. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims together because the elements are substantially similar."). To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices*, 343 F. Supp. 3d at 877 (citation omitted).

/ / /

1.      Identification of Trade Secret

The definition of a "trade secret" is similar under the DTSA and CUTSA. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 2021 WL 4895977, at *20 (S.D. Cal. Oct. 20, 2021). Under the DTSA, a "trade secret" is:

> [F]inancial, business, scientific, technical, economic, or engineering information . . . if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Under the CUTSA, a "trade secret" is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Under either statute, the definition of a trade secret consists of three elements: (1) "information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657. Insight, knowledge, and know-how acquired by an insider to a particular trade does not, by itself, constitute trade secrets. *Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017).

To prove ownership of a trade secret, the plaintiff must identify the trade secrets and show they exist. *InteliClear*, 978 F.3d at 658. A plaintiff does not need to "spell out the details of the trade secret," *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted), but must describe the trade secret with sufficient particularity to permit the defendant "to ascertain at least the boundaries within which the secret lies," *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted).

7

The six categories Defendant identified as insufficiently identifying a trade secret are "Design/Engineering" (FAC ¶ 20.2.5), specifically the designing and engineering of feeders built for DHG; "Proprietary Information" (FAC ¶ 20.2.6), particularly, work cells, a robot cell, horizontal boring mills and machining centers; "Outsourcing" (FAC ¶ 20.2.7), which lists the functions as well as the individuals and costs associated; "Costs and Margins"; and "Financials" (FAC ¶¶ 20.2.3 & 20.2.8), such as "multi-year financial records, budget projections… and specific tasks employed to increase profitability"; and "Growth" (FAC ¶ 20.2.9), growth of revenue data by product. *See* Def. Mot. at 11-14; FAC ¶¶ 20.2.1-20.2.9. Courts have held that categories such as these were "sufficient to permit Defendants at least to ascertain the boundaries with which the secrets lie." *See TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 2509979, at \*3-\*4 (N.D. Cal. Jun. 17, 2010) (finding that categories such as "customer lists," "business methods and marketing plans," "customer profiles," and "cost, pricing, margin data, and other financial information" were sufficient to identify trade secrets.); *see also K.T.I. Hydraulics, Inc. v. Palmersheim*, 2022 WL 17100470, at \*5 (C.D. Cal. Aug. 11, 2022) (finding plaintiff sufficiently identified a trade secret by referencing its customer lists, pricing data, and proprietary information relating to plaintiff's product). Accordingly, the Court finds that Plaintiffs have sufficiently identified their trade secrets and Defendant DHG's motion is denied on this ground.

## 2. Independent Economic Value

Defendant also argues that Plaintiffs have failed to plead that each of the alleged trade secrets have independent economic value. Def. Mot. at 11-15.[3] "To have independent economic value, a trade secret must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'" *Calendar Research LLC*

---

[3] In DHG's partial motion to dismiss, DHG notes in a footnote that it is incorporating its arguments from its prior motion to dismiss. Def. Mot. at 12 n.5. To prevent confusion and to ensure that the record is clear, in any future motion, Defendant DHG should not incorporate arguments made in prior motions and instead make clear exactly what grounds on which its motion is based.

*v. StubHub, Inc*., 2017 WL 10378336, at \*3 (C.D. Cal. Aug. 16, 2017) (quoting *Yield Dynamics, Inc. v. TEA Sys. Corp*., 154 Cal. App. 4th 547, 564 (2007)). "Independent economic value can be shown by 'circumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access.'" *Id*. (quoting *Religions Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc*., 923 F. Supp. 1231, 1253 (N.D. Cal. 1995)). The standard for pleading that trade secrets derive independent economic value "is not a high standard." *Id*. at \*4. However, mere recitation of this element in a pleading is insufficient to state a claim for trade secret misappropriation. *Cisco Systems, Inc v. Chung*, 462 F. Supp. 3d 1024, 1052-53 (N.D. Cal. 2020).

Here, while the FAC includes some allegations that could establish independent economic value, Plaintiffs are required to plead independent economic value for each of their trade secrets. Plaintiffs do not sufficiently allege the resources invested in producing each category of trade secret information, the precautions taken to establish their secrecy, or the willingness of others to pay for its access. *See Calendar Research, LLC*, 2017 WL 10378336, at \*3; *Cisco Systems*, 462 F. Supp. 3d at 1052-53. In addition, on a motion to dismiss, the Court may not consider allegations raised in Plaintiffs' opposition brief that were not pled in the FAC. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[W]e 'consider only allegations contained in the pleadings and exhibits attached to the complaint…"). Therefore, Defendant's motion is granted on this ground. The trade secret claim is dismissed with leave to amend to the extent Plaintiffs can plead additional facts that state the independent economic value of each of their alleged trade secrets. *See Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

**B.    Preemption under CUTSA**

Defendant argues that CUTSA has preempted Plaintiffs' unlawful business practices and competition claim (claim four), fraudulent business practices and competition claim (claim five), and intentional misrepresentation claim (claim six). The Court agrees that the unlawful business practices and competition claim and intentional

misrepresentation claim are preempted, and will not address Defendant's additional arguments regarding these claims.

The CUTSA provides the exclusive civil remedy for "conduct falling within its terms and supersedes other civil remedies based on misappropriation of a trade secret." *Waymo LLC v. Uber Technologies, Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id*. (quoting *Qiang Wang v. Palo Alto Networks, Inc.*, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013)).

### 1. Unlawful Business Practices and Competition (Claim Four)

Section 17200 of California's Business and Professions Code "broadly proscribes unfair competition; including 'any unlawful, unfair, or fraudulent business act or practice.'" *Id*. (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999)). "Unlawful practices are practices 'forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulation, or court-made.'" *VP Racing fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). To state a cause of action under Section 17200, "a plaintiff must allege facts sufficient to show a violation of some underlying law." *Id*. (citing *People v. McKale*, 25 Cal.3d 626, 632 (1979)).

The unlawful business practices and competition cause of action is preempted by the CUTSA because the underlying violations of law being pled to support the claim are the DTSA and the CUTSA. FAC at ¶ 48. Plaintiffs allege no other violations of law for its unlawful UCL claim.[4] Therefore, this claim is preempted by the CUTSA and Defendant's motion to dismiss is granted as to this claim. The unlawful UCL claim is dismissed with leave to amend to the extent Plaintiffs can plead factual allegations identifying a different

---

[4] The Court may not consider Plaintiffs' argument in their opposition that the UCL claim is not preempted by the CUTSA because it is not pled in the FAC. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[W]e 'consider only allegations contained in the pleadings and exhibits attached to the complaint…")

unlawful practice to support its unlawful UCL claim.

2.    Intentional Misrepresentation (Claim Six)

Plaintiffs' intentional misrepresentation claim is also preempted by the CUTSA. To plead a claim for intentional misrepresentation, a plaintiff must state "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, (5) resulting damage." *Ives v. Allstate Insurance Company*, 520 F. Supp. 3d 1248, 1257 (C.D. Cal. 2021) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).

Plaintiffs allege that DHG "represented that it would license Precision's designs, engineering, and other aspects of Precisions IP, Trade Secrets, and other Confidential Information… if the business relationship established by and described by the MOU ever became unsatisfactory or terminated." FAC ¶ 56. Further, Plaintiffs allege "[t]he true facts were that DHG and the DHG Companies had no intention of ever licensing Precision's designs… and trade secrets…[i]nstead, they intended to obtain access to Plaintiffs' Trade Secrets…to obtain control and use of [next-generation rotary feeders] without having to pay Plaintiffs for such control and use." FAC ¶ 58. As above, trade secret misappropriation is central to the intentional misrepresentation claim. Therefore, this claim is preempted by CUTSA and Defendant's motion to dismiss is granted as to this claim. The intentional misrepresentation claim is dismissed with leave to amend to the extent Plaintiffs can plead factual allegations to support an intentional misrepresentation claim.

**C.    Fraudulent Business Practices and Competition (Claim Five)**

Plaintiffs also raise a cause of action under California Business and Professions Code Section 17200 for a fraudulent business act or practice (claim five). To state a fraudulent UCL cause of action, "the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct." *VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1087 (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 212 (1983)). The Court does not find that the fraudulent UCL claim is preempted because it is not based on the trade secret misappropriation allegations. *See* FAC ¶ 53.

The fraudulent UCL claim is based on Plaintiffs' allegations that DHG made material misrepresentations to Plaintiffs. *See id*.

The FAC does not, however, allege that consumers were likely to be deceived by the alleged fraudulent conduct (DHG's misrepresentations to Plaintiffs), a required element for a fraudulent UCL claim. *See VP Racing Fuels, Inc*., 673 F. Supp. 2d at 1087. The Court further notes that the FAC does not allege that the public was aware of DHG's alleged misrepresentations to Plaintiffs. *See* FAC. Defendant's motion to dismiss is granted as to this claim. The fraudulent UCL claim is dismissed with leave to amend to the extent Plaintiffs can plead factual allegations for a fraudulent UCL claim.

### D. Leave to Amend

Because the defects could be corrected by amendment, the Court grants Plaintiffs leave to amend these claims against DHG. *See Lopez*, 203 F.3d at 1130-31; *Cato,* 70 F.3d at 1106. The Court cautions, however, that Plaintiffs are provided with one final opportunity to amend as Plaintiffs have already been provided with an opportunity to amend. *See* 12/30/2025 Order (ECF No. 45). The Court is not inclined to grant additional leave to amend.

If Plaintiffs elect to file an amended complaint, it should be titled "Second Amended Complaint" with reference to the appropriate case number. An amended complaint must be complete in itself without reference to any prior pleading. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); E.D. Cal. Local Rule 220. Besides amending to cure the defects in the trade secret misappropriation claim, unlawful business practices and competition UCL claim, fraudulent business practices and competition UCL claim, and intentional misrepresentation claim, Plaintiffs are not permitted to add any new claims in the Second Amended Complaint.

If Plaintiffs do not elect to file an amended complaint, the case will proceed on the breach of the DHG NDA claim (Claim One) and tortious interference with contract claim (Claim Two).

/ / /

## IV.    CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1.    Defendant DHG's partial motion to dismiss (ECF No. 49) the FAC is GRANTED. Plaintiffs' misappropriation of trade secret claim (Claim Three), unlawful business practices and competition UCL claim (Claim Four), fraudulent business practices and competition UCL claim (Claim Five), and intentional misrepresentation claim (Claim Six) are dismissed with leave to amend.

2.    If Plaintiffs choose to amend their FAC against Defendant DHG, they shall have 30 days from the date of this order to file a Second Amended Complaint as provided in this order. If Plaintiffs do not amend, the case will proceed on the breach of the DHG NDA claim (Claim One) and tortious interference with contract claim (Claim Two).

Dated:  May 28, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, pmm.2005.25.mtd2