Michael A. Xavier (OH Bar No. 0097121 - *Admitted pro hac vice*)
Michael.xavier@dinsmore.com
**DINSMORE & SHOHL LLP**
1775 Sherman Street, Suite 2600
Denver, CO 80215
Tel: (303) 831-6980

Arielle I. Goren (SBN 331822)
arielle.goren@dinsmore.com
**DINSMORE & SHOHL LLP**
550 South Hope Street, Suite 2800
Los Angeles, CA 90071
Tel: (213) 596-0010
Fax: (619) 400-0501

Attorneys for Defendant DHG, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO COURTHOUSE**

| | |
|---|---|
| PMM HOLDINGS, LLC, and PRECISION MACHINE & MANUFACTURING,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM W. MEYER AND SONS, INC. and DHG, INC.,<br><br>Defendants. | Case No. 2:25-cv-02005-CSK<br><br>**DEFENDANT DHG INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS THREE (IN PART), FOUR, FIVE, AND SIX OF THE SECOND AMENDED COMPLAINT (F.R.C.P 12(b)(6))**<br><br>Date: VACATED (*see* [Dkt. No. 59])<br>Time: N/A<br><br>Complaint Filed: July 17, 2025<br>Trial Date: None Set<br><br>Magistrate Judge: Hon. Chi Soo Kim |

## I. INTRODUCTION

The Court should grant Defendant DHG Inc.'s Motion to Dismiss [Dkt. No. 59] (the "Motion") and dismiss Plaintiffs' trade secret claim (Count Three) in part, as it pertains to what the SAC terms Plaintiffs supposed "engineering and technical trade secrets," and Plaintiffs' claims for unlawful business practices under the UCL (Count Four), fraudulent business practices under the UCL (Count Five), and intentional misrepresentation (Count Six) in their entirety.[1] *See* Mot. Plaintiffs' Opposition [Dkt. No. 58] (the "Opposition") attempts to rehabilitate each of these deficient claims, but fails to do so because, in each instance, Plaintiffs miss what the SAC actually alleges, what the SAC does not allege, and why that makes their pleadings of these claims defective. As further discussed below, try as they might—including by misstating the law and by trying to supplement the SAC with new facts and theories stated for the first time in the Opposition—none of Plaintiffs' Opposition shows or explains how the SAC states the claims subject to the Motion. Therefore, the Court should grant the Motion.[2]

## II. ARGUMENT

### A. <u>Plaintiffs' Trade Secret Claim Fails as to "Engineering and Technical Trade Secrets" (Count Three).</u>

#### *1. Plaintiffs fail to sufficiently identify any "engineering and technical trade secret."*

##### a) Plaintiffs' reliance on the Court's review of the FAC is improper.

Precision's initial argument that the Court should not review its identification of "engineering and technical trade secrets" in the SAC because it supposedly already ruled on that issue in the last motion to dismiss is incorrect as a matter of law and as a matter of what the FAC and SAC each say.

---

[1] All defined terms, unless otherwise specified, carry the same definitions as in the Motion.

[2] Defendants must also respond to certain misrepresentations in the Opposition. First, this dispute only exists because Precision has lost its contract to supply Finn and EB (the leading producers of blower systems) to Finn and EB's specifications. And, though Plaintiffs make the naked assertion that DHG's offer to acquire Precision was "commercially unreasonable," it never says why. *See* SAC, ¶ 21.5. DHG's offer reflected its desire to take feeder supply in-house. Plaintiffs just did not like that offer. They rejected it, and Defendants took their business to a different supplier. (The unpleasantness of dealing with Precision's newer principal certainly played into that decision as well.) The evidence will show that DHG made a simple change in suppliers, and there was no conspiracy to obtain information from Plaintiffs.

*See* Opp. at 13:5–15. An amended complaint "supersedes" prior complaints, and once a Plaintiff files an amended complaint, those prior complaints "no longer serve[] any function in the case." *See Foster v. Corell*, No. 2:25-cv-2571 CSK P, 2025 U.S. Dist. LEXIS 221486, *5 (E.D. Cal. Nov. 10, 2025) (citing *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)); *Cordoba v. Cabling*, No. 2:26-cv-1551 CSK P, 2026 U.S. Dist. LEXIS 141199, *6 (E.D. Cal. June 25, 2026). The SAC must state a claim on its own.

While Plaintiffs argue they have provided "additional detail" about their supposed trade secrets, the SAC did not merely tack on "additional detail" to the pleading of the FAC. Rather, Plaintiffs changed their pleading entirely, and the SAC contains only different statements—replacing its prior statements in the FAC with an entirely new set of paragraphs in the SAC. The category of "Design/Engineering" trade secrets listed in the FAC is missing from the SAC, replaced with Plaintiffs' supposed "engineering and technical trade secrets." *Compare* FAC, ¶ 20.2.5 *to* SAC, ¶¶ 20.2.15–20.2.20. Simply put, by amending their complaint, Plaintiffs must adequately identify their trade secrets in the SAC itself. They have failed to do so. *See also* Mot. at 9:14–12:4.[3]

**b) Plaintiffs fail to identify any "engineering and technical trade secrets" because they merely list items that may or may not include trade secrets, without ever describing them further.**

Plaintiffs fail to sufficiently identify any "engineering and technical trade secrets" because the SAC lacks any description or explanation of any of the types of information listed in Paragraph 20.2.15 of the SAC, leaving endless possibilities as to what Plaintiffs may actually think constitutes a trade secret. *See* Mot. at 10:10–12:4. Plaintiffs disagree, but they do not address how the rest of the SAC describes any item in Paragraph 20.2.15's list, except for an unexplained declaration that

[3] Moreover, the Court dismissed Plaintiffs' trade secret claim in the FAC on other grounds, addressing the identification issue as to all supposed trade secrets, lumped together. *See* FAC MTD Order at 7:1–8:19 (discussing FAC, ¶ 20.2's subparagraphs collectively). However, the Court dismissed Plaintiffs' trade secret claim in its Original Complaint—which described Plaintiffs' "Design/Engineering" trade secrets, and no others, in an essentially identical manner as the FAC—for insufficient identification. *Compare* Original Compl., ¶¶ 10–27; Original MTD Order at 19:18–23:24; *see also* Mot. to Dismiss FAC [Dkt. 49] at 11:16–12:10 (explaining identity between Original Complaint and FAC). Accordingly, the Court's prior decisions as to "Design/Engineering" trade secrets appear inconsistent. *See also* Opp. at 13:8–11.

Paragraphs 20.2.16 through 20.2.20 somehow do so. *See* Opp. at 12:10–15:17. The lack of explanation is telling in itself, and a review of what those paragraphs actually say shows that the SAC lacks anything that could separate any supposed "engineering and technical trade secret" from general knowledge in the trade or of special persons who are skilled in the trade"—as required to sufficiently identify a trade secret in a complaint. *See Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *4 (N.D. Cal. Feb. 16, 2017) (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)).

As the Motion explains, the ensuing Paragraphs in Subsection D of the SAC never describe or even reference the information listed in Paragraph 20.2.15. *See* Mot. at 10:19–12:4 (discussing SAC, ¶¶ 20.2.16–20.2.20). Instead, they only refer to non-descript, generic "technical information" (¶ 20.2.16, ¶ 20.2.17), "engineering work" (¶ 20.2.16), "design history" (¶ 20.2.16) or "design information" (¶ 20.2.17)—while never connecting these generic terms to the list of supposed trade secrets in Paragraph 20.2.15. *See id*. at 11:13–24. Not by defining any of these generic terms. Not by any statement that any of items in Paragraph 20.2.15 are included in these generic terms. Indeed, none of the rest of Subsection D describes or even references the information listed in Paragraph 20.2.15. *See* SAC, ¶¶ 20.2.16–20.2.20. Paragraph 20.2.16 discusses file-sharing but never alleges those files contained any information from the list. Paragraph 20.2.17 discusses STEP files and feedback without connecting them to the list. Paragraphs 20.2.18 through 20.2.20 discuss design and drawing exchanges but never identify what information was involved.

So, despite Plaintiffs' repeated incantation that the SAC somehow provides "reasonable notice of the issues" and "reasonable guidance in ascertaining the scope of appropriate discovery," they can neither explain how nor conjure factual allegations in the SAC that actually support that conclusion or satisfy the pleading standard. *See* Opp. at 13:21–24, 14:16–19; *see also* Mot. at 8:12–20, 9:16–10:9.

The cases Plaintiffs cite are distinguishable because the claimants therein further confined their trade secrets by reference to specific, additional limiting principles. *See K.T.I. Hydraulics, Inc. v. Palmersheim*, No. 8:22-cv-00110-JLS-JDE, 2022 U.S. Dist. LEXIS 212999, at *11–14 (C.D. Cal. Aug. 11, 2022) (trade secrets limited to a particular, named product and described in specified

patents); *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-04109-TSH, 2022 U.S. Dist. LEXIS 199847, at *10–13 (N.D. Cal. Nov. 2, 2022) (trade secrets confined to three specific, named products). They further defined a discrete scope, beyond just a non-descript list of unbounded categories of information, by referring to additional specifics.

The SAC does none of that. It only lists broad categories without confining them to any particular product or process. *See* SAC, ¶¶ 20.2.15–20.2.20. And while the other paragraphs in Subsection D of the SAC state anecdotes regarding particular feeder models, Plaintiffs never purport to limit their supposed "engineering and technical trade secrets" to any of those particular anecdotes or models. *See id*. They only reference "feeder designs," without further description or identification. *See id*. The result is that the SAC lacks any meaningful limitation as to what Plaintiffs purport constitutes their trade secrets, and Plaintiffs' list amounts only to a collection of broad, categorical terms that generally ***may*** qualify as protectable trade secrets—which is insufficient.[4] *See Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D.Cal. 2020); *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368, at *7 (N.D. Cal. Jan. 31, 2020). The SAC, therefore, does not sufficiently confine the boundaries of the case, making the SAC more similar to cases finding inadequate identification of trade secrets. *See Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 U.S. Dist. LEXIS 70225, at *9 (C.D. Cal. Apr. 21, 2023); *Space Data*, 2017 U.S. Dist. LEXIS 22571, at *3–6; *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 U.S. Dist. LEXIS 161556, at *11–16 (N.D. Cal. Apr. 13, 2015); *c.f. Cisco Sys.*, 462 F. Supp. 3d at 1048–50 (sufficient identification only because plaintiff limited to only categories of information as contained in certain identified documents).

Plaintiffs' discussion of the SAC's references to "drawings" and "STEP files" fares no better. *See* Opp. at 14:23–15:4. As the Motion explains, the SAC never states what information any

[4] For example, Paragraph 20.2.15 includes "some […] dimensions […] for Precision's rotary feeder designs," but the SAC never specifies which dimensions—leaving open the possibility that any dimension could be included. Yet, some dimensions (length, width, weight) are publicly apparent from a basic inspection. The Ninth Circuit has recognized that reference to "dimension[s]" and "tolerance[s]," without further limitation, inadequately identifies trade secrets because such terms only refer to information "which *potentially* qualifies for trade secret protection." *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (emphasis in original).

drawings or STEP files—whether those discussed in the SAC's anecdotes in Paragraphs 20.2.16–20.2.20 or otherwise—supposedly contained, so Plaintiffs cannot identify or plead misappropriation of a trade secret with allegations about those objects. *See* Mot. at 10:19–11:3. And while Plaintiffs accuse DHG of "ignor[ing] both the teachings of innumerable case authorities and the reality of the SAC's allegations," Plaintiffs fail to cite a single one of the supposedly "innumerable" cases, any allegations in the SAC that supposedly support its position, or otherwise explain what "reality of the SAC's allegations" means. *See* Opp. at 14:25–27. Instead, Plaintiffs offer only the naked, unsupported, and false contention that the SAC alleges that the drawings and STEP files contain "information such as" the categories listed in Paragraph 20.2.15. *See id.* at 14:27–15:28. The SAC simply never does that. *See* SAC, ¶¶ 20.2.15–20.2.20. And while Plaintiffs may wish it did, they cannot add missing allegations though their opposition. *See Pinnacle Bank v. Alacrity Sols. Grp., LLC*, No. 2:25-cv-00774-CKD, 2025 U.S. Dist. LEXIS 122898, *8 (E.D. Cal. June 27, 2025) ("[A] court may not look beyond the complaint to a plaintiff's [] opposition to a defendant's motion to dismiss.") (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)).

Finally, Plaintiffs' attempt to fall back on the DHG NDA fails for similar reasons, as the existence of that agreement does nothing to further confine or identify what Plaintiffs might intend to assert as "engineering and technical trade secrets." *See* Opp. at 15:5–14. The SAC alleges that Precision developed and/or shared information that supposedly somehow related to its "engineering and technical trade secrets" during the course of supplying feeders to DHG's subsidiaries, Finn and EB. *See* SAC, ¶¶ 20.2.16–20.2.20. However, as the SAC acknowledges, these events ***occurred years before Precision and DHG entered into the DHG NDA*** in January 2024. *See* SAC, ¶ 20.2.16 (drawings through supply of Finn), ¶ 12 (agreement to supply to Finn started in 2016), ¶ 20.2.17 (sharing STEP files in 2016), ¶ 20.2.18 (302 feeder design), ¶ 13.4 (302 feeder designed in 2016–2017), ¶ 20.2.19 (sharing drawings in 2021). Accordingly, Plaintiffs' reliance on the DHG NDA fails as a simple matter of timing—what that agreement governs cannot possibly help define supposed trade secrets generated before it existed.[5] This flaw further belies Plaintiffs' reliance on

[5] In fact, the DHG NDA specifically excludes, from its scope, any information in DHG's possession before the DHG NDA became effective. *See* SAC, Ex. 2, § 2(i).

*Stemcell Techs. Can. Inc. v. StemExpress, LLC* because, unlike there, the information at issue here could not possibly have been exchanged under the agreement between the parties. *See* No. 21-cv-01594-VC (LB), 2022 U.S. Dist. LEXIS 34582, at *20 (N.D. Cal. Feb. 24, 2022).[6]

Nor do Plaintiffs meaningfully describe what the DHG NDA may govern in a manner that meaningfully further identifies any particular trade secrets. *See* SAC, ¶ 15.1. Nor does the DHG NDA itself. *See id.*, § 1. So while agreements are generally capable of helping to identify trade secrets if they are specific enough to do so, the DHG NDA is not, and Plaintiffs cannot evade their pleading obligations by merely pointing to the DHG NDA. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145–46 (N.D. Cal. 2019) (dismissing in part because agreement did not describe the subject matter of the supposed trade secrets with sufficient particularity and thus did not aid plaintiff's identification).

Accordingly, the SAC—as it actually reads—fails to sufficiently identify any "engineering and technical trade secret." Nothing in Plaintiffs' Opposition changes that, and the Court should dismiss Plaintiffs' trade secret claim as it relates to "engineering and technical trade secrets."

***2. Plaintiffs fail to plead independent economic value.***

Plaintiffs' Opposition on the issue of independent economic value lacks merit because it is non-responsive to the defect the Motion identifies. Plaintiffs argue that Paragraphs 20.2.16 through 20.2.21 "allege[] far more" than other cases. *See* Opp. at 15:18–16:22. But quantity of allegations is not the problem—the problem is that those Paragraphs' discussion of economic value lacks connection to what Plaintiffs list as their supposed "engineering and technical trade secrets" in Paragraph 20.2.15. *See* Mot. at 12:5–13:15.

As discussed above, the SAC never alleges anything about any information listed in Paragraph 20.2.15 after the basic list of that information in that paragraph. *See* Section II.A.1.b, *supra*. The ensuing Paragraphs do not discuss the items in that list. *See* SAC ¶¶ 20.2.16–20.2.21.

[6] While Plaintiffs do not cite the MOU between Precision and DHG's subsidiaries in their discussion (*see* Opp. at 15:5–14), reliance on that agreement fails simply because, as the Court has already recognized, DHG is not a party to that agreement. *See* Original Compl. Order at 29:25–26 (discussing Ex. 1 thereto (which is also Ex. 1 to the SAC); SAC, Ex. 1, p. 1). Nor does it describe any information in any greater detail that would aid identification of any trade secret. *See generally*, SAC, Ex. 1.

Instead, they refer to non-descript "technical information" "design information," and "engineering work." *See id*. The allegations of economic value are similarly disconnected—speaking only to efforts to produce "designs," and "resulting design information"—without ever explaining what information Plaintiffs supposedly developed through their alleged efforts or providing any indication that these processes included producing the items of information that Plaintiffs now assert are trade secrets. *See id*.; *compare id.*, ¶ 20.2.15. So while the SAC alleges that Plaintiffs produced information of some sort, their allegations never state what information they produced. That is the fatal flaw.

Plaintiffs must allege independent economic value ***"for each of their trade secrets."*** FAC MTD Order at 9:11–13. They have failed to do so, warranting dismissal.

***3. Plaintiffs fail to plead misappropriation.***

Plaintiffs assert that they have pled misappropriation under multiple theories provided by the DTSA and CUTSA. *See* Opp. at 16:23–18:28. But the SAC lacks critical facts for each theory and contains other facts that irreconcilably contradict Plaintiffs' articulations of their claim.

As an initial matter, and as the Motion explains, the misappropriation pleading fails from the start because the SAC never alleges that any of the information listed as "engineering and technical trade secrets" in Paragraph 20.2.15 ever came into DHG's possession in the first place. *See* Mot. at 14:25–15:13. Rather, the SAC only makes unspecified allegations that Precision shared certain files that contained unspecified "design information" or "technical information,' without any allegation as to what items listed in Paragraph 20.2.15 may have resided within those files. *See* SAC, ¶¶ 20.2.16–20.2.21, ¶ 21. Elsewhere, Plaintiffs claim that "Paragraphs 18–18.6 of the SAC detail "[the] information included in the Engineering Drawings and Technical Specifications trade secrets category[] that was provided to DHG." *See* Opp. at 17:21–25. But none of those paragraphs actually do that. *Compare* SAC, ¶ 18 *to* ¶¶ 20.2.15–20.2.20.[7]

---

[7] They only allege that DHG accessed information related to ***other subsections*** of the SAC (i.e. Subsections B, C, E, and F)—an inescapable conclusion given that the allegations in those paragraphs correspond to allegations in other subsections of the SAC. *Compare* ¶ 18.1, ¶¶ 18.4–18.5 *with* ¶ 20.2.23 (manufacturing methods), ¶ 18.2, ¶ 18.3 *with* ¶ 20.2.10, ¶ 20.2.6, ¶ 20.2.26 (financials). Plaintiffs own Opposition later further exposes this flaw. *See* Opp. at 17:25–28 (stating that the

That missing information is another globally fatal flaw. Plaintiffs cannot state a claim that DHG misappropriated any "engineering and technical trade secret" when they never allege what "engineering and technical trade secrets" DHG supposedly acquired (or disclosed or used). Plaintiffs never respond to this issue. *See* Opp. at 12:23–18:28. They discuss what they believe are allegations of acquisition, disclosure, or use of some unspecified information, but they never attempt to show where the SAC alleges that DHG came into possession of anything listed in Paragraph 20.2.15. *See id*. This problem dooms the pleading, but Plaintiffs ignore it. And while Plaintiffs argue, without support, that the SAC also never alleging what information DHG supposedly used or disclosed "is not required by Rule 8," that is a separate problem—it says nothing about what information DHG supposedly obtained in the first place so as to even be able to misappropriate. *See* Opp. at 18:3–7.

Even if Plaintiffs could overcome this defect, their specific theories fail. First, the theory that DHG acquired trade secrets through misrepresentation associated with the DHG NDA fails as a matter of timing—the SAC's allegations of information-sharing occurred in 2016, 2017, and 2021, but the DHG NDA did not exist until 2024, and DHG's alleged representations occurred, at earliest, in late 2023. *See* Section II.A.1.b, *supra*; SAC, ¶¶ 14.2–14.3. DHG cannot have acquired trade secrets through a misrepresentation that had not yet occurred.

Plaintiffs' argument as to a duty to maintain secrecy also fails. The DHG NDA cannot be the basis for any confidential relationship because it did not exist when Plaintiffs allege DHG obtained the information referenced in Paragraph 20.2.15, and the DHG NDA expressly excludes information already in DHG's possession. *See* SAC, Ex. 2, § 2(i). Plaintiffs' reliance on the MOU between Precision and DHG's subsidiaries fails because the SAC does not plausibly plead a violation of its actual terms, which only require protecting information "with the same care" used for the parties' own information. *See* Mot. at 16:18–17:1 (discussing SAC, Ex. 1, p. 4). The SAC never alleges how DHG's subsidiaries handled information in a way that would violate that requirement, and the claim fails without that. *See Space Data*, 2017 U.S. Dist. LEXIS 22571, at *5 (where allegation is use of a trade secret in violation of a NDA, "[plaintiff] must plead facts showing that [discloser] had a duty

---

materials shared under the DHG NDA contained information other than the "engineering and technical trade secrets").

not to use the information ***in the way alleged***." (emphasis added)); *Farhang v. Indian Inst. of Tech.*, No. C-08-02658 RMW, 2010 U.S. Dist. LEXIS 53975, at *46 (N.D. Cal. June 1, 2010) (dismissing for this reason). In short, the SAC simply fails to plausibly plead any breach of any confidentiality obligation, given the actual terms of those obligations.

Finally, Plaintiffs' agency argument fails because the SAC alleges no facts about any agency relationship between DHG and its subsidiaries. It states only an unadorned, conclusory statement that one exists because DHG owns and "controls" its subsidiaries. *See* Mot. at 17:16–18:4. That is insufficient. "The control exercised in a typical parent-subsidiary relationship is insufficient to create an agency relationship. Rather, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *Van Maanen v. Youth with a Mission-Bishop*, 852 F. Supp. 2d 1232, 1249 (E.D. Cal. 2012) *aff'd sub nom. Van Maanen v. Univ. of the Nations, Inc.*, 542 F. App'x 581 (9th Cir. 2013). The SAC never alleges any facts to that effect, or any others that could plausibly show agency, because it only alleges facts that are ***not*** sufficient to create agency. Because the SAC fails to plausibly plead agency, what knowledge may be imputed through such relationships is irrelevant. Plaintiffs provide no argument otherwise. *See* Opp. at 18:8–26. Therefore, the SAC fails to state liability to DHG through any acts of DHG's subsidiaries as a matter of corporate separateness. *See* Mot. at 17:14–18:20.

## B. The UCL Unlawful Business Practices and Intentional Misrepresentation Claims do not Survive Preemption (Counts Four and Six).

Plaintiffs concede that their claims for unlawful business practices under the UCL and intentional misrepresentation are preempted "as to allegations […] that are driven by the misappropriation of trade secrets." *See* Opp. at 19:6–8. Plaintiffs try to rescue their claims by arguing that DHG "wrongfully induced Precision to enter into the MOU" and "misrepresent[ed] to the public" that it designed Precision's feeders. *See* Opp. at 19:9–16. Those assertions are nonsense, and the SAC is devoid of any facts that could make either theory plausible. *See* Mot. at 18:21–22:13.

As to supposed inducement to enter the MOU, the SAC's allegations neither sufficiently plead misrepresentation nor distinguish from trade secret misappropriation. *See* Mot. at 21:19–22:13,

n.13. The SAC alleges inducement through a promise to license Precision's "designs"—which can only mean trade secrets or confidential information, both of which are covered and preempted by the CUTSA. *See* SAC, ¶ 60; Mot. at 19:4–23. Plaintiffs' attempt to recast this as a pursuit of monopoly (*see* Opp. at 19:17–23) fails both as matters of logic and pleading rules because the SAC never says anything of the sort. *See LaComba v. Eagle Home Loans & Inv., LLC*, No. 2:23-cv-00370-KJM-DB, 2023 U.S. Dist. LEXIS 111815, at *5 (E.D. Cal. June 27, 2023) ("plaintiffs may not amend their complaint through briefing in opposition to a motion to dismiss").

The allegation that DHG "misrepresent[ed] to the public" that it designed the feeders fails because the SAC states no facts that could plausibly show that. *See* Mot. at 21:1–15. Plaintiffs' reliance on DHG subsidiaries' complaint in Ohio (*see* Opp. at 20:3–9) also fails because (1) it is material not alleged or referenced in the SAC; (2) that complaint never alleges DHG told anyone other than the court itself that it designed anything; and (3) any statement to the court is protected by California's Anti-SLAPP statute. *See* [Dkt No. 58-1], Ex. 1; Cal. Civ. Proc. Code § 425.16. Accordingly, Counts Four and Six remain preempted and should be dismissed.

Accordingly, Plaintiffs Counts Four and Six remain preempted, lacking a sufficient statement of any theory distinct from what the CUTSA preempts. The Court should dismiss.

### C. <u>Plaintiffs' Opposition is Not Responsive to the Motion on the UCL Fraudulent Business Practices Claim (Count Five).</u>

Plaintiffs argue that their UCL fraudulent business practices claim (Count Five) is not preempted. *See* Opp. at 19:1–23. But that is not what the Motion argues, nor why that claim fails. That claim fails because it fails to allege the elements, *i.e.* that DHG made any representation to the public. *See* Mot. at 22:14–24:1. The Opposition is non-responsive, and the Court should dismiss Count Five.

## III. CONCLUSION

For the foregoing reasons and those in the Motion, the Court should grant the Motion.

[*Signature Page follows*]

Dated: August 17, 2026

DINSMORE & SHOHL LLP

By: /s/ *Michael A. Xavier*
Michael A. Xavier
Arielle I. Goren
Attorneys for Defendant DHG, INC.

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on August 17, 2026, a true copy of this Document was served by electronic mail upon all registered CM/ECF users, and by United States Postal Service upon all non-registered CM/ECF users in this case as indicated below:

- **William Scott Cameron** - scameron@weintraub.com, daguillen@weintraub.com
- **Arielle Goren** - arielle.goren@dinsmore.com, wendy.yones@dinsmore.com
- **M. Zachary Smith** - zsmith@weintraub.com, NEF@weintraub.com, aespanapurpur@weintraub.com
- **Michael Anthony Xavier , PHV** - Michael.Xavier@dinsmore.com

Dated: August 17, 2026

DINSMORE & SHOHL LLP

By: *<u>/s/ Michael A. Xavier</u>*
Michael A. Xavier
Attorneys for Defendant DHG, INC.