UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PMM HOLDINGS, LLC, et al.,<br>Plaintiff,<br>v.<br>DHG, Inc.,<br>Defendant. | Case No. 2:25-cv-02005-CSK<br><br>ORDER<br>(ECF No. 57) |

Pending before the Court is Defendant DHG, Inc.'s partial motion to dismiss the Second Amended Complaint.[1] (ECF No. 57.) Pursuant to Local Rule 230(g), the Court submits the motion upon the record and briefs on file and vacated the September 8, 2026 hearing.

For the reasons that follow, the Court GRANTS Defendant's partial motion to dismiss.

/ / /

/ / /

/ / /

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 26, 31, 33.)

# I. BACKGROUND

## A. Factual Allegations[2]

Plaintiff PMM Holdings is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Sacramento, California. Second Amended Complaint ("SAC") ¶ 4 (ECF No. 54).

Plaintiff Precision is a corporation organized and existing under the laws of the State of Oregon and is the wholly-owned subsidiary of PMM Holdings. *Id.* ¶ 5.

Defendant DHG is owned by Three Cities Research, Inc. *Id.* ¶ 6. Finn Corporation ("Finn") and Express Blower, Inc. ("Express Blower") are wholly-owned subsidiaries of DHG. *Id.* ¶¶ 7-8. All three are organized under the laws of the State of Ohio and operate from principal offices in Ohio. *Id.* ¶¶ 6-8.

Plaintiffs are in the business of designing, manufacturing, and selling machinery, such as heavy-duty rotary airlock feeders, rotary valve airlocks, and screw conveyers as components for material handling systems. *Id.* ¶ 9. Plaintiff Precision is a subsidiary of Plaintiff PMM Holdings and performs the design, manufacturing, and sales of such entity. *Id.* ¶ 5. Defendant DHG is in the business of building and selling material placing trucks and equipment, commonly referred to in the industry as blower trucks, blower equipment, mulch blowers, and/or bark blowers, through the entities of Finn or Express Blower. *Id.* ¶ 10.

In 2015 and 2016, Finn and Precision discussed a potential arrangement where Precision would design, manufacture, and supply Precision's rotary airlock feeders to Finn and Express Blower. *Id.* ¶ 11. These feeders were to be a new generation of feeders and would be installed by Finn and Express Blower as a component part of some of their equipment. *Id.* These discussions resulted in a Memorandum of

---

[2] These facts primarily derive from the SAC (ECF No. 54), which are construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Understanding ("MOU") between Finn and Express Blower and Precision, signed on February 9, 2016. *Id.* ¶ 12. *See* SAC Ex. 1 (ECF No. 54 at 33-36). The MOU stated if the business relationship outlined in the MOU ended, Precision would remain out of the aftermarket business for a specified time and license its feeders to Finn and Express Blower. SAC ¶ 12.8. Finn and Express Blower did not adhere to the minimum lot sizes commitment outlined in the MOU. *Id.* ¶ 19.1. The business relationship ended due to failure to adhere to the MOU, and DHG and DHG Companies did not license Plaintiffs' feeders. *See id.* ¶ 19.5.

In 2024, DHG and Three Cities, and prior Defendant William B. Meyer and Sons, Inc. represented that DHG was interested in potentially doing business with Plaintiffs by acquiring Plaintiff Precision. *Id.* ¶ 14.3. Precision, DHG, and Three Cities entered into a Non-Disclosure Agreement ("DHG NDA") on January 23, 2024. *Id.* Plaintiffs allege that the DHG NDA requires that DHG and its affiliates "maintain in strict confidence" the "Confidential Information" obtained from Precision. *Id.* ¶ 15.1. The DHG NDA also required DHG refrain from transmitting any Confidential Information of any proposed transaction to any third party. *Id.* ¶ 15.2. The DHG NDA contained a provision requiring the parties to consent to the jurisdiction and application of the laws of the State of California. *Id.* ¶¶ 15.3, 15.4.

Plaintiffs allege that DHG, by and through the DHG companies, breached the DHG MOU by failing to adhere to the minimum lot sizes commitment contained in the DHG MOU, and by failing to license Plaintiffs' feeders. *Id.* ¶¶ 19.1, 19.2. Plaintiffs also allege that once the business relationship ended, DHG failed to license Plaintiffs' feeders and undertook a scheme to use the design without licensing Precision's feeders or otherwise compensating precision. *Id.* ¶ 19.5. Plaintiffs also allege that DHG, on its own and by and through DHG companies, has violated the DHG NDA. *Id.* ¶ 20. Plaintiffs allege Defendant has "misappropriated or otherwise misused Precision's design, manufacturing processes, intellectual property, proprietary information and/or other 'Confidential Information' associated with Precision's feeders[.]" *Id.* Plaintiffs allege DHG

falsely represented to Plaintiffs that they were interested in doing business with Plaintiffs in order to gain access to Plaintiffs' proprietary and trade secret information and other Confidential Information through the disclosures of information contemplated by the DHG NDA. *Id.* ¶ 20.1.

Further, Plaintiffs allege DHG, on its own and through its subsidiaries acting as agents, violated the DHG NDA and acquired commercially exploitable proprietary information that constituted Precision's trade secrets, including: (A) key customer, industry, and sales-strategy information; (B) supplier, component, material, and outsourcing; (C) product-level cost, margin, and pricing information; (D) engineering drawings, STEP files, design history, and technical specifications; (E) proprietary manufacturing processes and know-how information; and (F) financial, growth, and product-line strategy information. *Id.* ¶¶ 20.2.-20.2.28.

Plaintiffs bring the following causes of action against Defendant DHG: (1) breach of the DHG NDA; (2) tortious interference with contract; (3) misappropriation of intellectual property and trade secrets; (4) unlawful business practices and competition; (5) fraudulent business practices and competition; and (6) intentional misrepresentation. *Id.* ¶¶ 28-66.

**B. Procedural Posture**

A summary of this action's procedural posture in the Court's May 28, 2026 Order is incorporated here. (ECF No. 53 at 4-5.) The Court issued an order on May 28, 2026, granting Defendant DHG's partial motion to dismiss, dismissing Plaintiffs' misappropriation of trade secrets claim, unlawful business practices and competition claim, fraudulent business practices and competition claim, and intentional misrepresentation claims with leave to amend. *Id.* Plaintiffs timely filed the SAC on June 26, 2026. (ECF No. 54.) On July 24, 2026, Defendant DHG filed another partial motion to dismiss Plaintiffs' misappropriation of trade secrets claim, unlawful business practices UCL claim, fraudulent business practices UCL claim, and intentional misrepresentation claims in the SAC. (ECF No. 57.) Plaintiffs opposed Defendant's motion to dismiss on

August 7, 2026. (ECF No. 58.) On August 17, 2026, Defendant filed a timely reply. (ECF No. 60.) The hearing was vacated and the motion was submitted on the record and written briefing. (ECF No. 59.) Briefing is now complete.

## II. LEGAL STANDARDS

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

## III. DISCUSSION

Defendant DHG moves to dismiss Plaintiffs' misappropriation of trade secrets claim, unlawful business practices UCL claim, fraudulent business practices UCL claim, and intentional misrepresentation claim in the SAC. Def. Mot. at 8-24 (ECF No. 57). The following SAC claims are not subject to the motion to dismiss: (1) breach of the DHG NDA; and (2) tortious interference with contract.

### A. Misappropriation of Intellectual Property and Trade Secrets

Plaintiffs have brought an amended misappropriation of intellectual property and trade secrets claim under the Defend Trade Secrets Act of 2016 ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). SAC ¶¶ 39-46. The SAC alleges numerous additional factual allegations in support of their misappropriation claim compared to the FAC. *Compare* SAC ¶¶ 20.2-20.2.28 *with* FAC ¶¶ 20.2-20.2.9. Instead of moving to dismiss Plaintiffs' misappropriation of trade secrets claim in its entirety, like in their previous Motion to Dismiss, Defendants argue that Plaintiffs have still failed to a

misappropriation claim specifically in Plaintiff's subsection titled "Engineering Drawings, STEP Files, Design History, and Technical Specifications" (hereinafter "engineering and technical trade secrets"). Def. Mot. at 8-15.

Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims together because the elements are substantially similar."). To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices*, 343 F. Supp. 3d at 877 (citation omitted).

1. Identification of Trade Secret

The definition of a "trade secret" is similar under the DTSA and CUTSA. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 2021 WL 4895977, at *20 (S.D. Cal. Oct. 20, 2021). Under the DTSA, a "trade secret" is:

> [F]inancial, business, scientific, technical, economic, or engineering information . . . if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Under the CUTSA, a "trade secret" is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Under either statute, the definition of a trade secret consists of three elements: (1) "information, (2) that is valuable because it is unknown to others,

and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657. Insight, knowledge, and know-how acquired by an insider to a particular trade does not, by itself, constitute trade secrets. *Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017).

To prove ownership of a trade secret, the plaintiff must identify the trade secrets and show they exist. *InteliClear*, 978 F.3d at 658. A plaintiff does not need to "spell out the details of the trade secret," *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted), but must describe the trade secret with sufficient particularity to permit the defendant "to ascertain at least the boundaries within which the secret lies," *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted).

The SAC's new engineering and technical trade secrets category contains the following information: "some engineering drawings, STEP files, dimensions, tolerances, material specifications, surface treatment specifications, component selection, clearances, manufacturing notes, revision histories, prototype changes, and design rationale for Precision's feeder designs." SAC ¶ 20.2.15. As in the Court's previous order, the Court finds that categories such as these are "sufficient to permit Defendants at least to ascertain the boundaries with which the secrets lie." *See TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 2509979, at *3-*4 (N.D. Cal. Jun. 17, 2010) (finding that categories such as "customer lists," "business methods and marketing plans," "customer profiles," and "cost, pricing, margin data, and other financial information" were sufficient to identify trade secrets.); *see also K.T.I. Hydraulics, Inc. v. Palmersheim*, 2022 WL 17100470, at *5 (C.D. Cal. Aug. 11, 2022) (finding plaintiff sufficiently identified a trade secret by referencing its customer lists, pricing data, and proprietary information relating to plaintiff's product); 5/28/2026 Order at 7-8. Accordingly, the Court finds that Plaintiffs have sufficiently identified their trade secrets and Defendant DHG's motion to dismiss is denied on this ground.

/ / /

2. Independent Economic Value

Like Defendant's previous motion to dismiss, Defendant moves to dismiss for failure to plead independent economic value. Def. Mot. at 12-14; *see* Def. Mot. Dismiss FAC at 9-15 (ECF No. 49). "To have independent economic value, a trade secret must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'" *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017) (quoting *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 564 (2007)). "Independent economic value can be shown by 'circumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access.'" *Id.* (quoting *Religions Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995)). The standard for pleading that trade secrets derive independent economic value "is not a high standard." *Id.* at *4. However, mere recitation of this element in a pleading is insufficient to state a claim for trade secret misappropriation. *Cisco Systems, Inc v. Chung*, 462 F. Supp. 3d 1024, 1052-53 (N.D. Cal. 2020).

Here, the SAC alleges each engineering and technical trade secret item had independent economic value because "the acquiring companies avoided the design, engineering, fixturing, sourcing, and refining work already performed by Precision and the DHG Companies to bypass the cost and time of product design, prototype failure, engineering revisions, supplier sourcing, fixturing, tolerance development, and production learning." SAC ¶ 20.2.21. Unlike the pleading in the FAC, which ignored entire categories of trade secrets when alleging independent economic value, the SAC groups each item listed under the engineering and technical trade secret section and satisfies the low bar to plead independent economic value. *See Fuhu, Inc. v. Toys "R" US, Inc.*, 2013 WL 12097569, at *9 (denying a motion to dismiss a misappropriation of trade secrets claim where plaintiff alleged independent economic value because the alleged trade secret "was secret."). Accordingly, Defendant's motion to dismiss is also denied on this ground.

3. Misappropriation

Defendant additionally moves to dismiss Plaintiffs' misappropriation claim with respect to technical and engineering trade secrets because the SAC fails to allege misappropriation of the engineering and technical trade secrets were directed at Defendant's subsidiaries by: (1) failing to allege Defendant acquired or possessed the trade secrets; (2) failing to allege use or disclosure of any of the alleged trade secrets; (3) failing to allege acquisition of the trade secrets by improper means; (4) failure to allege misappropriation on the basis of Defendant "holding out to the public" that Precision's designs were the product of DHG; and (5) failure to plead agency liability when the factual allegations were directed at DHG's subsidiaries. Def. Mot. at 14-18.

In the SAC, Plaintiffs' theory of liability for their misappropriation claim regarding engineering and technical trade secrets concerns a series of interactions between Plaintiff Precision and subsidiaries of Defendant DHG, Finn and Express Blower, between the years 2000 and 2021. SAC ¶¶ 20.2.15-20.2.21. The SAC alleges that Precision disclosed various drawings and technical information to Defendant's subsidiaries. *Id*. The SAC alleges both subsidiaries are agents of Defendant DHG and serve under its ultimate direction and control. *Id*. ¶¶ 7-8. Plaintiffs additionally argue Defendant DHG's violation of the DHG NDA independently gave rise to misappropriation of Plaintiff's engineering and technical trade secrets. Pl. Opp. at 18 (ECF No. 58).However, the subcategory of engineering and technical trade secrets describes a sharing of information that took place prior to the signing of the DHG NDA. *See* SAC ¶¶ 20.2.15-20.2.21. Accordingly, the Court agrees with Defendant that Plaintiffs have failed to state a misappropriation claim on the grounds of failure to allege agency liability and it need not consider Defendant's remaining arguments.

"The central inquiry under the agency theory of liability is 'whether the degree of control exerted over the subsidiary by the parent is enough to reasonably deem the subsidiary agent of the parent under traditional agency principals.'" *Van Maanen v. Youth with a Mission-Bishop*, 852 F. Supp. 2d 1232, 1248-49 (E.D. Cal. 2012)

(quotations omitted). "The parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over the performance of the subsidiary's *day to day* operations in carrying out that policy." *Id*. at 1249 (quotations omitted). The SAC alleges engineering and technical trade secrets were shared between Plaintiffs and Defendant DHG's subsidiaries Finn and Express Blower between the years 2000 and 2021. SAC ¶¶ 20.2.16-20.2.20. While Plaintiffs argue that Defendant DHG incurred liability through the direction and control of Finn and Express Blower and through the shared knowledge of the other companies as a matter of law as principal and agent, Plaintiffs must first establish the existence of an agency relationship between Defendant and its subsidiaries. *See* Pls. Opp. at 18. The SAC fails to provide additional allegations outside of Finn and Express Blower being under "the ultimate direction and control" of Defendant. SAC ¶¶ 6-8. Thus, the Court finds that Plaintiffs have inadequately pled agency liability to allege misappropriation of trade secrets with respect to engineering and technical trade secrets and dismisses their claim. *See Infinite Peripherals, Inc. v. Custom S.P.A.,* 2020 WL 5045315, at *7 (C.D. Cal. Apr. 10, 2010) (finding plaintiff's agency argument to plead misappropriation of trade secrets failed due to conclusory allegations).

**B. Preemption under CUTSA**

The CUTSA provides the exclusive civil remedy for "conduct falling within its terms and supersedes other civil remedies based on misappropriation of a trade secret." *Waymo LLC v. Uber Technologies, Inc*., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). When determining whether a cause of action is superseded by the CUTSA, the court asks "whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id*. (quoting *Qiang Wang v. Palo Alto Networks, Inc*., 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013)).

1. <u>Unlawful Business Practices and Competition (Claim Four)</u>

Plaintiffs raise a claim against Defendant DHG for violation of California's Unfair

Competition Law ("UCL") under the unlawful business practices prong, alleging the: following unlawful business practices: (1) misappropriation of information that cannot be categorized as trade secrets; and (2) Defendants DHG and DHG Companies' representation that they were the original equipment manufacturers of the Precision-designed feeders. SAC ¶¶ 49-50. Defendant DHG moves to dismiss Plaintiffs' amended UCL claim for failure to state a claim on the grounds that: (1) it fails to cure the defects identified in the Court's May 28, 2026 Order by being intertwined with Plaintiffs' misappropriation of trade secrets claim; and (2) that its new allegation regarding Defendants DHG and DHG Companies' representation that they were the original equipment manufacturer of the Precision-designed feeders fails because it lacks a factual basis showing a violation of a law and is conclusory. Def. Mot. at 19-21.

Section 17200 of California's Business and Professions Code "broadly proscribes' unfair competition; including 'any unlawful, unfair, or fraudulent business act or practice.'" *Id*. (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 180 (1999)). "Unlawful practices are practices 'forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulation, or court-made.'" *VP Racing fuels, Inc. v. General Petroleum Corp*., 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994)). To state a cause of action under Section 17200, "a plaintiff must allege facts sufficient to show a violation of some underlying law." *Id*. (citing *People v. McKale*, 25 Cal.3d 626, 632 (1979)).

The Court previously dismissed Plaintiffs' UCL claim for being preempted by the CUTSA, as the FAC had alleged that the DTSA and CUTSA were the underlying violations of law giving rise to the action. 5/28/2026 Order at 10 (ECF No. 53) (citing FAC ¶ 48). Plaintiffs concede that the allegations concerning misappropriation of information not considered trade secrets may be dismissed for being "driven by the misappropriation of trade secrets." Pl. Opp. at 19. However, Plaintiffs argue that the misrepresentations Defendant's subsidiaries made in being the original equipment managers of the Precision-designed feeders is sufficient to state a UCL unlawful business practices

claim. *Id*. As for the allegations relating to Defendant DHG's misrepresentation, Plaintiffs fail to allege facts to sufficiently support a violation of an underlying law and fail to name the law allegedly violated by Defendant DHG. Separately, the Court finds Plaintiffs' allegations to be conclusory as the SAC does not allege factual allegations in support of the claim that Defendant's subsidiaries held themselves out as original equipment managers. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). Thus, the Court dismisses Plaintiff's UCL unlawful business practices claim. .

2. Intentional Misrepresentation (Claim Six)

In the SAC, Plaintiffs have amended their intentional misrepresentation claim against Defendant DHG, alleging that Defendant misrepresented that it intended to acquired Precision and intended that Precision rely on these misrepresentations to execute the DHG NDA and provide DGH with Plaintiff's trade secrets. SAC ¶¶ 63-64. Defendant DHG moves to dismiss Plaintiffs' intentional misrepresentation claim for failing to cure the defects outlined by the Court in its May 28, 2026 Order and for being preempted by the CUTSA. Def. Mot. at 21-22.

To plead a claim for intentional misrepresentation, a plaintiff must state "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, (5) resulting damage." *Ives v. Allstate Insurance Company*, 520 F. Supp. 3d 1248, 1257 (C.D. Cal. 2021) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).

The Court previously found that Plaintiffs' intentional misrepresentation claim was preempted by the CUTSA for misrepresentation of trade secrets being central to Plaintiffs' claim. 5/28/2026 Order at 11. The same defects are present here, as once again Plaintiffs allege the misrepresentations in question were intended to obtain Plaintiffs' trade secrets. *See* SAC ¶ 64. Accordingly, Plaintiffs' intentional misrepresentation claim is dismissed as preempted by the CUTSA. *See Silvaco Data Systems v. Intel Corp.,* 184 Cal. App. 4th 210, 236 (2010) (finding intentional misrepresentation superseded by the CUTSA for being based in misappropriation of a

trade secret.).

**C. Fraudulent Business Practices and Competition (Claim Five)**

The SAC also amends the cause of action under California Business and Professions Code Section 17200 for a fraudulent business act or practice, alleging that the following are fraudulent business practices: (1) Defendant materially misrepresented its intent to acquire Precision, when in actuality, it intended to only obtain Plaintiffs' confidential information; and (2) Defendant and its subsidiaries, Finn and Express Blower, are holding themselves out as the original equipment manufacturer of the Precision-designed feeders currently marketed and sold by Defendant's subsidiaries. SAC ¶¶ 53-58. Defendant argues that this claim fails for once again failing to cure the pleading defects identified by the Court in its May 28, 2026 Order because Plaintiffs fail to allege that the public at large would be deceived by the alleged fraudulent conduct and because Plaintiffs' allegations regarding misrepresentation to the public fails for lacking any factual support. Def. Mot. at 22-24.

To state a fraudulent UCL cause of action, "the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct." *VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1087 (citing *Committee on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197, 212 (1983)).

Like Plaintiffs' previous fraudulent UCL claim, the Court finds that Plaintiffs' allegations regarding Defendant's misrepresented intent to acquire Precision fail to state whether the public at large, rather than Plaintiffs, were likely to be deceived by Defendant DHG's conduct. SAC ¶¶ 53-58; *VP Racing Fuels, Inc. v. General Petroleum Corp*., 673 F. Supp. 2d 1073, 1087 (E.D. Cal. 2009) ("A 'fraudulent' business practice is one in which members of the public are likely to be deceived."); 5/28/2026 Order at 11-12. Additionally, the Court finds that Plaintiffs' allegations regarding Defendant DHG's misrepresentations of being the original equipment manufacturer of the Precision-designed blower fail for not alleging any factual support in the SAC to support these allegations. SAC ¶ 57; *see Iqbal,* 556 U.S. at 678.

### D. Leave to Amend

If a complaint can possibly be cured by additional factual allegations, a district court should grant leave to amend. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). However, leave to amend need not be given if amendment would be futile. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023). When a plaintiff has previously amended the complaint, a district court's discretion to deny leave to amend is "particularly broad." *Salameh*, 726 F.3d at 1133.

Here, in light of the SAC's continued deficiencies, it appears that granting further leave to amend would be futile. In considering whether leave to amend should be granted, the Court also considers that this is not the first complaint Plaintiffs have filed in this district court that was dismissed for failure to state a claim. *See* 12/30/2025 Order (ECF No. 45); 5/28/2026 Order. Plaintiffs have amended their complaint twice. The SAC is the third complaint Plaintiffs have filed, and Plaintiffs have not been able to cure pleading defects though they have been provided with two opportunities to do so. Plaintiffs' misappropriation of trade secrets claim relating to engineering and technical trade secrets, unlawful business practices and competition UCL claim, fraudulent business practices and competition UCL claim, and intentional misrepresentation claim are therefore dismissed without leave to amend. *See Lopez*, 203 F.3d at 1130-31; *Cato v. United States*, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Defendant's partial motion to dismiss (ECF No. 57) is GRANTED;
    a. Plaintiffs' misappropriation of trade secrets claim as it relates to engineering and technical trade secrets is DISMISSED without leave to amend;
    b. Plaintiffs' unlawful business practices and competition UCL claim is DISMISSED without leave to amend;
    c. Plaintiffs' fraudulent business practices and competition UCL claim is

DISMISSED without leave to amend; and

d. Plaintiffs' intentional misrepresentation claim is DISMISSED without leave to amend.

2. This action will proceed on the following claims:

a. Breach of the DHG NDA

b. Tortious Interference with Contract

c. Misappropriation of Intellectual Property and Trade Secrets for the following categories:

i. Key Customers Information

ii. Supplier, Component, Material, and Outsourcing Information

iii. Product-Level Cost, Margin, and Pricing Information

iv. Proprietary Manufacturing Processes and Know-How Information

v. Financial, Growth, and Product-Line Strategy Information.

3. Defendant shall file an Answer within fourteen (14) days of this Order to the remaining claims. *See* Fed. R. Civ. P. 15(a)(3).

Dated: November 2, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, pmm.2005.25.mtd3